**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 16-cr-0030 (KBJ) |
| | ) | |
| CHARLES HILLIE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

A federal grand jury has indicted Charles Hillie ("Hillie" or "Defendant") of

seven counts of production and possession of child pornography in violation of 18

U.S.C. §§ 2251 and 2252, and ten counts of child sexual abuse in violation of District

of Columbia law.  (*See* Superseding Indictment ("Indictment"), ECF No. 9, at 1–14

(citing 18 U.S.C. §§ 2251(a), (e), 2252(a)(4)(B); D.C. Code §§ 22-3008, -3009,

-3009.02, -3020(a)(2), (a)(5)).)[1]  Hillie has filed seven separate motions challenging

various aspects of this prosecution.  (*See* ECF Nos. 17–23.)[2]  Before this Court at

present is the motion in which Hillie raises questions about the sufficiency of the

indictment, which charges Hillie with multiple counts of nearly identical offenses.  (*See*

Motion to Dismiss Indictment ("Def.'s Mot."), ECF No. 19.)  According to Hillie, the

language of the charging document does not provide an adequate description of the

---

[1] Page numbers herein refer to those that the Court's electronic case filing system automatically assigns.

[2] The motions are:  (1) a motion to sever counts (ECF No. 17); (2) a motion to dismiss counts One through Seven of the indictment (ECF No. 18); (3) a motion to dismiss the indictment in its entirety (ECF No. 19); (4) a motion for a Bill of Particulars (ECF No. 20); (5) a motion to suppress statements and request for an evidentiary hearing (ECF No. 21); (6) a motion to suppress tangible and electronic evidence (ECF No. 22); and (7) a motion to suppress identification evidence (ECF No. 23).

"place and time" that the alleged offenses took place, nor does it specify "the nature or type of 'sexually explicit conduct'" at issue.  (*Id.* at 7.)  Instead, says Hillie, the indictment merely quotes the broad language of the child pornography statutes without including any facts that specify the particular conduct of Hillie's that is the basis of the government's charges.  (*See id.*; *see also* Reply to United States' Suppl. Resp. to Def.'s Mot. ("Def.'s Suppl. Br."), ECF No. 42, at 3–4.)  Hillie argues that these deficiencies amount to insufficient notice of the "nature of the accusations against him" and prevent him from "rais[ing] a double jeopardy defense in the event he is charged with similar offenses in the future" (Def.'s Mot. at 7–8), all in violation of his Fifth Amendment right to due process and Sixth Amendment right to be appraised of the nature and cause of the criminal charges against him (*see id.* at 5–8).

For the reasons explained below, this Court agrees with Hillie's arguments, at least as far as the federal child pornography counts are concerned.  In this Court's view, the challenged indictment fails to provide minimally required factual information regarding the conduct of Hillie's that the government says constitutes production and possession of child pornography in violation of federal law (Counts One through Seven), and as a result, the Court concludes that Hillie's Motion to Dismiss the Indictment must be **GRANTED IN PART**, and that Counts One through Seven of the indictment must be **DISMISSED WITHOUT PREJUDICE**.  Because the dismissal of the federal child pornography counts impacts this Court's continued exercise of jurisdiction over the remaining state law charges, this Court's dismissal order will be **HELD IN ABEYANCE** for a period of 14 days, to provide the government with an

opportunity to consider the path forward and, if it so chooses, seek a superseding

indictment that comports with the Constitution and the Federal Rules.

## I.      BACKGROUND

### A.      The Criminal Charges

On March 22, 2016, a federal grand jury returned a 17-count indictment against

Hillie, and the government filed that charging document with this Court.  (*See*

Indictment, ECF No. 9.)[3]  The indictment charged Hillie with seven violations of

federal law:  two counts of Production of Child Pornography in violation of 18 U.S.C.

§ 2251(a) (Counts One and Two); one count of Possession of Child Pornography in

violation of 18 U.S.C. § 2252(a)(4) (Count Three); and four counts of Attempted

Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and (e) (Counts

Four, Five, Six, and Seven).  (*See* Indictment at 1–6.)  The indictment also alleged that

Hillie committed several serious child sex abuse offenses in violation of D.C. law:  one

count of First Degree Child Sexual Abuse with Aggravating Circumstances in violation

of D.C. Code §§ 22-3008, -3020(a)(2), and (a)(5) (Count Eight); eight counts of Second

Degree Child Sexual Abuse with Aggravating Circumstances in violation of D.C. Code

§§ 22-3009, -3020(a)(2), and (a)(5) (Counts Nine, Ten, Eleven, and Thirteen through

Seventeen); and one count of Second Degree Sexual Abuse of a Minor with

---

[3] "The government's formal prosecution against Charles Hillie [actually] began on or about July 29, 2015, in the Superior Court of the District of Columbia when a complaint was filed" charging Hillie "with one count of First Degree Child Sexual Abuse and one count of Second Degree Child Sexual Abuse."  (Def.'s Mot. at 2.)  On February 23, 2016, a federal grand jury indicted Hillie of one count of Production of Child Pornography and one count of First Degree Child Sexual Abuse based on the same conduct at issue in the Superior Court case (*see id.* at 2–3; Original Indictment, ECF No. 2), and "[a]fter the federal indictment was returned, the Superior Court case was dismissed" (Def.'s Mot. at 3 n.4).  The current charges were brought on March 22, 2016, in the form of a superseding indictment.

Aggravating Circumstances in violation of D.C. Code §§ 22-3009.02, -3020(a)(2), and (a)(5) (Count Twelve).  (*See* Indictment at 6–14.)

      1.  <u>The Charged Federal Offenses</u>

The child pornography counts (Counts One through Seven) charge Hillie with violations of two statutory provisions:  namely, 18 U.S.C. §§ 2251 and 2252, as amended.  Congress first enacted these statutes in the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95–225, 92 Stat. 7, in order to sanction the use of minors in sexually explicit depictions and thereby eradicate the harms flowing from the clandestine distribution of child pornography.  *See Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1181 (D.C. Cir. 1992) (summarizing the legislative history of 18 U.S.C. §§ 2251, 2252, and 2256).  Section 2251(a) broadly criminalizes the *production* of child pornography; it punishes anyone who, in connection with interstate commerce, "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]"  18 U.S.C. § 2251(a).  Section 2252(a) makes knowing *possession* of child pornography unlawful; specifically, possession of "1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction . . . if—(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct[.]"  *Id.* § 2252(a)(4)(B).

The term "sexually explicit conduct"—which appears in both child pornography statutes—is defined as, *inter alia*, "actual or simulated . . . lascivious exhibition of the genitals or pubic area of any person[.]"  *Id.* § 2256(2)(A)(v).  Furthermore, Congress has criminalized not only the completed acts of producing and possessing child

pornography, but also the attempt to commit those crimes. *See id.* § 2251(e) (prescribing punishment for "[a]ny individual who violates, or attempts or conspires to violate, [§ 2251(a)]"); *see also id.* § 2252(b)(2) (prescribing punishment for "[w]hoever violates, or attempts or conspires to violate, [§ 2252(a)(4)]"). To prove attempt, the government must show that the defendant (1) took a "substantial step" toward committing the crime, such as "utiliz[ing] another person to perform an element" of the offense, and (2) acted "with the clear intent to cause the harm proscribed by the statute." *United States v. Hite*, 769 F.3d 1154, 1162 (D.C. Cir. 2014).

　　　2. The Language In The Indictment

　　　Counts One and Two of the indictment against Hillie—the production counts— are substantively identical with the exception of the date ranges alleged. Count One alleges that the violative conduct occurred sometime between July 1, 2008, and August 30, 2010, while Count Two charges Hillie with a violation that allegedly occurred sometime between July 1, 2008, and August 30, 2011. These two counts otherwise state the allegations against Hillie in identical terms, using solely the words of the statute, as follows:

> Between on or about July 1, 2008 and on or about [either August 30, 2010 or August 30, 2011], in the District of Columbia, the defendant, CHARLES HILLIE, did knowingly and intentionally employ, use, persuade, induce, entice, and coerce J.A.A., [a] . . . minor female, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct, knowing and having reason to know that such visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or knowing and having reason to know that such visual depiction would be transported or transmitted in or affecting interstate or foreign commerce; and which visual depiction was produced or transmitted using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer; and the visual depiction was transported or transmitted using any means or facility of interstate

5

or foreign commerce or the visual depiction was transported or transmitted in or affecting interstate or foreign commerce.

