# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| v. | )    No. 16-cr-0030 (KBJ) |
|  | ) |
| CHARLES HILLIE, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

## MEMORANDUM OPINION

Defendant Charles Hillie is charged in a superseding indictment with seven counts of production, attempted production, and possession of child pornography, in violation of federal law, and ten counts of child sexual abuse, in violation of District of Columbia law.  (*See* Superseding Indictment ("Indictment"), ECF No. 44.)[1]  The federal counts in the superseding indictment relate to the government's allegation that Hillie surreptitiously video-recorded his live-in girlfriend's underage daughter as she removed her clothes, applied creams and lotions to her naked body, bathed, used the toilet, washed and groomed herself, and performed other intimate activities in what she thought was the privacy of her own bedroom and bathroom.  In his motion to dismiss, Hillie argues that "[n]one of the videos . . . capture[s] [the victim] engaging in any conduct that could remotely be considered lascivious" (Def.'s Second Mot. to Dismiss Counts 1–7 of the Indictment ("Def.'s Mot."), ECF No. 50, at 4), and thus, the "visual

---

[1] This Memorandum Opinion pertains to the federal child pornography offenses.  Hillie is charged with Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a) (Counts 1–2); Possession of Images of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count 3); and Attempted Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a) and (e) (Counts 4–7).  (*See* Indictment at 1–5.)

depictions in each of these counts do not constitute child pornography as a matter of law" (*id.* at 1).[2] Hillie further maintains that the government has indicted him "based largely on a flawed interpretation of what constitutes child pornography," because there is, in fact, "absolutely no evidence to suggest that Mr. Hillie attempted to produce child pornography." (*Id.*) Not surprisingly, the government disagrees with Hillie's contentions, and argues that this Court should uphold the various child pornography charges that have been brought against Hillie in this case. (*See generally* Gov't's Opp'n to Def.'s Mot. to Dismiss Counts 1–7 of the Indictment ("Gov't's Opp'n"), ECF No. 55.)

This Court heard the parties' arguments on Hillie's motion to dismiss the child pornography charges during a motion hearing that the Court held on August 3, 2017 (*see* Aug. 3, 2017 Hr'g Tr. ("Aug. 3 Tr."), at 51–75), and during a subsequent hearing held on September 21, 2017, the Court orally **DENIED** Hillie's motion (*see* Sept. 21, 2017 Hr'g Tr. ("Sept. 21 Tr.")). The instant Memorandum Opinion explains the reasons for that ruling. In short, this Court has considered the parties' arguments, and evaluated the facts presented here in light of the widely accepted factors for determining whether a charged visual depiction constitutes child pornography in the form of a "lascivious exhibition of the genitals or pubic area" of a minor, 18 U.S.C. § 2256(2)(A)(v), that were first set out in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *cert. denied*, 484 U.S. 856 (1987), and *aff'd*, 813 F.2d 1231 (9th Cir. 1987). The Court has concluded that a

---

[2] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

reasonable jury could easily find that the videos charged in the superseding indictment either depict a minor engaged in sexually explicit conduct or demonstrate Hillie's attempts to capture depictions of a minor engaging in sexually explicit conduct. Therefore, this Court agrees with the government that the crimes of production and possession of child pornography (which require that a minor engage in "sexually explicit conduct[,]" 18 U.S.C. §§ 2251(a), 2252(a)(4)(B)) can reasonably be construed to pertain to the conduct the government has charged here.

A separate Order consistent with this Memorandum Opinion will follow.

## I. BACKGROUND

### A. Underlying Facts

The federal child pornography counts that Hillie challenges in the instant motion to dismiss are alleged in a superseding indictment that the government filed on January 18, 2017. (*See* Indictment.) This Court previously granted in part Hillie's motion to dismiss an earlier iteration of the indictment, *see United States v. Hillie* ("*Hillie I*"), 227 F. Supp. 3d 57, 82 (D.D.C. 2017), after which the government timely filed the superseding indictment that is before the Court today.

