UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ] <br> ] <br> v.                                             ] <br> ] <br> CHARLES HILLIE                     ] <br> ] | Criminal No. 16-30 <br><br> (KBJ) |

**SENTENCING MEMORANDUM**

Defendant Charles Hillie, through undersigned counsel, respectfully submits the following memorandum in support of sentencing.

For the reasons stated below, pursuant to 18 U.S.C § 3553(a), Mr. Hillie requests a sentence for all counts no greater than the mandatory 15-year sentence to which he was found guilty. This sentence is appropriate in relation to the circumstances of the case, as detailed below.

### *I. Considerations in Imposition of Sentence*

The Federal sentencing statute, 18 U.S.C. § 3553(a), requires that this Court impose a sentence that is ". . . sufficient but not greater than necessary" to comply with the purposes of sentencing as set forth in 18 U.S.C. §3553(a).

In United States v. Booker, 543 U.S. 220 (2005), the U.S. Supreme Court held that the U.S. Sentencing Guidelines are advisory only - not mandatory. In Rita v. United States, 551 U.S. 338,351 (2007), the Supreme Court further explained that "...the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines should apply." The court can no longer

1

presume that a Guidelines sentence is the appropriate sentence. To do so would be to take a large step in the direction of returning to the pre-Booker regime. United States v. Pickett, 475 F.3d 1347 (D.C. Cir. 2007).

While this Court must still correctly calculate the guideline range, Gall v. United States, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, id. at 51; Nelson v. United States, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). Kimbrough v United States, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," id. at 49-50, and explain how the facts relate to the purposes of sentencing. Id. at 53-60; Pepper v. United States, 131 S. Ct. 1229, 124243 (2011). The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Id. at 101; Pepper, 131 S. Ct. at 1242-43.

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough, 552 U.S. at 101-02 (internal punctuation omitted)(citing Rita v. United States, 551 U.S. 338, 351 (2007)(district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations"). As the Supreme Court held in Kimbrough, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Kimbrough, 552 U.S. at 91, 109-10; see also Spears v. United States, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range.").

The factors under 18 U.S.C. section 3553(a) to be considered in imposing a sentence that is sufficient but not greater than necessary to comply with the purposes of section 3553(a) include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guidelines range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

## *II. Objections to the Presentence Report - Offense Conduct*

The defense made a number of objections to the offense conduct as stated in the presentence report. The presentence report is based on police reports and pleadings which in some instances were not supported by trial testimony. These amendments reflect important sentencing considerations, as reflected at trial, for the counts of the indictment.

As the presentence report is not public, objections to the offense conduct are attached separately, filed under seal, as Appendix A.

## *III. Sentencing Guidelines Range, Including Objections to the Presentence Report*

### A.   **Counts 1 and 2 (sexual exploitation of a minor)**

The applicable Guidelines range is 32. USSG § 2G2.1(a). As the minor was under 16 years of age, two levels are added. USSG § 2G2.1(b)(1)(B). The total offense level is 34 for each count.

The presentence report incorrectly adds two levels to the base offense level under USSG § 2G2.1 (b)(5), claiming that the minor was in the care, custody or supervisory control of the defendant, for a total offense level 36. [Presentence report (PSR) ¶¶ 38-51.] This is not accurate.

No one claimed that Mr. Hillie was the guardian of the minors. In fact, Jos. A was clearly the person who exercised discipline and supervision over the minors. While the witnesses testified that Mr. Hillie had a father-daughter relationship with his own daughter, no one claimed that Mr. Hillie had that same relationship with Jos. A's two other daughters, who called him Mr. Charlie. Furthermore, Mr. Hillie had no standing concerning the minors in other court proceedings. He should not receive a 2-level increase under USSG § 2G2.1(b)(5).

### B.   **Counts 4 - 7 (attempted sexual exploitation of a minor)**

Counts 4 - 7, charges of *ATTEMPTED* sexual exploitation of a minor, are specifically covered under 18 USC § 2251(e) - a different section than the completed offense, which is covered under 18 USC § 2551(a). Likewise, USSG § 2G2.1, the base offense for sexual exploitation of a

4

minor, specifically does <u>not</u> include attempt; rather one must look to USSG § 2X1.1(b)(1), the "Attempt" Guideline.  Under USSG § 2X1.1(b)(1), the base offense for the substantive offense (which is level 32 under § 2G2.1) is decreased by 3 levels, for a total base offense level of 29.  Two levels are added because the minor was under the age of 16 years, for a total Guidelines level of 31 for each of the counts 4 through 7.