(Indictment at 1–2.)

Counts Four, Five, Six, and Seven—the attempted production counts—also recite this same statutory language with respect to the underlying conduct, but each of these counts adds the words "attempt to" after "did knowingly and intentionally[.]" (*Id.* at 3–5; *see, e.g.*, *id.* at 3 (stating, as to Count Four, that Hillie "did knowingly and intentionally *attempt to* employ, use, persuade, induce, entice, and coerce J.A.A." (emphasis added)).) Furthermore, as with the first two counts, the four attempt counts differ slightly with respect to the date ranges upon which the underlying conduct allegedly occurred. (*See id.* at 3 (Count Four covers attempted conduct during a period ranging from May 1, 2007, to May 31, 2012); *id.* at 4 (Count Five covers attempted conduct during a period ranging from July 1, 2008, to August 30, 2011—the same date range as Count Two); *id.* at 5 (Count Six covers attempted conduct that allegedly occurred on October 12, 2011); *id.* (Count Seven covers attempted conduct during a period ranging from July 1, 2011, to May 31, 2012).)

Lastly, the child-pornography-possession count (Count Three) reads:

Between on or about July l, 2008, and on or about August 30, 2011, in the District of Columbia, the defendant, CHARLES HILLIE, did knowingly possess at least one matter which contained any visual depiction that had been shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce; and which was produced using materials which had been mailed or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce; and the production of such visual depiction involved the use of an eleven-to-fourteen-year-old minor female engaging in sexually explicit conduct, and such visual depiction was of such conduct.

(*Id.* at 3.)

### 3.  The D.C. Sexual Abuse Charges

In addition to the federal child pornography offenses described above, the indictment charges Hillie with one count of sexual abuse of a minor (Count Twelve) and nine counts of sexual abuse of a child in the first and second degree (Counts Eight through Eleven and Thirteen through Seventeen), all in violation of District of Columbia law.  (*See* Indictment at 6–14.)[4]  The relevant statutory provisions penalize anyone who, "being 18 years of age or older," has sexual contact with a "minor" with whom he or she has a significant relationship, D.C. Code § 22-3009.02 ("Second degree sexual abuse of a minor"), or who engages in a sexual act or sexual contact with a "child" at least 4 years younger than the offender, *see id.* § 22-3008 ("First degree child sexual abuse"); *id.* § 22-3009 ("Second degree child sexual abuse").  The D.C. Code defines a "sexual act" as, *inter alia*, "[t]he penetration, however slight, of the anus or vulva by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[,]" *id.* § 22-3001(8)(C), and "sexual contact" as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person" with the same intent, *id.* § 22-3001(9).

With respect to the state law sex abuse charges that have been brought against Hillie, the indictment specifies certain sexual acts and sexual conduct that Hillie is alleged to have undertaken with two different children.  Each count tracks the D.C.

---

[4] In addition to having different degrees of child sex abuse offenses, D.C. law contains separate statutory provisions regarding the sexual abuse of children that vary based upon the age of the victim. As pertinent to nine of the counts in the indictment (Counts Eight through Eleven and Thirteen through Seventeen), the D.C. Code defines a "Child" as anyone "who has not yet attained the age of 16 years." D.C. Code § 22-3001(3).  For the purpose of Count Twelve, a "Minor" is defined as anyone "who has not yet attained the age of 18 years."  *Id.* § 22-3001(5A).

Code's language and provides somewhat different date ranges.  (*See* Indictment at 6–14.)  Furthermore, and significantly for present purposes, each count alleges the specific act of Hillie's that is the basis of the charge.  (*See, e.g.*, *id.* at 6 (alleging that between July 1, 2007, and August 30, 2010, Hillie "engaged in a sexual act with that child, that is, penetration of J.A.A.'s vulva by CHARLES HILLIE's finger"); *id.* at 7 (alleging that between July 1, 2007, and August 30, 2009, Hillie "engaged in sexual contact with that child, that is, contact between CHARLES HILLIE's hand and J.A.A.'s buttocks"); *id.* at 8 (charging "contact between CHARLES HILLIE's hand and J.A.A.'s breast" between July 1, 2007, and May 31, 2012).)  The sex abuse counts further note (a) the relationship between Hillie and the two victims (*see, e.g.*, *id.* at 6 ("HILLIE had a significant relationship to J.A.A., in that [he] . . . was the paramour of the person who was charged with any duty or responsibility for the health, welfare, or supervision of J.A.A."); *id.* at 10 (noting that Hillie and J.A. had the same relationship)); (b) the age difference between Hillie and that alleged victim (*see id.*); and (c) the fact that Hillie resided in the same dwelling as the victims when the abusive conduct allegedly occurred (*see id.*).

### B.     The Underlying Facts

The facts that underlie Hillie's prosecution are described in various memoranda that the government has filed in this Court, and are as follows.  Beginning in 2005, Charles Hillie (who was born in November of 1983) became romantically involved with a woman who is referred to throughout the parties' briefs by the initials "W-1" or "Jo.A."  (*See* Gov't's Mot. to Admit Other Crimes Evid., ECF No. 14, at 2.)  Jo.A. is "the mother of the two [alleged] victims" involved in this case:  "J.A.A. (born in February 1997) and J.A. (born in May 2002)."  (*Id.*)  The government maintains that

"[b]etween 2005 and his arrest in 2015, the defendant lived on and off with the child victims and [their mother]."  (*Id.*)  Moreover, at all times relevant to this case, Hillie, Jo.A., J.A.A. and J.A. resided at two locations:  first, "an apartment on Douglas Road in Southeast, Washington, D.C.[,]" where they lived between August of 2007 and June of 2012; and second, "a residence on Good Hope Court in Southeast, Washington, D.C.[,]" where they lived beginning in the summer of 2012.  (*Id.*)

J.A., the younger of the two sisters, was the first to speak up about the alleged sexual abuse.  In December of 2012, J.A.'s biological father retained custody of her after Hillie purportedly "struck J.A. in the face" for trying to tell her mother about the abuse, "causing her to bleed severely from her mouth and nose."  (Gov't's Notice, ECF No. 15, at 3.)  According to the government, J.A. confided in her biological father shortly after moving in with him, telling him about Hillie's conduct, which led her father to file a formal report with the police.  (*See id.*)  On January 23, 2013, the D.C. Children's Advocacy Center interviewed J.A. (who was 10 years old at the time); during the interview, J.A. "disclosed multiple instances of sexual abuse by the defendant" relating to both her and her sister.  (*Id.*)  J.A.'s allegations prompted D.C. government officials to launch a formal investigation into Hillie.  (*See id.* at 3 n.1.)

On March 29, 2013, "J.A. was shown a confirmation photograph of the defendant[,]" who she called "Mr. Charlie[,]" the man "who had 'touched' her[.]" (Gov't's Resp. to Def.'s Mot. to Suppress Identification, ECF No. 26, at 3.)  The police also questioned J.A.'s sister, J.A.A., who was 16 years old at that time and was living with her mother and Hillie.  (*See id.* at 2.)  When questioned, J.A.A. denied J.A.'s allegations, and also said that J.A. had been untruthful in the past.  (*See id.*; Gov't's

Opp'n to Def.'s Mot. to Suppress Tangible & Elec. Evid., ECF No. 31, at 2–3.)
J.A.A.'s adamant refusal to corroborate J.A.'s account led the police to suspend their
investigation into the child sex abuse allegations.  (*See* Gov't's Notice at 3 n.1.)