This Court's opinion in *Hillie I* contains a lengthy discussion of the allegations of fact that underlie the child pornography and sex abuse charges against Hillie, *see id.* at 66–67; those facts will not be repeated here. For present purposes, it suffices to recall that, "[b]eginning in 2005," Hillie allegedly became "romantically involved" with the mother of the two alleged victims involved in this case—J.A.A. and J.A., who are sisters—and Hillie lived with this family "on and off" over a ten-year period. *Id.* at 66. "J.A., the younger of the two sisters, was the first to speak up about the alleged sexual

abuse" when, "[i]n December of 2012," she "confided in her biological father . . . about Hillie's conduct, which led her father to file a formal report with the police." *Id.* J.A.A. (the older sister) initially "refus[ed] to corroborate J.A.'s account[,]" which caused "the police to suspend their investigation into the child sex abuse allegations," but J.A.A. eventually "reversed course and admitted to the investigators that she had previously lied about not being abused by Hillie." *Id.*

Significantly for present purposes, J.A.A. also "told the police that . . . she had [previously] discovered nude photographs of herself on [her] family's pink laptop computer, and that the photos had been taken without her knowledge." *Id.* at 67. Law enforcement officers then arrested Hillie based on J.A. and J.A.A.'s allegations of sexual abuse, and they seized a pink laptop, recovering "multiple . . . videos that Hillie had [allegedly] created surreptitiously using a hand-held visual recording device[.]" *Id.* Those videos form the basis of the child pornography charges in the instant superseding indictment.

### B.   Procedural History

This Court dismissed the federal child pornography counts that the government brought against Hillie in the initial indictment without prejudice, because the counts merely quoted the language of 18 U.S.C. §§ 2251 and 2252 and "fail[ed] to provide minimally required factual information regarding the conduct of Hillie's that the government sa[id] constitute[d] production and possession of child pornography in violation of federal law." *Id.* at 62. The government subsequently timely filed the instant superseding indictment, which charges Hillie with seven detailed counts of child pornography involving J.A.A. (Counts 1–7) (*see* Indictment at 1–5), five counts of child sexual abuse involving J.A.A. (Counts 8–12) (*see id.* at 5–9), and five counts of child

4

sexual abuse involving J.A. (Counts 13–17) (*see id.* at 9–13). As to the federal child pornography offenses, Hillie is charged with making two videos of J.A.A. grooming herself in her bedroom and bathroom, in violation of 18 U.S.C. §§ 2251(a) (production of child pornography) and 2252(a)(4)(B) (possession of child pornography) (Counts 1–3) (*see id.* at 1–3), and Hillie is also charged with attempted production of child pornography in connection with four other videos that he allegedly endeavored to make when J.A.A. was in her bedroom and bathroom, in violation of 18 U.S.C. § 2251(a) and (e) (Counts 4–7) (*see id.* at 3–5).

With the superseding indictment in hand, on April 28, 2017, Hillie filed three separate motions raising various challenges to the government's charges. In addition to the instant Motion to Dismiss Counts 1–7, Hillie requested that the superseding indictment be dismissed in its entirety on the grounds that "each count in the indictment fails to make a sufficient factual assertion to support the government's contention that Mr. Hillie committed the crime alleged in each count" (Def.'s Second Mot. to Dismiss Indictment, ECF No. 53, at 1), and he also moved to dismiss the sole possession of child pornography count as duplicitous (*see* Mot. to Dismiss Count Three of Indictment Due to Duplicity, ECF No. 51). The parties proceeded to brief those motions fully, and on August 3, 2017, this Court heard oral arguments pertaining to them. During that same hearing, the Court orally denied Hillie's motion to dismiss the indictment, finding that "the government has sufficiently cured the problems that the Court indicated in its [prior] opinion" (Aug. 3 Tr. at 49:8-9), and took the two remaining motions under advisement (*see id.* at 75:6-8, 88:18-19).

During a motion hearing that the Court held on September 21, 2017, the Court announced that Hillie's Motion to Dismiss Counts 1–7 of the indictment would be denied and that written reasons for the denial of that motion would be forthcoming. (*See* Sept. 21 Tr.)

## II.    LEGAL STANDARDS

### A.    Federal Rule Of Criminal Procedure 12(b)

Before trial, a defendant in a criminal case may move to dismiss an indictment on the grounds that it fails to state an offense—i.e., because "the indictment does not charge a crime against the United States[.]" *United States v. Cotton*, 535 U.S. 625, 631 (2002) (internal quotation marks and citation omitted); *see also Al Bahlul v. United States*, 767 F.3d 1, 10 n.6 (D.C. Cir. 2014) ("Failure to state an offense is simply another way of saying there is a defect in the indictment[.]"); Fed. R. Crim. P. 12(b)(3)(B)(v) (listing "failure to state an offense" as a defense that is based on "a defect in the indictment").  Because "claims that a statute named in an indictment does not proscribe the alleged conduct are generally treated as claims that the indictment fails to state an offense[,]" *United States v. Hite*, 950 F. Supp. 2d 23, 25–26 (D.D.C. 2013) (internal quotation marks and citation omitted), "[t]he operative question is whether the allegations [in the indictment], if proven, would be sufficient to permit a jury to find that the crimes charged were committed[,]" *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012).