The presentence report incorrectly adds two levels for custody of the minors to counts 4-7, under USSG 2G2.1(b)(5).   The defense opposition to this Guideline level addition is stated above, for counts 1-2.

The presentence report incorrectly fails to categorize counts 4 - 7 under the attempt Guideline, USSG 2X1.1(b)(1)(PSR ¶ 36).   The presentence report also incorrectly asserts that the 3-level reduction for attempt does not apply because the defendant completed all acts he thought necessary for the completion of the offense, for a total Guidelines level (including 2 levels for custody of the minors) of 36  (e.g., count 4, PSR ¶¶ 61-67).

Application Note § 2X1.1 (attempt), Note 1, specifically lists substantive Guidelines which include attempts.  Sexual exploitation of a minor (§ 2G2.1) is not one of them.  USSG 2X1.1 clearly applies to 18 USC § 2251(e), attempted sexual exploitation of a minor.    <u>Accord</u> <u>United States v. Crayton</u>, 143 F. App'x 77, 79-81 (10th Cir. 2005) (upholding application of § 2X1.1 to 18 U.S.C. § 2422(b) attempt offense)(unpublished opinion.)

The DC Circuit has recently considered the Guidelines in relation to an "attempt" conviction where the referenced Guideline did not mention "attempt."   In that case, the Guideline's commentary covered the attempt offense, and yet the Court ruled quite clearly that the Guidelines, which omitted the word "attempt," control over the commentary.  "*Expressio unius est exclusio alterius*." <u>United States v. Winstead</u>, DC Cir., May 25, 2018, 2018 U.S. App. LEXIS 13864 at 21.  Or as we say at the (courtroom) bar, the explicit mention of one (thing) is the exclusion of another.  Here, neither the Guidelines nor Commentary for the offense Guideline, USSG § 2G2.1, mention "attempt."  The attempt  offense here is clearly covered under Guideline § 2X1.1.

To claim in this case that the offense "almost happened," and therefore the 3-point reduction does not apply, would undermine the intent of the Guidelines. If this exception were as suggested by the presentence report, it would nullify the explicit omission of attempt in § 2G2.1, as well as the "attempt" Guideline, itself. For example, under the presentence report interpretation, Mr. Hillie could be sentenced under the substantive Guideline even if no one entered the room during the video, and even though he did not request the minor to enter the room. Here, neither he nor anyone in his presence requested the minor to enter the room, and no pornography was recorded during the "attempt" in counts 4-7. He is treated as having completed the act even though he had no influence, and did not try to influence, whether the minor even entered the room, much less whether she was recorded by the camera changing in an exposed manner as required by the child pornography statute.[1]  By no means should a person under these circumstances be considered equally culpable as someone who has completed the substantive offense or encouraged the minor to expose herself. The crucial act of enticing the minor to enter the room is missing in this case.

C. **Combined Offense Level, and Chapter Four Enhancement for Pattern of Activity Involving Prohibited Sexual Conduct.**

Under USSG §§ 3D1.2(b) and 3D1.3(a), the combined offense level for counts 1 - 7 is 34, because the counts are grouped together.

Under USSG § 3D1.2(b),[2] counts 1-2 and 4-7 are grouped, because the counts involve the same victim, have a common criminal objective, and are part of a common scheme or plan. Under § 3D1.3(a), the highest single offense level for the grouped offenses, which is 34, determines the combined offense level.

---

[1] This case is a far different circumstance than Rabbi Freundel, discussed further below, who specifically asked the females to change in the bathroom where surreptitious videos of them were recorded.

[2] In its sentencing memorandum, the government misreads USSG § 3D1.2. The tables referenced by the government clearly apply only to § 3D1.2(d), which the tables follow, and which is not applicable here.

The presentence report incorrectly states that the offenses do not group, because each count involves distinct composite harms. PSR ¶¶ 88-91, page 42.