      The investigation was revived the following year, however, when, in August of
2014, J.A.A. reversed course and admitted to the investigators that she had previously
lied about not being abused by Hillie.  (*See* Gov't's Resp. to Def.'s Mot. to Suppress
Identification at 3.)  J.A.A. said that "[t]he reason [she] was silent about the defendant's
abuse was because her mother . . . had warned [her] that their family would be broken
apart if [she] disclosed the truth[,]" and had specifically directed J.A.A. to lie to the
authorities.  (Gov't's Mot. to Admit Other Crimes Evid. at 4.)  J.A.A. said that she had
agreed to lie about the abuse in exchange for her mother's promise that Hillie "would
never touch either of the girls again."  (*Id.*)  However, according to J.A.A., "the
defendant [did] touch[] [her] on the buttocks again" and as a result, she decided to tell
the authorities about Hillie's conduct.  (*Id.*)  Thereafter, "J.A.A. reported to Child
Protective Services that the defendant, her mother's boyfriend named 'Charles Hillie,'
had been sexually abusing her for a period of time."  (Gov't's Resp. to Def.'s Mot. to
Suppress Identification at 3.)  Moreover, and significantly for present purposes, J.A.A.
told the police that, in 2011, she had discovered nude photographs of herself on the
family's pink laptop computer, and that the photos had been taken without her
knowledge.  (*See* Gov't's Opp'n to Def.'s Mot. to Suppress Tangible & Elec. Evid. at
3.)  "The investigation was thus re-initiated" in earnest.  (Gov't's Resp. to Def.'s Mot.
to Suppress Identification at 3.)  To this end, on August 8, 2014, J.A.A. was shown a

confirmatory photograph of the defendant, who she identified as "Charles Hillie," and who she claimed had "'touched' her on her 'butt, vagina, breast.'"  (*Id.*)

On July 29, 2015, the government filed a criminal complaint in the Superior Court of the District of Columbia, accusing Hillie of first and second degree child sexual abuse with respect to J.A.A. and J.A.  (*See* Superior Court Criminal Complaint, Attach. A to Gov't's Opp'n to Def.'s Mot. to Suppress Tangible & Elec. Evid., ECF No. 31-2; *see also* Def.'s Mot. at 2.)  Thereafter, law enforcement officers secured a search warrant that authorized government agents to locate and seize "[a] pink laptop computer, black camera, and any other electronic equipment capable of taking or storing photographs relating to sexual abuse[.]"  (Aug. 5, 2015 Search Warrant, Attach. B to Gov't's Opp'n to Def.'s Mot. to Suppress Tangible & Elec. Evid., ECF No. 31-3, at 1.)  Officers arrested Hillie at the same time that they executed the August search warrant; during the search, they recovered a "black and silver camera" and a "pink laptop in the same bedroom where the defendant" was hiding.  (Gov't's Opp'n to Def.'s Mot. to Suppress Tangible & Elec. Evid. at 6.)  With these items secured, the officers then requested and received a separate warrant to search the contents of the pink laptop and black camera for "[e]vidence of sexual abuse to include digital files, records and photographs[.]"  (Sep. 9, 2015 Search Warrant, Attach. C to Gov't's Opp'n to Def.'s Mot. to Suppress Tangible & Elec. Evid., ECF No. 31-4, at 1.)

During the subsequent forensic examination of the laptop's contents, multiple deleted videos that Hillie had created surreptitiously using a hand-held visual recording device were allegedly identified.  (*See* Gov't's Opp'n to Def.'s Mot. to Suppress Tangible & Elec. Evid. at 7.)  The videos purportedly capture Hillie "placing the

recording device in hidden locations in [J.A.A.'s] bedroom and bathroom prior to

J.A.A. entering the room, and [he] is then seen retrieving the recording device after

J.A.A. leaves the room." (*Id.*)  There are apparently six such videos, each of which

showcases J.A.A. in the nude (or nude from the waist down) in her bedroom or

bathroom "grooming her genitalia and other parts of her body" when she was "15 years

old or younger" (approximately 2007–2012).  (*Id.*)

    **C.**    **Procedural History**

    On July 29, 2015, Hillie was formally charged "with one count of First Degree

Child Sexual Abuse and one count of Second Degree Child Sexual Abuse" in the

District of Columbia Superior Court.  (Def.'s Mot. at 2.)  A federal grand jury first

returned an indictment against Hillie in the U.S. District Court for the District of

Columbia on February 23, 2016 (*see* Original Indictment, ECF No. 2), after which the

D.C. case was terminated (*see* Def.'s Mot. at 3 n.4).  A superseding indictment against

Hillie—which is the operative pleading for the purpose of the instant case—was filed

on March 22, 2016.  (*See* Indictment at 1.)  As explained in Part I.A above, the pending

federal indictment contains 17 counts, the first seven of which charge either actual or

attempted production of child pornography (Counts One, Two, Four, Five, Six, Seven)

or possession of child pornography (Count Three) in violation of federal law, and the

remaining ten charge child sex abuse in violation of D.C. law for various acts that Hillie

allegedly engaged in with respect to J.A.A. and J.A.

    On July 27, 2016, Hillie's counsel filed seven separate motions challenging

Hillie's indictment and prosecution in various respects.  (*See* Def.'s Mot. to Sever

Counts, ECF No. 17; Def.'s Mot. to Dismiss Counts One Through Seven of the

Indictment, ECF No. 18; Def.'s Mot. to Dismiss Indictment, ECF No. 19; Def.'s Mot.

for a Bill of Particulars, ECF No. 20; Def.'s Mot. to Suppress Statements & Req. for Evid. Hr'g, ECF No. 21; Def.'s Mot. to Suppress Tangible & Elec. Evid., ECF No. 22; Def.'s Mot. to Suppress Identification Evid., ECF No. 23.)  After the motions were ripe, this Court ordered the parties to file supplemental briefs clarifying their positions with respect to Hillie's Motion to Dismiss the Indictment.  (*See* Nov. 8, 2016 Min. Order; *see also* Def.'s Suppl. Br.; Gov't's Suppl. Resp. to Def.'s Mot. to Dismiss Indictment ("Gov't's Suppl. Br."), ECF No. 40.)

### 1.  Hillie's Motion To Dismiss The Indictment

As reflected in the primary and supplemental briefs that the parties have filed, Hillie's Motion to Dismiss the Indictment makes two overarching arguments:  (1) that the indictment "fails to make a sufficient factual assertion to support the government's contention that [he] committed the crime alleged in each count"; and (2) that the grand jury "relied on insufficient and erroneous information when charging [him] with the offenses alleged in Counts One through Seven."  (Def.'s Mot. at 1; *see also* Def.'s Suppl. Br. at 1–11.)  With respect to the first contention, Hillie argues that the indictment does not include sufficient facts to support the crimes charged and to properly appraise him of "the nature of the accusations against him."  (Def.'s Mot. at 7.)  For example, as to all counts, Hillie claims there is not an adequate description of when and where the alleged offenses took place—i.e., the only "place" that is identified is "the District of Columbia," and the "time frame" broadly "spans a period of more than three years."  (*Id.* at 6.)  In addition, Hillie asserts that the child pornography charges (Counts One through Seven) "fail to describe the nature or type of 'sexually explicit conduct'" the child allegedly engaged in and "fail to provide a factual basis for the interstate or foreign commerce nexus."  (*Id.* at 7; *see also* Def.'s Suppl. Br. at 6.)

Furthermore, says Hillie, in the pornography-production-related counts, there are no facts to indicate the requisite *mens rea* (i.e., purposeful production of child pornography and knowledge and intent to use a minor) or the specific acts that he allegedly committed and "the manner in which it is alleged that he" committed them.  (Def.'s Suppl. Br. at 5.)  As to the sex abuse charges (Counts Eight through Seventeen), Hillie challenges the lack of factual support for the claim that he acted intentionally and that he was previously found guilty of sexually offending two or more victims.  (*See* Def.'s Mot. at 7.)

Hillie's second line of argument relates only to the child pornography charges. Hillie maintains that a properly instructed grand jury that was looking solely at the facts alleged in the indictment and "the evidence provided to the defense through discovery" "would have declined to charge" him with the various acts of production and possession of child pornography, because the statute does not criminalize the mere capture of "a nude visual depiction of a minor" not engaging in "sexually explicit conduct" or the mere passive participation in said production.  (*Id.* at 9.)  As a result, Hillie argues that the grand jurors were deprived of all pertinent information needed to make an "independent[], fair[], or intelligent[]" determination to indict Hillie (*id.* at 10), and this deprivation violated his Fifth Amendment rights to due process and to a grand jury's protection from "arbitrary and oppressive government action" and from "being harassed by unfounded and vexatious accusations" (*id.* at 11).