When considering a motion to dismiss for failure to state an offense, the court "is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C.

2009) (emphasis, internal quotation marks, and citation omitted).  "Adherence to the language of the indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001).  To that end, a court "must presume the allegations of the indictment to be true, and may not dismiss an indictment on a determination of facts that should have been developed at trial[.]" *Sunia*, 643 F. Supp. 2d at 60 (alterations, internal quotation marks, and citations omitted); *see also United States v. Sharpe*, 438 F.3d 1257, 1258–59 (11th Cir. 2006) (explaining that the district court must view the indictment's allegations "in the light most favorable to the government" when determining whether "the factual allegations in the indictment . . . were sufficient to charge the offense as a matter of law" (internal quotation marks and citations omitted)).

**B.    The Child Pornography Prevention Act Of 1996**

Since 1977, Congress has enacted myriad statutes that criminalize the sexual exploitation of children.  *See, e.g.*, Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, 92 Stat. 7 (1978); Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204 (1984); Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, Div. A, Title I, § 121, 110 Stat. 3009 (1996).  The statutory scheme that Congress established with the Child Pornography Prevention Act of 1996, 18 U.S.C. § 2251 *et seq.*, prohibits, among other things, exploiting or attempting to exploit children for the purpose of producing photographs or video images (child pornography), and knowingly possessing child pornography.

With respect to the production of child pornography, the Child Pornography Prevention Act of 1996 states that

> [a]ny person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer[.]

18 U.S.C. § 2251(a); *see also id.* § 2251(e) (criminalizing an "attempt[]" to violate section 2251).  It is also clear that the component of the statute that criminalizes the "use[]" of a minor to engage in sexual conduct "is fully satisfied for the purposes of the child pornography statute if a child is photographed in order to create pornography." *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007) (internal quotation marks and citation omitted).

In regard to the possession of child pornography, the Child Pornography Prevention Act of 1996 prescribes punishment for any individual who

> knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that [is] . . . in or affecting interstate or foreign commerce, . . . by any means including by computer, if—
>
> (i)     the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (ii)    such visual depiction is of such conduct[.]

18 U.S.C. § 2252(a)(4)(B).  Thus, a minor's engagement in "sexually explicit conduct" is a required element of the crimes of production and possession of child pornography, as well as attempted production of child pornography.  *See id.* §§ 2251(a), 2251(e), 2252(a)(4)(B).

## C.    The Meaning Of "Sexually Explicit Conduct"

Notably, the term "sexually explicit conduct" is expressly defined in the federal child pornography statutes.  *See id.* § 2256(2)(A).  Among other things, Congress has

made clear that this required aspect of a child pornography charge includes the "actual or simulated . . . lascivious exhibition of the genitals or pubic area of any person[.]" *Id.* § 2256(2)(A)(v).[3] What is *not* addressed is what types of visual depictions actually constitute a "lascivious exhibition" within the meaning of the statute.

"There is a consensus among the courts that whether the item to be judged is lewd, lascivious, or obscene is a determination that lay persons can and should make." *United States v. Arvin*, 900 F.2d 1385, 1390 (9th Cir. 1990) (collecting cases); *see also United States v. Schuster*, 706 F.3d 800, 806 (7th Cir. 2013) ("Whether an image depicts a 'lascivious exhibition of the genitals' is an intensely fact-bound question[, and i]ndeed, the question is left to the factfinder to resolve, on the facts of each case[.]" (internal quotation marks and citations omitted)); *United States v. Wallenfang*, 568 F.3d 649, 656–57 (8th Cir. 2009) ("[T]he question whether materials [actually] depict [a] 'lascivious exhibition of the genitals,'" as the phrase is defined by the law, "is [one] for the finder of fact."). Thus, in child pornography cases, jurors routinely view the charged visual depictions in order to determine whether they qualify as child pornography, as defined under the law, under the facts of a particular case. *See, e.g.*, *United States v. Silva*, 794 F.3d 173, 181 (1st Cir. 2015) ("After all, the jury watched the footage of the films, and the jurors were entitled to evaluate and determine whether the films involved the 'lascivious exhibition of genitals' based upon the images they saw."); *United States v. Richardson*, 518 F. App'x 708, 711 (11th Cir. 2013)

---

[3] The statutory definition of "sexually explicit conduct" also includes four other categories of acts that, if a minor engages in them and is depicted doing so, would constitute child pornography (such as bestiality and masturbation). *See id.* § 2256(2)(A)(i)–(iv). Both parties agree that the only definition of sexually explicit conduct that is relevant in this case is the "lascivious exhibition" of a minor's "genitals or pubic area." (*See* Def.'s Mot. at 3; Gov't's Opp'n at 8.)