First, USSG § 2G2.1, Commentary Note 7, covering sexual exploitation of a minor, states that multiple counts involving separate minors are not to be grouped together. Once again following the principal *expressio unius est exclusio alterius*, as stated in Winstead, supra, it is clear that multiple videos involving one minor should be treated as one group.

In addition, under USSG § 3D1.2(b), the videos were part of a common scheme or plan to obtain video recordings. Certainly there was no physical injury to the minor warranting a conclusion that each count represents a separate harm. The presentence report claims that the videos were NOT a pattern for purposes of grouping under § 3D1.2, but that the videos WERE a pattern for purposes of adding 5 offense levels to the total Guidelines under § 4B1.5(b)(1) (pattern of activity). The government cannot have it both ways.

By not grouping the video offenses (instead adding 5 Guidelines levels - one level for each additional count of conviction), and also giving a 5-level enhancement under USSG § 4B1.5(b)(1) for "pattern of activity involving prohibited sexual conduct," the government also triple counts these offenses, in violation of USSG § 3D1.2(c). Section 3D1.2(c) provides for grouping where the count is considered an offense characteristic for a different Guidelines enhancement.

Under any circumstances, a 5-level enhancement is not applicable under USSG § 4B1.5(b)(1)(pattern of activity).PSR ¶93. Attempt crimes are not covered under USSG § 4B1.5(b)(1). As in Winstead, supra, where an attempt offense is not covered in the Guideline, and the Commentary is inconsistent with the Guideline, "the Sentencing Reform Act itself commands compliance with the guideline." Winstead, supra at 20 (citations omitted). The DC Code sexual abuse counts are also not covered under USSG 4B1.5(b)(1), because the government has not met its burden of showing that the convictions meet the categorical analysis required under Descamps v. United States, 570 U.S. 254 (2013).

### D. US Sentencing Guidelines Voluntary Guidelines Range

In sum, the total U.S. Sentencing Guidelines level for counts 1-2 and 4-7 is level 34. Mr. Hillie's Criminal History Category is III. The voluntary sentencing range under the Guidelines for these counts, in toto, is 188-235 months, or 15 ½ years to 19 ½ years. The counts carry a mandatory minimum sentence of 15 years incarceration, and a maximum incarceration of 30 years.

### III.  Sentencing Factors under 18 USC § 3553

Each of the factors below warrants a variance below the advisory guideline range.

### A. Nature and Circumstances of the Offense

**Voyeurism**

Both the District of Columbia and U.S. Congress have considered acts of surreptitiously placing a recording device where a person has a reasonable expectation of privacy, to capture a private area of the person, as voyeurism. Under 18 USC § 1801, also known as "video voyeurism," the maximum period of incarceration after conviction is one year. Similarly, the maximum incarceration for voyeurism under DC Code is one year. 22 DC code §3531. This is an appropriate sentencing comparison. Voyeurism is exactly what the government claimed happened here concerning counts 1 - 7.

Importantly, this case is atypical for prosecution under 18 USC § 2551 (sexual exploitation or attempted sexual exploitation of a minor, the charged counts), in that the defendant is not accused of encouraging or enticing a minor to pose in a sexual manner, or to engage in sexual activity. Rather, the images were taken surreptitiously. These factors are more consistent with voyeurism than sexual exploitation of a minor. Actions by the government in

other, similar cases are informative. While the Freundel case, described below, was charged in DC Superior Court, rather than U.S. District Court for the District of Columbia, it is informative, because the same U.S. Attorney's Office - indeed presumably the same Sex Offense Unit, prosecuted both cases. The same office made the charging decisions and sentencing allocution for both cases.

In United States v. Bernard Freundel, case no. 2014 CMD 18262, the U.S. Attorney's Office chose to prosecute under the DC voyeurism statute a a rabbi who made literally hundreds of surreptitious videotapes of females in the bathroom or shower while they prepared for a ritual bath under his supervision as an Orthodox rabbi. He also taped his Towson University students, who he encouraged to "experience" the ritual bath. And he surreptitiously taped sexual liasons with females. The government identified at least 152 separate woman who he taped over a period of years. Freundel used multiple cameras, aiming them at the toilet and shower. He kept the tapes of the females, edited them, and categorized them. Although some women were taped multiple times, he was charged with only one count per female. He pled guilty to 52 counts of taping 52 separate females.