### 2.   The Government's Opposition To Hillie's Indictment Challenge

The government responds to Hillie's argument that the indictment contains insufficient facts by insisting that an indictment need not include the "time, place, circumstances, [and] causes" of an alleged crime.  (Gov't's Resp. to Def.'s Mot. to

Dismiss Indictment ("Gov't's Resp. to Def.'s Mot."), ECF No. 32, at 5 (quoting *United States v. Haldeman*, 559 F.2d 31, 121 (D.C. Cir. 1976)).)  Rather, in the government's view, it suffices that a criminal indictment contains the elements of the offense set forth in a manner that "sufficiently appraises the defendant of what he must be prepared to meet[,]" and enough facts for the defendant to discern "to what extent he may plead a former acquittal or conviction" with respect to the instant charges.  (*Id.* at 4–5 (quoting *Russell v. United States*, 369 U.S. 749, 763–64 (1962)); *see also* Gov't's Suppl. Br. at 3 (asserting that "the test is not whether the indictment might have been drawn with greater certainty and exactitude, but whether it sets forth the elements of the offense and sufficiently apprises the defendant of the charges" (citation omitted)).)  Here, the government says, the indictment "contains the elements of the crimes, the fact that the offenses occurred in the District of Columbia, the identity of the victims, the specific range of dates within which the offenses occurred and the ages of the victims, the specific nature of each sexual act, and the statutes violated" (Gov't's Resp. to Def.'s Mot. at 4), which, in the government's view, is all that is necessary to place Hillie on notice of the charges against him.  (*See* Gov't's Suppl. Br. at 3 ("[T]he charging language is sufficient, because it tracks the language of the statute and provides the defendant with notice of what he has been charged with.").)

The government also argues that, in any event, "the proper remedy for a need for greater specificity in the indictment" is the issuance of a bill of particulars, not dismissal, and because the government has already given Hillie a detailed bill of particulars—one was tendered in response to another one of the defense motions (*see* Gov't's Bill of Particulars, ECF No. 39)—Hillie's dismissal argument is moot.

(Gov't's Resp. to Def.'s Mot. at 5.)  The government also rejects Hillie's critique of the grand jury's instructions, arguing that Hillie's mere suspicion that "something unspecified . . . went wrong in the grand jury" does not, without more, warrant dismissal of an indictment or the disclosure of grand jury transcripts.  (*Id.* at 5–6.)

This Court held a hearing on Hillie's Motion to Dismiss the Indictment on November 8, 2016.  The supplemental briefing (mentioned above) followed, and the motion is now ripe for this Court's review.

## II.   LEGAL STANDARD

A facially valid indictment is intended to guarantee at least two core constitutional protections.  The first is notice:  an "indictment's main purpose is to inform the defendant of the nature of the accusation against him."  *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) (internal quotation marks and citation omitted). This protection is established in the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation[.]"  U.S. Const. amend. VI; *see also* Fed. R. Crim. P. 7(c)(1) (requiring that a criminal indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged").  A valid indictment also preserves the Fifth Amendment's protections against abusive criminal charging practices; specifically, its guarantees that a criminal defendant can only be prosecuted for offenses that a grand jury has actually passed up on, and that a defendant who is convicted of a crime so charged cannot be prosecuted again for that same offense.  *See Stirone v. United States*, 361 U.S. 212, 218 (1960) (explaining that the Grand Jury Clause of the Fifth Amendment "limit[s] [a defendant's] jeopardy to offenses charged

by a group of his fellow citizens acting independently"); *see also Puerto Rico v.*
*Sanchez Valle*, 136 S. Ct. 1863, 1867 (2016) ("The Double Jeopardy Clause of the Fifth
Amendment prohibits more than one prosecution for the 'same offen[s]e.'").  No less an
authority than the Supreme Court of the United States has repeatedly explained that
careful drafting in the "language of the indictment is essential because the Fifth
Amendment requires that criminal prosecutions be limited to the unique allegations of
the indictments returned by the grand jury[,]" *Hitt*, 249 F.3d at 1016 (citing, *inter alia*,
*Russell*, 369 U.S. at 768–71), and that "[t]he precise manner in which an indictment is
drawn cannot be ignored, because an important function of the indictment is to ensure
that, in case any other proceedings are taken against [the defendant] for a similar
offen[s]e, . . . the record [will] sho[w] with accuracy to what extent he may plead a
former acquittal or conviction[,]" *Sanabria v. United States*, 437 U.S. 54, 65–66 (1978)
(first and third alteration added) (internal quotation marks and citations omitted).

Given these core constitutional values, an indictment must meet certain
requirements in order to survive a pretrial challenge to its facial sufficiency.  "[A]n
indictment is sufficient if it, first, contains the elements of the offense charged and
fairly informs a defendant of the charge against which he must defend, and, second,
enables him to plead an acquittal or conviction in bar of future prosecutions for the
same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).  "The [general] test
for sufficiency is whether it is fair to require the accused to defend himself on the basis
of the charge as stated in the indictment[,]" *United States v. Conlon*, 628 F.2d 150, 155
(D.C. Cir. 1980); therefore, "[a]n indictment is sufficient if it clearly informs the

defendant of the precise offense of which he is accused so that he may prepare his defense." *Id.*

It is important to note that, "[i]n order to meet the requirements of the Sixth Amendment, an indictment must contain every element of the offense charged *and* must fairly apprise the accused *of the conduct allegedly constituting the offense* so as to enable him to prepare a defense against those allegations." *United States v. Dale*, 782 F. Supp. 615, 621 (D.D.C. 1991) (emphasis added). To be sure, "the language of the statute may be used in the [government's] general description of an offen[s]e, but it *must* be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117–18 (emphasis added) (internal quotation marks and citation omitted). Courts have found that it is especially important to include such facts and circumstances in cases where, by solely tracking the statutory language, the indictment's terms create ambiguity regarding the defendant's conduct. *See United States v. Palfrey*, 499 F. Supp. 2d 34, 45 (D.D.C. 2007); *see also United States v. Carll*, 105 U.S. 611, 612 (1881) (finding that "it is not sufficient to set forth the offen[s]e in the words of the statute, *unless* those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offen[s]e intended to be punished" (emphasis added)). Thus, "[a]n indictment not framed to apprise the defendant 'with reasonable certainty[] of the nature of the accusation against him is defective, although it may follow the language of the statute.'" *United States v. Nance*, 533 F.2d 699, 701 (D.C. Cir. 1976) (quoting *United States v. Simmons*, 96 U.S. 360, 362 (1877)).

When testing the sufficiency of the charges in an indictment, "the indictment must be viewed as a whole and the allegations [therein] must be accepted as true at this stage of the proceedings." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011).  Moreover, the court "is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (emphasis in original) (internal quotation marks and citation omitted).  The key question is whether the allegations in the indictment, if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged. *See United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

## III.   ANALYSIS

The indictment at issue in this case is, for the most part, a verbatim recitation of the broad and varied statutory elements of the offenses that are charged against Hillie in the various counts.  Among other things, Hillie argues that the "limited facts contained" in the indictment render this charging document constitutionally deficient, because the indictment does not "sufficiently apprise him of what he must be prepared to meet at trial" or "enable him to identify the conduct on which the government intends to base its case."  (Def.'s Suppl. Br. at 3, 4.)  The government responds that "the charging language is sufficient[] because it tracks the language of the statute and provides the defendant with notice of what he has been charged with."  (Gov't's Suppl. Br. at 3.)

For the reasons explained below, this Court agrees with Hillie that the federal child-pornography charges that appear in the pending indictment (Counts One through Seven) do not contain any facts that describe the conduct of Hillie's that the

government believes constitutes criminal behavior, and thus, these counts of the

indictment fail to provide adequate notice of the factual bases for the myriad,

manifestly indistinguishable charges that the government has brought.  Nor do the

indictment's vague child-pornography allegations provide adequate protection for

Hillie's grand jury and double jeopardy rights.  As a result, this Court concludes that

the federal child pornography counts in the instant indictment (Counts One through

Seven) are constitutionally deficient and must be dismissed.