(government introducing into evidence excerpts of nine charged videos to show to the jury).

To assist the jury in making this determination—and also to evaluate whether a reasonable jury could find that the charged material constitutes child pornography if asked to make such an assessment before trial—many courts utilize a set of factors that was first set out in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986). The so-called "*Dost* factors" require consideration of:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> (4) whether the child is fully or partially clothed, or nude;
>
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]
>
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.
>
> *Id.* at 832.[4]

---

[4] The defendants in the *Dost* case were each indicted for, *inter alia*, alleged violations of "using a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct[,]" in violation of 18 U.S.C. § 2251(a), and "knowing receipt or distribution of visual depictions of [a] minor engaging in sexually explicit conduct[,]" in violation of 18 U.S.C. § 2252(a)(2), in connection with photographs that the defendants allegedly took of two nude minors. 636 F. Supp. at 829–30. In determining whether the charged photographs "constitute[d] a 'lascivious exhibition of the genitals or pubic area[,]'" the court determined that "the trier of fact should look to" six factors—which have since come to be known as the "*Dost* factors"—"among any others that may be relevant in [each] particular case[.]" *Id.* at 832. Applying those factors, the court found "that all of the photographs . . . depict[ed] sexually explicit conduct in that they contain[ed] a 'lascivious exhibition of the genitals or pubic areas' of the [minors]." *Id.* at 833.

Several courts of appeals have addressed whether the *Dost* factors properly measure what constitutes a "lascivious exhibition" for the purpose of 18 U.S.C. § 2256(2)(A)(v). The vast majority have held that, while the factors "are not dispositive and serve only as a guide[,]" they "are the hallmarks of lascivious conduct." *United States v. Larkin*, 629 F.3d 177, 182 (3d Cir. 2010); *see also, e.g.*, *United States v. Barry*, 634 F. App'x 407, 412 (5th Cir. 2015) (noting that courts in the Fifth Circuit "apply the [*Dost* factors] to determine whether a photo is lascivious"); *Shoemaker v. Taylor*, 730 F.3d 778, 785 (9th Cir. 2013) (same); *United States v. Johnson*, 639 F.3d 433, 439 (8th Cir. 2011) (same); *United States v. Brown*, 579 F.3d 672, 680 & 680 n.3 (6th Cir. 2009) (same); *United States v. Helton*, 302 F. App'x 842, 847–48 (10th Cir. 2008) (same). However, notably, at least two circuits have "discourage[d] the[] routine use" of the *Dost* factors, reasoning that "[t]he jury's common understanding [of the term 'lascivious,']" without resorting to any factors, "is enough to distinguish artistic and other licit photos of children from child pornography as that term is defined in the statutory text." *United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014); *see also United States v. Frabizio*, 459 F.3d 80, 88 (1st Cir. 2006) ("[T]he *Dost* factors have fostered myriad disputes that have led courts far afield from the statutory language."). For its part, the D.C. Circuit has yet to take a position on the question of whether or not the *Dost* factors provide a helpful, or even permissible, guide for assessing whether charged child-pornography conduct constitutes lascivious conduct.

## III.   ANALYSIS

With respect to the motion to dismiss that is the subject of the instant Memorandum Opinion, the parties agree that the sole issue before this Court is what

constitutes "sexually explicit conduct" under 18 U.S.C. § 2256(2)(A), and, more specifically, whether the depictions at issue here qualify as the "lascivious exhibition of the genitals or pubic area" of a minor within the meaning of that statute. (*See* Def.'s Mot. at 3–4; Gov't's Opp'n at 7–11.) The charged videos in this case generally feature "J.A.A. in the nude (or nude from the waist down) in her bedroom or bathroom grooming her genitalia and other parts of her body when she was 15 years old or younger[,]" *Hillie I*, 227 F. Supp. 3d at 67 (internal quotation marks and citation omitted), and it is Hillie's contention that such depictions do not even "remotely" involve sexually explicit (i.e., lascivious) conduct, or an attempt by Hillie to capture such conduct (*see* Def.'s Mot. at 4), such that the charges against him stem "largely [from] a flawed interpretation of what constitutes child pornography" (*id.* at 1). For the reasons explained below, this Court concludes that it is appropriate to consider the *Dost* factors to evaluate the videos at issue, and that, using those factors as a guide to frame its analysis, a reasonable jury could find both that the videos charged in Counts 1–3 constitute a lascivious display of J.A.A.'s genitals or pubic area, and that the videos charged in Counts 4–7 reflect Hillie's attempt to capture additional images of J.A.A. engaging in sexually explicit conduct.