Rabbi Freundel was sentenced to 45 days incarceration per count, regardless of the number of times each women had been taped, for a total of 6 ½ years incarceration. The government had asked that he be sentenced to 4 months per count, for a total 17 years incarceration for the 52 females to whom he pled guilty of videotaping, regardless the number of times he videotaped any of the 52 females. [In Federal Court, that would be considered grouping under USSG § 3D1.2(b).]

Here, in contrast, the government is requesting, despite that all 6 counts concern a single female, and all videos were deleted, that the counts not be grouped under the Guidelines, and that he receive 30 years incarceration for the 6 counts entailing deleted videos of one female.

While this case did involve a minor, the facts of this case do not support the extreme disparity in sentencing as requested by the government in relation to Rabbi Freudel.

**Deletion of Images**

The Court should also note that all of the images charged by the government had been deleted on the laptop prior to its seizure, and were forensically retrieved by the government as deleted files.

In addition, there is no indication that the images listed in counts 1 - 7 of the indictment were ever transferred from the laptop. Mr. Hillie was not in the business of distributing pornography.

Given that the images were deleted, and not distributed, the Sentencing Guidelines are clearly not consistent with the sentencing factors under 18 USC § 3553, and a variance is warranted for the charges under 18 USC § 2251(a), USSG § 2G2.1.

In United States v. Palomino-Coronado, 805 F.3d 127 (4th Cir. 2015), the Fourth Circuit reversed a conviction under 18 USC 2251(a) where a pornographic image was taken, but not distributed. In that case, Palomino-Coronado was convicted under 18 USC 2251(a) for taking a sexual image of a 7-year old with whom he had sexual relations. The image was subsequently deleted from his phone. The Court reversed the conviction because there was insufficient evidence that the sexually explicit conduct displayed in the photo was for the purpose of taking a photo of that conduct. Here, it is clear that Mr. Hillie had no intent to display the pornographic images of JAA. Therefore, a variance is warranted under 18 USC § 3553.

**Lack of Threats or Obstruction by Mr. Hillie**

There were no threats by Mr. Hillie against the minors, even while the investigation was clearly pending.

Despite this, in an attempt to demonize Mr. Hillie, the government spent literally pages of its sentencing memo on uncharged allegations and speculation concerning Mr. Hillie, rather than the counts of conviction. Consideration of these uncharged and speculative allegations in sentencing Mr. Hillie would be grossly unfair.

Any prior convictions are already taken into account in the Guidelines through the

Criminal History score, and should not be used to increase his sentence.

The defense responds to other claims by the government under seal, as attached Appendix B.

### B      DC Code Violations

None of the DC Code counts carry mandatory minimum sentences. Mr. Hillie's counts of conviction did not include violence against the minors. He was convicted of one count of first degree sexual assault. According to trial testimony, he put his finger in the minor's vagina over clothes. Mr. Hillie was also convicted of counts of second degree sexual abuse for unlawfully touching two minors. Most of these convictions were for touching over the minor's clothes. While this does not excuse such conduct, these are important considerations in sentencing, and warrant a much lower sentence than cases involving intercourse and/or violence or injury to the minor.

### C.     Sentencing Disparity in Relation to Pornography Cases, Nationally

According to the U.S.S.G. Sourcebook of Federal Sentencing Statistics, 2017, Table 28, in 2016, 61 per cent of persons sentenced under USSG § 2G2.1 received a below-Guidelines sentence. Clearly, the Sentencing Guidelines regarding 18 USC § 2251(a) are not followed by the Courts, and a fair sentence under the factors of 18 USC § 3553 includes a sentence far below the Guidelines sentence due to the factors listed by the defense.

### D.     Sentencing Disparity in Relation to Other Cases

18 USC § 3553 requires the Court to compare the circumstances and sentences of other cases and defendants. A comparison with other cases shows that a sentence of the mandatory minimum 15-years incarceration is compelled here.