    **A.**    **The Child Pornography Charges Violate The Sixth Amendment Because They Fail To Provide Hillie With Adequate Notice**

        1.  <u>Counts One Through Seven Do Not Contain Any Allegations That Reveal The Particular Factual Bases For The Government's Accusations</u>

It is axiomatic that "[a] crime is made up of acts and intent; and these must be

set forth in the indictment, with reasonable particularity of time, place, and

circumstances" if the charging document is to comport with the Constitution.  *United

States v. Cruikshank*, 92 U.S. 542, 558 (1875); *see also* U.S. Const. amend. VI ("In all

criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature

and cause of the accusation [against him.]").  To satisfy the protections that the Sixth

Amendment guarantees, "*facts* are to be stated, not conclusions of law alone."

*Cruikshank*, 92 U.S. at 558 (emphasis added).  In other words, "[t]he accusation must

be legally sufficient, i.e., it must assert facts which in law amount to an offense and

which, if proved, would establish prima facie the accused's commission of that

offense."  *United States v. Silverman*, 745 F.2d 1386, 1392 (11th Cir. 1984) (citation

omitted).

"The requirement that an indictment contain a few basic factual allegations accords defendants adequate notice of the charges against them and assures them that their prosecution will proceed on the basis of facts presented to the grand jury." *United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979). "The . . . generally applicable rule is that the indictment may use the language of the statute, but that language must be supplemented with enough detail to apprise the accused of the particular offense with which he is charged." *Conlon*, 628 F.2d at 155. Furthermore, and importantly for present purposes, "[i]t is an elementary principle of criminal pleading[] that where the definition of an offen[s]e . . . includes generic terms, it is not sufficient that the indictment shall charge the offen[s]e in the same generic terms as in the definition; but it must state the species[]— it must descend to particulars." *United States v. Thomas*, 444 F.2d 919, 921 (D.C. Cir. 1971) (first alteration in original) (quoting *Cruikshank*, 92 U.S. at 558). Thus, an indictment that mirrors the exact language of a criminal statute may nevertheless be dismissed as constitutionally deficient if it is "not framed to apprise the defendant 'with reasonable certainty[] of the nature of the accusation against him[.]'" *Nance*, 533 F.2d at 701 (quoting *Simmons*, 96 U.S. at 362).

The indictment at issue here clearly fails to satisfy these basic constitutionally mandated principles. To recap, each of the child pornography-related counts that the government has filed against Hillie (Counts One through Seven of the indictment) provides only a verbatim recitation of the language of the criminal statute, devoid of any facts regarding the circumstances of Hillie's behavior and adorned only with the broadest possible references to time and place. Based on the indictment, one knows only that Hillie did something involving visual depictions of sexually explicit conduct

of a minor "in the District of Columbia" during periods of time that span two to three years, and that the government has chosen to charge this alleged criminal activity (whatever it is) in a series of separate counts that appear to differ based solely on the overlapping time frames that relate to each count.  The indictment is barren of factual averments regarding the what, where, or how of Hillie's conduct, and thus, a non-clairvoyant reader cannot possibly ascertain the substance of the government's accusations from the face of the charging instrument.

This lack of particularity or specificity regarding Hillie's actions also makes it impossible to discern—and therefore to distinguish between—the conduct underlying each separate count.  For example, Count One charges that, "[b]etween on or about July 1, 2008, and on or about August 30, 2010, in the District of Columbia,"  Hillie "did knowingly and intentionally employ, use, persuade, induce, entire, and coerce J.A.A., an eleven-to-thirteen-year-old minor female, to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]"  (Indictment at 1.) Count Two repeats that same generic charge, relating it to a slightly larger timeframe. (*See id.* at 2 (charging that Hillie "did knowingly and intentionally employ, use, persuade, induce, entire, and coerce J.A.A., . . . to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct" and that he did so "[b]etween on or about July 1, 2008, and on or about August 30, 2011").)  Because nothing in these counts reveals the particular conduct that Hillie allegedly engaged in with respect to J.A.A. during this overlapping multi-year period, one cannot tell whether the charges relate to distinguishable or separate child-pornography-production

offenses, and, indeed, it is not at all clear that these counts even reference *different* acts on the Defendant's part.

The D.C. Circuit has long held that an indictment that is drawn in the generic words of a statute and that fails entirely to describe in any meaningful way the acts of the defendant that constitute the offenses charged is insufficient to notify a defendant of the nature of the accusations against him.  *See, e.g.*, *Nance*, 533 F.2d at 701 (holding that an indictment "following the generic wording of a statute" but lacking "any [factual] allegation whatsoever" with respect to a key element of the offense is "fatally defective"); *Thomas*, 444 F.2d at 922 (noting that an indictment that "describes the offense only in impermissibly broad and categorical terms" drawn from the statute fails to "achieve the requisite degree of precision" demanded by the Constitution).  In *Hunter v. District of Columbia*, 47 App. D.C. 406 (D.C. Cir. 1918), for example, the Circuit examined an indictment that alleged that the defendants had "congregate[d] and assemble[d] on Pennsylvania avenue, N.W., [and] did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue" in violation of the unlawful-assembly statute.  *Id.* at 408.  Beyond the general terms of acts prohibited by the statute, there was no averment of fact "to inform defendants of the nature of the acts which [were] relied upon by the prosecution as constituting alleged obstruction of the sidewalk, or that would enable defendants to make an intelligent defense, much less to advise the court of the sufficiency of the charge in law to support a conviction."  *Id.* at 410.  And the fact that the charging document "fail[ed] to set out the acts committed by the defendants which constituted the crowding and obstructing of the free use of the walk by them[,]" *id.* at 409, was a fatal flaw:

> [i]t is elementary that an information or indictment must set out the facts constituting the offense, with sufficient clearness to apprise the defendant of the charge he is expected to meet, and to inform the court of their sufficiency to sustain the conviction. . . . In other words, when the accused is led to the bar of justice, the information or indictment must contain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the *exact* crime which he is alleged to have committed.

*Id.* at 409, 410 (emphasis added) (internal quotation marks and citation omitted).  The *Hunter* Court also helpfully observed that the defendants in that case could have engaged in a number of acts that fell outside the scope of the statute, and thus, by failing to specify the defendants' particular conduct, the indictment was "too vague, general, and uncertain to meet the requirements of the established rules of criminal pleading," which in turn rendered it "insufficient in law."  *Id.* at 410; *see also Kinoy v. District of Columbia*, 400 F.2d 761, 770–71 (D.C. Cir. 1968) (citing *Hunter* approvingly and incorporating its reasoning indirectly with respect to vaguely worded conduct in indictments).[5]

So it is here.  Although Counts Eight through Sixteen contain specific references to the particular act of Hillie's that allegedly constitutes sexual abuse, Counts One through Seven do not include any allegations of fact that would enable this Court to ascertain the precise conduct of Hillie's that the government believes constitutes production and possession of child pornography.  Thus, in accordance with the great weight of authority, it appears that the first seven counts of the indictment do not pass constitutional muster.

---

[5] At the time *Hunter* was decided, the federal appellate court we know today as the "United States Court of Appeals for the District of Columbia Circuit" was called the "Court of Appeals of the District of Columbia."  For a detailed description of the evolution of the names and structures of the federal courts in the District of Columbia see Susan Low Bloch & Ruth Bader Ginsburg, *Celebrating the 200th Anniversary of the Federal Courts of District of Columbia*, 90 Geo. L.J. 549, 559–61 (2002).

2. <u>The Government's Contention That The Indictment's Recitation Of The Statutory Elements Of A Child Pornography Offense Provides Sufficient Notice To Hillie Is Unpersuasive</u>

Undaunted, the government argues that the charges against Hillie are "sufficient to place the defendant on notice of the offenses with which he is charged" because "[t]he language contains the elements of the crimes, the fact that the offenses occurred in the District of Columbia, the identity of the victims, the specific range of dates within which the offenses occurred and the ages of the victims [on those dates], the specific nature of each sexual act, and the statutes violated." (Gov't's Resp. to Def.'s Mot. at 4.)  The government is plainly mistaken to insist that the indictment at issue here alleges "the specific nature of each sexual act" that forms the basis of each child pornography count; as this Court has already explained, Counts One through Seven do *not*, in fact, specify the nature of the sexual acts that relate to Hillie's unspecified conduct involving video depictions, let alone the manner of his actual or attempted video recording of any such sexual act.  And the government's related suggestion that it is sufficient for constitutional purposes for an indictment merely to recite the elements of the charged offenses is inconsistent with the well-established principles of proper pleading as discussed above, and is thus entirely unpersuasive.