A.   **The *Dost* Factors Are A Helpful Guide In The Evaluation Of Allegedly Lascivious Exhibitions**

As mentioned, where applicable, the *Dost* factors aid the factfinder's determination of whether the conduct of the defendant violated the law as the court instructs. *See United States v. Maurizio*, 148 F. Supp. 3d 447, 454–55 (W.D. Pa. 2015), *aff'd*, 701 F. App'x 129 (3d Cir. 2017) (finding that the jury—which viewed the charged depictions of alleged child pornography—could have concluded that the

depictions were of "sexually explicit conduct" as the *Dost* factors frame that term).  In this regard, courts routinely instruct jurors that, in order to decide whether a charged visual depiction constitutes a "lascivious exhibition" for purposes of 18 U.S.C. §§ 2251(a) and 2256(2)(A)(v), they may consider factors such as the focal point and setting of the visual depiction, the manner in which the child is depicted, and whether the depiction is intended or designed to elicit a sexual response in the viewer. *See, e.g.*, *United States v. Guy*, No. 16-3788, 2017 WL 4023085, at *9–10 (6th Cir. Sept. 13, 2017) (approving the district court's inclusion of the *Dost* factors in its instructions to the jury as to what constitutes sexually explicit conduct); *United States v. Lohse*, 797 F.3d 515, 520 (8th Cir. 2015) (same); *cf.* Sixth Circuit Pattern Criminal Jury Instructions § 16.01 (including the *Dost* factors in the definition of "lascivious exhibition"); Eleventh Circuit Pattern Criminal Jury Instructions § O82 (same).

However, the D.C. Circuit has yet to address whether the *Dost* factors properly measure whether a particular visual depiction qualifies as a "lascivious exhibition." The only case in this jurisdiction that has cited *Dost* to date did so in passing, *Am. Library Ass'n v. Thornburgh*, 713 F. Supp. 469, 474 (D.D.C. 1989) (quoting *Dost*, 636 F. Supp. at 832), *vacated on other grounds sub nom. Am. Library Ass'n v. Barr*, 956 F.2d 1178 (D.C. Cir. 1992), and while the parties here agree that the *Dost* factors should inform this Court's analysis of whether a reasonable jury could conclude that the visual depictions charged in the instant case constitute child pornography (*see* Aug. 3 Tr. at 53, 65), they acknowledge that "the Court of Appeals for the District of Columbia has not addressed the applicability of the *Dost* factors" (Gov't's Opp'n at 9 n.4).

This Court concludes that, although the *Dost* factors are certainly not definitive, comprehensive, exhaustive, or necessarily applicable in every situation, these considerations do "help [to] frame th[e jury's] analysis[,]" and they "g[i]ve the jury information" about "the legal definition of 'lasciviousness'" that is "necessary for it to determine whether" a criminal defendant is guilty of charged child pornography offenses. *Guy*, 2017 WL 4023085, at *10. As noted, the *Dost* factors require consideration of relevant contextual information about the nature of the material at issue—e.g., the focal point and setting of the image, the manner in which the minor is depicted, and whether the image appears intended or designed to elicit a sexual response in the viewer. Thus, on balance, these factors assist the factfinder when determining whether the circumstances of any given depiction are such that the statutory requirements for the production of child pornography have been met. *See United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999) ("In attempting to determine the limits of [the 'lascivious exhibition'] category of sexually explicit conduct, we find helpful the six criteria suggested in [*Dost*.]"); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (commenting that the factors "provide specific, sensible meaning to the term 'lascivious,' a term which is less than crystal clear").

To be sure, the jury must ultimately employ "a commonsense understanding of 'lascivious exhibition'" and must not be "command[ed] to take a detailed and mechanical walk through a checklist, which risks taking the inquiry far afield from the already clear statutory text[.]" *Price*, 775 F.3d at 840; *see also Frabizio*, 459 F.3d at 88 ("There is every reason to avoid importing unnecessary interpretive conundrums into a statute, especially where the statute employs terms that lay people are perfectly capable