Other pornography and sexual abuse cases entailed sentences which were ***DECADES*** less than the minimum guidelines sentence for this case. Some of these cases unquestionably involved much more serious, long-term events than this case, including substantial violence, as detailed below, where the minors were beaten and held for long periods of time. They also involved younger minors. In the cases below, the *maximum sentence imposed* was 22 years

11

incarceration, for a single case.

### *United States v. Bernard Freundel, 2014-CMD-18262*          *6 ½ year sentence*

As stated above, in this case the government chose to prosecute in DC Superior Court, rather than Federal Court. Rabbi Freundel made hundreds of tapes, including tapes of at least 152 separate women over a number of years. These tapes were surreptitiously recorded in the bathroom and shower of a synagogue where the females expected privacy and respect in preparation for a religious bath. The Rabbi then edited and stored the tapes. He pled guilty to taping 52 separate females, some of whom had been taped multiple times. He received a sentence of 6 ½ years incarceration, or 45 days per female. The government asked for 4 months incarceration per charged female, for a total 17 years incarceration.

Significantly, the government grouped the videos, charging one count per female, regardless the number of videos of each female. The government also grouped the videos in its sentencing, asking for the same sentence for each female, regardless the number of videos recorded by the Rabbi.

### *United States v. Urlick, 16-cr-79,*          *8 ½ year sentence*

Mr. Urlick had a 15-year old live with him for a month, until arrested. He had intercourse with her while knowing her age, beat her at times, and took pornographic photos of her. He pled guilty to an 8 ½ year sentence under Rule 11(c)(1)( C).

### *United States v. de la Rocha, 15-cr-94,*          *22-year sentence*

Mr. de la Rocha lived with his girlfriend and her daughter. He chronically sexually abused the daughter at their home for approximately 2 years, beginning at age 12, and took videos of his abuse without the minor's knowledge. The abuse was discovered by the child's mother, who found a video of the pornography. His Guidelines for the pornography count was 360 months to life. He was sentenced to a total 22 years incarceration for all counts after a guilty plea. (The government requested 24.3 years incarceration for the Federal pornography count, and 7 ½ years,

consecutive, for the DC code count of first degree child sexual abuse.)

### *United States v. Best, 15-cr-22,                    18-year sentence*

Mr. Best, who was 45 years old, used his position of authority as a pastor and MPD Police officer to sexually abuse 2 minor girls at his church and at MPD headquarters. He also took pornographic photos of them, and asked them to send him pornographic photos, which were refused. He pled guilty to an 18-year sentence under Rule 11(c)(1)( C).

### *United States v. Braithwaite, 11-CR-186,     day of trial plea,   10-year sentence*

This case involved a day-of-trial plea where the defendant prostituted a 14-year old for a almost a month, and was also alleged to have sex with a 13-year old. Every night for almost a month - until he was arrested - he would put the girl on the "track" - a street where females picked up customers during the night. He had the minor give him all of the money she received, and he would give her a small amount at the end of the night. He had a gun in his truck for his prostitution business. He had been previously convicted of gun and firearms offenses. After his arrest he was also charged with obstruction of justice in the case for actions taken after his arrest. On the trial date he pled to trafficking of a minor and felon with firearm. He was sentenced under a Rule 11(c)(1)( C) plea to 10 years incarceration.

### *United States v. Lewis, 09-CR-213,            20-year sentence*

This case was clearly much more serious than Mr. Hillie's case, for a number of reasons. Four young minors were involved, including a 13-year old who he prostituted for 3 years, and a 12-year old who he prostituted for 2 years, while he was her **FOSTER PARENT**. He personally had sex with both of these minors. He kept a handgun in the house, and would hit the 13-year old. The charges also included a 16-year old who he threatened to kill if he didn't receive all the money she obtained from prostitution, and a 14-year old who he prostituted until he was arrested, 3 days after she started.

Mr. Lewis was 43 years old, and was  was charged with sex trafficking by fraud, force, or coercion. His Guidelines range was 360 months to life. The government agreed to a

Rule 11(c)(1)( C) plea for 15-20 years incarceration.

### *United States v. Moore, 08-cr-310,*    *17 ½ year sentence*

Mr. Moore prostituted 3 minors almost every night, including one for more than a year, using force, intimidation, and violence.