To be sure, there are certain criminal offenses in which the statutory text is worded so narrowly that a statement of the elements provides the defendant with sufficient notice of the acts that constitute the specific offense charged against him, and in such a case, "an indictment parroting the language of a federal criminal statute is often sufficient[.]"  *United States v. Resendiz-Ponce*, 549 U.S. 102, 109 (2007); *see, e.g.*, *id.* at 108–10 (upholding indictment charging attempted reentry at a specific place and time, without further description of the underlying act, because the time-and-place

25

allegations were sufficient to narrow the subject conduct); *United States v. Fitzpatrick*, No. 95-42, 1995 WL 495994, at *2 (D.D.C. Aug. 7, 1995) (finding bribery statute sufficient to give notice if the indictment "particularizes the purpose of the bribery"). But there are also criminal offenses that are broadly worded, and thus "must be charged with greater specificity" in order to give the defendant sufficient notice of the crime. *Resendiz-Ponce*, 549 U.S. at 109; *see, e.g.*, *Thomas*, 444 F.2d at 921–22 (noting that the language of a statute that references only a "genus" of conduct will not, without more, "allege with sufficient particularity the offense with which [a defendant] was charged").

Hillie's indictment undoubtedly falls into the latter category. As noted, the production-related counts charge Hillie with the actual (or attempted) employment, use, persuasion, inducement, enticement, and coercion of J.A.A. "to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct[.]" (Indictment at 1); *accord* 18 U.S.C. § 2251(a). The statute from which this language is lifted proscribes a wide array of conduct in the broadest, most generic terms, and while some of the key elements of this offense are narrowed by definition, *see* 18 U.S.C. § 2256 (defining "sexually explicit conduct" and "visual depiction"), the *actus reus* that the statute criminalizes is not similarly restricted. The terms "employ," "use," "persuade," "induce," "entice," and "coerce"—which are not statutorily defined—are "words of common usage that have plain and ordinary meanings," *United States v. Richards*, 649 F. App'x 65, 67 (2d Cir. 2016) (internal quotation marks and citation omitted), and courts have interpreted each term in the context of child-pornography-production cases to connote different types of conduct depending on the circumstances in which the alleged offense took place. As the First Circuit has explained,

> "Use" reaches a defendant's active involvement in producing the depiction even if the interpersonal dynamics between the defendant and the depicted minor are unknown.  Inclusion of the term "use" in the statute permits the conviction of a defendant who was actively and directly involved in producing a sexually explicit depiction of a minor even in the absence of a complaining witness or even without being able to identify the specific minor.  In contrast, the terms employ, persuade, induce, entice, and coerce reach various types of external pressure that a defendant might apply on a minor to get him or her to engage in sexually explicit conduct.  These terms could reach a defendant's conduct even if the pressure were remotely applied and the defendant had no involvement in any actual filming or photography, so long as that pressure were applied with the intent to cause a minor to be visually depicted in a sexually explicit manner.

*Ortiz-Graulau v. United States*, 756 F.3d 12, 19 (1st Cir. 2014).

Similarly, with respect to the possession-of-child-pornography charge, "[t]he word 'possess' [generally] means to own or to exert control over"; however, it can still "take on several different, but related, meanings[,]" *United States v. Tucker*, 150 F. Supp. 2d 1263, 1266 (D. Utah 2001), *aff'd*, 305 F.3d 1193 (10th Cir. 2002), and may be "either actual or constructive[,]" *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011).  The possession count against Hillie (Count Three) further fails to describe the alleged "matter" or form of the visual depiction, and it also omits the "by computer" language provided in the statute, assuming that Hillie's alleged possession of the video recordings of J.A.A. in the nude is the basis for the indictment's possession count.  *See* 18 U.S.C. § 2252(a)(4)(B) (criminalizing the possession of "1 or more books, magazines, periodicals, films, video tapes, or other matter" depicting child pornography "by any means including by computer").  Thus, the indictment's mere accusation that Hillie did, or attempted to do, something that, in the government's view, satisfies the statutory elements of possession of child pornography does not suffice to provide adequate notice of the particular conduct upon which the indictment's charges are

based.  *Cf. United States v. Staiti*, 397 F. Supp. 264, 267 (D. Mass. 1975) (dismissing as insufficient a "blanket" indictment charging theft of "property" in general terms, without any description of the property, where the statute "at least mention[ed] 'goods, wares, merchandise, securities or money'" as qualifying); *see also Nance*, 533 F.2d at 701–02 (citing *Staiti* for the proposition that a statute's generic language is not necessarily sufficient, and further noting that the government could have easily incorporated the object of one count by reference to the other counts).

This all means that, when the government sought to charge Hillie with various violations of the broadly-worded federal statutes that criminalize production and possession of child pornography, the government's accusations needed to be accompanied by *further* details about Hillie's actual conduct—i.e., an explanation of *how* he allegedly violated those statutes—in order to satisfy constitutional and pleading standards.  *See Nance*, 533 F.2d at 701 ("The United States Supreme Court has stated: 'Where guilt depends so crucially upon . . . a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.'" (alteration in original; quoting *Russell*, 369 U.S. at 764)). Otherwise, a court has little choice but to conclude that the indictment lacks adequate notice of the charged violations, and it is especially evident here that any attempt on Hillie's part to mount a meaningful defense against the indictment's multiple, undifferentiated charges is impermissibly frustrated.  *See, e.g.*, *Valentine v. Konteh*, 395 F.3d 626, 633 (6th Cir. 2005) ("As the forty criminal counts were not anchored to forty distinguishable criminal offenses, [the defendant] had little ability to defend himself."); *see also Cecil*, 608 F.2d at 1296–97 (finding that an indictment that "clearly lacked a

statement of the facts and circumstances that would inform the accused of the specific offenses with which they were charged" had to be dismissed, even if it mirrored the statute and named the general place and open-ended dates upon which the offenses occurred).

Accordingly, and in light of the government's failure identify the conduct of Hillie's that allegedly constitutes each of the child pornography offenses that is charged in the indictment, this Court finds that Counts One through Seven violate Hillie's Sixth Amendment rights.

**B.  The Indictment's Silence Regarding The Facts That Underlie The Child Pornography Counts Also Raises The Specter Of A Fifth Amendment Violation**

    1.  The Specific Child Pornography Offenses That The Grand Jury Authorized Cannot Be Ascertained On The Face Of This Indictment

The Fifth Amendment's mandate that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury" is every American citizen's safeguard against unfounded criminal charges.  U.S. Const. amend. V; *see United States v. Cotton*, 535 U.S. 625, 634 (2002) (explaining that "the Fifth Amendment grand jury right serves a vital function in providing for a body of citizens that acts as a check on prosecutorial power").  "In this respect a defendant's Fifth Amendment right to indictment by a grand jury intersects the Sixth Amendment right 'to be informed of the nature and cause of the accusation' in criminal prosecutions."  *Haldeman*, 559 F.2d at 123 n.258; *see Sunia*, 643 F. Supp. 2d at 77–78 (noting that, "as nearly every circuit court of appeals has expressly held," the requirement that an indictment "*allege the essential facts constituting the offense*" in addition to stating "each element of the offense" is borne out of the protections

guaranteed by the "Grand Jury Clause" (emphasis in original) (quotation marks and citation omitted)). "Little may be left open to construction or interpretation of an indictment" after the grand jury returns its charge, because "[i]f the offense is not plainly stated and is made so only by a process of interpretation, there is no assurance that the Grand Jury would have charged such an offense." *Van Liew v. United States*, 321 F.2d 664, 669 (5th Cir. 1963). And where there is ambiguity, "the principal harm suffered by the [defendant] because of the lack of precision in the indictment results from his inability to discern the specific underlying offense, if any, that the grand jury had in mind when it returned the indictment." *Thomas*, 444 F.2d at 922.