of understanding.").  But this Court agrees with the majority of circuits, which have acknowledged that "lasciviousness" is an elusive concept, and have authorized the use of the *Dost* factors to provide "jurors . . . [with] neutral references and considerations" that help "to avoid decisions based on individual values or the revulsion potentially raised in a child pornography prosecution."  *United States v. Rivera*, 546 F.3d 245, 252 (2d Cir. 2008); *see also Sims v. Labowitz*, 877 F.3d 171, 182 (4th Cir. 2017) ("Because inquiry into whether particular conduct qualifies as lascivious is not straightforward, federal appellate courts required to make this determination often consult [the *Dost* factors, which w]e likewise conclude . . . offer helpful guidance in determining whether conduct is lascivious, within the meaning of 18 U.S.C. § 2256(2)(A)." (internal citations omitted)).  This Court will thus proceed to evaluate whether a reasonable jury could find that the visual depictions at issue here constitute "sexually explicit conduct" in the form of a "lascivious exhibition" by considering the *Dost* factors, among other things.

> **B.    A Reasonable Jury Could Conclude That The Images That Hillie Allegedly Produced And Possessed Qualify As Lascivious Exhibitions, Or Attempted Lascivious Exhibitions, Of A Minor's Genitals Or Pubic Area**

As explained, Hillie is charged with the *completed* production and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B), in connection with the two videos charged in Counts 1–3, and with the *attempted* production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), in connection with the four additional videos charged in Counts 4–7.  (*See* Indictment at 1–5.)  Hillie's argument that none of the charged videos in fact constitute completed or attempted child pornography because they do not "show any actual sexual activity or

15

simulated sexual activity[,]" display any "sex aids, sex toys, or any other type of sexual paraphernalia[,]" or capture the alleged victim "engaging in any conduct that could remotely be considered lascivious" (Def.'s Mot. at 4), misses the mark for several reasons.

First of all, Hillie mistakenly focuses solely on the *victim's* conduct rather than his *own* actions in allegedly creating the videos. *See Dost*, 636 F. Supp. at 832 (noting that "whether the visual depiction is intended or designed to elicit a sexual response in the viewer" is a relevant factor). It is well established that an image need not depict an actual sex act in order to constitute lascivious activity. In *United States v. Holmes*, for example, the Eleventh Circuit rejected a defendant's argument that he could not "be guilty of producing, attempting to produce, or possessing child pornography" because the victim "did not knowingly engage in sexually explicit conduct" while she was being "secretly recorded . . . in her bathroom performing normal, everyday activities[,]" while "completely naked, fully or partially clothed, or wearing a towel or her underwear." 814 F.3d 1246, 1250–51 (11th Cir. 2016). Instead, the court "join[ed] each of [its] sister circuits who have addressed this issue and concluded that depictions of otherwise innocent conduct may in fact constitute a 'lascivious exhibition of the genitals or pubic area' of a minor based on the actions of the individual creating the depiction." *Id.* at 1251–52. Moreover, in the context of surreptitiously-recorded videos such as those presented in the instant case, there is no "special *per se* rule . . . that requires an affirmative display or sexual act by a minor" in order for a video to depict a lascivious exhibition. *United States v. McCall*, 833 F.3d 560, 564 (5th Cir. 2016).

When Hillie's mistaken contention that the charged offenses require overt sexual activity or lascivious behavior is set aside, this Court has no difficulty concluding that a reasonable jury, aided by the *Dost* factors, could find that the videos charged in Counts 1–3 constitute a sexually explicit "lascivious exhibition" of a minor's genitalia as defined in the child pornography statute, and that, in allegedly creating the videos charged in Counts 4–7, Hillie captured, or attempted to capture, J.A.A. engaging in sexually explicit conduct. The first *Dost* factor is "whether the focal point of the visual depiction is on the child's genitalia or pubic area[.]" *Dost*, 636 F. Supp. at 832. This factor is clearly satisfied as to each of the charged videos, which show Hillie carefully placing and positioning the camera in hidden locations in J.A.A.'s bedroom and bathroom (for example, underneath what appears to be a bed, on what appears to be a shelf or dresser, and in what appears to be a ceiling vent directly above a toilet). In each video, Hillie carefully angles and repositions the recording device, and in more than one video he succeeds in capturing several extended images of J.A.A.'s exposed genitals. A reasonable jury could therefore find that Hillie positioned the camera "in an attempt to tighten [its] focus . . . on the area where the [victim's] genitals would be if [she] were to face the camera, and thereby determine that the first *Dost* factor was satisfied." *Johnson*, 639 F.3d at 440.