Mr. Moore took a 15-year old from New York to DC for prostitution. He then had her walk "the track" - a block in DC where prostitutes solicit customers - every night for about 6 months. He took her money, punched her if she did not make her nightly quota of up to $500 per night, and physically abused her to keep her from going with another pimp. Moore also had a 17-year old prostitute for him, in the same manner, for <u>one year</u>. He also prostituted a third minor (age unlisted) for 3-4 months, in the same manner, until his arrest.

According to the government, he controlled every aspect of the minors' lives, did not allow them to leave the hotel room, underfed them, and severely beat them.

The government's plea agreement did not appear to include relevant conduct enhancements to include all 3 girls for this defendant, who had a substantial, violent criminal history. It also did not include enhancements for violence. The Guidelines range, including a misdemeanor conviction, was 188-241 months. (The government requested a total sentence of 17 ½ years (210 months), which was mid-Guidelines range.)

### *United States v. Barnhill, 14-cr-124,*    *7-year sentence*

Mr. Barnhill arranged to set up 2 minors for "dates," which were in fact prostitution, and recorded a pornographic video of a 17-year old having sex with him. He pled guilty under Rule 11(c)(1)( C), for 7 years incarceration.

**E.   School and Work**

Mr. Hillie made extensive efforts to obtain job training, and to obtain jobs. Unlike many other persons who come before the court, Mr. Hillie was accepted to Job Corps on two different occasions, and earned a number of certificates. Mr. Hillie also took college level courses. Unfortunately, he was unable to obtain continuing permanent employment. But his efforts to

improve his skills are clear, and he should receive consideration for these efforts.

    **F.**  **Under the Facts of this Case, the Guidelines Sentence as Interpreted in the Presentence Report would result in Cumulative and Excessive Punishment.**

  As interpreted in the Presentence report, Mr. Hillie would receive multiple punishment for the same offenses.  He would receive multiple Guidelines level enhancements for videotaping a single person: first, he would receive a 5-level enhancement to the base sentencing guideline - one for each count of conviction, including 4 levels for videos which did not even contain pornography.  Then he would also receive a 5-level enhancement for "pattern of sexual activity."  This pattern does not refer to prior convictions - it references only convictions which are for this trial, and already included in the U.S. Sentencing Guidelines, or DC Guidelines.

  As previously stated, the facts of the offenses, themselves, are atypical, and should not be in the same sentencing range as cases with more serious factual circumstances.  In considering the pornography counts, Mr. Hillie has not been convicted of asking a minor to expose herself, or to engage in sexual activity. The videos were surreptitious, not distributed, and actually deleted.  And four of the six videos did not actually include pornogragphy.

  Concerning the DC Code charges, Mr. Hillie did not engage in sexual intercourse with the minor for whom he was convicted of first degree sexual abuse.  According to her trial testimony, the act occurred over clothes.  As for the second degree assault convictions, most were also over the clothes.  None involved threats or injury.

    **G.**  **Exercise of Right to Jury Trial**

  The government argues that Mr. Hillie should receive a severe sentence because he exercised his Sixth Amendment right to jury trial. The Sentencing Guidelines allow for a 3-point reduction for acceptance of responsibility, which Mr. Hillie did not receive in this case, as he exercised his trial right.  Any additional consideration would be punishment for his exercise of his right to jury trial, regardless if punishment is couched in language of "failure to take responsibility."

H.     **The Factors of this Case Compel a Sentence Well Below the Guidelines Range as Interpreted in the Presentence Report.**

Given the factors above, a sentence within the advisory guideline range is unnecessary for protection of the community or for punishment of Mr. Hillie.

### *IV.  Conclusion*

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. United States, 552 U.S. 38, 52 (2007) citing Koon v. United States, 518 U.S. 81, 113 (1996).

Given the particular factors under this case, particularly in light of the draconian sentencing Guidelines sentencing scheme here and comparative sentences for other cases, the mandatory sentence of 15 years incarceration is sufficient in this case to protect the public and afford just punishment.

Respectfully submitted,

_____/s/_____

Joanne D. Slaight, #332866
400  7th  Street, N.W.,  Suite 206
Washington, DC  20004
Phone (202) 408-2041
Email:   jslaight@att.net