Here, the government claims that the grand jury concluded that there was probable cause to believe that Hillie had engaged in certain illegal acts involving child pornography based on the prosecutor's *oral* representations at the time the case was presented. Specifically, the government maintains that the grand jury was orally instructed to consider facts related to Hillie's alleged surreptitious recording of J.A.A. in various states of undress in her bathroom and bedroom, and that the grand jury was told to consider these charges in light of the individual videos that the prosecutor said corresponded to each specific count in the indictment. But grand jury proceedings are not conducted publically. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 n.9 (1979) ("Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been kept from the public eye."). Thus, even if the government instructed the grand jury in the represented fashion and provided the surreptitious video recordings as proof, in the absence of a written charge that *includes* this factual basis for the grand jury's probable cause finding, one cannot

know with the requisite degree of certainty that the criminal charges that appear in the indictment are actually based on the information so presented.  *See Gaither v. United States*, 413 F.2d 1061, 1070–71 (D.C. Cir. 1969) (noting that, unless explicitly charged on the face of the indictment, "the prosecutor can know [the grand jury's] will only by guesswork from the evidence he has presented to the jurors" but "[h]e cannot know the actual tenor of their deliberations or decisions"); *Jeffers v. United States*, 392 F.2d 749, 752 (9th Cir. 1968) (finding that, unless explicitly stated in the indictment, a court "cannot say" that "the theory now advanced by the government" as the basis for the charge is "the [same] theory adopted by . . . the grand jury," or that a petit jury will ultimately convict on "the same theory" found by the grand jury).

In other words, while "[i]t may well be that the grand jury intended the [surreptitious video recordings] to constitute the substance of the offense it sought to charge" in each of the purportedly corresponding child pornography counts, "[i]t did not . . . say so, and neither this Court nor a trial jury may be permitted to guess at the grand jury's unexpressed intent."  *United States v. Pickett*, 209 F. Supp. 2d 84, 88–89 (D.D.C. 2002); *see id.* (dismissing a count because the indictment's recitation of the statutory elements, without further description of the defendant's specific acts constituting the offense, did not provide a sufficient indication of the grand jury's intent); *see also United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("The Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." (quotation marks and citation omitted)).  And it is well established that "[t]o allow the prosecutor, or the court, to

make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure[, f]or a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell*, 369 U.S. at 770. Consequently, where, as here, the indictment omits the particular facts that purportedly led the grand jury to conclude that (if proven) the elements of the charged offense would be satisfied with respect to that this defendant, the charging document is deficient with respect to the Fifth Amendment's right to be tried only upon charges found by a grand jury.

> 2. Counts One Through Seven Do Not Provide Hillie With Effective Protection Against The Risk Of Double Jeopardy

The factual omissions in Counts One through Seven of Hillie's indictment also implicate Hillie's Fifth Amendment right to be free from the risk of double jeopardy. In this case, that risk is doubly concerning, because not only do the child pornography charges lack sufficient specificity to enable Hillie to plead convictions or acquittals as a bar to a *future* prosecution, the various substantively identical child pornography counts also create a risk that Hillie might be punished more than one time for the same offense in the *present* criminal prosecution, if the case proceeds to trial. *See Ohio v. Johnson*, 467 U.S. 493, 497–98 (1984) ("The Double Jeopardy Clause, of course, affords a defendant three basic protections:  [It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." (internal quotation marks and citations omitted)).  It is clear beyond cavil that

"Due [P]rocess requires that criminal charges be specific enough to protect defendants from this danger"; yet, the "multiple, identically worded counts" in the indictment at issue here contain "no specificity regarding the factual offenses [Hillie] allegedly committed[,]" and, thus, fail to satisfy that essential function. *Valentine*, 395 F.3d at 635.

In *Valentine v. Konteh*, the Sixth Circuit considered the sufficiency of a similar indictment, insofar as the defendant had been charged with "20 'carbon-copy' counts of child rape, each of which was identically worded so that there was no differentiation among the charges and 20 counts of felonious sexual penetration, each of which was also identically worded[,]" and "[t]he prosecution did not distinguish the factual bases of these charges in the indictment[.]" *Id.* at 628. The *Valentine* court concluded that, although the "lack of time- and date-specific" allegations might not be fatal to each count in isolation, *id.* at 632, an indictment that charged the defendant "with multiple, identical and undifferentiated counts violated the constitutional requirements imposed by due process[,]" *id.* at 636, because

> [i]f [the defendant] had been acquitted of these 40 charges, it is unclear what limitations would have been imposed on his re-indictment. Would double jeopardy preclude any prosecution concerning the abuse of this child victim, the abuse of this victim during the stated time period, the abuse of this victim at their residence, the stated sexual offenses in the indictment, the offenses offered into evidence at trial, or some group of forty specific offenses? We cannot be sure what double jeopardy would prohibit because we cannot be sure what factual incidents were presented and decided by this jury.

*id.* at 635. Similarly, the court hypothesized that, "[i]f [the defendant] had been found not guilty, it is not clear to what extent he could ably assert that his acquittal barred prosecution for other similar incidents." *Id.*

The broadly-worded and factually sparse child pornography counts in Hillie's indictment—none of which are tied to any particular act or video on the face of the charging document—suffer from this same defect, because the allegations are insufficient to establish the boundaries of the charged conduct, and thus it is not at all clear that a future prosecution for conduct arising out of these same charges would be barred. *See Pickett*, 209 F. Supp. 2d at 89 (finding, with respect to an indictment without specific factual averments, that no "other court considering the identical charge in a future indictment, [could] say, upon a subsequent prosecution of [defendant], that the jury's verdict in this case operated as a bar to that prosecution").  Furthermore, based on the indictment as drafted, it is possible that Hillie could be punished more than once for the exact same offense in the context of this very prosecution.  For example, because the indictment itself does not distinguish between the various videos upon which the government purportedly has based the charges, the jury might convict Hillie of producing a pornographic video of J.A.A. (say, in Count Two) and also convict him of attempting to produce that very same video (in Count Five).  Likewise, the vagueness with respect to each count could result in a unanimous consensus among the jurors regarding Hillie's guilt with respect to a particular count, but a lack of unanimity regarding the offensive conduct that is the basis for each juror's vote.  *See Valentine*, 395 F.3d at 636 (noting that vague charged offenses can result in a defendant being "convicted . . . without jury unanimity as to the underlying factual offenses" in violation of his due process rights).

The government is wrong to suggest that, because the Federal Rules of Criminal Procedure do not require specificity with respect to the "time, place, circumstances,

[and] causes" of an alleged offenses, an indictment that contains multiple charges of similar offenses need not differentiate between them.  (Gov't Resp. to Def.'s Mot. at 5.)  It is true that the Federal Rules "were designed to eliminate technicalities in criminal pleading" and to dispense with exacting particularity in indictments, *United States v. Debrow*, 346 U.S. 374, 376 (1953), but with respect to the constitutional concerns at issue here, that goal is largely beside the point.  That is, while generalized pleading might well be permissible when the charged conduct is *otherwise* clear on the indictment's face and/or where there is only one act or count at issue, "if prosecutors seek multiple charges against a defendant, they *must* link those multiple charges to multiple identifiable offenses[,]" *Valentine*, 395 F.3d at 636 (emphasis added), and it is well established that "these basic principles of fundamental fairness [with respect to criminal charges] retain their full vitality under modern concepts of pleading, and specifically under Rule 7(c) of the Federal Rules of Criminal Procedure," *Nance*, 533 F.2d at 701–02; *see also Kinoy*, 400 F.2d at 770–71 (noting that "[t]he right to be clearly apprised of a criminal charge is constitutional in scope and cannot be avoided in this instance by the more simplified rules of modern pleading").