The second factor is "whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity[.]" *Dost*, 636 F. Supp. at 832. This factor is also easily satisfied as to each of the charged videos, which portray J.A.A. in her bedroom and on her bed, or in her bathroom using the toilet, washing her genitals, and bathing. "Traditional settings that meet this standard

17

are beds or bedrooms." *United States v. Steen*, 634 F.3d 822, 827 (5th Cir. 2011); *see also United States v. Franz*, 772 F.3d 134, 157 (3d Cir. 2014) ("[T]he image depicts a child in a bedroom, sitting on a bed, thus placing the image in a sexually suggestive setting."). And, while "a bathroom is not necessarily sexually suggestive[,]" it "is perhaps the most common room in which a person exposes his or her genitals and pubic area." *United States v. Clark*, No. 09-33, 2010 WL 3488138, at *6 (D. Del. Aug. 30, 2010). Additionally, "'showers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in film,' such that a bathroom 'is potentially as much of a setting for fantasy sexual activity as is an adult's bedroom.'" *United States v. Wells*, 843 F.3d 1251, 1256 (10th Cir. 2016) (quoting *Larkin*, 629 F.3d at 183). Here, given that Hillie appears to have hidden and carefully positioned the camera to ensure a view sufficient to capture J.A.A.'s activity in the bathroom, and in at least one video he successfully captured her nude and with her genitals exposed, the bathroom in the context of the charged videos was a "sexually suggestive" location.

The third factor—"whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child[,]" *Dost*, 636 F. Supp. at 832—and the fifth factor—"whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity[,]" *id.*—are not relevant where, as here, the victim was not aware that she was being videotaped. *See United States v. Goodale*, 831 F. Supp. 2d 804, 811 (D. Vt. 2011) ("Other courts to address the third *Dost* factor in situations where the minor was surreptitiously videotaped have concluded that the factor is irrelevant." (citing *Horn*, 187 F.3d at 789)); *see also Steen*, 634 F.3d at 827 ("The fifth factor, suggesting sexual coyness, is irrelevant in this case because [the victim] did not

know she was being filmed.").  Thus, this Court will not weigh those factors to evaluate the conduct at issue here, nor is the presence of those factors necessary to support the Court's conclusions.  *See Villard*, 885 F.2d at 122 ("Although more than one factor must be present in order to establish 'lasciviousness,' all six factors need not be present.").

The fourth factor is "whether the child is fully or partially clothed, or nude." *Dost*, 636 F. Supp. at 832.  J.A.A. is at times partially or fully nude in each video, and in more than one video, her genitalia are in full view.  Of course, "more than mere nudity is required before an image can qualify as 'lascivious' within the meaning of the statute." *Johnson*, 639 F.3d at 439 (quoting *United States v. Kemmerling*, 285 F.3d 644, 645–46 (8th Cir. 2002)); *see also id.* ("[N]o one seriously could think that a Renoir painting of a nude woman or an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws.").  But that obvious fact does not help Hillie, because "[a] reasonable jury could [still] conclude that these videos of [a] minor female[] disrobing" and engaging in various bedroom and bathroom activities, without knowing she was being recorded, "cannot reasonably be compared to innocent family photos, clinical depictions, or works of art." *Id.*; *see also United States v. Ward*, 686 F.3d 879, 884 (8th Cir. 2012) (concluding that "[t]he jury could reasonably reject [the defendant's] 'mere nudity' defense" under the circumstances of a surreptitious recording of a bathing minor).

The final *Dost* factor asks "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Dost*, 636 F. Supp. at 832.  Numerous circuits have "concluded that depictions of otherwise innocent conduct may in fact

constitute a 'lascivious exhibition of the genitals or pubic area' of a minor based on the actions of the individual creating the depiction." *Holmes*, 814 F.3d at 1251–52; *see also, e.g.*, *Johnson*, 639 F.3d at 440 ("The fact that the young women in the videos were not acting in an obviously sexual manner . . . does not necessarily indicate that the videos themselves were not or were not intended to be lascivious. . . . Thus, even images of children acting innocently can be considered lascivious if they are intended to be sexual."). An inference of lasciviousness based on the videographer's intent is particularly appropriate where the images are captured in secret and without the victim's knowledge, because in such cases—especially situations involving minors—it is less likely that the victim will be engaging in what is traditionally considered sexually explicit conduct. *See Helton*, 302 F. App'x at 844, 849 (holding that a secretly-recorded videotape depicting a minor wearing underpants in a bathroom constituted "a lascivious exhibition of the genitals" because the court's sole "task is simply to determine whether [the defendant] intended the videotape he produced to elicit a sexual response in the viewer"); *see also Holmes*, 814 F.3d at 1252 ("The Eighth, Ninth, and Tenth Circuits have each confronted this same question[, and, i]n considering whether an image constitutes a lascivious exhibition, those courts have looked to the intent of the producer or editor of an image.").[5]