Notably, the requirement that the government provide sufficient facts to establish the nature of the different offenses and to differentiate one count from another does not, by any means, demand high levels of exactitude:  "[r]equiring some minimal differentiation between criminal counts is quite different from requiring exact time and place specifications."  *Valentine*, 395 F.3d at 637 (internal quotation marks omitted).  The government has not pointed to one case the contradicts the established principle that adequate "differentiation will often require reference to date ranges or time ranges

or certain locations or certain actions[,]" *id.*, and this Court is not aware of any.  As relevant here, adequate notice of the particular conduct that underlies each of the various counts with which Hillie has been charged might require a specific reference to the *actus reus* (e.g., "surreptitious videotaping") and the approximate location where this conduct took place inside the home (e.g., bathroom or bedroom), along with the numeric file name or other identifier that is particular to the video file that is the basis for the count.  This information is apparently readily available, *see Conlon*, 628 F.2d at 156 (noting that "[i]t is clear that the government could have been more specific in the indictment" if it had wanted to), as evinced by the government's willingness to clarify and differentiate the basis for each individual count against Hillie in its submissions and in the bill of particulars (*see* Gov't's Bill of Particulars at 1; *see also* Gov't's Resp. to Def.'s Mot. for a Bill of Particulars, ECF No. 27, at 5–8).  Moreover, the fact that the government provided some specificity in the sexual abuse counts of the indictment (*see, e.g.*, Indictment at 6 (specifying, with respect to Count Eight, that the sexual act allegedly committed upon J.A.A. was Hillie's "penetration of J.A.A.'s vulva by [his] finger"); *id.* at 8 (indicating, with respect to Count Ten, that the sexual act alleged was Hillie's hand coming into contact with "J.A.A.'s breast")), indicates that it knows full well what sorts of details to provide in order to clarify and distinguish the charges in each count consistent with Hillie's constitutional rights.

The bottom line is this:  if a criminal indictment is going to be drafted to provide adequate notice, to preserve the role of the grand jury, and to avoid the risk of double jeopardy—as the Constitution demands—then "the defendant, the judge, and the jury must be able to tell one count from another."  *Valentine*, 395 F.3d at 637.  Counts One

through Seven of Hillie's indictment fall woefully short of this standard, and as a result, this Court has no choice but to conclude that, as currently drafted, these charges violate Hillie's constitutional rights.

### C.  Under The Circumstances Presented Here, A Bill Of Particulars Does Not Suffice; Rather, The Child Pornography Counts Must Be Dismissed

The government argues that "the proper remedy for a need for greater specificity in the indictment" is the submission of a bill of particulars, not dismissal of the defective charges (Gov't's Resp. to Def.'s Mot. at 5); and, to this end, the government has provided Hillie with an itemized statement of the factual basis for each of the charged counts (*see* Gov't's Bill of Particulars at 1; Gov't's Resp. to Def.'s Mot. for a Bill of Particulars at 5–8).  Having provided this statement of clarification to the defendant and the Court, the government maintains that Hillie's motion to dismiss the indictment is now moot, because these subsequent clarifications have "cured" any notice problem and a court in the future will look to the entire record to determine the facts when evaluating whether Hillie will be put in jeopardy twice for the same conduct. (*See* Gov't's Resp. to Def.'s Mot. at 5 ("[T]he defendant has requested and received a bill of particulars which should render [the facial insufficiency] argument moot"); Gov't's Suppl. Br. at 5 ("[T]he defendant is fully protected from being put in jeopardy for the same offense, since the *entire* record is relied upon for purposes of a double jeopardy analysis." (emphasis in original)); *see also id.* at 4 ("[A]ny perceived lack of specificity with the charging language has been remedied by the government's response to the defendant's request for a Bill of Particulars.").)

Despite the apparent appeal of the government's logical reasoning, courts have long held that, while a *valid* indictment can be clarified through a bill of particulars, an

*invalid* indictment cannot be saved by one.  *See Conlon*, 628 F.2d at 156 ("[I]t is settled that a bill of particulars and a fortiori oral argument cannot cure a defective indictment."); *see also Nance*, 533 F.2d at 701–02 (same); *Thomas*, 444 F.2d at 922–23 (same).  As explained above, the indictment defect at issue here goes beyond mere confusion about the evidentiary basis for the charges brought, and instead, relates to core constitutional concerns about the grand jury's actual findings.  A subsequent statement by the government in the form of a bill of particulars does not guarantee that the formal charges brought against the defendant adhere to the facts that the grand jury considered.  *See Nance*, 533 F.2d at 701 (finding that a bill of particulars did not remedy an indictment that lacked "any allegation whatsoever" on a key element of the offense, because merely reciting the words of the statute gave the government "a free hand to insert the vital part of the indictment without reference to the grand jury").  And "to permit the omission [of a material fact] to be cured by a bill of particulars would be to allow the grand jury to indict with one crime in mind and to allow the U.S. Attorney to prosecute by producing evidence of a different crime"; which would, in essence, "usurp the function of the grand jury . . . and, in many cases, would violate due process by failing to give the accused fair notice of the charge he must meet."  *Thomas*, 444 F.2d at 922–23.  Therefore, even if the government's subsequent statement might reduce the future risk of double jeopardy, *see, e.g.*, *Sanford, Ltd.*, 859 F. Supp. 2d at 124, it cannot "cure" an indictment that fails to provide Defendant with present notice of the charges against him or that potentially thwarts the role of the grand jury in bringing those charges in the first place, *see Russell*, 369 U.S. at 770 (finding that a bill of particulars cannot cure an imprecise and fatally defective indictment); *see also*

*Gaither*, 413 F.2d at 1067 ("The bill of particulars fully serves the functions of apprising the accused of the charges and protecting him against future jeopardy, but it does not preserve his right to be tried on a charge found by a grand jury.").  For these reasons, this Court rejects the government's contentions regarding the efficacy of its Bill of Particulars, and agrees with Hillie that Counts One through Seven of the indictment must be dismissed without prejudice.  *See, e.g.*, *Pickett*, 209 F. Supp. 2d at 88–89 (dismissing count for factual insufficiency); *United States v. Lattimore*, 127 F. Supp. 405, 410–13 (D.D.C) (dismissing indictment as vague for failing to describe the charge), *aff'd*, 232 F.2d 334 (D.C. Cir. 1955).

The Court acknowledges that, despite its conclusions regarding the federal counts, Counts Eight through Seventeen—the child sex abuse charges brought under D.C. law—remain pending, and there appears to be no federal interest remaining in this case.  Thus, the Court would ordinarily immediately cede jurisdiction over Hillie's continued prosecution.  *See United States v. Kember*, 685 F.2d 451, 454 (D.C. Cir. 1982) (noting that "the federal court must dismiss a criminal prosecution when federal charges have faded from the case prior to trial, leaving only District of Columbia offenses for adjudication, unless the court determines, in its discretion, that retention of the case is warranted by remaining matters of legitimate federal concern").  But under the circumstances presented here, this Court will hold in abeyance the order dismissing the federal counts for 14 days, which should give the government adequate time to determine whether a superseding federal indictment that contains constitutionally sufficient child pornography charges will be sought.  *See United States v. Slough*, 679 F. Supp. 2d 55, 58 (D.D.C. 2010) (explaining that, "[i]n most instances, the dismissal of

an indictment does not bar the government from seeking re-indictment if, in so doing, it can cure the defect that required the dismissal of the original indictment"); *see also United States v. Poindexter*, 719 F. Supp. 6, 8 (D.D.C. 1989) ("The government obviously has the authority to return to the grand jury to seek a superseding indictment narrower in scope than the present indictment.  The Court has no involvement in that process, and unless and until such a superseding indictment is before it, there is nothing for it to decide.").  If and when such a new indictment is filed, Hillie may seek leave to refile any of the other pending defense motions that challenge various aspects of this prosecution, none of which this Court has considered on the merits and each of which is effectively mooted by the Court's dismissal decision.

## IV.    CONCLUSION

The constitutional burden of providing adequate notice and preventing the risk of double jeopardy with respect to bringing criminal charges is not an especially heavy load, and yet the government has somehow failed to carry it in the instant case.  Counts One through Seven of the pending indictment are manifestly deficient, because they do not contain any facts regarding the particular conduct of Hillie's that, according to the government, constitutes the criminal acts that the law prohibits.  Consequently, the Defendant's Motion to Dismiss the Indictment will be **GRANTED IN PART** and the federal child pornography charges will be **DISMISSED WITHOUT PREJUDICE** as factually insufficient.  The local offenses (Counts Eight through Seventeen) remain pending, and the government might yet opt to secure a superseding indictment that cures the deficiencies in the federal counts.  Thus, this Court's forthcoming Order will be **HELD IN ABEYANCE** for a period of <u>**14 days**</u> to permit the government to decide

whether to follow this course.  If the government decides not to file superseding

charges, the lack of any lingering federal concerns would likely lead this Court to

conclude that the entire criminal action must be dismissed (to be further pursued, if at

all, in state court).


DATE:  January 5, 2017                    *Ketanji Brown Jackson*
                                          KETANJI BROWN JACKSON
                                          United States District Judge