---

[5] Notably, one state supreme court recently faced similar circumstances and refused to apply any of the *Dost* factors on the grounds that the state child pornography statute (which largely tracks the language of the federal child pornography statute) did not require consideration of whether the visual depiction is intended or designed to elicit a sexual response in the viewer (the sixth *Dost* factor) on its face. *See State v. Whited*, 506 S.W.3d 416, 419 (Tenn. 2016). In purported fidelity to the statutory text, the Tennessee Supreme Court focused exclusively on "the content of the material, irrespective of the defendant's subjective intent, to determine whether it includes a lascivious exhibition of the child's private body areas[,]" *id.* at 441, and in so doing, overturned the defendant's conviction for sexual exploitation of a minor in connection with the defendant's surreptitious recordings of his 12-year-old daughter and her 14-year-old friend, *id.* at 418–19, 447. For the reasons already stated, this Court does not agree that the sexually-exploitative nature of a depiction can be determined based solely on the

The need to account for the intent of the person who creates the image is clear; "[t]o find otherwise would ignore the obvious exploitative nature of the depiction and require the child to exhibit lust, wantonness, sexual coyness[,] or other inappropriate precocity[,]" which "would pervert both the language and the logic of the legislation and the case law." *Wolf*, 890 F.2d at 246; *see also Horn*, 187 F.3d at 790 ("The 'lascivious exhibition' is not the work of the child, whose innocence is not in question, but of the producer or editor of the video."); *Wiegand*, 812 F.2d at 1244 ("[L]asciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or likeminded pedophiles."). Stated simply, to use a minor in a sexually-exploitative manner in violation of 18 U.S.C. § 2251, a defendant "need not portray the victimized child as a temptress." *Wolf*, 890 F.2d at 245.

Therefore, in this Court's view, the *Dost* factors easily support a finding that the conduct of Hillie's at issue here constitutes production, attempted production, and possession of child pornography for the purpose of 18 U.S.C. §§ 2251(a), 2251(e), and 2252(a)(4)(B). And Hillie has failed to offer any alternative explanation for his conduct that would prevent a reasonable jury from concluding that he intended to create a visual depiction that would satisfy the child pornography statutes.[6]

---

conduct of the child being surreptitiously recorded (i.e., the content of the depiction)—wholly divorced from all context, including the purpose for which the depiction was created. Instead, this Court joins the majority of others, which have rightly "rejected the notion that the statute places the onus of lust on the child being photographed[,]" *United States v. Wolf*, 890 F.2d 241, 245 (10th Cir. 1989) (citing *Wiegand*, 812 F.2d at 1244), and instead have weighed the actions and intent of the defendant, and not *the victim's* actions or state of mind. *See Wells*, 843 F.3d at 1255 ("[I]t is of no import that [*the victim's*] state of undress, which was consistent with common bathroom activities, indicates that she viewed her own actions as nonsexual." (emphasis added) (internal quotation marks omitted)).

[6] Quite to the contrary, taking the allegations in the indictment as true, the government has presented evidence of Hillie's sexual interest in J.A.A., including that he sexually abused her and her underage sister during the same timeframe that he recorded the videos (*see* Indictment at 5–13), which supports

## IV. CONCLUSION

Hillie has asked this Court to remove Counts 1–7 from the jury, and thereby preclude any determination that the charged videos depict a minor engaged in sexually explicit or lascivious conduct. "It appears that the removal of the question of whether a video depicts a child engaging in 'lascivious exhibition of the genitals or pubic area' from the hands of the jury through a pretrial motion is without precedent." *Goodale*, 831 F. Supp. 2d at 808. And in the instant case, this Court is not persuaded that it should be the first to buck this trend. Based on the allegations in the government's indictment and this Court's own assessment of the videos in question, a reasonable jury could find that Hillie successfully captured and possessed images of a "lascivious exhibition" of J.A.A.'s "genitals or pubic area[,]" 18 U.S.C. § 2256(2)(A)(v), or attempted to capture such images, when he surreptitiously recorded nude videos of J.A.A. in her bedroom and bathroom while she engaged in private, intimate activities. Accordingly, and for the reasons explained above, Defendant's motion to dismiss the federal child pornography counts (Counts 1–7) will be **DENIED**.


DATE: January 29, 2018                    *Ketanji Brown Jackson*
                                          KETANJI BROWN JACKSON
                                          United States District Judge

---

the government's contention that Hillie recorded the videos to elicit a sexual response in the viewer.