-1-

<pre>
 1

 2                    UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 3

 4   UNITED STATES OF AMERICA,    )
                                  )
 5        v.                      )   Criminal No. 16-030
                                  )
 6   CHARLES HILLIE,              )
                                  )
 7             Defendant.         )   Washington, D.C.
     _____ )
 8
                                      Thursday, September 21, 2017
 9

10                  TRANSCRIPT OF MOTION HEARING
             BEFORE THE HONORABLE KETANJI B. JACKSON
11                UNITED STATES DISTRICT JUDGE

12             APPEARANCES:

13      For the Government:      LINDSAY JILL SUTTENBERG, AUSA
                                 KENECHUKWU O. OKOCHA, AUSA
14                               U.S. Attorney's Office
                                 555 Fourth Street, NW
15                               Washington, D.C.  20530

16      For the Defendant:      TONY W. MILES, ESQ.
                                 Federal Public Defender
17                               625 Indiana Avenue, NW
                                 Suite 550
18                               Washington, D.C.  20004

19

20

21      Court Reporter:         PATRICIA A. KANESHIRO-MILLER, RMR, CRR
                                 U.S. Courthouse, Room 4700A
22                               333 Constitution Avenue, NW
                                 Washington, D.C.  20001
23                               (202) 354-3243

24
        Proceedings reported by stenotype shorthand.
25      Transcript produced by computer-aided transcription.
</pre>

2

PROCEEDINGS

1

2          (2:38 p.m.)

3          THE DEPUTY CLERK:  Your Honor, this is Criminal

4    Case 16-030, United States of America versus Charles Hillie.

5          For the government, we have Lindsay Suttenberg and

6    Kenechukwu Okocha; for the defendant, we have Tony Miles.

7          The defendant is also present.

8          THE COURT:  Good afternoon to all of you.

9          This proceeding today is set as a hearing.  This is

10   the third hearing we've had over the past year with respect

11   to the various pretrial motions that Mr. Hillie has filed.

12         As you know, we have a trial date set in this matter.

13   The trial is going to commence on November 13th, and I'm

14   hopeful that we can bear down on these final motions today

15   and that I can give you some answers and information so that

16   the parties can have what you need in order to be able to

17   complete your pretrial statement, which is due at the end of

18   this month, and get yourselves ready for trial.

19         This hearing, I think based on what we discussed at

20   the last go-around, is going to focus on Mr. Hillie's motion

21   to sever and his motion to suppress tangible electronic

22   evidence.

23         At our last meeting, Mr. Miles, you requested the

24   opportunity to argue these motions, and I am granting that

25   request in the context of this hearing, but I will note that

in going over everything I realize I already heard argument

on these motions, although the way we worked it, because the

Court granted your prior motion to dismiss part of the

indictment and we had a new indictment, we're allowing this

to be raised again.

But I have revisited the arguments and the testimony.

The government actually had someone come and provide

testimony with respect to one of the motions the last time.

And I do consider those to be part of the record.  There was

no new motion filed.  We're just arguing that same motion

again.

I don't know, Ms. Suttenberg, whether you intended to

bring a witness again today.

MS. SUTTENBERG:  No, we don't, Your Honor.

THE COURT:  And do you rely on what that witness

previously offered --

MS. SUTTENBERG:  Yes, we did.

THE COURT:  -- with regard to the same motion?

MS. SUTTENBERG:  Yes.

THE COURT:  All right.  So we will have the argument

related to those motions today.  And then I hope to be able

to rule on them orally and also rule on several other motions

that we've heard over the last couple of hearings, and then

we will settle up and determine where we are and what

motions, if any, remain prior to trial.

1          All right.  So Mr. Miles, I don't know if you want to

2  begin with the motion to sever, but the floor is yours.

3          MR. MILES:  Actually, I will begin with the other

4  motion, the motion to suppress tangible and electronic

5  evidence.

6          THE COURT:  All right.

7          MR. MILES:  The Court has read our motion and the

8  government's opposition, and I do have several things that I

9  think are important to say, but I don't want to say

10  everything, so where I don't comment, we still maintain those

11  arguments.

12          THE COURT:  All right.

13          MR. MILES:  And I just want to focus on certain

14  issues.

15          One issue on this motion I want to focus on is the

16  issue where we say that the warrant fails to authorize a law

17  enforcement officer to conduct a search.

18          THE COURT:  Right.

19          MR. MILES:  Factually, what we have -- and it is the

20  same problem with each warrant -- and that is that there is a

21  section at the end of the warrant -- excuse me -- let me get

22  my copy of the warrant.

23          THE COURT:  Sure.

24          MR. MILES:  The top portion of the warrant has

25  information, identifies a premise, identifies a couple of

1     objects that law enforcement want to seize, and then toward

2     the bottom, in bold, "You are hereby authorized," and at this

3     point one would expect to know or learn what the police can

4     do.  And on both of the warrants, it does not indicate they

5     can do anything.  What happened, it appears to me, either the

6     person preparing this for the judge or the judge him or

7     herself should circle whether the search will be in the

8     daytime or in the day or night.  Frankly, that issue is less

9     of concern to us.  That is one thing it appears to me should

10    be done.  Secondly, indicating what can be searched or

11    seized, "a person, premises, vehicle or an object."  And then

12    a check should be placed in one of those boxes.  Once that

13    check is in place, then one knows that they are authorized to

14    search a person or search a premise or vehicle or whatever.

15          Because that was not done here, we argue that the

16    police had no authority to search the Good Hope Court premise

17    with the first warrant.  On the second warrant, they had no

18    authority to search the laptop.

19          THE COURT:  I went over this a little bit with you

20    last time, but let me just be clear on your argument.  The

21    same check boxes appear two other times on this form.

22          MR. MILES:  Right.

23          THE COURT:  In both places, "premises" is checked.

24    In the first place, when it talks about probable cause to

25    believe that on the -- and then you have the same set of

1        things -- person, premises, vehicle, or object -- "premises"

2        is selected, and the address is provided.

3                So your argument, I take it, is that there is some

4        ambiguity in this warrant with respect to the authorization

5        clause because "premises" isn't checked there even though two

6        times previously it had been.

7                MR. MILES:  I would not refer to it as ambiguity.  I

8        would refer to it as that the warrant needs to be read in its

9        totality, and the first time it is checked indicates that

10       there is probable cause to believe at that particular

11       premise, and "premise" is checked --

12               THE COURT:  Certain objects, and they described the

13       objects.

14               MR. MILES:  And then there is probable cause to

15       believe --

16               THE COURT:  The property so described.

17               MR. MILES:  Then the last part gives authority to a

18       law enforcement officer as to what he or she may do.

19               THE COURT:  Right.  But isn't it the signature that

20       gives the authority, not the check box?

21               It says, the designated person, premises, vehicle, or

22       object.  I don't know that you need that there because you

23       have already designated premises two times.  But what really

24       gives the authority is the signature.  Correct?

25               MR. MILES:  I would argue the signature, clearly.

1           THE COURT:  Yes.

2           MR. MILES:  In addition to indicating what the law

3     enforcement officer has authority to do.

4           If one were to receive this warrant, reading the

5     cases, that is often what it is about.  People have rights.

6     The police come.  They show the warrant for somebody to

7     understand what it is they're to do.  If somebody saw this

8     warrant, they can say, okay, we believe there are certain

9     items at this premise and there's probable cause to believe

10    so, but what can you do.  According to this warrant, it

11    doesn't say you can do anything.  It doesn't say you can

12    search me, the premise, or vehicle because it wasn't checked.

13    Even though it was signed, it wasn't checked.

14          THE COURT:  Fine.  But I don't know how that gets you

15    to suppression in a world in which we have the good faith

16    exception and a police officer can rely on a deficient

17    warrant.  Can't they?

18          MR. MILES:  I think this case is like the *Groh* case.

19    In the *Groh* case, the good faith exception didn't work.

20    There it was a situation where the police officer, in "what

21    could be seized" section, put the address.  The Court held

22    it's facially invalid.  The warrant is facially invalid.  In

23    that case, the affidavit in support of the search warrant was

24    very clear about the details of the property, what could be

25    seized, that there was probable cause to search the place.

1     But the Court said, unless the warrant specifically

2     incorporates the affidavit, we have to look only at the

3     warrant.  And when a warrant is plainly defective, like that

4     one was, the good faith exception will not save the warrant.

5          I would say the same is true here, where it is plain

6     that there is no authorization to do anything because none of

7     the boxes are checked; that the good faith exception does not

8     save this warrant; and that it is plainly invalid and in

9     violation of Mr. Hillie's Fourth Amendment rights.

10          THE COURT:  All right.

11          MR. MILES:  The only thing I'm going to add is, in

12    reading the warrant, because the box is not checked, it does

13    not particularly describe the place to be searched.

14    Secondly --

15          THE COURT:  I'm sorry.  So checking the box would

16    have given the particularity that you -- what do you mean?

17          MR. MILES:  I say failure to check the box doesn't

18    give particularity as to the place to be searched because it

19    doesn't say --

20          THE COURT:  It says "premises" two other times.  I

21    understand if it was never checked, right, you never have an

22    indication that we're talking about a place versus a car

23    versus a person versus an object.  Two other times we have a

24    place.

25          MR. MILES:  Right.  And I understand the Court's

1    argument.  I think if it was not placed anywhere, this

2    argument would be much more strong.  However, I think because

3    this is part of the warrant and it's an important part of the

4    warrant, failure to check a box in that section has the

5    defects that I indicated in that it doesn't -- now, the

6    warrant particularly describes the place, I will concede

7    that, up at the top.  But it doesn't particularly describe

8    the place to be searched because the warrant doesn't say that

9    that place can be searched unless the box is checked.

10        And with regard to particularly describing the person

11   or things to be seized, the warrant does describe the things

12   to be seized.  I won't concede particularity because that is

13   another argument we make.  But even if it does, it again

14   doesn't identify that these are the things that can be

15   seized.

16        THE COURT:  What do you do with the word

17   "designated"?  In other words, it has previously been

18   designated in this very document.  "You are hereby authorized

19   within 10 days of the issuance of this warrant to search in

20   the daytime/at any time of the day or night the designated,"

21   and then we have the series of things again.  Why isn't the

22   proper interpretation to consider "designated" referencing

23   back to what has previously been designated twice as a

24   premise?

25        MR. MILES:  Because it doesn't say previously

1    designated.  It says designated and provides --

2            THE COURT:  The property specified which was

3    previously specified.  You're not making argument that the

4    warrant is facially invalid because you don't have a line

5    there.  There is some reference back.  There is a reference

6    back to the property specified and the designated either

7    person, premises, vehicle or object, which admittedly isn't

8    checked there, but it is preceded by the word "designated."

9    A previous designation has been made.

10           MR. MILES:  I hear the Court.

11           THE COURT:  You're necessarily making an ambiguity

12   argument, right?  There is something ambiguous.  If you're

13   not, then I don't understand why it is facially invalid.

14           MR. MILES:  Your Honor, my reading of "designated" is

15   that it is designated, and then one would check a box, and

16   that is what would be designated, whatever is checked.  It

17   doesn't say previously designated.

18           THE COURT:  All right.  Then, it goes on to say, you

19   are commanded to seize it, to write and describe in an

20   inventory of the property seized, to leave a copy of this

21   warrant in return, etc., etc., and then we have the date and

22   the signature.

23           So you're saying that this, in the absence of the

24   checking of "designated" does not tell the officer to do

25   anything, even though it says you are commanded to seize it

1    and it is followed by a signature.  You think an officer is

2    just without instruction or authorization based on this

3    warrant.

4         MR. MILES:  I read "seize it" to refer to property

5    found at whatever should have been checked because nothing

6    was checked --

7         THE COURT:  There, nothing was checked there.

8         MR. MILES:  Correct, nothing was checked there.  I

9    argue that it doesn't give them authorization to seize

10   anything because nothing was checked there where something

11   should have been checked.

12        THE COURT:  All right.  I think I understand this

13   argument.

14        MR. MILES:  I think I will move on to the next

15   argument.

16        THE COURT:  Okay.

17        MR. MILES:  With regard to particularity, for time

18   purposes, I'm going to rely on our pleadings.

19        THE COURT:  Okay.

20        MR. MILES:  Now, probable cause.  So we think that

21   the search warrant is seriously lacking in probable cause.

22   We have identified various ways in which we think it is so

23   lacking.  One is staleness.

24        THE COURT:  First of all, now we're in the realm of

25   probable cause.

-12-

1          MR. MILES:  Yes.

2          THE COURT:  Do you concede that *Leon* applies in this

3    scenario?

4          MR. MILES:  Yes.

5          THE COURT:  So if the warrant is lacking in probable

6    cause, then an officer who relies on it in good faith is able

7    to rely on the *Leon* exception to say that the items that are

8    seized remain in the case and they aren't suppressed.  Why

9    isn't that fatal to your argument about lacking in probable

10   cause and therefore they should be suppressed?

11         MR. MILES:  I'm moving to that section.

12         THE COURT:  Yes.

13         MR. MILES:  Again, the *Groh* case is helpful here.  It

14   talks about the police officers, if something is so clearly

15   invalid or incorrect or unconstitutional, we cannot just

16   simply say to law officers, well, a judge signed it, you

17   relied on it, and it was in good faith.  We have to hold them

18   to some standard.  And the examples I have identified as to

19   why there is no probable cause are very serious.  A

20   reasonably well-trained officer would have known that to

21   search under the circumstances present in our case would have

22   been unlawful.

23         THE COURT:  And why?

24         MR. MILES:  The reason why is when we look at, for

25   example, the staleness issue, it is not even a close call.

1    The bottom line is we're talking about information that was

2    given four years before the search.  And what I mean is that

3    the witness reported it one year before the search, but at

4    that time the witness reported events she claimed to have

5    seen three years earlier.  So that is a total of four years

6    before the search.

7            This witness says that she saw naked pictures of

8    herself on the computer.  There is an issue about whether it

9    was really on the computer.  There is no evidence in the

10   affidavit that it was on the commuter or on the internet or

11   stored in the cloud somewhere.  But I'm arguing staleness

12   right now.

13           THE COURT:  Right.  What about the cases that suggest

14   that the staleness inquiries that you're talking about really

15   don't pertain to child pornography cases, that the kinds of

16   evidence matters, and so to the extent that child

17   pornographers typically hold things for long periods of time,

18   catalog and store their information, courts have found that

19   these sort of staleness arguments really don't carry the day.

20           What is your thought on that?

21           THE WITNESS:  Your Honor, I think the -- I concede

22   there is relevance to what the item is.  Is it something that

23   is more permanently affixed and not likely to move?  Is it

24   something that is likely to, if it is not there this week, it

25   is unlikely to be there next week.  It varies depending on

1    what the item is.  That's true.

2           But here we have two cases we cited that relate to

3    child pornography.  One case found staleness -- and I believe

4    it was 10 months old -- it was considered stale.  And then in

5    another case, there was no information about the time.  And

6    the government pointed out in its opposition, but what is

7    significant is the court, by still finding there was a

8    problem with staleness, indicates that child pornography is

9    not something that can be around forever.  It had some

10   concerns.  It didn't have the specific information, so I

11   can't point that that case was a two-year-old case or a

12   three-year-old case or the government can't point that it is

13   ten years old.  But it shows that time is relevant with

14   respect to child pornography.  It shows some understanding

15   that this evidence becomes stale.

16          Now, what we're dealing with here -- and I think we

17   have a particularly strong argument here -- is we're dealing

18   with stuff that was stored on a laptop or accessed through

19   the laptop.  It is unclear.  If it is stored on the laptop,

20   we have to talk about the laptop itself.  A laptop is a very

21   mobile device.  And that is what the cases look at.  Are

22   these things that are more permanent fixtures in the

23   residence?  Are these things that can easily go in and out of

24   the residence?  A laptop is very movable.  It is what

25   replaced a desktop so that people wouldn't be fixed to their

1    desk.  Laptops also don't have a long life span.  So whether

2    a laptop was in the house four years ago, it is not

3    reasonable to necessarily conclude that it is still in the

4    house now.

5         THE COURT:  What about the fact that the images that

6    we're talking about here were reportedly images of a child

7    who herself claims to have been the victim of sexual abuse of

8    the defendant so that we have a particularly strong

9    connection in terms of the reliability of the witness who is

10   giving the information?  Can that be factored in by a

11   magistrate judge who is trying to determine whether or not

12   the warrant should issue?

13        In other words, isn't staleness just sort of one

14   factor?  Fine, it was four years ago.  But it is not the kind

15   of thing in which she indicated fleeting glances of pictures

16   of random children she never knew.  She said, allegedly, I

17   saw pictures of myself on this laptop in connection with an

18   investigation related to sexual abuse.  Doesn't that make it

19   a pretty strong case in terms of probable cause?  Stronger

20   than it would be if it is just a four-year-ago sighting of

21   pictures of anonymous other children?

22        MR. MILES:  Well, I'm not sure I would agree with

23   that.  If somebody has reported that they saw pictures of

24   anonymous children and they describe it as child pornography,

25   I'm not sure --

1          THE COURT:  In other words, the judge who is trying

2     to determine whether or not there is sufficient evidence

3     provided by the witness to lead to a conclusion that this

4     defendant may have committed a crime and there might be

5     evidence that the police need to search is taking into

6     account a lot of different things.

7          MR. MILES:  I agree.

8          THE COURT:  One is the reliability of the witness

9     making the statement.  Right?  One is they say they saw

10    something but that was five years ago, and it is not fresh,

11    as you say in your papers.  But all of those things are being

12    balanced.

13          Your ultimate analysis, it seems to me that you're

14    trying to make is one about probable cause.  It is not

15    staleness by itself.  Staleness is one factor that a

16    magistrate judge might take into account or should take into

17    account when it evaluates probable cause.  So, fine, it was

18    five years ago, long time.

19          MR. MILES:  Or four.

20          THE COURT:  Or four.

21          But balanced against that is the fact that even

22    though it was a long time ago, it wasn't something that was

23    so inconsequential to this child because it was people she

24    didn't know, it was, oh, I think he might have been

25    committing a crime or whatever.  She is saying, I saw naked

—17—

1     pictures of me on the laptop.  And I'm trying to push back

2     against the contention that, to the extent she says, I saw it

3     four years ago, that's too long, she needed to say it was

4     only six months ago in order for it to be sufficient.  I'm

5     not sure that the time matters as much when you're talking

6     about this kind of evidence.

7          MR. MILES:  I would argue that that is a relevant

8     factor when we're talking about reliability.  But with

9     staleness, staleness is about does the magistrate judge have

10    probable cause to believe the evidence is still there where

11    they say it is.  If it is her, it may be more reliable, she

12    is going to remember it, it was a traumatic experience.  It

13    could be 10 years ago, she can remember it as well as if it

14    was a week ago.

15         THE COURT:  So with respect to that, courts have said

16    the fact that it is child pornography matters.  This crime is

17    not like drugs where you flush it down the toilet and it is

18    gone, right, and you have some reason to believe that the

19    person is actually getting rid of the evidence.  Child

20    pornographers tend to catalog and store and collect and not

21    get rid of their information.

22         So what do you do with that in a four-year time

23    frame?

24         MR. MILES:  And I agree that if it was a drug case,

25    it would be a much easier argument.  I think it is still a

1      pretty strong argument with respect to this.  That is where

2      we get to what I was saying about a laptop.  We are talking

3      about a laptop where images are supposedly stored, and we

4      have to look at questions as does a magistrate judge or a

5      judge in the Superior Court have probable cause to believe

6      that that laptop would still be in that premises.  And there

7      is no evidence or anything in the affidavit that indicates

8      that that laptop was there after 2011.

9            The witnesses is interviewed in 2014, one year before

10     the search is executed.  But at that time, that is where

11     issues like good faith exception are a problem.  The officer

12     didn't put in the affidavit -- we don't know -- did you ask

13     the person?  Is the laptop still in the house?  When is the

14     last time you saw the laptop?  The only reference to the last

15     time she saw the laptop is that it says it was in the house.

16     The only specific timing evidence that we have with regard to

17     when she could have seen that laptop was in 2011, which was

18     four years before the search and four years before the search

19     warrant was signed.

20            THE COURT:  All right.

21            MR. MILES:  So, as I was indicating, a laptop,

22     because of its mobility, because of its short life span, is

23     the kind of item that would likely not be in the same place

24     four years later.  And so we believe that there is a serious

25     staleness problem.  We believe that this problem alone poses

1      a probable cause problem and justifies suppression of the

2      evidence.

3             THE COURT:  Why is it that the officer couldn't be

4      said to have relied objectively in good faith on the warrant

5      under these circumstances?

6             MR. MILES:  It is a combination of factors.  The

7      probable cause, as the court says, is a combination of all

8      these factors.  We think this factor alone warrants

9      suppression.  And looking at all the other factors --

10            THE COURT:  You have to get past the good faith

11     exception to get --

12            MR. MILES:  Sure.

13            THE COURT:  This factor alone might, in your view,

14     warrant finding that there was no probable cause for the

15     warrant.  But then, says the Supreme Court, in order to

16     suppress, I would have to say that no reasonable officer

17     would have been able to rely on this in good faith, and I'm

18     trying to get there.

19            MR. MILES:  That's where I want to go.  We would

20     argue that relying on this warrant based on this affidavit is

21     not reasonable.  It is not reasonable because we're talking

22     about we have the staleness issue of four years, we have the

23     officer responsible -- it is the officer who contributes to

24     the problem, providing information in the affidavit that, as

25     best we can tell, only indicates the laptop was there four

1    years ago.  We don't know if it was there any sooner.  We

2    have the officer -- I'm moving into some of my other

3    arguments -- but the reliability issue, the officer is

4    relying on -- there is only one witness that indicates that

5    there is evidence on that laptop.  The purpose to seize that

6    laptop is based on the evidence of one witness, a witness who

7    admittedly by the officers as stated in the affidavit has

8    lied before.  The facts in the affidavit indicate that

9    there's someone else, witness 3, who supposedly had seen

10   these images, too, but the affidavit does not say that

11   witness 3 corroborated the other witness.  There is also

12   evidence in the affidavit that said there was -- it is the

13   mother -- I don't remember how she is described here, maybe

14   witness 1 -- but that the mother looked at the laptop and

15   says, I don't see what you're saying.  She affirmatively said

16   I don't see it there at all.  With all of those facts, there

17   is a serious reliability issue that the officer was well

18   aware of and could not, we would argue, reasonably rely upon

19   in executing this search warrant as establishing probable

20   cause.

21           There is the issue with the nexus.  The search

22   warrant does not allege that Mr. Hillie committed a child

23   pornography offense.  That is significant.

24           THE COURT:  Why?

25           MR. MILES:  Because there has to be a nexus between

1    what he is accused of doing, and here it is child sexual

2    abuse.  At the time the application for a warrant was made,

3    there was no allegation -- at least as stated in the search

4    warrant -- it says what it is alleged he violated, and they

5    have D.C. Code offenses, and these are child sex crimes.

6              THE COURT:  Right.

7              MR. MILES:  And the description as to what the

8    officer said was supposedly on the computer, which is someone

9    who was naked getting in and out of the shower.

10             THE COURT:  Same person.

11             MR. MILES:  Same person.

12             THE COURT:  Same child, who is allegedly the subject

13   of sex abuse.  I am baffled as to your contention that there

14   is no nexus.

15             MR. MILES:  The reason that we would argue there is

16   no nexus to that crime, we would argue that that is not

17   evidence of child sexual abuse.

18             THE COURT:  A naked picture taken allegedly without

19   her knowing is not relevant or evidence that could relate to

20   the sexual abuse of that same child?

21             MR. MILES:  We believe the nexus is insignificant.

22   If it was a video or a photograph of Mr. Hillie doing

23   something sexually inappropriate with that person, then, yes,

24   there is a nexus.  But here -- and the way she describes

25   it -- and I know in this case we have a dispute over whether

1    the video is actually child pornography or not.  But I don't

2    think there is any dispute that what is described in the

3    affidavit does not constitute child pornography.  What we

4    have is a description of her saying, "I saw pictures" -- she

5    says pictures, not video -- "pictures of me naked getting in

6    and out of the shower."

7             THE COURT:  I understand.  But it is surprising to me

8    that you're suggesting -- and maybe you're not, I'm hoping I

9    am making this up as I hear you -- it is surprising to me

10   that you're suggesting that the affidavit has to describe the

11   crime with such particularity related to the evidence that

12   they're looking for.

13            Given what she is saying here -- I'm looking at the

14   affidavit -- the allegations of sexual abuse related to this

15   particular victim, and then we have a paragraph where she

16   also talks about having seen naked pictures of herself

17   getting out of the shower and getting dressed on the laptop

18   that this defendant had, you're suggesting that with that

19   information the police were not entitled to search for the

20   laptop wherein they could very well have found additional

21   evidence of exactly the kind of lascivious behavior you're

22   talking about.  She doesn't have to say, I saw the one in

23   which he actually touched me inappropriately or had sex with

24   me.  It seems to me that her connecting a naked picture of

25   her on the laptop with the sexual abuse that she is talking

1      about gives the police enough information to secure a warrant

2      to go look at the laptop.

3              I hear you making an argument, no, no, no, she has to

4      say I saw a picture of a sex act on the laptop.  And that

5      can't be.  That can't be, Mr. Miles.  They wouldn't need to

6      do the search warrant if they already had that kind of

7      evidence.

8              MR. MILES:  I gave an example of the kind of evidence

9      that would satisfy the nexus.  But I'm arguing the nexus here

10     is insufficient.  Where in between what happened here and

11     what I suggest would be sufficient, I'm not sure where the

12     line is drawn.  I would argue that this is insufficient when

13     it is alleged he committed a sexual crime against a child.

14             THE COURT:  To look on a laptop where she says there

15     were naked pictures of her, insufficient when the crime

16     they're investigating is child sexual abuse against this

17     particular girl?

18             MR. MILES:  I think that alone, but there are also

19     other issues:  I don't know how it got there.  I don't know

20     who took it.  The laptop is my mother's.  She said something

21     like others in the house use it.  She didn't say including

22     Mr. Hillie.  So the combination of all those factors, I would

23     argue that the nexus is insufficient, whether there are naked

24     pictures of her that got there in some unknown way, according

25     to the affidavit, that that connects Mr. Hillie to a child

1    sexual abuse crime.

2              THE COURT:  All right.  I'm just trying to keep us on

3    track here.

4              MR. MILES:  The question was good faith.  I hit

5    insufficient nexus.  I hit reliability.  If I can just look

6    at my notes and make sure I didn't miss any points, but we

7    certainly talked about that issue.

8              I think I covered that well enough.

9              THE COURT:  There was an issue raised at least

10   previously -- and I don't know if you want to talk about it

11   again today -- about the execution of the search warrant.

12             MR. MILES:  If you could refresh my memory.

13             THE COURT:  There was a knock-and-announce point that

14   was made --

15             MR. MILES:  I will rest on the papers.

16             THE COURT:  You will rest on your papers with regard

17   to that.

18             And looking at the digital files, I think, was also a

19   point, which I'm happy to take on your papers, as well.

20             MR. MILES:  I think the only other argument I want to

21   make with regard to this motion is the argument we make that

22   -- this relates only to the September 9th search warrant --

23   and it is that even if it is valid that what they did

24   exceeded the scope of what the warrant permitted them to do.

25   The warrant --

1        THE COURT:  This is the one where they're searching

2    the computer itself?

3        MR. MILES:  Correct.

4        THE COURT:  Okay.

5        MR. MILES:  The warrant describes the computer,

6    camera, and other device.  The focus is on the computer.  It

7    just simply says that what they are to search for is evidence

8    of sexual abuse, to include digital files, records, and

9    photographs stored on subject electronic devices, as more

10   fully described in Attachment A, which is hereby incorporated

11   by reference.  I don't have that in front of me, but there is

12   more detail there.

13       We would argue that they did a thorough forensic

14   examination of this computer, even going into the deleted

15   space area from which the relevant files were found.  And I'm

16   not going to say too much about it, but I want to highlight

17   that to the Court.  We think it is another important issue

18   that they exceeded the scope of what was permitted --

19       THE COURT:  You read this to permit what?

20       MR. MILES:  Well, that is a difficult question, what

21   exactly it permits.  I don't know how to answer what it

22   permits, but it does not permit what they did.

23       THE COURT:  A full forensic examination of a computer

24   you think is not authorized by this?

25       MR. MILES:  I do, yes.

1          THE COURT:  All right.

2          MR. MILES:  Unless the Court has any other questions,

3    I'm ready to move on to the motion to sever.

4          THE COURT:  Let me have the response.

5          MR. MILES:  Sure.

6          THE COURT:  Thank you.

7          MR. OKOCHA:  May it please the Court --

8          THE COURT:  Yes.

9          MR. OKOCHA:  -- Your Honor, I want to briefly address

10   some of the arguments made by defense counsel.

11          I want to, first off, start off with

12   authorization/particularity argument made by defense counsel

13   and just note that when it comes to a search warrant, they

14   don't have to be error free.  There can be mistakes on the

15   search warrant and it still be something that is authorized.

16          When looking at particularity, you want to look

17   towards whether or not the officers can find the item or find

18   the location with reasonable effort and also look to see if

19   there would be an opportunity for there to be a mistake in

20   the location for the search.

21          When you look at this search warrant, although it is

22   not error free, it is clear that the logical reading of the

23   warrant, you will know where to search and what to seize.

24          THE COURT:  Why do you concede it is not error free?

25          MR. OKOCHA:  I think most search warrants aren't

1   error free.

2          THE COURT:  What is erroneous about this search

3   warrant?

4          MR. OKOCHA:  Maybe I should change my language.  Not

5   error free, but not the modicum of clarity.  It could have

6   been more clear in this case, Your Honor.  It could have been

7   more clear with an X mark on the search warrant next to

8   premises, not that that is necessarily something that is

9   out-and-out wrong, but it could have added more clarity to

10  the search warrant if that was there.  With that, it would

11  have been more as to what the officers were authorized to do,

12  it doesn't mean they weren't authorized to do anything,

13  period.

14          I would also like to note, Your Honor, when it comes

15  to situations like this when you're considering

16  particularity, the D.C. Circuit in *Johnson* and *Maxwell* said

17  you can look towards the affidavit.  They noted that the

18  affidavit can help courts when they're looking to see whether

19  or not certain things are authorized to search for.  In this

20  case, the affidavit adds a lot of clarity.

21          THE COURT:  I don't know why you're conceding that

22  people would be confused.  I'm still sort of struggling with

23  this notion that the defendant suggests that there is some

24  ambiguity, although he doesn't want to cast it in ambiguous

25  terms.  Twice before "premises" is checked.  Are we suddenly

1    thinking that where there is no check they meant person?

2         MR. OKOCHA:  No, Your Honor, I don't necessarily

3    think -- I think it would have been more clear.  I agree that

4    it should be very clear what is to be searched when it comes

5    to this search warrant.  It should be very clear.

6         THE COURT:  Although Mr. Miles says, fine, even if it

7    is clear, you have to have authority.  In the paragraph where

8    it says, you are hereby authorized, there is no check.

9    Doesn't that defeat the whole warrant?

10        MR. OKOCHA:  No, Your Honor, I would disagree with

11   Mr. Miles on that contention.  I would note that when it

12   comes to the cases in *Johnson* and *Maxwell*, there are errors

13   in the search warrant that deal with location and the items

14   that are specified.  In those cases, Your Honor, the Court

15   looked to the affidavit.  Even this case, Your Honor, when it

16   comes to the specific search warrant and what you're supposed

17   to be doing or what you're supposed to be searching or

18   seizing, you have to look to see if it was a logical reading,

19   if an officer with reasonable effort could find the location

20   and if an officer would make a mistake in what they were

21   searching or seizing.  In this case, Your Honor, I would

22   agree with the Court that the signature, the reading of the

23   warrant shows clear authorization of what they're supposed to

24   be searching and seizing.

25        THE COURT:  Can I just ask you about Mr. Miles' point

1    related to the good faith exception.

2         In the first instance, I hear you arguing that this

3    warrant is not defective.

4         MR. OKOCHA:  Yes, Your Honor.

5         THE COURT:  So you win.

6         I suppose in the sort of case law and jurisprudence

7    there is an alternative argument; even if the warrant is

8    defective, the police officer who relies on it in good faith

9    should be able to do so and the evidence that is seized

10   should not be suppressed.

11        MR. OKOCHA:  Yes, Your Honor.

12        THE COURT:  Mr. Miles makes a nuanced point that I

13   think goes to the second piece of this in a way that is now

14   just sort of occurring to me and I wanted your reaction,

15   which is in most of the cases where they talk about good

16   faith exception, they're talking about probable cause; that

17   what you're relying on is a warrant that seems fine on its

18   face, everything is there, it looks good, but it turns out

19   that the magistrate judge shouldn't have issued it because

20   the information in the affidavit, the basis for it, wasn't

21   sufficient, so the magistrate judge was wrong in making that

22   call.  And I think *Leon* and the other cases say, well, in

23   that situation, how was the police Officer supposed to know.

24   He had a warrant.  It looked fine.  Isn't that different than

25   a case in which you have a warrant and there is something

1    wrong with it on its face?  It is facially deficient.  Say,

2    for example, Mr. Miles argues in this case the little

3    paragraph that says here is what you're supposed to do

4    doesn't have a check mark.  So you're not really relying on

5    the magistrate judge's interpretation in a way that would

6    allow you to invoke the good faith exception in that

7    situation.  You are, as the executing officer, doing

8    something wrong because you don't have a piece of paper that

9    even on its face, says Mr. Miles -- and I'm accepting that

10   argument for the purpose of this -- you don't have something

11   on its face that authorizes you to do anything.

12          Am I making it up in terms of parsing this with

13   respect to when *Leon* applies and when it doesn't?

14          You get the good faith exception as against the

15   argument that he is making with respect to this?

16          MR. OKOCHA:  Yes, Your Honor.

17          THE COURT:  You think you do?

18          MR. OKOCHA:  Yes, Your Honor.  I think we would in

19   this case.  I understand the separation between public cause

20   and this type of situation here.

21          The case I would analogize it best to would be a

22   situation in *Maxwell*.  It is a D.C. Circuit case where they

23   said the language there was overbroad.  It wasn't a situation

24   where they didn't have probable cause.  The situation was

25   that the language -- or the items that were supposed to be

1    searched -- the language was too broad.  They should have

2    known in that case, according to Your Honor's parsing of the

3    situation, they should have known that the warrant was

4    sufficient due to the broad language.  In that case, the

5    circuit found the good faith exception did apply.  So I would

6    say even in this situation where it is a defect in the

7    warrant, not in the probable cause, that the good faith

8    exception does apply.

9            THE COURT:  All right.

10           MR. OKOCHA:  Then, Your Honor, I believe defense

11   counsel spoke about the staleness with regards to the timing

12   in the affidavit language.  In this case, I think it is

13   important to look at the nature of the crime.  As the Court

14   emphasized, in this case, the nature of the crime, child

15   pornography, there is a long period of time between the time

16   the item was seen and the time it can be seized and

17   authorized.

18           THE COURT:  Is that just inherent in a child

19   pornography case?  I mean, Mr. Miles makes a good point.

20   There is a line of cases and analysis about staleness and the

21   way in which a magistrate judge is supposed to take into

22   account how fresh the evidence is when they issue a search

23   warrant.  Years had passed between when she allegedly saw

24   this information on a laptop that may or may not belong to

25   Mr. Hillie.  Why doesn't that defeat probable cause in this

1      situation?

2              MR. OKOCHA:  I think that the child pornography

3      portion is strong, it is very strong.  There is a Fifth

4      Circuit case, I believe.

5              The Court's indulgence.

6                  (Pause)

7              MR. OKOCHA:  I'm sorry.  It is a Tenth Circuit case

8      where they had a situation where -- it is *Riccardi*, where it

9      was five years, not the four and a half years we have in this

10     case, five-year separation between the evidence and the

11     recovery.  In this case, it wasn't even child pornography

12     that was alleged to be on the computer.  It was child

13     pornography in the vicinity of the computer, is my

14     understanding.  There was a receipt that indicated that the

15     individual who was suspected of having child pornography had

16     digitized photos.  The receipt was from five years prior.  So

17     that was sufficient for the Court in the Tenth Circuit to

18     find that the child pornography could be sought on the

19     computer in the suspect's home.

20              In addition, Your Honor, the Sixth Circuit does

21     another good analysis to determine whether or not the items

22     could be found.  In this case, it is not just child

23     pornography, because there are other relevant items, other

24     relevant circumstances that make it more certain the items

25     would still be there.  The Sixth Circuit talks about, in a

1    case called *Aboud* certain characteristics, the character of

2    the crime, which is child pornography, and the criminal.  Is

3    he likely to be there?  Remember, the defendant had a

4    reasonable expectation of privacy in that home because he is

5    likely to be there.  The arrest warrant listed him as being

6    in that home.

7            THE COURT:  Mr. Miles says:  But is the computer

8    likely to be there?  This is a laptop.  It is mobile.  That

9    makes it less likely.  It seems like that is a wash, right?

10           MR. OKOCHA:  I disagree, Your Honor, because the

11   laptop belonged to the complainant's mother.  The mother

12   lived at that residence.  It is likely that she is going to

13   have her laptop there.  We're talking about a laptop, it was

14   a family laptop.  It wasn't a personal business laptop.  It

15   wasn't a laptop from one of the individuals.  It was a family

16   laptop owned by the mother, and the mother lived at the

17   residence.  I think that made it more likely that the laptop

18   would be there.  Also, the place to be searched.  This is,

19   like I stated, a home.

20           In addition, when it comes to considering what was to

21   be searched, although he said the laptop is something to

22   consider, you also consider that he is looking for images.

23   It wasn't just the laptop, but it was all electronic

24   equipment and cameras in the home they were looking to seize,

25   as well.  Because they were looking for the images.  If they

1    found the laptop, if they found other electronic equipment or

2    other cameras, they were also looking to seize those, as

3    well.

4         THE COURT:  That helps you to segue into nexus.

5    Mr. Miles says, why are you looking for images.  The

6    allegations are child sex abuse, and there is not a

7    sufficient nexus.

8         MR. OKOCHA:  Your Honor, in order to prove child

9    sexual abuse, you have to prove whether the defendant touched

10   the complainant; if so, was there the proper intent.  In

11   child sexual abuse cases, you can prove the intent, it was

12   sexual by showing he had pictures of her, the complainant,

13   naked as opposed to a touch that would be accidental or

14   mistaken, that would show he had a sexual interest in the

15   child.  This is evidence of that sexual interest in that

16   child.  It is a direct correlation.  It would be strong

17   evidence to show pictures that the defendant took of the

18   complainant nude to show that it wasn't just a mere

19   accidental touch but a purposeful touch.  That establishes

20   nexus, Your Honor.

21        I also found it interesting that the defense argues

22   in one breath that there is no nexus to the laptop and then

23   in the other breath says he has a reasonable expectation of

24   privacy in the item that is seized in the home.  They seem to

25   be two opposing ideas.

1          Lastly, Your Honor, I would just reiterate what was

2     mentioned with regard to good faith.  I think it is an

3     important part to consider that there were two different

4     warrants that were authorized in this case by two separate

5     judges; and both judges, with very similar probable cause

6     affidavits, very similar affidavits, found that there was

7     probable cause and authorized the warrant.

8          THE COURT:  All right.  Thank you.

9          Mr. Miles, you want to argue the second motion?

10          MR. MILES:  Sure, Your Honor.

11          THE COURT:  I don't know if you have any response to

12     that or you would like to move on to motion to sever.

13          MR. MILES:  I would like to respond briefly.

14          THE COURT:  Sure.

15          MR. MILES:  The government mentioned there are cases

16     where they say courts can look at the affidavits sometimes

17     and go behind the search warrant, but the cases they cited

18     deal with when there is like conflicting dates or some issue

19     with the date or they describe internal inconsistency.  Here

20     we're not talking about that.  We're talking about where they

21     didn't check the box and, from our view, didn't authorize any

22     search or seizure.

23          The government --

24          THE COURT:  What is your thought on his point that

25     other facially deficient warrants have been deemed sufficient

1      to authorize even when there is confusion?

2            The weird part about your argument is that there is

3      no confusion, I think, because we have premises checked two

4      other times.  It is just missing in this other place.  But it

5      is not like we have "premises" in one, "object" in another,

6      in which case you might look at the affidavit to clarify it.

7      Here you have consistency.  It seems like everybody knows

8      what is going on.  It is just missing.  He says even in

9      situations in which there is chaos courts have found it is

10     sufficient to authorize.

11            MR. MILES:  I think if I recall the example he gave

12     was when language was overly broad.  It is different from

13     when there is no check indicating what can be searched or

14     seized.  Here it is just absent.  I think when --

15            THE COURT:  Absent in one place.

16            MR. MILES:  In one place.

17            THE COURT:  Right.  So I'm trying to understand, I'm

18     trying to understand the importance and significance of it

19     being absent in that one place.

20            MR. MILES:  Because each section where there is a

21     box, it is for a different purpose.

22            THE COURT:  But it is not calling for different

23     information.  It is the same information being requested, the

24     same four items you can choose from in all three places.

25     Right?

—37—

1          MR. MILES:  I'm trying to think of a way -- I read it

2     like a roadmap, and you have to go through each piece of the

3     road map in order to get you in the right place, to know

4     where to go.  By failing to check the last box, it doesn't

5     complete the directions as to what they can do.  That is the

6     box that specifically tells the law enforcement officer what

7     he or she has authority to do.  It is fine that there is this

8     premise that you located.  In it you believe there is this

9     pink laptop and other items and that there is probable cause

10    to believe that that item is at the premises.

11         THE COURT:  You think this judge in the Superior

12    Court of the District of Columbia signed this warrant without

13    giving someone authority to do something?

14         MR. MILES:  I'm not saying that.  I'm saying that the

15    warrant -- as I read the *Groh* case, it is largely about the

16    person who is having their place searched.  It is about their

17    rights, and they are entitled -- *Groh* focuses on that -- that

18    person is entitled to read the warrant, and the warrant

19    without the affidavit, and *Groh* talks about maybe if the

20    affidavit was with the warrant you could perhaps do that, but

21    read the warrant and be clear as to what these people, the

22    police, are permitted to do here.

23         THE COURT:  You say he is not clear?

24         MR. MILES:  It is not clear.  If a person were to

25    look at this and they're having their home searched, I would

1    say, okay, you believe there is probable cause to believe

2    that at this residence there is a pink laptop and you're

3    authorized to do -- and I would look, and I would say it

4    doesn't say you're authorized to do anything.  You can't

5    search this residence.

6              THE COURT:  Even though there is a signature?

7              MR. MILES:  Yes.

8              THE COURT:  The signature just designates the

9    advisory opinion of the Superior Court judge that there is

10   probable cause that evidence exists in your home but it is

11   not sufficient in your view to indicate that the police have

12   the authority to search for that evidence?

13             MR. MILES:  Correct.  It could be -- say for

14   argument, we all agree what the judge intended -- it was a

15   mistake, an omission -- intended to give authorization.  The

16   argument here is because it is not signed --

17             THE COURT:  No, it is signed.

18             MR. MILES:  I'm sorry.  It is not checked.  I know it

19   is signed.  Obviously, it is signed.  I know it is signed.

20   Checked.  That is the only omission I'm speaking of.  Because

21   it is not checked, that -- because the check tells the police

22   officer what they can do and the check tells the person whose

23   premises or person is being searched what can be searched.

24             THE COURT:  Is there evidence in this case that the

25   police went beyond the premises?  That they searched

1    vehicles, people, or objects pursuant to this search warrant?

2         MR. MILES:  There is no such evidence before the

3    Court.  I believe there may have been a search of a person.

4    The government would perhaps characterize it as a search

5    incident to arrest.

6         THE COURT:  Which is not pursuant to the search

7    warrant.

8         MR. MILES:  Honestly, that is how they would

9    characterize it.  But I believe there was a search.  That

10   could be an argument, was it incident to search or not.  I do

11   not believe a vehicle was searched, and it is not at issue in

12   this case, so I'm not concerned about that.

13        THE COURT:  All right.  Other arguments?

14        MR. MILES:  Yes.  I just want to again underscore the

15   point that it is not -- with respect to the nexus, it is not

16   just about whether those images -- or evidence of those

17   images would indicate -- are connected to the crime of child

18   sex abuse.  It is about how well those images are connected

19   to Mr. Hillie.  The government got up here and conceded the

20   laptop belonged to the mother.  I know they say the family

21   uses it.  The affidavit does say it is the mother's laptop.

22   It is her laptop.  It does not specifically reference

23   Mr. Hillie's connection with the laptop other than the more

24   general statement that people in the house use it, but it

25   doesn't say Mr. Hillie uses it.

1          THE COURT:  I thought it was the nexus between the

2     crime charged and the evidence that was on it and whether or

3     not it would still be there.  Staleness, too.  I didn't

4     understand your argument to be arising out of the fact that

5     this laptop belonged to someone else than Mr. Hillie.

6          MR. MILES:  With nexus, it is about does the

7     affidavit describe that evidence will be found on the laptop

8     that would connect Mr. Hillie to the charge, to the crime

9     that is alleged.  When you're trying to determine whether

10    Mr. Hillie committed the crime, the evidence should not only

11    relate to the charged crime, but it also has to relate to the

12    fact that it would be evidence that Mr. Hillie committed this

13    crime.  And the affidavit just does not indicate that by

14    going on the laptop that they will find evidence that

15    Mr. Hillie was involved in child sexual abuse as opposed to

16    perhaps somebody else.

17          In addition, in the affidavit, the person says, I

18    don't know how they got on there.  That is what the affidavit

19    says.

20          THE COURT:  Of course, because the allegation is that

21    they were taken surreptitiously.  She can't say how they got

22    on there, right?

23          MR. MILES:  I understand that.  But when it comes to

24    the nexus, it is not there.  I'm not criticizing her for not

25    knowing, but I'm just saying that that all --

1           THE COURT:  I'm sorry.  I thought the nexus

2    argument -- and maybe I am just confused, and I want to get

3    this right -- I thought you meant there was no nexus between

4    the crime that was being charged, child sexual abuse, and

5    looking on a laptop, which is child pornography, that that

6    was the nexus link that was missing.

7           MR. MILES:  In part.  They alleged in the warrant

8    that he committed child sexual abuse crimes.

9           THE COURT:  Right.  And there is a family laptop that

10   he uses, as does everybody else in the family, and there are

11   pictures of her on there, and she doesn't know how they got

12   there.

13          MR. MILES:  The affidavit doesn't say he uses it.

14   What I'm saying is that in order for a judge to say, yes, you

15   can search that laptop, the judge has to be convinced that

16   there could be evidence --

17          THE COURT:  It says, CW 2 stated that everyone in the

18   house used the pink laptop, and Mr. Hillie is in the house.

19   Right?

20          MR. MILES:  It says it is the mother's laptop.

21          THE COURT:  True.  But the line about everyone using

22   it takes it out of just the mother's possession in terms of

23   her having the ability to put the pictures on there.

24          MR. MILES:  The affidavit doesn't make clear that

25   Mr. Hillie is included in the "everyone."  When she is

-42-

1    talking about everyone, at what time?  Was it a time he was

2    in the house, not in the house?  Even if he was in the house,

3    it doesn't indicate how often he used it.  Just everyone uses

4    it.  Even if he was in the house at the time, he could have

5    used it one or two times.  There needs to be more clarity so

6    that there would be a sufficient nexus.

7              THE COURT:  All right.

8              MR. MILES:  That's all I have in response.

9              THE COURT:  Okay.

10             MR. MILES:  Now, with regard to the motion to sever

11   counts.  When it comes to severance, there are two issues.

12   There is whether joinder was proper under Rule 8.  Then, if

13   you think it was proper, there is an issue about whether it

14   is prejudicial and whether the Court should exercise its

15   authority to sever the counts to avoid injustice.

16             THE COURT:  Right.

17             MR. MILES:  We argue both are violated here.  Joinder

18   was not proper.  In order for it to be proper, the Court has

19   to look at three things:  Joinder is proper if the offenses

20   are of the same or similar character, based on the same act

21   or transaction, or connected with or constitute part of a

22   common scheme or plan.  I don't see the government arguing

23   that it is based on the same act or transaction.  In the

24   pleadings, they argue the other two issues.

25             THE COURT:  Right.

1          MR. MILES:  Part of a common scheme or plan.  We

2     would argue that that is not true.  It seems clear that

3     these -- and they're sets.  I think it is clear we want to

4     sever Counts 1 through 7, and that will be one trial.

5          THE COURT:  Which is the child pornography counts.

6          MR. MILES:  Correct.  Counts 8 through 17 would be

7     another.

8          THE COURT:  And the reason is?  Why are they

9     improperly joined?

10         MR. MILES:  Because we don't believe -- since I have

11    excluded it being part of the same transaction, I think we

12    have to look at the other two factors, whether they're part

13    of a common scheme or plan.  And I would argue they are not.

14    They are a very different set of events, and there is a big

15    issue about the timing.  The government states in its

16    pleadings it happened around the same time.  There is no

17    evidence they happened at the same time.  Almost all counts

18    except for one has a time span.

19         THE COURT:  Why don't you jump to the one that is

20    most obviously applicable.

21         MR. MILES:  Same or similar character.

22         THE COURT:  Same or similar character.

23         MR. MILES:  I agree that is the most challenging, but

24    I don't concede that it is true.

25         THE COURT:  Okay.  Why not?

1          MR. MILES:  Because the government focuses on that

2     these involved child exploitation, if I remember their

3     language.  The language is, are all of a similar child

4     exploitive character, is what they say in their pleadings.

5     Although they don't say it in their pleadings, I would add,

6     because I'm sure the Court would do it anyway, that could be

7     a little more narrow in saying that they are of a sexual

8     nature.  But the reason we don't think they're the same or

9     similar is they are very different.  The allegations

10     regarding the child pornography involved images.  The

11     government doesn't argue it fits the definition of child

12     pornography because they are recordings of sex acts or even

13     simulated sex acts.  They're relying on the prong that says

14     it is a lascivious display of the genital area.

15          THE COURT:  It is the same victim, Mr. Miles.  I hear

16     you if they are pictures of strangers, child pornography, in

17     general, brought forward by the government to try to make it

18     more plausible that the defendant was molesting these

19     children.  Because he was a child pornographer writ large,

20     the government says, in my hypothetical, he is more likely to

21     have touched these girls.  But we, here in this case, are

22     talking about surreptitious naked pictures of the very child

23     who alleges that she has been sexually abused by this

24     defendant.

25          You heard Mr. Okocha talk about how, with respect to

1      making the government's case, they're going to have to put in

2      evidence related to his motive, to his purpose, to his intent

3      and how there in that regard these two kinds of crime overlap

4      because surreptitiously recording naked pictures indicates

5      sexual interest in children, and in this child in particular,

6      which one would argue is relevant to the issue of whether or

7      not this child in particular was touched inappropriately by

8      the defendant.

9              So why is it that they're not of a same or similar

10     character in that respect?

11             MR. MILES:  I don't think -- and they don't have to

12     prove -- the purpose was for a sexual interest.  That is

13     another part of the problem.  They just have to prove that it

14     was produced for the purpose of producing an image.  People

15     produce this sometimes for profit.

16             THE COURT:  But they are going under the prong of the

17     statute that talks about the reason why they say these things

18     are lascivious for the purpose of child pornography is

19     because they were produced, they allege, for the sexual

20     pleasure of the defendant; right?  I know you disagree with

21     them about that.  But because on their face they are not

22     sexual in nature, they have to get sexual in there somehow in

23     order to be consistent with the statute, and they say it is

24     about the intent of the person who is taking these pictures.

25             MR. MILES:  I think it is clear that sometimes people

—46—

1    take the pictures or possess the pictures or trade them

2    perhaps not for their own sexual interest, perhaps for

3    others' sexual interest, to share and profit, or maybe to

4    humiliate the victim, which may not be for a sexual interest.

5              THE COURT:  Yes, but the question here is whether

6    when you're talking about evidence, evidence makes some

7    contention more likely than not, right, tending to make it

8    more likely.  So the question is whether the government is

9    correct that a defendant who is surreptitiously recording

10   naked pictures of a particular child did, in fact, touch that

11   child in a sexually inappropriate way.  If they are right

12   about that to the extent that they're saying that tends to

13   make it more likely, then evidence about this is coming in,

14   right, in either trial, relating to one crime or the other.

15   So I know I'm jumping ahead to your assuming they were

16   properly joined, is this prejudicial.  But I'm just trying to

17   understand.  Do you have a case that indicates that it is

18   improper to join under Rule 8, where you're talking about the

19   same victim, pictures that the government alleges are

20   inappropriately illegal of this victim and a sexual abuse

21   child?

22             MR. MILES:  No, but I could be incorrect.  It was

23   challenging to find a case that was very similar.  I could be

24   wrong, but I think the government had a challenge finding a

25   case factually similar to this, as well.

1          I want to make a clarification.  It is the same

2     victims -- Counts 8 and 17 are the same victims with respect

3     to Counts 8 and 12 but not 9 --

4          THE COURT:  Yes, but it is her sister, and they both

5     live in the house.

6          MR. MILES:  Understood.  I think that is a

7     significant difference.

8          THE COURT:  But we have overlap with regard to the

9     same victim in the production and attempted production and

10    possession counts and at least one of the victims in some of

11    the counts related to sexual abuse.

12         MR. MILES:  Correct.

13         THE COURT:  Not strangers, not pictures of other

14    kids.  So I'm struggling to understand why you think that

15    doesn't count as same or similar character in the way the

16    government has charged this case.

17         MR. MILES:  As I indicated, one is about images that

18    may or may not be for a sexual purpose, and the elements

19    don't require that they be for a sexual purpose.

20         THE COURT:  The government alleges that he had a

21    sexual purpose, the sex abuse.

22         Why can't they put their case together the way that

23    they want to?  This is how they have charged the case.  I

24    think I only get to say, no, you can't in a situation in

25    which they are not actually making an argument that makes any

1    sense about how these two are connected.

2              MR. MILES:  I don't think the test is whether they

3    can make some connection or show one set of facts tends to

4    show a motive for the other.  They could charge some offenses

5    that say that Mr. Hillie had the kids involved in drug

6    distribution and that shows -- and they want to show that

7    because it shows how much control he had over them, they

8    would want to do what he said because he could get them in

9    trouble, telling their mother that they were selling drugs.

10             THE COURT:  You are saying that would be improper?

11             MR. MILES:  I would say that would be improper

12   joinder to join some charges where they're alleging drug

13   distribution charges with respect to the kids.

14             THE COURT:  Maybe.  I don't know.  It depends.

15   Maybe.  But that is not what we have here, right?  And you're

16   suggesting that we do, that this is just like that.

17             MR. MILES:  What I'm suggesting is that the notion

18   that because one set of charges helps the government with its

19   theory of the case I don't think necessarily means that

20   joining those types of offenses together is proper.  It is

21   whether they're of the same or similar character.  I think I

22   have some arguments as to why they're not the same or similar

23   character.  I acknowledge that of the three that this is the

24   more challenging argument.

25             THE COURT:  All right.  I will let you move on.  But

1    let me just say that the D.C. Circuit has said, in a case

2    called *United States v. Carson*, 455 F.3d 336, 2006, the

3    propriety of joinder is determined as a legal matter by

4    evaluating only the indictment and any other pretrial

5    evidence offered by the government.  The government need only

6    allege the facts necessary to sustain joinder, not prove

7    them.

8         So they don't necessarily have to prove that his

9    intent was actually -- for this part of the analysis -- to

10   determine whether or not they could properly join these

11   offenses.  They just have to allege the facts that are

12   sufficient to show that there is a same or similar character

13   kind of thing happening here with respect to all of these

14   charges.

15        I hear you saying they haven't but move to the next.

16        MR. MILES:  All right.  Next I think is Rule 14.

17        THE COURT:  Is what?

18        MR. MILES:  Rule 14.

19        THE COURT:  Okay.

20        MR. MILES:  Now, there, I noticed it is not like a

21   403 where we have to determine whether the prejudice

22   substantially outweighs the probative value.  Rule 14

23   language is as if there is -- appears to be prejudiced, I

24   think is the language.

25        THE COURT:  Right.  So what is prejudicial about

1      this?

2              MR. MILES:  Well, let's see.  The arguments I make

3      are supported by cases that we cited.  I'm not just making up

4      my reasons.  The number of images, one of the cases we cited.

5      Here we have 17 counts, and the jury instructions that I

6      suspect the Court may give in this case talks about the

7      number of counts --

8              THE COURT:  You mean the number of counts --

9              MR. MILES:  Did I say "images"?  Number of counts.

10             THE COURT:  Number of counts.

11             MR. MILES:  Number of counts.

12             There is even a jury instruction that talks about the

13     number of counts and how the jury is not to consider that.

14     And of course, that could be the government's response, that

15     counters the problem.  I would submit that it doesn't

16     sufficiently.  But the point is the number of counts is

17     prejudicial.  When somebody is charged with 17 counts, jurors

18     look at it as a more serious case.  The person I think is

19     viewed with more contempt, and there is an assumption that

20     they're likely to be guilty of something if they were alleged

21     to have committed 17 different crimes.

22             Cases also talk about being embarrassed or confounded

23     in presenting separate defenses.  The challenge for me is --

24     I'm not going to share with the government our defense -- but

25     I will say that we believe that this is going to be an issue

1    for Mr. Hillie if he is charged with those two separate types

2    of offenses.  And I think even when -- the language in the

3    cases are embarrassed and confounded.  I think the problem

4    for Mr. Hillie is really worse than that.  He is going to be

5    faced with a situation where he has to choose one or two

6    options.  One is present inconsistent defenses, the type of

7    defense you would present if these cases were severed, and

8    they would be inconsistent.  And then you run the risk of

9    increasing your chances of conviction because you have given

10   two inconsistent defenses and the jurors don't appreciate

11   that.

12              THE COURT:  Have you ever made this argument before

13   involving an in camera showing to the Court?  I don't

14   understand what you're talking about.  I do appreciate that

15   you don't want to tell the government ahead of time what your

16   defense is going to be.  But it is hard for me to imagine

17   given these charges that there would be a problem with

18   embarrassment or confounding of the defendant when they seem

19   pretty similar.  It is one thing in the world where you have

20   a very, very serious federal crime on the table and a handful

21   of minor state offenses and you say you really shouldn't try

22   these together because people are going to think that he did

23   one or the other, right?  Let's separate them out.  I can see

24   how it would be embarrassing for a defendant who was faced

25   with a minor set of things under state law to also have to be

-52-

1    facing a pretty substantial, but these things seem on par to

2    some degree.  Maybe the state law charges are more

3    significant in a way, but they're all involving the same

4    victim, they're of the same character, I think.

5             So what is it that is going to be problematic for

6    him?

7             MR. MILES:  For one set of offenses, I believe the

8    government will have to rely on a witness whose credibility

9    will be an issue.  With another set of offenses the

10   government will be relying on a video.  The issue there will

11   probably be more of whether the videos mete out all the

12   elements that they have to prove in order to show someone is

13   guilty of the crime.  Without getting into how we would

14   defend the case, I just want to point out that they are

15   separate sets of cases or counts that we perceive the

16   evidence will be different, and it will be a different type

17   of trial, I mean one trial involving cross-examining child

18   witnesses and all the prejudice that comes from that.  The

19   other set I envision won't involve any cross-examination of

20   any child witnesses.

21            THE COURT:  All right.

22            MR. MILES:  There is more, but I think the Court can

23   at least appreciate that distinction there.

24            THE COURT:  All right.

25            MR. MILES:  As I was trying to say, the problem

1    here -- I will hit that more towards the end.

2          Then, there is the issue about the jury may use

3    evidence from one set of charged crimes to find him guilty of

4    the other.  There is another argument about they may

5    accumulate the evidence.  I will address those together.  I

6    think the big problem here is that the jurors -- these are

7    not pretty charges.  These are unpleasant charges.  Jurors

8    may believe that somebody, whoever may have committed these

9    crimes, or Mr. Hillie, would be a disgusting, vile perverted

10   person.  And evidence on each set of counts, which would be

11   different evidence, will suggest that about Mr. Hillie.

12   These are the kind of charges that run the high risk of

13   making the jurors not like Mr. Hillie, to find him a

14   disgusting person.

15         THE COURT:  But you're not entitled to a severance on

16   that basis, right?  I understand the language appears to

17   prejudice.  Really, what the Court cares about is undue or

18   unfair prejudice, because any charges are prejudicial to a

19   defendant, right?  They can't just be something that is

20   harmful to a defendant.  If you're accused of a crime, you

21   are in a prejudicial kind of scenario.  So I'm struggling to

22   understand.  I'm thinking in the back of my mind about the

23   different trial issues.  Setting that aside, with respect to

24   these being unpleasant crimes, 17 of them in terms of their

25   charges or whatever else, I don't know if that is a valid

1    basis to seek a severance.

2         MR. MILES:  I'm citing factors that courts have cited

3    as relevant.

4         THE COURT:  Yes.

5         MR. MILES:  But also, obviously, any charges are

6    prejudicial, but these types of charges I think are critical.

7    If he were just charged with the child pornography charges,

8    the prejudice is much lower when you add to that child sexual

9    abuse charges.

10        THE COURT:  Do you dispute that the evidence related

11   to the other types of crimes would be admissible in either

12   case assuming I severed?

13        MR. MILES:  We do.  This is what is at issue in our

14   motions, the Rule 414 motion, and I think --

15        THE COURT:  So you do?  You envision a world in which

16   these counts are severed and the child pornography count is

17   being tried and there is no mention of the allegations

18   related to child sex abuse.

19        MR. MILES:  Either no mention -- that would be our

20   vision -- or even if there is some mention, we believe the

21   mention would not be as much as the government would be

22   permitted to go into if they were actually charged crimes.

23        THE COURT:  All right.  And then vice versa.  You are

24   trying the child sex abuse case, and you think the

25   surreptitious videotape charges don't get mentioned?

1          MR. MILES:  Yes, that is our position.

2          THE COURT:  Not other crimes evidence, none of

3     that --

4          MR. MILES:  That would be our position.  I don't know

5     how the Court would ultimately rule on that, but that would

6     be our position.

7          THE COURT:  Okay.  All right.

8          MR. MILES:  And there is always Rule 403 --

9          THE COURT:  Yes.

10         MR. MILES:  -- which is why things may not be

11    admitted.

12         I was saying earlier that the risk here and why it is

13    prejudicial is that Mr. Hillie's defense we think would

14    likely have to be tailored and different if he has to deal

15    with all these counts in one trial versus if they were

16    separated out.  In other words, he can't pursue as vigorously

17    the defense he may pursue on only the child pornography

18    counts on the one hand.

19         THE COURT:  But isn't that precisely because the

20    evidence is so compelling on one case versus the other?  He

21    can't pursue it not because they're inconsistent but because

22    they're so consistent that you are worried he is going to be

23    convicted if it is all tried together.

24         MR. MILES:  The point I'm making here is that it goes

25    back to the inconsistent defenses.  Our defense we don't

1    believe would be exactly the same.  If he were to just have

2    the child pornography counts in one trial, he will make the

3    choice, do I have the exact same defense I would if these

4    counts were tried separately.

5            THE COURT:  Isn't the only problem, isn't the

6    cognizable problem, the thing I'm supposed to care about in

7    this moment related to your argument whether he has to make

8    inconsistent defenses?  It is one thing to say that he would

9    go in a certain direction to a certain degree if these were

10   tried separately but he wouldn't go as far as he would

11   otherwise go.  I need to understand whether your point is

12   that, in trying these together, he is making two different

13   arguments in defense --

14           MR. MILES:  What I'm saying --

15           THE COURT:  -- that conflict with one another so that

16   it is impossible for him to sit there and be the same person

17   who is being tried for these different things.

18           MR. MILES:  I'm not going as far as the inconsistent

19   defenses would make it be impossible, but it would --

20           THE COURT:  Do you see what I mean, though?  I hear

21   you.  We have in nature potentially two different kinds of

22   trials, right, in terms of the evidence that is being focused

23   on, in terms of how you might be arguing it?  I feel like I

24   understand that.  The question is whether they are

25   irreconcilable, whether they are inconsistent or whether it

1    is just that now we have to deal with two different kinds of

2    evidence and two different situations.

3              MR. MILES:  I use the word "inconsistent" because I

4    believe it takes it further than the cases.  The cases talk

5    about embarrassing and confounding.  For purposes of what the

6    cases have found that the Court needs to determine is whether

7    they're embarrassing or confounding by making separate

8    defenses, I think is the language they use.

9              THE COURT:  All right.

10             MR. MILES:  And what I was trying to say is that the

11   choice -- and I can't say that this choice has been made at

12   this point -- but it is a choice that he has to make whether

13   he'll present embarrassing and confounding separate defenses,

14   on the one hand, which would be the defense he would present

15   at each set of trials if they were tried separately, or on

16   the other hand, he may have to tailor his defense to some

17   degree and offer a different defense, and that is not fair

18   either, and that is prejudicial because he can't exercise his

19   full right to a trial because he can't have the defense he

20   wants and argue it as vigorously as he wants if he chooses to

21   not have the separate defenses.

22             And repeating the other point I will end with, and I

23   can't underestimate the point I made earlier about one set of

24   cases is going to involve the cross-examination of two young

25   witnesses, one I believe is still a child, the other is just

1    barely an adult that will be describing things that she

2    claims happened to her as a child.  As the Court is well

3    aware, there are all kinds of issues presented with

4    cross-examining those kind of witnesses and how the jury

5    would react to that and that they would not hear if these

6    counts were severed in the way we believe they should be

7    severed.

8           THE COURT:  To whose benefit?  You mean hers?  Or to

9    his?  Or what?

10          MR. MILES:  I'm sorry?

11          THE COURT:  I'm sorry.  I'm trying to understand the

12   point.  So there are problems with examining certain kinds of

13   witnesses.

14          MR. MILES:  The prejudice to the defendant,

15   cross-examining child witnesses in a case involving sexual

16   abuse is not -- the things that have to be done in

17   cross-examination are things that run the risk of potentially

18   infuriating the jury.

19          THE COURT:  So, fine.  How does that impact a jury

20   who is looking at these other charges that are similar in

21   character?  Is your point that because they're so infuriated

22   by the child sex abuse charges and the way in which they are

23   being litigated they cannot fairly evaluate the child

24   pornography charges?

25          MR. MILES:  It's a few things.  That argument I made

1    earlier.  Now I'm arguing that they would be infuriated at

2    the whole defense team and be angry at the defense team for

3    the way --

4         THE COURT:  And therefore could not fairly evaluate

5    the evidence related to the child pornography?  We're still

6    at severance.  I'm trying to understand.

7         MR. MILES:  That prejudice that may happen with

8    respect to -- what may happen with respect to the child abuse

9    charges he would not experience with regard to the child

10   pornography charges if the counts were severed.

11        THE COURT:  Isn't it speculative that it is going to

12   happen, to begin with?

13        MR. MILES:  It is speculative, but I think it is

14   reasonably likely to happen, but it is speculative.  I can't

15   assure the Court that it will happen, but I think it is

16   reasonably likely to.

17        THE COURT:  Wouldn't that just taint the entire case?

18   Isn't your argument we should dismiss the charges because we

19   can't try him fairly because of the nature of this?

20        I don't understand why this is a severance argument.

21   You see what I'm saying?  You're saying we have to be

22   vigorous in our defense of him with regard to certain charges

23   but not others.  And I say, so maybe the others will be fine.

24   What do you mean?  It means that a jury won't be able to

25   fairly evaluate the other charges just because you were

1    vigorous with regard to --

2         MR. MILES:  When I meant vigorous with our defense, I

3    didn't mean vigorous with regard to some charges than others.

4    I mean if all sets of counts are tried together --

5         THE COURT:  Yes.

6         MR. MILES:  -- Mr. Hillie may strategically choose,

7    in order to avoid having separate defenses, he may

8    strategically choose to have an offense that doesn't appear

9    as separate or conflicting so it looks more consistent.  And

10   if he makes that choice, he may abandon a defense that he

11   would have had had these counts been charged separately.

12        THE COURT:  In your reading of the cases, defendants'

13   strategy with regard to how they respond is a valid thing for

14   the court to consider with respect to severance?

15        MR. MILES:  If it prejudices Mr. Hillie, and I think

16   it will, and I think it will be undue prejudice.

17        THE COURT:  Because he will have to abandon one of

18   his potential defenses?

19        MR. MILES:  Defenses.

20        THE COURT:  Something he could have argued if we

21   separated the cases?

22        MR. MILES:  Yes.  Therefore, I would argue, he is not

23   -- that is where I get to he will not be able to vigorously

24   defend himself or as vigorously defend himself.

25        THE COURT:  Do you have a case where the court has

1    ever held severance in that way?

2            MR. MILES:  No, I don't, Your Honor.  It is about

3    prejudice.  I'm explaining to the Court the variety of ways

4    in which Mr. Hillie will be prejudiced if these counts are

5    not severed.

6            THE COURT:  Okay.  Let me hear from the government on

7    severance.

8            We're going to take a break.  10 minutes.  Thank you.

9            (Recess taken from 4:13 p.m. to 4:25 p.m.)

10           THE COURT:  All right.  We are back, and I think we

11   were at the point of hearing from Mr. Okocha.

12           Are you going to argue this, the response to

13   Mr. Miles' severance argument?

14           MR. OKOCHA:  Thank you, Your Honor.  I will be brief.

15           I just would like to address where Mr. Miles left off

16   regarding the prejudice and note that when it comes to

17   prejudice in severance there has to be a specific and

18   compelling reason to grant severance when a case is properly

19   joined.  There is not a specific reason that was mentioned by

20   Mr. Miles.  I understand that he does not want to disclose

21   his defense to the government, but he still needs to

22   articulate a specific reason.

23           THE COURT:  He gave a reason.  He just couldn't, he

24   said, fill in all of the lines.  His reason was I'm going to

25   have to abandon, my client is going to have to abandon a

1          defense that I would otherwise make.

2                  Why is that not a sufficient reason?  As opposed to a

3          showing, right?  He has given us the reason.  He hasn't made

4          the demonstration because he doesn't want to tell you what he

5          is exactly talking about, but the reason he says is I am not

6          going to be able to make a defense that I would otherwise

7          make.

8                  MR. OKOCHA:  I would argue that he could provide that

9          to the Court ex parte, and the Court would have to say that

10         is a valid reason, that reason is specific and valid.  But

11         moreover, I think it is not compelling.  In many situations

12         where there is additional evidence, you have to switch up

13         your defense, whether the evidence would be from a different

14         count or from evidence that would support the count that is

15         within the same charge.  And in this case, Your Honor, there

16         is additional evidence to support each one of the categories

17         of counts.  In the sexual abuse charge, you have additional

18         evidence of videos taken of the plaintiff.

19                 THE COURT:  But he says they don't automatically come

20         in.  He is objecting --

21                 MR. OKOCHA:  Yes, Your Honor.

22                 THE COURT:  -- to the surreptitious videotaped

23         evidence coming in on the sexual abuse counts.  I know that

24         is a whole another government motion but maybe give me the

25         highlights of why you think he is wrong about that.

1          MR. OKOCHA:  Yes, Your Honor.  It comes in

2     automatically, but it comes in due to --

3          THE COURT:  Hold on one second.

4          Do you need water?

5          THE DEFENDANT:  No, no, I'm okay.

6          THE COURT:  All right.

7          MR. OKOCHA:  With regards to the child pornography

8     evidence, it would come in in sexual abuse counts in large

9     part due to Rule 414.  It is an evidentiary rule that allows

10    evidence of child molestation into other counts related to

11    child molestation.  Your Honor, here, sexual abuse, according

12    to the statute, is 414(d).  Sexual abuse of the two children,

13    J.A. and J.A.A., is an act of child molestation.  In

14    addition, the production of child pornography is also an act

15    of child molestation.  And therefore, due to Rule 414, they

16    are mutually admissible as evidence in a trial for the other.

17    So that would be automatically entered in.

18          In addition, if you look at Rule 404(b), in that

19    statute, they could be entered in as other crimes evidence.

20    So in Rule 404(b), they could show, for the sexual abuse

21    charges, the child pornography could be evidence of intent,

22    and that is a permissible reason to enter in evidence

23    according to Rule 404(b).

24          THE COURT:  You would say intent to what?  So just

25    walk me through.  I'm sorry.

-64-

1          MR. OKOCHA:  Sure, Your Honor.

2          THE COURT:  Rule 414 is about similar crimes in child

3     molestation cases which allows you to bring in evidence of

4     other child molestation.

5          MR. OKOCHA:  Yes, Your Honor.

6          THE COURT:  My question is, assuming child

7     pornography is not molestation as defined here, which is

8     defined as contact, etc., why do you think that evidence of

9     the child pornography counts under 414 with respect to the

10    child sexual abuse counts?

11         MR. OKOCHA:  Your Honor, it is my understanding there

12    is a subset of Rule 414 that says that certain crimes within

13    a certain statutory area are allowed to be admitted.  I think

14    it is 414(d), one of the subsets, 414(d)(2), I believe,

15    statutes that are pertinent to child pornography.  So in that

16    instance, Your Honor, I believe because the production of

17    child pornography would fall into the subset of 414(d)(2).

18         THE COURT:  You're saying it is cross referenced

19    specifically?

20         MR. OKOCHA:  Yes, Your Honor.

21         THE COURT:  It would come in under 414(d)(2).

22         All right.  So that is if we have the child sexual

23    abuse trial going on and we severed --

24         MR. OKOCHA:  Yes.

25         THE COURT:  -- you would say the child pornography

1  counts come in.  What about the other way around?

2          MR. OKOCHA:  It would work the same way.  As Your

3  Honor noted, it talks about contact as one of the other

4  subsets where there is touching, contact between the

5  child's --

6          THE COURT:  Yeah, but the predicate offense in this

7  statute is a child molestation crime.

8          MR. OKOCHA:  Yes, Your Honor.

9          THE COURT:  So if we're starting with the child

10  pornography crime, this statute or this rule doesn't apply;

11  right?

12          MR. OKOCHA:  My understanding, Your Honor, is that it

13  would apply because 414(d)(2) defines child molestation

14  offense, and again, the child pornography is within the

15  umbrella --

16          THE COURT:  I see what you're saying.  So if this is

17  a child molestation, if it is a child pornography offense --

18          MR. OKOCHA:  Both sexual abuse and the child

19  pornography are under the umbrella of child molestation and,

20  therefore, would be mutually admissible because they're

21  evidence according to the statute.

22          THE COURT:  Mr. Miles says, but you wouldn't be able

23  to go into the circumstances to the same degree as if you

24  were trying them together.  Even if you could admit the

25  evidence one against the other when they are tried

1    separately, when tried together, you're not going to be able

2    to put on a whole case about the other thing, he says.

3           MR. OKOCHA:  Your Honor, I don't know why that would

4    be the case.  I would be interested in learning more about

5    what specific areas the government would not be able to put

6    in.  But my understanding is they would be able to put in the

7    circumstances of both children because it does not specify

8    that it has to be the same child.  So J.A. and J.A.A. would

9    both be relevant.

10           THE COURT:  And you would go into it fully having

11    them on the stand or you could, you say?

12           MR. OKOCHA:  I can't imagine why we would not be able

13    to, Your Honor.

14           THE COURT:  We're in a duplicative rule because we

15    are having two trials that are identical.

16           MR. OKOCHA:  Yes, Your Honor.  Virtually identical in

17    substance.

18           And then, lastly, Your Honor, I would like to note,

19    when it comes to prejudice, I think a good case for the Court

20    to consider would be *Pindell*, 336 F.3d 1049, where the Court

21    found in that case there were 27 separate counts that were

22    both local and federal offenses with 13 separate victims that

23    included an assortment of robbery offenses, and I believe --

24    I'm not a hundred percent sure -- there might also have been

25    sexual assaults associated with those offenses.  In that

1    case, the court found that there was not prejudice, and it

2    was fine, it was okay to keep those 27 local and federal, 13

3    different victims, cases or charges together.

4              THE COURT:  All right.

5              MR. OKOCHA:  Thank you, Your Honor.

6              THE COURT:  Thank you.

7              Mr. Miles, Mr. Okocha points to Rule 414.  I don't

8    know if you have had a chance to look at it.  This is

9    Evidence Rule 414.  It is suggesting, at least as he reads

10   it, that the evidence with regard to the other crime is

11   coming in in any event in the other case even if we sever.

12             MR. MILES:  I understand their argument.

13             THE COURT:  What are your thoughts on that?

14             MR. MILES:  My initial thought -- and I may be

15   mistaken -- this is the subject of their 414 motion, but upon

16   further thought I'm not sure -- there may be other facts

17   they're trying to get in.  That was my initial thought.

18   Maybe I should ask.

19             They have a motion to try to get certain evidence --

20             THE COURT:  Yes, which we haven't addressed yet.

21             MR. MILES:  My initial thought was this was part of

22   it.

23             MS. SUTTENBERG:  The government did file a Rule

24   404(b), 413, 414 motion, which we addressed the last time we

25   were here.  I think there were three prior incidents the

1    government wanted to introduce, and one of them involved

2    sexual exposures to the younger victim, J.A.  The government

3    never filed a 404(b), 413, 414 motion with regard to the

4    counts charged because they're charged currently.

5         THE COURT:  Right.  But you do hear him suggesting

6    that if these cases were severed he would object to bringing

7    in the evidence one against the other?

8         MS. SUTTENBERG:  Correct.  If the cases had been

9    severed, the government would have filed a 404(b), 413, 414

10   motion to introduce each aspect into the other trial.

11        THE COURT:  Got it.  So we haven't really fleshed

12   this out before, Mr. Miles.

13        MR. MILES:  Understood.  Now I'm more clear on where

14   we stand on that.

15        THE COURT:  Right.

16        MR. MILES:  Well, we would file an opposition.  I'm

17   not prepared to specifically address 414, but I can tell you,

18   I assure you in our opposition we would raise 404, 403.

19        THE COURT:  Right.

20        MR. MILES:  My point is that it is not guaranteed

21   that this evidence would come in.  That's point number one.

22        THE COURT:  If it comes in, then it seems to me that

23   instead of being able to argue that you would abandon your

24   defenses if they were tried together, we're really in a world

25   in which you never had a defense that you could make

1    separately because the evidence with regard to all of these

2    crimes is coming in in either case.  In other words -- let me

3    just put it a different way -- if we sever the way that you

4    have proposed and the evidence of the other crimes comes in

5    pursuant to Ms. Suttenberg's motion, then you still wouldn't

6    be able to make the defense that you're talking about;

7    correct?

8         MR. MILES:  Not necessarily.  But I will start by

9    saying, if we sever, like we suggest, and this evidence comes

10   in anyway, the government has, to some degree, a point

11   because we're going to hear the evidence anyway, and I get

12   that.  However, as I said -- well, I don't want to -- we

13   would oppose, and it may or may not come in.  We don't know

14   at this moment whether it will come in.

15        Number two --

16        THE COURT:  Isn't it up to you to demonstrate that it

17   wouldn't?  I have to make a call on severance, and I think it

18   is your burden.  So Mr. Okocha has talked about an in camera

19   discussion.  I'm trying to avoid that by getting to the heart

20   of it --

21        MR. MILES:  Understood.

22        THE COURT:  -- which sounds to me like it turns on

23   whether or not these cases are going to have totally separate

24   universes if we sever them.  If they're not, then I don't

25   understand how you can say you're prejudiced.  Each jury is

-70-

1    going to hear all the evidence anyway, and it seems like we

2    would all be prejudiced by having to do this twice.

3             MR. MILES:  Your Honor, I think it is very different

4    if he is charged with offenses because we don't have to have

5    a defense to 404(b) evidence.  He is not charged with the

6    404 --

7             THE COURT:  No, but the argument for severance is the

8    fact that if they heard the evidence and the way you would

9    have to be responding to it, they would get angry and not be

10   able to fairly assess your case.

11            MR. MILES:  That is one of our arguments.  If they're

12   going to hear it anyway, they're going to hear it anyway.  If

13   the Court severs, like we ask, and they bring in the other

14   set of charges under 414 or 404(b), we do not have to defend

15   against the 404(b) evidence, we could ignore it because he is

16   not charged with that.

17            THE COURT:  Why can't you ignore it if they're

18   together?

19            MR. MILES:  Because he is charged with it.  We have

20   to address it.  We don't have to present evidence, of course,

21   but we have to defend against that charge because if the jury

22   finds that he did that he's convicted.  If the jury finds

23   that he committed the 414 evidence or the 404(b) evidence, he

24   is not necessarily convicted.  That is a piece of evidence.

25   They could find he committed the 414 acts and the 404(b)

1        acts, but then they don't necessarily have to convict if they

2        make that finding.  How we deal with 404(b) evidence --

3                THE COURT:  You're saying that you could make your

4        otherwise abandoned defense in a world in which we have

5        severed the cases, all the evidence comes in, you would still

6        be able to make the defense that you would abandon if you

7        tried them together?  I don't understand that.  Because I

8        thought the inconsistency had to do with these two types of

9        evidence being in the same trial.  If they're all there

10       together, whether you have to actually defend or not, it

11       would seem to me your strategy either changes or it doesn't.

12       And now I'm hearing you sort of saying that it doesn't, in

13       which case we should try it together and not have to worry

14       about it.

15               MR. MILES:  I'm not saying that.  First, I want to be

16       clear that some of the detail that we're dealing with here is

17       the type of detail that may not be settled until the middle

18       of trial, until certain evidence is coming in, until to some

19       extent that is possible.

20               THE COURT:  How am I supposed to make the severance

21       decision?

22               MR. MILES:  That's why I put that out there.  There

23       is a challenge in that regard.  However, the point I want to

24       make is that how we defend against charged offenses or

25       conduct or facts that come in in connection with charged

-72-

1    offenses may be different than how we deal with it if it is

2    coming in as 414 or 404(b).

3              THE COURT:  All right.

4              MR. MILES:  That was the only issue I was going to

5    address.

6              THE COURT:  All right.  Let me do this.  I'm going to

7    quickly address the first motion that you argued today, which

8    is the motion to suppress tangible and electronic evidence.

9    I have now heard arguments on this motion at two separate

10   hearings, the first of which included the presentation of a

11   witness and other evidence.  Based on the Court's

12   consideration of the arguments and the evidence that was

13   previously presented and the arguments that are made in the

14   parties' written briefs, it is this Court's decision that the

15   defendant's motion to suppress tangible and electronic

16   evidence will be denied.

17        Let me explain my reason by addressing each of the

18   challenges that the defendants have raised regarding the

19   sufficiency of the two search warrants and the manner in

20   which the search warrants were executed.

21        First of all, Mr. Hillie argues that both search

22   warrants were invalid because one of the several boxes on

23   each warrant that identifies what is to be searched, that is,

24   the boxes identifying whether it is a place or person or

25   vehicle or an object was not checked.  This Court finds this

1    argument to be easily disposed of.  There are three sets of

2    those same boxes on each of the two warrants.  On both

3    warrants, the first two of the three boxes were checked.  The

4    first warrant identifies the premises to be searched.  It

5    checks the premises box and gives the address of the

6    apartment and then also specifically identifies a pink laptop

7    computer and a black camera.  The issuing judge then also

8    checked the second box to indicate her agreement that there

9    was probable cause to believe that those items were located

10   on the premises of the apartment, and the warrant was signed

11   by the issuing judge.  All that was missing was a check mark

12   in the third set of boxes, which purportedly authorized the

13   executing officers to search, and either it is a premises, an

14   object, a vehicle, etc.

15          The second warrant was similar.  It identified the

16   objects, checking objects, to be searched as pink Dell

17   Inspiron laptop computer and a black and silver digital

18   camera.  And these were seized, had been seized during the

19   execution of the first warrant.  The issuing judge, who was a

20   different one than the first judge, checked the second box to

21   indicate her agreement that there was probable cause to

22   believe that those items contained evidence of sexual abuse

23   and signed the warrant form.  Again, all that was missing was

24   the check mark in the third set of boxes, which purportedly

25   authorized the executing officer to search the identified

1    objects for the listed evidence.

2            Under these circumstances, it appears that, at worst,

3    the failure to check one of the several boxes is a clerical

4    omission that was easily clarified by a reference to the rest

5    of the warrant and the underlying affidavits that were

6    included in the warrants.  In fact, the Court doesn't believe

7    you need the underlying affidavit.  The warrant is plain on

8    its face, both of them, with respect to whether they are

9    addressing premises or objects or persons or vehicles.

10   Courts have long held that a reviewing court may reference an

11   affidavit when the warrant contains an ambiguity or clerical

12   error, and it is well established that minor clerical errors

13   generally are not fatal to a search warrant.  Again, I don't

14   see these warrants as being ambiguous in any meaningful sense

15   even though that final box is not checked.  The failure to

16   check a box that relates to the area to be searched, when the

17   area is otherwise fully described elsewhere in the search

18   warrant and in the accompanying affidavit, is not an error

19   that is so patent that it should cause a reasonable officer

20   to believe that a search under that warrant would be

21   unlawful.  The only reasonable interpretation I say of either

22   warrant is that the search listed the Good Hope address, a

23   premises.  It does not matter that the actual premises and

24   the object boxes were not checked.  The second one listed the

25   objects.  And again, there was no confusion.  And in fact,

1    both warrants were ultimately executed within the bounds of

2    their clear intended scope.  The officers searched the

3    correct apartment, seized the pink laptop and camera and,

4    after searching that laptop, found the nude images.  Thus,

5    there is no legal or factual basis for the defendant to

6    maintain that the search warrants were deficient in this

7    regard.

8         The second search warrant related argument is that

9    the first warrant failed to describe the items to be seized

10   with sufficient particularity insofar as it merely described

11   a "pink laptop computer" and a "black camera."  This argument

12   is also easily dismissed.  The Fourth Amendment requirement

13   that warrants particularly describe things to be seized

14   ensures that the search will be carefully tailored to its

15   justification and will not take on the character of a

16   wide-ranging exploratory search of the kind that the framers

17   intended to prohibit.  Consequently, a warrant with an

18   indiscriminate sweep is constitutionally intolerable, and

19   will be held invalid as overly broad.  But in this case, the

20   warrant described a pink laptop and a black camera that is

21   capable of taking or storing photographs and is thus not

22   overly broad or constitutionally intolerable.  It is entirely

23   unlike the warrant at issue in the D.C. Circuit's recent

24   opinion in *United States v. Griffith,* which was an opinion

25   that was handed down just this year, 867 F.3d 1265.  There

the court struck down as overly broad a warrant that allowed

the seizure of "all electronic devices found in a residence,"

without regard to who owned the devices and any other

description and led to the seizure of six cellphones and one

tablet computer.  Unlike the warrant in Griffith, the instant

warrant was clearly not an unduly general description of the

objects seized that could have authorized law enforcement to

engage in a wide-ranging exploratory search.  This is

especially true because based on the limited information that

was then available to law enforcement, no more specific

description of the computer equipment was possible.  Indeed,

the Court in Griffith specifically noted that a broader sweep

may be allowed when a reasonable investigation cannot produce

a more particular description; for example, where police have

probable cause to seize a phone yet still lack specific

information about the phone's make or model.  In this Court's

view, that is precisely the circumstance presented here.

Hillie also argues that the affidavit offered in

support of the first search warrant did not establish

probable cause to seize the pink laptop because it was based

on stale and unreliable evidence and did not establish a

connection between the crimes charged and the evidence

sought.  These arguments apply both to the first and the

second warrant.  As a general matter, an issuing judge's

finding of probable cause is given great deference by

1    reviewing courts.  A judicial officer who is considering an

2    application for a search warrant must decide whether, given

3    all the circumstances set forth in the affidavit before him,

4    there is a fair probability that contraband or evidence of a

5    crime will be found in a particular place.  A Court reviewing

6    the propriety of the decision to issue a warrant inquires

7    only whether the issuing judge had a substantial basis for

8    concluding that probable cause existed.  And indeed, even if

9    a reviewing court would not have found probable cause in a

10   particular case, it must nevertheless uphold a warrant so

11   long as the issuing judge's determination was made consistent

12   with the minimal substantial basis standard.  As to

13   staleness, it is true that there was a substantial length of

14   time between an event that supported the issuing of the

15   warrant and the actual application.  However, that factor is

16   not controlling in this case, and courts also consider

17   factors such as the type of criminal activity alleged, the

18   characteristics of the suspect and the evidence sought, and

19   the nature of the place to be searched.

20          Another factor that weighs heavily against a finding

21   of staleness here is the nature of the crime alleged because,

22   as the Second Circuit recognized in a 2006 case called *United

23   States v. Irving*, "Images of child pornography are likely to

24   be hoarded by persons interested in those materials in the

25   privacy of their homes, and therefore, when a defendant is

1    suspected of possessing child pornography, the staleness

2    determination is unique."

3         The Sixth Circuit, too, has held that "Because the

4    child pornography crime is generally carried out in the

5    secrecy of the home and over a long period, the same time

6    limitations that have been applied to more fleeting crimes do

7    not control the staleness inquiry for child pornography."

8    That was in a case called *United States v. Paull* from the

9    Sixth Circuit in 2009.  Its logic is logic that this Court

10   finds persuasive, as have other courts, including the

11   District of Maryland.  There is a recent Maryland case that

12   reaches the same conclusion, *United States v. Sherr*,

13   400 F. Supp. 2d 843.

14        The fact that J.A.A. observed the images on a laptop

15   also weighs against the staleness of her statements.  There

16   is no question that due to the advent of computer technology

17   images of child pornography can have an infinite life span.

18   And although the defendant points out that the laptop may not

19   have been specifically and solely in Mr. Hillie's possession,

20   it was a family laptop, and there was information in the

21   affidavit that indicated that everybody used it.  The fact

22   that it was a family laptop has a kind of permanence that the

23   Court finds is sufficient to support an inference that the

24   evidence that was being searched for was still on the laptop

25   and that the laptop was still in the apartment.  Furthermore,

1    even if Mr. Hillie had deleted the files, it is likely that

2    they could nevertheless have been retrieved by a computer

3    expert, and in fact, they were in this very case.

4           Finally, as to reliability, based on a

5    totality-of-the-circumstances analysis, which permits a

6    balanced assessment of all the relative weights of various

7    indicia of reliability, this Court has no difficulty in

8    finding that the witness statements that led to the warrant

9    to seize the laptop and camera were sufficiently reliable to

10   support the issuing judge's finding of probable cause.  As a

11   victim and eyewitness to the alleged crimes, J.A.A.'s

12   testimony was presumptively reliable and valid under well

13   established case law in this circuit.  I'm referring to

14   *United States v. Anderson,* 533 F.2d 1210, which is a 1976

15   case from the D.C. Circuit.

16          Furthermore, many of J.A.A.'s statements concerning

17   the alleged sexual abuse were corroborated by another

18   witness, J.A., which lends further indicia of reliability to

19   J.A.A.'s claim that she observed nude photos of herself on

20   the laptop.

21          As to nexus, the defendant has suggested that there

22   was no connection between the crime mentioned in the

23   affidavits, child sexual abuse, and the search of the laptop,

24   and the Court finds that contention puzzling.  J.A.A. was the

25   alleged victim of the sexual abuse that officers were

1    investigating, and she maintained that she had seen naked

2    pictures of herself on the laptop that was the subject of the

3    search.  This Court thinks it is obvious that nude images of

4    J.A.A., who was a minor in the defendant's possession, would

5    have been relevant to whether or not he sexually abused her

6    while he was living with her, which is the time frame in

7    which the images were created.  And this Court is not alone

8    in this conclusion.  The Second Circuit in 2006 made a

9    similar observation in a case called *United States v. Brand*,

10   467 F.3d 179.

11         There is also a significant connection or sufficient

12   connection between the laptop and the defendant.  Again, to

13   the extent that the nexus argument has taken on that

14   character, the Court says that the fact that the affidavit

15   says that everybody used the laptop and that Mr. Hillie lived

16   in the apartment was enough to create a nexus between the

17   laptop, the naked pictures that were allegedly on the laptop,

18   and Mr. Hillie.

19         In light of the foregoing, this Court finds that

20   there was a substantial basis for the issuing judges who

21   signed the two search warrants to believe that there was a

22   fair probability that evidence would be found in the places

23   and items to be searched.  I will also note that even if

24   probable cause were somehow lacking, the executing officers

25   were entitled to rely in good faith on the warrant and,

1    therefore the resulting evidence would not have been

2    suppressed in any event.

3          Let me go on to Hillie's next search warrant

4    argument, which is that the second warrant was improperly

5    executed because it did not explicitly authorize an intrusive

6    forensic examination of the laptop's hard drive, including

7    any deleted files.  This Court finds that this argument is

8    also without merit.  The warrant authorized the search for

9    "evidence of sexual abuse to include digital files, records,

10   and photographs stored on the laptop," including "any

11   photographs or images of the victims, whether stored

12   electronically, magnetically or otherwise."  Thus, the

13   warrant clearly identified the evidence that the officers

14   were looking for, digital images of the victims, and digital

15   files are stored on the hard drive of the computer.  The fact

16   that the warrant did not expressly use the word "hard drive"

17   or say that deleted files could be searched is immaterial.

18   It is not as though the detectives were authorized to search

19   for fraudulent financial ledgers and instead began hunting in

20   electronic files labeled photos for videos and images that

21   might reveal evidence of other crimes.  And indeed, the

22   defendant has not identified anything improper with respect

23   to the warrant as it relates to the Fourth Amendment's

24   requirement that a warrant describe the things to be seized

25   with sufficient particularity to prevent a general

1    exploratory rummaging through one's belongings.

2         I also note that the rule that the defendant wants

3    this Court to impose seems to be an impractical one because

4    precise limitations on the searches of digital files cannot

5    be done.  As the Seventh Circuit has observed, "Unlike a

6    physical object that can immediately be identified as

7    responsive to the warrant or not, computer files may be

8    manipulated to hide their true contents, and the images to be

9    located can be essentially anywhere on the computer."

10        Finally, Mr. Hillie argues that the first warrant was

11   improperly executed because law enforcement did not knock and

12   announce before entering the apartment.  During the

13   November 26th motion hearing in this case, a witness for the

14   government testified before this Court that law enforcement

15   did, in fact, knock and announce before entering the

16   apartment.  This Court has reviewed that officer's testimony

17   and the Court's own notes at the time of the hearing and

18   finds the officer to be credible in her testimony, entirely

19   consistent with the established facts of this case.

20        The government has also represented that after

21   knocking and announcing their presence, in accordance with

22   both the District of Columbia and federal statutes, law

23   enforcement did not breach the door of the Good Hope Road

24   apartment until occupants of the apartment refused to open

25   it.  At that point, they were authorized to breach per

1        18 U.S.C. 3109.  These representations appear to be

2        unrebutted, and they also underscore the officer's testimony

3        that the knock-and-announce requirement was satisfied.

4               I will say further that even if the

5        knock-and-announce requirement had been violated, the

6        evidence would still not be excluded under controlling

7        precedent from the Supreme Court and the D.C. Circuit.  As

8        the Supreme Court explained in *Hudson v. Michigan*, a 2006

9        case, the knock-and-announce rule is not an exclusionary

10       rule.  It protects different interests than one's interests

11       in preventing the government from seeing or taking evidence

12       described in a warrant.  Therefore, the evidence that the

13       officers discovered in this case would not have been excluded

14       in any event.

15              In light of the foregoing, the Court will deny

16       Mr. Hillie's motion to suppress tangible and electronic

17       evidence.

18              All right.  So that was the motion that we heard

19       today.

20              With respect to the motion to sever, let me say that

21       this Court is confounded to some degree by the arguments that

22       have been made here today to the extent that Mr. Hillie is

23       now contending that he would be prejudiced insofar as he

24       would have to abandon his defenses.  The Court had not

25       appreciated from his briefs and the prior discussion of this

1    argument that that is what his point was.  And it is an

2    interesting one.  However, based on consideration of the

3    various arguments that have been made in the parties' briefs

4    and the assertions that the Court has considered, the motion

5    to sever will be denied.  And let me explain my reasoning.  I

6    start with the applicable legal standard, and then I will

7    address the arguments that I understood Mr. Hillie to be

8    making, and I will try to respond to what has been said here

9    today.

10          The question of whether multiple criminal charges

11   should be joined together for trial or severed and tried

12   separately is governed by two different Federal Rules of

13   Criminal Procedure, Rule 8(a) and Rule 14(a).  Joinder is

14   governed by Rule 8(a).  Rule 8(a) provides that a single

15   trial for multiple offenses is permissible if the offenses

16   are of the same or similar character or are based on the same

17   act or transaction or are connected with or constitute part

18   of the common scheme or plan.

19          The D.C. Circuit has explained that this rule seeks

20   to promote judicial economy and has generally been construed

21   liberally in favor of joinder, and as long as only one

22   defendant is concerned, it permits joinder even if the

23   offenses are entirely unrelated to one another.  Of course,

24   joinder under Rule 8 is not infinitely malleable, and it

25   cannot be stretched to cover offenses which are discrete and

1    dissimilar and which do not constitute parts of a common

2    scheme or plan.  Those were quotes from a 1988 case of the

3    D.C. Circuit, *United States v. Richardson*, 161 F.3d 728.

4         With respect to severance, even where joinder of

5    offenses is otherwise proper, Rule 14(a) gives the Court

6    discretion to order separate trials of counts or provide any

7    other relief that justice requires if the joinder of offenses

8    in an indictment appears to prejudice a defendant.

9         With regard to whether joinder is proper in this

10   case, Rule 8(a) is not limited to crimes of the same

11   character but also covers those of similar character, which

12   means nearly corresponding, resembling in many respects,

13   somewhat alike or having a general likeness.  That was a

14   quote from the Eleventh Circuit in as case called *United*

15   *States v. Hersh*.

16        With these background principles in mind, this Court

17   concludes that the counts involving child pornography are of

18   a similar character as the counts involving child sexual

19   abuse in this case insofar as they both reflect allegations

20   of Mr. Hillie's repeated participation in the sexual

21   exploitation of minors and involve the extraordinary

22   mistreatment of children.  That is a quote from the *Hersh*

23   case.  And in this case, the same children are the victims

24   allegedly in the child abuse charges.

25        In the *United States v. Jass*, for example, the Second

1    Circuit held that charges of possession of child pornography

2    were properly joined with charges of sexual abuse of a minor

3    because the sexual abuse counts and the child pornography

4    counts were clearly of a similar character in that all counts

5    involved the sexual exploitation of children.

6         Other factors also weigh in favor of joinder.  Courts

7    consider, among other things, the temporal proximity of the

8    acts, the physical location of the acts, the identity of the

9    victims in assessing whether an indictment meets the same or

10   similar character prong of Rule 8(a).

11        Here, the victim and location of the acts clearly

12   overlap.  The victims are sisters who both lived with the

13   defendant in the same dwelling where all of the crimes

14   allegedly occurred.  The time frame in which Hillie allegedly

15   committed these offenses also overlaps insofar as the child

16   pornography crimes were allegedly committed from 2007 to 2012

17   and, with the exception of a single count, all the child

18   sexual abuse counts roughly spanned this same time period.

19        That is not the end of the matter, however, because

20   Hillie objects to joinder on prejudice grounds, and that

21   implicates Rule 14(a).  Notably and importantly, it is a

22   defendant's burden to establish the existence of prejudice in

23   support of a Rule 14 motion to sever counts that are

24   otherwise properly joined.  And importantly, the demonstrated

25   prejudice must be specific and compelling.  And that comes

1      from a D.D.C. case, this very court, *United States v. Edelin*,

2      118 F.Supp.2d 36.  Generally, severance is appropriate only

3      if there is a serious risk that a joint trial would prevent

4      the jury from making a reliable judgment about guilt or

5      innocence.  Furthermore, courts in this circuit have urged

6      district courts to grant severance sparingly, a D.C. Circuit

7      case, 2015, *United States v. Straker,* 800 F.3d 570, grant

8      severance sparingly.  And courts elsewhere have stated that a

9      defendant challenging a denial of severance carries an

10     extremely difficult burden.

11          Now, as has been mentioned by the defendant, the D.C.

12     Circuit has recognized three types of prejudice that can

13     justify severing multiple offenses.  They are the jury may

14     accumulate evidence of separate crimes, the jury may

15     improperly infer a criminal disposition and treat the

16     inference as evidence of guilt, and the defendant may become

17     embarrassed or confounded in presenting different defenses to

18     different charges.

19          Hillie has failed to demonstrate any of these

20     circumstances.  The mere fact that the indictment contains 17

21     separate counts does not require severance.  Mr. Okocha

22     mentioned, I believe, the *Pindell* case.  This Court has noted

23     it, as well, in terms of the fact that there were 27 separate

24     counts involving 13 separate victims, and that was not deemed

25     sufficient in the D.C. Circuit for severance.

1          Nor has Mr. Hillie demonstrated that the evidence to

2     be presented in support of one set of counts would be any

3     more inflammatory than the evidence presented for the other

4     set of counts.  To the contrary, as he suggested, a

5     reasonable jury likely would find both the evidence of the

6     sexual abuse and the evidence of child pornography very

7     inflammatory.

8          And Mr. Hillie has offered no support for the

9     contention that the evidence of child pornography would

10    somehow be more or less prejudicial or inflammatory than the

11    charge that he repeatedly molested the young daughters of his

12    girlfriend with whom he lived.

13         The Court is also not persuaded by Hillie's argument

14    that the joinder of counts will force him to present

15    different or contradictory defenses simultaneously.  The mere

16    fact that the defenses may be different demonstrates, far

17    from the fact that they are sufficiently contradictory to

18    warrant severance -- let me say that again.  Just because

19    they're different doesn't mean they are contradictory, and

20    that is what is necessary to warrant severance.  I think the

21    last exchange that we had really underscored this for the

22    Court, because to the extent that the Court were to sever

23    these counts and the evidence from each of the different

24    kinds of crimes was admitted into each of the trials, then it

25    becomes very difficult to see how Mr. Hillie's defenses would

1     have to change.  In other words, it seems to the Court that

2     whether we try these together or whether we try them

3     separately, Mr. Hillie may be in precisely the same position.

4     He may have had to change his defenses because of the nature

5     of all of these crimes together, but it is not the fact that

6     they are being tried together that is prejudicing him, at

7     least as far as this Court can tell based on the arguments

8     and statements that have been made here today and thus far.

9          Mr. Hillie has also failed to show that the child

10    pornography evidence would somehow confuse the jury when

11    considering the sexual abuse counts or vice versa.  In

12    addition, to the extent that there would be any such

13    confusion -- and this is important -- the Court can always

14    instruct the jury that the evidence related to each set of

15    counts can be considered only insofar as it relates to those

16    counts.  Courts have routinely held that limiting

17    instructions are adequate to mitigate any prejudice from the

18    joinder of counts.  I repeat again that it is the defendant's

19    burden to make this demonstration, and the Court has

20    determined that it has not done so.  The defense has not done

21    so in the context of this motion at this time.

22          In light of the foregoing, the Court will deny

23    Mr. Hillie's motion to sever Counts 1 through 7 from Counts 8

24    through 17.

25          All right.  Let me figure out where we are.  I think

1    we still have a motion to suppress identification evidence,

2    the motion to dismiss count 3, and the motion to dismiss

3    Counts 1 through 7, and the motion to dismiss statements.

4           Mr. Miles, maybe you can double-check in terms of

5    what is still outstanding.  We have the government's motion,

6    but I'm setting that aside right now.  I'm just talking about

7    defense motions.  I think we're still looking at

8    identification evidence, count 3, dismissing Counts 1 to 7,

9    which is the big one, right, and the motion to suppress

10   statements.

11          MR. MILES:  That's four, right.

12          THE COURT:  I have four.

13          MR. MILES:  I think that's right.

14          THE COURT:  Is that right?

15          MR. MILES:  Motion to dismiss Counts 1 through 7,

16   motion to dismiss count 3, statements and identification

17   evidence.

18          THE COURT:  Yes.

19          MR. MILES:  Yes, I agree.

20          THE COURT:  All right.  I am mindful of the time.

21   Let me quickly tell you that I am also in a position to

22   address your motion to suppress the ID evidence.  Defense

23   counsel argued this at the first hearing.  The sole argument

24   made was the suggestibility or suggestiveness of the ID.

25   During the hearing which took place in November, the

1    government presented witness testimony that talked about that

2    presentation, and based on the consideration of those, the

3    arguments, the evidence, and the briefs, that motion will

4    also be denied.

5          The admissibility of ID evidence is governed by

6    fairness, as required by the due process clause.  Due process

7    concerns arise only when the law enforcement officer's use of

8    an ID procedure is both suggestive and unnecessary.  When

9    ruling on such a motion, the Court has to determine whether

10   the ID procedure is impermissibly suggestive.  But even if it

11   is found to be improperly suggestive, it is not to be

12   excluded if under the totality of the circumstances the

13   identification was sufficiently reliable to preclude a very

14   substantial likelihood of irreparable misidentification.  In

15   light of this two-step inquiry, courts considering a motion

16   to suppress ID evidence generally place the burden first on

17   the defendant to demonstrate that the ID procedure was

18   impermissibly suggestive, and then if the defendant meets

19   this burden, the government bears the burden of demonstrating

20   under the totality of circumstances that a challenged

21   identification is sufficiently reliable to permit an in-court

22   identification.

23         As to the second part of that inquiry, factors to be

24   considered include the opportunity of the witness to view the

25   criminal defendant at the time of the crime, the witness's

1    degree of attention, the accuracy of the prior description,

2    the level of certainty demonstrated at the confrontation, and

3    the time between the crime and the confrontation.

4          With those standards in mind, this Court concludes

5    the defendant has failed to meet his burden to show that the

6    two identifications were impermissibly suggestive.  First of

7    all, the defendant has offered nothing but conclusory and

8    unsupported statements about the suggestive nature of the

9    identifications in question and fails to cite a case where an

10   identification such as the ones presented has been

11   suppressed.

12         Second, and perhaps most important in this Court's

13   view, the defendant has failed to demonstrate that what

14   happened here was even an identification in any meaningful

15   sense.  The government's witness said that the photograph

16   presented here was a "confirmation photograph" as

17   distinguished from an identification photograph, and this

18   Court wholeheartedly agrees.  The two alleged victims had

19   known and lived with Mr. Hillie for years, and the officers

20   did not show the picture to the two girls to assist the

21   officers in determining which or how many possible people had

22   allegedly abused these children any more than police would

23   need to show a spouse complaining of domestic violence many

24   photographs of different people in order to identify the

25   husband or wife who perpetrated the alleged crime.  It is

1    preposterous to think that a domestic abuse victim in that

2    circumstance would have to identify their spouse in the

3    context of a lineup or that the officers could not show a

4    single picture of the alleged perpetrator to confirm that

5    they had the right individual in mind, and yet that is

6    precisely what defense counsel seems to be arguing here.

7         Furthermore, even if the defendant had met his burden

8    of showing suggestiveness, the totality of the circumstances

9    here demonstrate that the identification was still

10   sufficiently reliable to conclude a likelihood of irreparable

11   misidentification.  These circumstances include the fact that

12   the victim, again, lived with the defendant several years,

13   including during the period of time when the crimes allegedly

14   occurred.  The victims were clearly paying attention when the

15   defendant allegedly sexually abused them, and the victims

16   each identified the defendant by name before and after

17   viewing the confirmatory photograph.

18        While courts have held that identification arising

19   from a single photograph display may be viewed with suspicion

20   generally, in circumstances such as this where the witness

21   has had an opportunity to observe the defendant before making

22   the identification, courts in numerous circuits, including

23   this one, have overwhelmingly held that such identifications

24   are acceptable.

25        This Court, therefore, will deny Mr. Hillie's motion

1    to suppress identification evidence.

2           All right.  So now we're down to three.  I think what

3    we will do, let me tell you that I intend to write on your

4    motion to dismiss Counts 1 to 7.  That one, obviously, is a

5    very significant effort.  The Court previously heard

6    arguments on that motion at the August 2017 hearing, the most

7    recent hearing, and a written opinion which fully lays out my

8    reasoning will be forthcoming, but I do understand that the

9    parties need to prepare for trial.  So I will announce at

10   this time, based on my consideration of the arguments

11   presented, that that motion, too, will be denied.  You will

12   get a full written description as to why, but I want you to

13   know that we will be moving forward to trial on all of the

14   counts unsevered.  We will be going forward on the severed

15   counts.  I'm not going to dismiss Counts 1 through 7.  You

16   will get a written opinion about that.  I'm reserving on the

17   duplicative, which is count 3, and the motion to suppress

18   statements.  I can rule on those orally at a later time,

19   maybe at the time that we do our pretrial conference.  All

20   right?

21          So right now I have 51 and 21 outstanding and an

22   opinion forthcoming on 50.  I was talking about the ECF

23   numbers.  All right.

24          Okay.  Thank you for your patience.  I was trying to

25   get through as much as we could do today.

1          You have a joint pretrial statement coming that I

2     think should not be implicated or affected by the outstanding

3     matters that we still have.  Also, given that these motions

4     are still pending, I think that the speedy trial clock

5     continues to be tolled.  If either of you think differently,

6     please let me know.  But it is the Court's view that I don't

7     need to make speedy trial findings at this time.

8          MR. MILES:  We agree with the Court.

9          MS. SUTTENBERG:  The government agrees.

10         THE COURT:  All right.  Anything else that we need to

11    address at this moment?

12         MR. MILES:  We have a deadline, not tomorrow, but the

13    following Friday --

14         THE COURT:  Yes.

15         MR. MILES:  -- with regard to jury instructions and

16    voir dire.  We believe we can meet the deadline, but if we

17    had the weekend and they were due on Monday, we would be a

18    lot more comfortable.

19         THE COURT:  All right.  That is fine.

20         MR. MILES:  Thank you.

21         THE COURT:  You're welcome.

22         I will grant the defendant's oral motion for the

23    extension of the deadline for the joint pretrial statement.

24    It will be due on Monday rather than next Friday.

25         MR. MILES:  Thank you.

96

1          MS. SUTTENBERG:  Thank you, Your Honor.

2          THE COURT:  Thank you.

3               (Proceedings adjourned at 5:24 p.m.)

4

5

6                    *  *  *  *  *

7

8          CERTIFICATE OF OFFICIAL COURT REPORTER

9

10          I, Patricia A. Kaneshiro-Miller, certify that the

11     foregoing is a correct transcript from the record of

12     proceedings in the above-entitled matter.

13

14

15     /s/ Patricia A. Kaneshiro-Miller        March 20, 2018
       -----------------------------------     ---------------------
16     PATRICIA A. KANESHIRO-MILLER                      DATE

17

18

19

20

21

22

23

24

25

1

## /

**/s** [1] - 96:15

## 1

**1** [8] - 20:14, 43:4, 89:23, 90:3, 90:8, 90:15, 94:4, 94:15
**10** [4] - 9:19, 14:4, 17:13, 61:8
**1049** [1] - 66:20
**118** [1] - 87:2
**12** [1] - 47:3
**1210** [1] - 79:14
**1265** [1] - 75:25
**13** [3] - 66:22, 67:2, 87:24
**13th** [1] - 2:13
**14** [4] - 49:16, 49:18, 49:22, 86:23
**14(a** [1] - 85:5
**14(a)** [2] - 84:13, 86:21
**16-030** [2] - 1:5, 2:4
**161** [1] - 85:3
**17** [8] - 43:6, 47:2, 50:5, 50:17, 50:21, 53:24, 87:20, 89:24
**179** [1] - 80:10
**18** [1] - 83:1
**1976** [1] - 79:14
**1988** [1] - 85:2

## 2

**2** [1] - 41:17
**20** [1] - 96:15
**20001** [1] - 1:22
**20004** [1] - 1:18
**2006** [4] - 49:2, 77:22, 80:8, 83:8
**2007** [1] - 86:16
**2009** [1] - 78:9
**2011** [2] - 18:8, 18:17
**2012** [1] - 86:16
**2014** [1] - 18:9
**2015** [1] - 87:7
**2017** [2] - 1:8, 94:6
**2018** [1] - 96:15
**202** [1] - 1:23
**20530** [1] - 1:15
**21** [2] - 1:8, 94:21
**26th** [1] - 82:13
**27** [3] - 66:21, 67:2, 87:23
**2:38** [1] - 2:2
**2d** [1] - 78:13

## 3

**3** [6] - 20:9, 20:11, 90:2, 90:8, 90:16, 94:17
**3109** [1] - 83:1
**333** [1] - 1:22
**336** [2] - 49:2, 66:20
**354-3243** [1] - 1:23
**36** [1] - 87:2

## 4

**400** [1] - 78:13
**403** [3] - 49:21, 55:8, 68:18
**404** [2] - 68:18, 70:6
**404(b** [11] - 63:18, 63:20, 67:24, 68:3, 68:9, 70:5, 70:14, 70:15, 70:23, 70:25, 71:2
**404(b)** [2] - 63:23, 72:2
**413** [3] - 67:24, 68:3, 68:9
**414** [17] - 54:14, 63:9, 63:15, 64:2, 64:9, 64:12, 67:7, 67:9, 67:15, 67:24, 68:3, 68:9, 68:17, 70:14, 70:23, 70:25, 72:2
**414(d** [1] - 64:14
**414(d)** [1] - 63:12
**414(d)(2** [2] - 64:14, 65:13
**414(d)(2)** [2] - 64:17, 64:21
**455** [1] - 49:2
**467** [1] - 80:10
**4700A** [1] - 1:21
**4:13** [1] - 61:9
**4:25** [1] - 61:9

## 5

**50** [1] - 94:22
**51** [1] - 94:21
**533** [1] - 79:14
**550** [1] - 1:17
**555** [1] - 1:14
**570** [1] - 87:7
**5:24** [1] - 96:3

## 6

**625** [1] - 1:17

## 7

**7** [7] - 43:4, 89:23, 90:3, 90:8, 90:15, 94:4, 94:15
**728** [1] - 85:3

## 8

**8** [7] - 42:12, 43:6, 46:18, 47:2, 47:3, 84:24, 89:23
**8(a** [3] - 84:13, 84:14, 85:10
**8(a)** [2] - 84:14, 86:10
**800** [1] - 87:7
**843** [1] - 78:13
**867** [1] - 75:25

## 9

**9** [1] - 47:3
**9th** [1] - 24:22

## A

**abandon** [7] - 60:10, 60:17, 61:25, 68:23, 71:6, 83:24
**abandoned** [1] - 71:4
**ability** [1] - 41:23
**able** [17] - 2:16, 3:21, 12:6, 19:17, 29:9, 59:24, 60:23, 62:6, 65:22, 66:1, 66:5, 66:6, 66:12, 68:23, 69:6, 70:10, 71:6
**Aboud** [1] - 33:1
**above-entitled** [1] - 96:12
**absence** [1] - 10:23
**absent** [3] - 36:14, 36:15, 36:19
**abuse** [49] - 15:7, 15:18, 21:2, 21:13, 21:17, 21:20, 22:14, 22:25, 23:16, 24:1, 25:8, 34:6, 34:9, 34:11, 39:18, 40:15, 41:4, 41:8, 46:20, 47:11, 47:21, 54:9, 54:18, 54:24, 58:16, 58:22, 59:8, 62:17, 62:23, 63:8, 63:11, 63:12, 63:20, 64:10, 64:23, 65:18, 73:22, 79:17, 79:23, 79:25, 81:9, 85:19, 85:24, 86:2, 86:3, 86:18,
88:6, 89:11, 93:1
**abused** [4] - 44:23, 80:5, 92:22, 93:15
**acceptable** [1] - 93:24
**accepting** [1] - 30:9
**accessed** [1] - 14:18
**accidental** [2] - 34:13, 34:19
**accompanying** [1] - 74:18
**accordance** [1] - 82:21
**according** [6] - 7:10, 23:24, 31:2, 63:11, 63:23, 65:21
**account** [4] - 16:6, 16:16, 16:17, 31:22
**accumulate** [1] - 53:5, 87:14
**accuracy** [1] - 92:1
**accused** [2] - 21:1, 53:20
**acknowledge** [1] - 48:23
**act** [6] - 23:4, 42:20, 42:23, 63:13, 63:14, 84:17
**activity** [1] - 77:17
**acts** [7] - 44:12, 44:13, 70:25, 71:1, 86:8, 86:11
**actual** [2] - 74:23, 77:15
**add** [3] - 8:11, 44:5, 54:8
**added** [1] - 27:9
**addition** [7] - 7:2, 32:20, 33:20, 40:17, 63:14, 63:18, 89:12
**additional** [4] - 22:20, 62:12, 62:16, 62:17
**address** [14] - 6:2, 7:21, 26:9, 53:5, 61:15, 68:17, 70:20, 72:5, 72:7, 73:5, 74:22, 84:7, 90:22, 95:11
**addressed** [2] - 67:20, 67:24
**addressing** [2] - 72:17, 74:9
**adds** [1] - 27:20
**adequate** [1] - 89:17
**adjourned** [1] - 96:3
**admissibility** [1] - 91:5
**admissible** [3] - 54:11, 63:16, 65:20
**admit** [1] - 65:24
**admitted** [3] - 55:11, 64:13, 88:24
**admittedly** [2] - 10:7, 20:7
**adult** [1] - 58:1
**advent** [1] - 78:16
**advisory** [1] - 38:9
**affected** [1] - 95:2
**affidavit** [38] - 7:23, 8:2, 13:10, 18:7, 18:12, 19:20, 19:24, 20:7, 20:8, 20:10, 20:12, 22:3, 22:10, 22:14, 23:25, 27:17, 27:18, 27:20, 28:15, 29:20, 31:12, 36:6, 37:19, 37:20, 39:21, 40:7, 40:13, 40:17, 40:18, 41:13, 41:24, 74:7, 74:11, 74:18, 76:18, 77:3, 78:21, 80:14
**affidavits** [5] - 35:6, 35:16, 74:5, 79:23
**affirmatively** [1] - 20:15
**affixed** [1] - 13:23
**afternoon** [1] - 2:8
**ago** [11] - 15:2, 15:14, 15:20, 16:10, 16:18, 16:22, 17:3, 17:4, 17:13, 17:14, 20:1
**agree** [9] - 15:22, 16:7, 17:24, 28:3, 28:22, 38:14, 43:23, 90:19, 95:8
**agreement** [2] - 73:8, 73:21
**agrees** [2] - 92:18, 95:9
**ahead** [2] - 46:15, 51:15
**aided** [1] - 1:25
**alike** [1] - 85:13
**allegation** [2] - 21:3, 40:20
**allegations** [5] - 22:14, 34:6, 44:9, 54:17, 85:19
**allege** [4] - 20:22, 45:19, 49:6, 49:11
**alleged** [14] - 21:4, 23:13, 32:12, 40:9, 41:7, 50:20, 77:17, 77:21, 79:11, 79:17, 79:25, 92:18, 92:25, 93:4
**allegedly** [12] -

15:16, 21:12, 21:18, 31:23, 80:17, 85:24, 86:14, 86:16, 92:22, 93:13, 93:15
**alleges** [3] - 44:23, 46:19, 47:20
**alleging** [1] - 48:12
**allow** [1] - 30:6
**allowed** [3] - 64:13, 76:1, 76:13
**allowing** [1] - 3:4
**allows** [2] - 63:9, 64:3
**almost** [1] - 43:17
**alone** [5] - 18:25, 19:8, 19:13, 23:18, 80:7
**alternative** [1] - 29:7
**ambiguity** [5] - 6:4, 6:7, 10:11, 27:24, 74:11
**ambiguous** [3] - 10:12, 27:24, 74:14
**Amendment** [2] - 8:9, 75:12
**Amendment's** [1] - 81:23
**AMERICA** [1] - 1:4
**America** [1] - 2:4
**analogize** [1] - 30:21
**analysis** [5] - 16:13, 31:20, 32:21, 49:9, 79:5
**Anderson** [1] - 79:14
**angry** [2] - 59:2, 70:9
**announce** [7] - 24:13, 82:12, 82:15, 83:3, 83:5, 83:9, 94:9
**announcing** [1] - 82:21
**anonymous** [2] - 15:21, 15:24
**answer** [1] - 25:21
**answers** [1] - 2:15
**anyway** [6] - 44:6, 69:10, 69:11, 70:1, 70:12
**apartment** [9] - 73:6, 73:10, 75:3, 78:25, 80:16, 82:12, 82:16, 82:24
**appear** [3] - 5:21, 60:8, 83:1
**APPEARANCES** [1] - 1:12
**applicable** [2] - 43:20, 84:6
**application** [3] - 21:2, 77:2, 77:15
**applied** [1] - 78:6

**applies** [2] - 12:2, 30:13
**apply** [5] - 31:5, 31:8, 65:10, 65:13, 76:23
**appreciate** [3] - 51:10, 51:14, 52:23
**appreciated** [1] - 83:25
**appropriate** [1] - 87:2
**area** [5] - 25:15, 44:14, 64:13, 74:16, 74:17
**areas** [1] - 66:5
**argue** [24] - 2:24, 5:15, 6:25, 11:9, 17:7, 19:20, 20:18, 21:15, 21:16, 23:12, 23:23, 25:13, 35:9, 42:17, 42:24, 43:2, 43:13, 44:11, 45:6, 57:20, 60:22, 61:12, 62:8, 68:23
**argued** [3] - 60:20, 72:7, 90:23
**argues** [5] - 30:2, 34:21, 72:21, 76:18, 82:10
**arguing** [8] - 3:10, 13:11, 23:9, 29:2, 42:22, 56:23, 59:1, 93:6
**argument** [48] - 3:1, 3:20, 5:20, 6:3, 9:1, 9:2, 9:13, 10:3, 10:12, 11:13, 11:15, 12:9, 14:17, 17:25, 18:1, 23:3, 24:20, 24:21, 26:12, 29:7, 30:10, 30:15, 36:2, 38:14, 38:16, 39:10, 40:4, 41:2, 47:25, 48:24, 51:12, 53:4, 56:7, 58:25, 59:18, 59:20, 61:13, 67:12, 70:7, 73:1, 75:8, 75:11, 80:13, 81:4, 81:7, 84:1, 88:13, 90:23
**arguments** [21] - 3:6, 4:11, 13:19, 20:3, 26:10, 39:13, 48:22, 50:2, 56:13, 70:11, 72:9, 72:12, 72:13, 76:23, 83:21, 84:3, 84:7, 89:7, 91:3, 94:6, 94:10
**arise** [1] - 91:7
**arising** [2] - 40:4, 93:18

**arrest** [2] - 33:5, 39:5
**articulate** [1] - 61:22
**aside** [2] - 53:23, 90:6
**aspect** [1] - 68:10
**assaults** [1] - 66:25
**assertions** [1] - 84:4
**assess** [1] - 70:10
**assessing** [1] - 86:9
**assessment** [1] - 79:6
**assist** [1] - 92:20
**associated** [1] - 66:25
**assortment** [1] - 66:23
**assuming** [3] - 46:15, 54:12, 64:6
**assumption** [1] - 50:19
**assure** [2] - 59:15, 68:18
**Attachment** [1] - 25:10
**attempted** [1] - 47:9
**attention** [2] - 92:1, 93:14
**Attorney's** [1] - 1:14
**August** [1] - 94:6
**AUSA** [2] - 1:13, 1:13
**authority** [11] - 5:16, 5:18, 6:17, 6:20, 6:24, 7:3, 28:7, 37:7, 37:13, 38:12, 42:15
**authorization** [6] - 6:4, 8:6, 11:2, 11:9, 28:23, 38:15
**authorization/ particularity** [1] - 26:12
**authorize** [5] - 4:16, 35:21, 36:1, 36:10, 81:5
**authorized** [20] - 5:2, 5:13, 9:18, 25:24, 26:15, 27:11, 27:12, 27:19, 28:8, 31:17, 35:4, 35:7, 38:3, 38:4, 73:12, 73:25, 76:7, 81:8, 81:18, 82:25
**authorizes** [1] - 30:11
**automatically** [3] - 62:19, 63:2, 63:17
**available** [1] - 76:10
**Avenue** [1] - 1:17, 1:22
**avoid** [3] - 42:15, 60:7, 69:19
**aware** [2] - 20:18,

58:3

**B**

**background** [1] - 85:16
**baffled** [1] - 21:13
**balanced** [3] - 16:12, 16:21, 79:6
**barely** [1] - 58:1
**based** [15] - 2:19, 11:2, 19:20, 20:6, 42:20, 42:23, 72:11, 76:9, 76:20, 79:4, 84:2, 84:16, 89:7, 91:2, 94:10
**basis** [7] - 29:20, 53:16, 54:1, 75:5, 77:7, 77:12, 80:20
**bear** [1] - 2:14
**bears** [1] - 91:19
**become** [1] - 87:16
**becomes** [2] - 14:15, 88:25
**BEFORE** [1] - 1:10
**began** [1] - 81:19
**begin** [3] - 4:2, 4:3, 59:12
**behavior** [1] - 22:21
**behind** [1] - 35:17
**belong** [1] - 31:24
**belonged** [3] - 33:11, 39:20, 40:5
**belongings** [1] - 82:1
**benefit** [1] - 58:8
**best** [2] - 19:25, 30:21
**between** [15] - 20:25, 23:10, 30:19, 31:15, 31:23, 32:10, 40:1, 41:3, 65:4, 76:22, 77:14, 79:22, 80:12, 80:16, 92:3
**beyond** [1] - 38:25
**big** [3] - 43:14, 53:6, 90:9
**bit** [1] - 5:19
**black** [4] - 73:7, 73:17, 75:11, 75:20
**bold** [1] - 5:2
**bottom** [2] - 5:2, 13:1
**bounds** [1] - 75:1
**box** [16] - 6:20, 8:12, 8:15, 8:17, 9:4, 9:9, 10:15, 35:21, 36:21, 37:4, 37:6, 73:5, 73:8, 73:20, 74:15, 74:16
**boxes** [11] - 5:12, 5:21, 8:7, 72:22, 72:24, 73:2, 73:3,

73:12, 73:24, 74:3, 74:24
**Brand** [1] - 80:9
**breach** [2] - 82:23, 82:25
**break** [1] - 61:8
**breath** [2] - 34:22, 34:23
**brief** [1] - 61:14
**briefly** [2] - 26:9, 35:13
**briefs** [4] - 72:14, 83:25, 84:3, 91:3
**bring** [3] - 3:13, 64:3, 70:13
**bringing** [1] - 68:6
**broad** [6] - 31:1, 31:4, 36:12, 75:19, 75:22, 76:1
**broader** [1] - 76:12
**brought** [1] - 44:17
**burden** [9] - 69:18, 86:22, 87:10, 89:19, 91:16, 91:19, 92:5, 93:7
**business** [1] - 33:14

**C**

**camera** [9] - 25:6, 51:13, 69:18, 73:7, 73:18, 75:3, 75:11, 75:20, 79:9
**cameras** [2] - 33:24, 34:2
**cannot** [5] - 12:15, 58:23, 76:13, 82:4, 84:25
**capable** [1] - 75:21
**car** [1] - 8:22
**care** [1] - 56:6
**carefully** [1] - 75:14
**cares** [1] - 53:17
**carried** [1] - 78:4
**carries** [1] - 87:9
**carry** [1] - 13:19
**Carson** [1] - 49:2
**Case** [1] - 2:4
**case** [95] - 7:18, 7:19, 7:23, 12:8, 12:13, 12:21, 14:3, 14:5, 14:11, 14:12, 15:19, 17:24, 21:25, 27:6, 27:20, 28:15, 28:21, 29:6, 29:25, 30:2, 30:19, 30:21, 30:22, 31:2, 31:4, 31:12, 31:14, 31:19, 32:4, 32:7, 32:10, 32:11, 32:22, 33:1,

2

3

35:4, 36:6, 37:15, 38:24, 39:12, 44:21, 45:1, 46:17, 46:23, 46:25, 47:16, 47:22, 47:23, 48:19, 49:1, 50:6, 50:18, 52:14, 54:12, 54:24, 55:20, 58:15, 59:17, 60:25, 61:18, 62:15, 66:2, 66:4, 66:19, 66:21, 67:1, 67:11, 69:2, 70:10, 71:13, 75:19, 77:10, 77:16, 77:22, 78:8, 78:11, 79:3, 79:13, 79:15, 80:9, 82:13, 82:19, 83:9, 83:13, 85:2, 85:10, 85:14, 85:19, 85:23, 87:1, 87:7, 87:22, 92:9

**cases** [31] - 7:5, 13:13, 13:15, 14:2, 14:21, 28:12, 28:14, 29:15, 29:22, 31:20, 34:11, 35:15, 35:17, 50:3, 50:4, 50:22, 51:3, 51:7, 52:15, 57:4, 57:6, 57:24, 60:12, 60:21, 64:3, 67:3, 68:6, 68:8, 69:23, 71:5

**cast** [1] - 27:24
**catalog** [2] - 13:18, 17:20
**categories** [1] - 62:16
**cellphones** [1] - 76:4
**certain** [14] - 4:13, 6:12, 7:8, 27:19, 32:24, 33:1, 56:9, 58:12, 59:22, 64:12, 64:13, 67:19, 71:18
**certainly** [1] - 24:7
**certainty** [1] - 92:2
**CERTIFICATE** [1] - 96:8
**certify** [1] - 96:10
**challenge** [3] - 46:24, 50:23, 71:23
**challenged** [1] - 91:20
**challenges** [1] - 72:18
**challenging** [4] - 43:23, 46:23, 48:24, 87:9
**chance** [1] - 67:8
**chances** [1] - 51:9
**change** [3] - 27:4, 89:1, 89:4

**changes** [1] - 71:11
**chaos** [1] - 36:9
**character** [20] - 33:1, 42:20, 43:21, 43:22, 44:4, 45:10, 47:15, 48:21, 48:23, 49:12, 52:4, 58:21, 75:15, 80:14, 84:16, 85:11, 85:18, 86:4, 86:10
**characteristics** [2] - 33:1, 77:18
**characterize** [2] - 39:4, 39:9
**charge** [6] - 40:8, 48:4, 62:15, 62:17, 70:21, 88:11
**charged** [20] - 40:2, 40:11, 41:4, 47:16, 47:23, 50:17, 51:1, 53:3, 54:7, 54:22, 60:11, 68:4, 70:4, 70:5, 70:16, 70:19, 71:24, 71:25, 76:22
**charges** [33] - 48:12, 48:13, 48:18, 49:14, 51:17, 52:2, 53:7, 53:12, 53:18, 53:25, 54:5, 54:6, 54:7, 54:9, 54:25, 58:20, 58:22, 58:24, 59:9, 59:10, 59:18, 59:22, 59:25, 60:3, 63:21, 67:3, 70:14, 84:10, 85:24, 86:1, 86:2, 87:18
**Charles** [1] - 2:4
**CHARLES** [1] - 1:6
**check** [20] - 5:12, 5:13, 5:21, 6:20, 8:17, 9:4, 10:15, 28:1, 28:8, 30:4, 35:21, 36:13, 37:4, 38:21, 38:22, 73:11, 73:24, 74:3, 74:16, 90:4
**checked** [29] - 5:23, 6:5, 6:9, 6:11, 7:12, 7:13, 8:7, 8:12, 8:21, 9:9, 10:8, 10:16, 11:5, 11:6, 11:7, 11:8, 11:10, 11:11, 27:25, 36:3, 38:18, 38:20, 38:21, 72:25, 73:3, 73:8, 73:20, 74:15, 74:24
**checking** [3] - 8:15, 10:24, 73:16
**checks** [1] - 73:5
**child** [112] - 13:15, 13:16, 14:3, 14:8, 14:14, 15:6, 15:24, 16:23, 17:16, 17:19,

20:22, 21:1, 21:5, 21:12, 21:17, 21:20, 22:1, 22:3, 23:13, 23:16, 23:25, 31:14, 31:18, 32:2, 32:11, 32:12, 32:15, 32:18, 32:22, 33:2, 34:6, 34:8, 34:11, 34:15, 34:16, 39:17, 40:15, 41:4, 41:5, 41:8, 43:5, 44:2, 44:3, 44:10, 44:11, 44:16, 44:19, 44:22, 45:5, 45:7, 45:18, 46:10, 46:11, 46:21, 52:17, 52:20, 54:7, 54:8, 54:16, 54:18, 54:24, 55:17, 56:2, 57:25, 58:2, 58:15, 58:22, 58:23, 59:5, 59:8, 59:9, 63:7, 63:10, 63:11, 63:13, 63:14, 63:15, 63:21, 64:2, 64:4, 64:6, 64:9, 64:10, 64:15, 64:17, 64:22, 64:25, 65:7, 65:9, 65:13, 65:14, 65:17, 65:18, 65:19, 66:8, 77:23, 78:1, 78:4, 78:7, 78:17, 79:23, 85:17, 85:18, 85:24, 86:1, 86:3, 86:15, 86:17, 88:6, 88:8, 89:9
**child's** [1] - 65:5
**children** [11] - 15:16, 15:21, 15:24, 44:19, 45:5, 63:12, 66:7, 85:22, 85:23, 86:5, 92:22
**choice** [5] - 56:3, 57:11, 57:12, 60:10
**choose** [1] - 36:24, 51:5, 60:6, 60:8
**chooses** [1] - 57:20
**circle** [1] - 5:7
**Circuit** [22] - 27:16, 30:22, 32:4, 32:7, 32:17, 32:20, 32:25, 49:1, 77:22, 78:3, 78:9, 79:15, 80:8, 82:5, 83:7, 84:19, 85:3, 85:14, 86:1, 87:6, 87:12, 87:25
**circuit** [3] - 31:5, 79:13, 87:5
**Circuit's** [1] - 75:23
**circuits** [1] - 93:22
**circumstance** [2] - 76:17, 93:2
**circumstances** [14] -

12:21, 19:5, 32:24, 65:23, 66:7, 74:2, 77:3, 79:5, 87:20, 91:12, 91:20, 93:8, 93:11, 93:20
**cite** [1] - 92:9
**cited** [5] - 14:2, 35:17, 50:3, 50:4, 54:2
**citing** [1] - 54:2
**claim** [1] - 79:19
**claimed** [1] - 13:4
**claims** [2] - 15:7, 58:2
**clarification** [1] - 47:1
**clarified** [1] - 74:4
**clarify** [1] - 36:6
**clarity** [4] - 27:5, 27:9, 27:20, 42:5
**clause** [2] - 6:5, 91:6
**clear** [20] - 5:20, 7:24, 26:22, 27:6, 27:7, 28:3, 28:4, 28:5, 28:7, 28:23, 37:21, 37:23, 37:24, 41:24, 43:2, 43:3, 45:25, 68:13, 71:16, 75:2
**clearly** [7] - 6:25, 12:14, 76:6, 81:13, 86:4, 86:11, 93:14
**clerical** [3] - 74:3, 74:11, 74:12
**CLERK** [1] - 2:3
**client** [1] - 61:25
**clock** [1] - 95:4
**close** [1] - 12:25
**cloud** [1] - 13:11
**Code** [1] - 21:5
**cognizable** [1] - 56:6
**collect** [1] - 17:20
**COLUMBIA** [1] - 1:2
**Columbia** [2] - 37:12, 82:22
**combination** [3] - 19:6, 19:7, 23:22
**comfortable** [1] - 95:18
**coming** [1] - 46:13, 62:23, 67:11, 69:2, 71:18, 72:2, 95:1
**commanded** [2] - 10:19, 10:25
**commence** [1] - 2:13
**comment** [1] - 4:10
**committed** [12] - 16:4, 20:22, 23:13, 40:10, 40:12, 41:8, 50:21, 53:8, 70:23, 70:25, 86:15, 86:16

**committing** [1] - 16:25
**common** [5] - 42:22, 43:1, 43:13, 84:18, 85:1
**commuter** [1] - 13:10
**compelling** [4] - 55:20, 61:18, 62:11, 86:25
**complainant** [3] - 34:10, 34:12, 34:18
**complainant's** [1] - 33:11
**complaining** [1] - 92:23
**complete** [2] - 2:17, 37:5
**computer** [23] - 1:25, 13:8, 13:9, 21:8, 25:2, 25:5, 25:6, 25:14, 25:23, 32:12, 32:13, 32:19, 33:7, 73:7, 73:17, 75:11, 76:5, 76:11, 78:16, 79:2, 81:15, 82:7, 82:9
**computer-aided** [1] - 1:25
**concede** [6] - 9:6, 9:12, 12:2, 13:21, 26:24, 43:24
**conceded** [1] - 39:19
**conceding** [1] - 27:21
**concern** [1] - 5:9
**concerned** [2] - 39:12, 84:22
**concerning** [1] - 79:16
**concerns** [2] - 14:10, 91:7
**conclude** [2] - 15:3, 93:10
**concludes** [2] - 85:17, 92:4
**concluding** [1] - 77:8
**conclusion** [3] - 16:3, 78:12, 80:8
**conclusory** [1] - 92:7
**conduct** [2] - 4:17, 71:25
**conference** [1] - 94:19
**confirm** [1] - 93:4
**confirmation** [1] - 92:16
**confirmatory** [1] - 93:17
**conflict** [1] - 56:15
**conflicting** [2] -

4

35:18, 60:9
  **confounded** [4] -
50:22, 51:3, 83:21,
87:17
  **confounding** [4] -
51:18, 57:5, 57:7,
57:13
  **confrontation** [2] -
92:2, 92:3
  **confuse** [1] - 89:10
  **confused** [2] - 27:22,
41:2
  **confusion** [4] - 36:1,
36:3, 74:25, 89:13
  **connect** [1] - 40:8
  **connected** [5] -
39:17, 39:18, 42:21,
48:1, 84:17
  **connecting** [1] -
22:24
  **connection** [9] -
15:9, 15:17, 39:23,
48:3, 71:25, 76:22,
79:22, 80:11, 80:12
  **connects** [1] - 23:25
  **consequently** [1] -
75:17
  **consider** [10] - 3:9,
9:22, 33:22, 35:3,
50:13, 60:14, 66:20,
77:16, 86:7
  **consideration** [4] -
72:12, 84:2, 91:2,
94:10
  **considered** [4] -
14:4, 84:4, 89:15,
91:24
  **considering** [5] -
27:15, 33:20, 77:1,
89:11, 91:15
  **consistency** [1] -
36:7
  **consistent** [5] -
45:23, 55:22, 60:9,
77:11, 82:19
  **constitute** [4] - 22:3,
42:21, 84:17, 85:1
  **Constitution** [1] -
1:22
  **constitutionally** [2] -
75:18, 75:22
  **construed** [1] -
84:20
  **contact** [3] - 64:8,
65:3, 65:4
  **contained** [1] - 73:22
  **contains** [2] - 74:11,
87:20
  **contempt** [1] - 50:19
  **contending** [1] -

83:23
  **contention** [6] -
17:2, 21:13, 28:11,
46:7, 79:24, 88:9
  **contents** [1] - 82:8
  **context** [3] - 2:25,
89:21, 93:3
  **continues** [1] - 95:5
  **contraband** [1] -
77:4
  **contradictory** [3] -
88:15, 88:17, 88:19
  **contrary** [1] - 88:4
  **contributes** [1] -
19:23
  **control** [2] - 48:7,
78:7
  **controlling** [2] -
77:16, 83:6
  **convict** [1] - 71:1
  **convicted** [3] -
55:23, 70:22, 70:24
  **conviction** [1] - 51:9
  **convinced** [1] -
41:15
  **copy** [2] - 4:22,
10:20
  **correct** [11] - 6:24,
11:8, 25:3, 38:13,
43:6, 46:9, 47:12,
68:8, 69:7, 75:3,
96:11
  **correlation** [1] -
34:16
  **corresponding** [1] -
85:12
  **corroborated** [2] -
20:11, 79:17
  **counsel** [5] - 26:10,
26:12, 31:11, 90:23,
93:6
  **count** [9] - 47:15,
54:16, 62:14, 86:17,
90:2, 90:8, 90:16,
94:17
  **counters** [1] - 50:15
  **counts** [57] - 42:11,
42:15, 43:5, 43:6,
43:17, 47:10, 47:11,
50:5, 50:7, 50:8, 50:9,
50:10, 50:11, 50:13,
50:16, 50:17, 52:15,
53:10, 54:16, 55:15,
55:18, 56:2, 56:4,
56:8, 59:10, 60:4,
60:11, 61:4, 62:17,
62:23, 63:8, 63:10,
64:9, 64:10, 65:1,
66:21, 68:4, 85:6,
85:17, 85:18, 86:3,

86:4, 86:18, 86:23,
87:21, 87:24, 88:2,
88:4, 88:14, 88:23,
89:11, 89:15, 89:16,
89:18, 94:14, 94:15
  **Counts** [10] - 43:4,
47:2, 47:3, 89:23,
90:3, 90:8, 90:15,
94:4, 94:15
  **couple** [2] - 3:23,
4:25
  **course** [4] - 40:20,
50:14, 70:20, 84:23
  **court** [10] - 14:7,
19:7, 60:14, 60:25,
67:1, 74:10, 76:1,
77:9, 87:1, 91:21
  **COURT** [191] - 1:2,
2:8, 3:15, 3:18, 3:20,
4:6, 4:12, 4:18, 4:23,
5:19, 5:23, 6:12, 6:16,
6:19, 7:1, 7:14, 8:10,
8:15, 8:20, 9:16, 10:2,
10:11, 10:18, 11:7,
11:12, 11:16, 11:19,
11:24, 12:2, 12:5,
12:12, 12:23, 13:13,
15:5, 16:1, 16:8,
16:20, 17:15, 18:20,
19:3, 19:10, 19:13,
20:24, 21:6, 21:10,
21:12, 21:18, 22:7,
23:14, 24:2, 24:9,
24:13, 24:16, 25:1,
25:4, 25:19, 25:23,
26:1, 26:4, 26:6, 26:8,
26:24, 27:2, 27:21,
28:6, 28:25, 29:5,
29:12, 30:17, 31:9,
31:18, 33:7, 34:4,
35:8, 35:11, 35:14,
35:24, 36:15, 36:17,
36:22, 37:11, 37:23,
38:6, 38:8, 38:17,
38:24, 39:6, 39:13,
40:1, 40:20, 41:1,
41:9, 41:17, 41:21,
42:7, 42:9, 42:16,
42:25, 43:5, 43:8,
43:19, 43:22, 43:25,
44:15, 45:16, 46:5,
47:4, 47:8, 47:13,
47:20, 48:10, 48:14,
48:25, 49:17, 49:19,
49:25, 50:8, 50:10,
51:12, 52:21, 52:24,
53:15, 54:4, 54:10,
54:15, 54:23, 55:2,
55:7, 55:9, 55:19,
56:5, 56:15, 56:20,

57:9, 58:8, 58:11,
58:19, 59:4, 59:11,
59:17, 60:5, 60:12,
60:17, 60:20, 60:25,
61:6, 61:10, 61:23,
62:19, 62:22, 63:3,
63:6, 63:24, 64:2,
64:6, 64:18, 64:21,
64:25, 65:6, 65:9,
65:16, 65:22, 66:10,
66:14, 67:4, 67:6,
67:13, 67:20, 68:5,
68:11, 68:15, 68:19,
68:22, 69:16, 69:22,
70:7, 70:17, 71:3,
71:20, 72:3, 72:6,
90:12, 90:14, 90:18,
90:20, 95:10, 95:14,
95:19, 95:21, 96:2,
96:8
  **Court** [75] - 1:21, 3:3,
4:7, 5:16, 7:21, 8:1,
10:10, 18:5, 19:15,
25:17, 26:2, 26:7,
28:14, 28:22, 31:13,
32:17, 37:12, 38:9,
39:3, 42:14, 42:18,
44:6, 50:6, 51:13,
52:22, 53:17, 55:5,
57:6, 58:2, 59:15,
61:3, 62:9, 66:19,
66:20, 70:13, 72:25,
74:6, 76:12, 77:5,
78:9, 78:23, 79:7,
79:24, 80:3, 80:7,
80:14, 80:19, 81:7,
82:3, 82:14, 82:16,
83:7, 83:8, 83:15,
83:21, 83:24, 84:4,
85:5, 85:16, 87:22,
88:13, 88:22, 89:1,
89:7, 89:13, 89:19,
89:22, 91:9, 92:4,
92:18, 93:25, 94:5,
95:8
  **Court's** [8] - 8:25,
32:5, 72:11, 72:14,
76:16, 82:17, 92:12,
95:6
  **Courthouse** [1] -
1:21
  **courts** [18] - 13:18,
17:15, 27:18, 35:16,
36:9, 54:2, 74:10,
77:1, 77:16, 78:10,
86:6, 87:5, 87:6, 87:8,
89:16, 91:15, 93:18,
93:22
  **cover** [1] - 84:25
  **covered** [1] - 24:8

  **covers** [1] - 85:11
  **create** [1] - 80:16
  **created** [1] - 80:7
  **credibility** [1] - 52:8
  **credible** [1] - 82:18
  **crime** [33] - 16:4,
16:25, 17:16, 21:16,
22:11, 23:13, 23:15,
24:1, 31:13, 31:14,
33:2, 39:17, 40:2,
40:8, 40:10, 40:11,
40:13, 41:4, 45:3,
46:14, 51:20, 52:13,
53:20, 65:7, 65:10,
67:10, 77:5, 77:21,
78:4, 79:22, 91:25,
92:3, 92:25
  **crimes** [25] - 21:5,
41:8, 50:21, 53:3,
53:9, 53:24, 54:11,
54:22, 55:2, 63:19,
64:2, 64:12, 69:2,
69:4, 76:22, 78:6,
79:11, 81:21, 85:10,
86:13, 86:16, 87:14,
88:24, 89:5, 93:13
  **criminal** [5] - 33:2,
77:17, 84:10, 87:15,
91:25
  **Criminal** [3] - 1:5,
2:3, 84:13
  **critical** [1] - 54:6
  **criticizing** [1] - 40:24
  **cross** [7] - 52:17,
52:19, 57:24, 58:4,
58:15, 58:17, 64:18
  **cross-examination**
[3] - 52:19, 57:24,
58:17
  **cross-examining** [3]
- 52:17, 58:4, 58:15
  **CRR** [1] - 1:21
  **CW** [1] - 41:17

# D

  **D.C** [16] - 1:7, 1:15,
1:18, 1:22, 21:5,
27:16, 30:22, 49:1,
75:23, 79:15, 83:7,
84:19, 85:3, 87:6,
87:11, 87:25
  **D.D.C** [1] - 87:1
  **DATE** [1] - 96:16
  **date** [3] - 2:12,
10:21, 35:19
  **dates** [1] - 35:18
  **daughters** [1] -
88:11
  **days** [1] - 9:19

**daytime** [1] - 5:8
**daytime/at** [1] - 9:20
**deadline** [3] - 95:12, 95:16, 95:23
**deal** [6] - 28:13, 35:18, 55:14, 57:1, 71:2, 72:1
**dealing** [3] - 14:16, 14:17, 71:16
**decide** [1] - 77:2
**decision** [3] - 71:21, 72:14, 77:6
**deemed** [2] - 35:25, 87:24
**defeat** [2] - 28:9, 31:25
**defect** [1] - 31:6
**defective** [3] - 8:3, 29:3, 29:8
**defects** [1] - 9:5
**defend** [7] - 52:14, 60:24, 70:14, 70:21, 71:10, 71:24
**defendant** [43] - 2:6, 2:7, 15:8, 16:4, 22:18, 27:23, 33:3, 34:9, 34:17, 44:18, 44:24, 45:8, 45:20, 46:9, 51:18, 51:24, 53:19, 53:20, 58:14, 75:5, 77:25, 78:18, 79:21, 80:12, 81:22, 82:2, 84:22, 85:8, 86:13, 87:9, 87:11, 87:16, 91:17, 91:18, 91:25, 92:5, 92:7, 92:13, 93:7, 93:12, 93:15, 93:16, 93:21
**DEFENDANT** [1] - 63:5
**Defendant** [2] - 1:7, 1:16
**defendant's** [5] - 72:15, 80:4, 86:22, 89:18, 95:22
**defendants** [1] - 72:18
**defendants'** [1] - 60:12
**Defender** [1] - 1:16
**defense** [34] - 26:10, 26:12, 31:10, 34:21, 50:24, 51:7, 51:16, 55:13, 55:17, 55:25, 56:3, 56:13, 57:14, 57:16, 57:17, 57:19, 59:2, 59:22, 60:2, 60:10, 61:21, 62:1, 62:6, 62:13, 68:25, 69:6, 70:5, 71:4, 71:6,

89:20, 90:7, 90:22, 93:6
**defenses** [19] - 50:23, 51:6, 51:10, 55:25, 56:8, 56:19, 57:8, 57:13, 57:21, 60:7, 60:18, 60:19, 68:24, 83:24, 87:17, 88:15, 88:16, 88:25, 89:4
**deference** [1] - 76:25
**deficient** [4] - 7:16, 30:1, 35:25, 75:6
**defined** [2] - 64:7, 64:8
**defines** [1] - 65:13
**definition** [1] - 44:11
**degree** [7] - 52:2, 56:9, 57:17, 65:23, 69:10, 83:21, 92:1
**deleted** [4] - 25:14, 79:1, 81:7, 81:17
**Dell** [1] - 73:16
**demonstrate** [5] - 69:16, 87:19, 91:17, 92:13, 93:9
**demonstrated** [3] - 86:24, 88:1, 92:2
**demonstrates** [1] - 88:16
**demonstrating** [1] - 91:19
**demonstration** [2] - 62:4, 89:19
**denial** [1] - 87:9
**denied** [4] - 72:16, 84:5, 91:4, 94:11
**deny** [3] - 83:15, 89:22, 93:25
**DEPUTY** [1] - 2:3
**describe** [11] - 8:13, 9:7, 9:11, 10:19, 15:24, 22:10, 35:19, 40:7, 75:9, 75:13, 81:24
**described** [9] - 6:12, 6:16, 20:13, 22:2, 25:10, 74:17, 75:10, 75:20, 83:12
**describes** [3] - 9:6, 21:24, 25:5
**describing** [2] - 9:10, 58:1
**description** [8] - 21:7, 22:4, 76:4, 76:6, 76:11, 76:14, 92:1, 94:12
**designated** [16] - 6:21, 6:23, 9:17, 9:18, 9:20, 9:22, 9:23, 10:1,

10:6, 10:8, 10:14, 10:15, 10:16, 10:17, 10:24
**designates** [1] - 38:8
**designation** [1] - 10:9
**desk** [1] - 15:1
**desktop** [1] - 14:25
**detail** [3] - 25:12, 71:16, 71:17
**details** [1] - 7:24
**detectives** [1] - 81:18
**determination** [2] - 77:11, 78:2
**determine** [9] - 3:24, 15:11, 16:2, 32:21, 40:9, 49:10, 49:21, 57:6, 91:9
**determined** [2] - 49:3, 89:20
**determining** [1] - 92:21
**device** [2] - 14:21, 25:6
**devices** [3] - 25:9, 76:2, 76:3
**difference** [1] - 47:7
**different** [35] - 16:6, 29:24, 35:3, 36:12, 36:21, 36:22, 43:14, 44:9, 50:21, 52:16, 53:11, 53:23, 55:14, 56:12, 56:17, 56:21, 57:1, 57:2, 57:17, 62:13, 67:3, 69:3, 70:3, 72:1, 73:20, 83:10, 84:12, 87:17, 87:18, 88:15, 88:16, 88:19, 88:23, 92:24
**differently** [1] - 95:5
**difficult** [3] - 25:20, 87:10, 88:25
**difficulty** [1] - 79:7
**digital** [7] - 24:18, 25:8, 73:17, 81:9, 81:14, 82:4
**digitized** [1] - 32:16
**dire** [1] - 95:16
**direct** [1] - 34:16
**direction** [1] - 56:9
**directions** [1] - 37:5
**disagree** [3] - 28:10, 33:10, 45:20
**disclose** [1] - 61:20
**discovered** [1] - 83:13
**discrete** [1] - 84:25
**discretion** [1] - 85:6
**discussed** [1] - 2:19

**discussion** [2] - 69:19, 83:25
**disgusting** [2] - 53:9, 53:14
**dismiss** [9] - 3:3, 59:18, 90:2, 90:3, 90:15, 90:16, 94:4, 94:15
**dismissed** [1] - 75:12
**dismissing** [1] - 90:8
**display** [2] - 44:14, 93:19
**disposed** [1] - 73:1
**disposition** [1] - 87:15
**dispute** [3] - 21:25, 22:2, 54:10
**dissimilar** [1] - 85:1
**distinction** [1] - 52:23
**distinguished** [1] - 92:17
**distribution** [2] - 48:6, 48:13
**District** [3] - 37:12, 78:11, 82:22
**DISTRICT** [3] - 1:2, 1:2, 1:11
**district** [1] - 87:6
**document** [1] - 9:18
**domestic** [2] - 92:23, 93:1
**done** [6] - 5:10, 5:15, 58:16, 82:5, 89:20
**door** [1] - 82:23
**double** [1] - 90:4
**double-check** [1] - 90:4
**down** [5] - 2:14, 17:17, 75:25, 76:1, 94:2
**drawn** [1] - 23:12
**dressed** [1] - 22:17
**drive** [3] - 81:6, 81:15, 81:16
**drug** [1] - 17:24, 48:5, 48:12
**drugs** [2] - 17:17, 48:9
**due** [10] - 2:17, 31:4, 63:2, 63:9, 63:15, 78:16, 91:6, 95:17, 95:24
**duplicative** [2] - 66:14, 94:17
**during** [4] - 73:18, 82:12, 90:25, 93:13
**dwelling** [1] - 86:13

**E**

**easier** [1] - 17:25
**easily** [4] - 14:23, 73:1, 74:4, 75:12
**ECF** [1] - 94:22
**economy** [1] - 84:20
**Edelin** [1] - 87:1
**effort** [3] - 26:18, 28:19, 94:5
**either** [11] - 5:5, 10:6, 46:14, 54:11, 54:19, 57:18, 69:2, 71:11, 73:13, 74:21, 95:5
**electronic** [10] - 2:21, 4:4, 25:9, 33:23, 34:1, 72:8, 72:15, 76:2, 81:20, 83:16
**electronically** [1] - 81:12
**elements** [2] - 47:18, 52:12
**Eleventh** [1] - 85:14
**elsewhere** [2] - 74:17, 87:8
**embarrassed** [3] - 50:22, 51:3, 87:17
**embarrassing** [4] - 51:24, 57:5, 57:7, 57:13
**embarrassment** [1] - 51:18
**emphasized** [1] - 31:14
**end** [4] - 2:17, 4:21, 53:1, 57:22, 86:19
**enforcement** [11] - 4:17, 5:1, 6:18, 7:3, 37:6, 76:7, 76:10, 82:11, 82:14, 82:23, 91:7
**engage** [1] - 76:8
**ensures** [1] - 75:14
**enter** [1] - 63:22
**entered** [2] - 63:17, 63:19
**entering** [2] - 82:12, 82:15
**entire** [1] - 59:17
**entirely** [3] - 75:22, 82:18, 84:23
**entitled** [6] - 22:19, 37:17, 37:18, 53:15, 80:25, 96:12
**envision** [2] - 52:19, 54:15
**equipment** [1] - 33:24, 34:1, 76:11
**erroneous** [1] - 27:2

**error** [7] - 26:14, 26:22, 26:24, 27:1, 27:5, 74:12, 74:18
**errors** [2] - 28:12, 74:12
**especially** [1] - 76:9
**ESQ** [1] - 1:16
**essentially** [1] - 82:9
**establish** [3] - 76:19, 76:21, 86:22
**established** [3] - 74:12, 79:13, 82:19
**establishes** [1] - 34:19
**establishing** [1] - 20:19
**etc** [4] - 10:21, 64:8, 73:14
**evaluate** [3] - 58:23, 59:4, 59:25
**evaluates** [1] - 16:17
**evaluating** [1] - 49:4
**event** [4] - 67:11, 77:14, 81:2, 83:14
**events** [2] - 13:4, 43:14
**evidence** [130] - 2:22, 4:5, 13:9, 13:16, 14:15, 16:2, 16:5, 17:6, 17:10, 17:19, 18:7, 18:16, 19:2, 20:5, 20:6, 20:12, 21:17, 21:19, 22:11, 22:21, 23:7, 23:8, 25:7, 29:9, 31:22, 32:10, 34:15, 34:17, 38:10, 38:12, 38:24, 39:2, 39:16, 40:2, 40:7, 40:10, 40:12, 40:14, 41:16, 43:17, 45:2, 46:6, 46:13, 49:5, 52:16, 53:3, 53:5, 53:10, 53:11, 54:10, 55:2, 55:20, 56:22, 57:2, 59:5, 62:12, 62:13, 62:14, 62:16, 62:18, 62:23, 63:8, 63:10, 63:16, 63:19, 63:21, 63:22, 64:3, 64:8, 65:21, 65:25, 67:10, 67:19, 68:7, 68:21, 69:1, 69:4, 69:9, 69:11, 70:1, 70:5, 70:8, 70:15, 70:20, 70:23, 70:24, 71:2, 71:5, 71:9, 71:18, 72:8, 72:11, 72:12, 72:16, 73:22, 74:1, 76:21, 76:22, 77:4, 77:18,

78:24, 80:22, 81:1, 81:9, 81:13, 81:21, 83:6, 83:11, 83:12, 83:17, 87:14, 87:16, 88:1, 88:3, 88:5, 88:6, 88:9, 88:23, 89:10, 89:14, 90:1, 90:8, 90:17, 90:22, 91:3, 91:5, 91:16, 94:1
**Evidence** [1] - 67:9
**evidentiary** [1] - 63:9
**ex** [1] - 62:9
**exact** [1] - 56:3
**exactly** [4] - 22:21, 25:21, 56:1, 62:5
**examination** [6] - 25:14, 25:23, 52:19, 57:24, 58:17, 81:6
**examining** [4] - 52:17, 58:4, 58:12, 58:15
**example** [6] - 12:25, 23:8, 30:2, 36:11, 76:14, 85:25
**examples** [1] - 12:18
**exceeded** [2] - 24:24, 25:18
**except** [1] - 43:18
**exception** [14] - 7:16, 7:19, 8:4, 8:7, 12:7, 18:11, 19:11, 29:1, 29:16, 30:6, 30:14, 31:5, 31:8, 86:17
**exchange** [1] - 88:21
**excluded** [4] - 43:11, 83:6, 83:13, 91:12
**exclusionary** [1] - 83:9
**excuse** [1] - 4:21
**executed** [5] - 18:10, 72:20, 75:1, 81:5, 82:11
**executing** [5] - 20:19, 30:7, 73:13, 73:25, 80:24
**execution** [2] - 24:11, 73:19
**exercise** [2] - 42:14, 57:18
**existed** [1] - 77:8
**existence** [1] - 86:22
**exists** [1] - 38:10
**expect** [1] - 5:3
**expectation** [2] - 33:4, 34:23
**experience** [2] - 17:12, 59:9
**expert** [1] - 79:3
**explain** [2] - 72:17,

84:5
**explained** [2] - 83:8, 84:19
**explaining** [1] - 61:3
**explicitly** [1] - 81:5
**exploitation** [3] - 44:2, 85:21, 86:5
**exploitive** [1] - 44:4
**exploratory** [3] - 75:16, 76:8, 82:1
**exposures** [1] - 68:2
**expressly** [1] - 81:16
**extension** [1] - 95:23
**extent** [8] - 13:16, 17:2, 46:12, 71:19, 80:13, 83:22, 88:22, 89:12
**extraordinary** [1] - 85:21
**extremely** [1] - 87:10
**eyewitness** [1] - 79:11

**F**

**F.2d** [1] - 79:14
**F.3d** [6] - 49:2, 66:20, 75:25, 80:10, 85:3, 87:7
**F.Supp.2d** [1] - 87:2
**face** [6] - 29:18, 30:1, 30:9, 30:11, 45:21, 74:8
**faced** [2] - 51:5, 51:24
**facially** [6] - 7:22, 10:4, 10:13, 30:1, 35:25
**facing** [1] - 52:1
**fact** [21] - 15:5, 16:21, 17:16, 40:4, 40:12, 46:10, 70:8, 74:6, 74:25, 78:14, 78:21, 79:3, 80:14, 81:15, 82:15, 87:20, 87:23, 88:16, 88:17, 89:5, 93:11
**factor** [7] - 15:14, 16:15, 17:8, 19:8, 19:13, 77:15, 77:20
**factored** [1] - 15:10
**factors** [9] - 19:6, 19:8, 19:9, 23:22, 43:12, 54:2, 77:17, 86:6, 91:23
**facts** [8] - 20:8, 20:16, 48:3, 49:6, 49:11, 67:16, 71:25, 82:19
**factual** [1] - 75:5

**factually** [2] - 4:19, 46:25
**failed** [5] - 75:9, 87:19, 89:9, 92:5, 92:13
**failing** [1] - 37:4
**fails** [2] - 4:16, 92:9
**failure** [4] - 8:17, 9:4, 74:3, 74:15
**fair** [3] - 57:17, 77:4, 80:22
**fairly** [5] - 58:23, 59:4, 59:19, 59:25, 70:10
**fairness** [1] - 91:6
**faith** [20] - 7:15, 7:19, 8:4, 8:7, 12:6, 12:17, 18:11, 19:4, 19:10, 19:17, 24:4, 29:1, 29:8, 29:16, 30:6, 30:14, 31:5, 31:7, 35:2, 80:25
**fall** [1] - 64:17
**family** [7] - 33:14, 33:15, 39:20, 41:9, 41:10, 78:20, 78:22
**far** [5] - 56:10, 56:18, 88:16, 89:7, 89:8
**fatal** [2] - 12:9, 74:13
**favor** [2] - 84:21, 86:6
**federal** [4] - 51:20, 66:22, 67:2, 82:22
**Federal** [1] - 1:16, 84:12
**few** [1] - 58:25
**Fifth** [1] - 32:3
**figure** [1] - 89:25
**file** [2] - 67:23, 68:16
**filed** [4] - 2:11, 3:10, 68:3, 68:9
**files** [11] - 24:18, 25:8, 25:15, 79:1, 81:7, 81:9, 81:15, 81:17, 81:20, 82:4, 82:7
**fill** [1] - 61:24
**final** [2] - 2:14, 74:15
**finally** [2] - 79:4, 82:10
**financial** [1] - 81:19
**findings** [1] - 95:7
**fine** [11] - 7:14, 15:14, 16:17, 28:6, 29:17, 29:24, 37:7, 58:19, 59:23, 67:2, 95:19
**first** [21] - 5:17, 5:24, 6:9, 11:24, 26:11, 29:2, 71:15, 72:7,

72:10, 72:21, 73:3, 73:4, 73:19, 73:20, 75:9, 76:19, 76:23, 82:10, 90:23, 91:16, 92:6
**fits** [1] - 44:11
**five** [5] - 16:10, 16:18, 32:9, 32:10, 32:16
**five-year** [1] - 32:10
**fixed** [1] - 14:25
**fixtures** [1] - 14:22
**fleeting** [2] - 15:15, 78:6
**fleshed** [1] - 68:11
**floor** [1] - 4:2
**flush** [1] - 17:17
**focus** [4] - 2:20, 4:13, 4:15, 25:6
**focused** [1] - 56:22
**focuses** [2] - 37:17, 44:1
**followed** [1] - 11:1
**following** [1] - 95:13
**FOR** [1] - 1:2
**force** [1] - 88:14
**foregoing** [4] - 80:19, 83:15, 89:22, 96:11
**forensic** [3] - 25:13, 25:23, 81:6
**forever** [1] - 14:9
**form** [2] - 5:21, 73:23
**forth** [1] - 77:3
**forthcoming** [2] - 94:8, 94:22
**forward** [3] - 44:17, 94:13, 94:14
**four** [18] - 13:2, 13:5, 15:2, 15:14, 15:20, 16:19, 16:20, 17:3, 17:22, 18:18, 18:24, 19:22, 19:25, 32:9, 36:24, 90:11, 90:12
**four-year** [1] - 17:22
**four-year-ago** [1] - 15:20
**Fourth** [4] - 1:14, 8:9, 75:12, 81:23
**frame** [3] - 17:23, 80:6, 86:14
**framers** [1] - 75:16
**frankly** [1] - 5:8
**fraudulent** [1] - 81:19
**free** [5] - 26:14, 26:22, 26:24, 27:1, 27:5
**fresh** [2] - 16:10, 31:22

7

**Friday** [2] - 95:13, 95:24
**front** [1] - 25:11
**full** [3] - 25:23, 57:19, 94:12
**fully** [4] - 25:10, 66:10, 74:17, 94:7
**furthermore** [4] - 78:25, 79:16, 87:5, 93:7

## G

**general** [6] - 39:24, 44:17, 76:6, 76:24, 81:25, 85:13
**generally** [6] - 74:13, 78:4, 84:20, 87:2, 91:16, 93:20
**genital** [1] - 44:14
**girl** [1] - 23:17
**girlfriend** [1] - 88:12
**girls** [2] - 44:21, 92:20
**given** [9] - 8:16, 13:2, 22:13, 51:9, 51:17, 62:3, 76:25, 77:2, 95:3
**glances** [1] - 15:15
**go-around** [1] - 2:20
**governed** [3] - 84:12, 84:14, 91:5
**Government** [1] - 1:13
**government** [42] - 2:5, 3:7, 14:6, 14:12, 35:15, 35:23, 39:4, 39:19, 42:22, 43:15, 44:1, 44:11, 44:17, 44:20, 46:8, 46:19, 46:24, 47:16, 47:20, 48:18, 49:5, 50:24, 51:15, 52:8, 52:10, 54:21, 61:6, 61:21, 62:24, 66:5, 67:23, 68:1, 68:2, 68:9, 69:10, 82:14, 82:20, 83:11, 91:1, 91:19, 95:9
**government's** [5] - 4:8, 45:1, 50:14, 90:5, 92:15
**grant** [4] - 61:18, 87:6, 87:7, 95:22
**granted** [1] - 3:3
**granting** [1] - 2:24
**great** [1] - 76:25
**Griffith** [3] - 75:24, 76:5, 76:12
**Groh** [6] - 7:18, 7:19,

12:13, 37:15, 37:17, 37:19
**grounds** [1] - 86:20
**guaranteed** [1] - 68:20
**guilt** [2] - 87:4, 87:16
**guilty** [3] - 50:20, 52:13, 53:3

## H

**half** [1] - 32:9
**hand** [3] - 55:18, 57:14, 57:16
**handed** [1] - 75:25
**handful** [1] - 51:20
**happy** [1] - 24:19
**hard** [4] - 51:16, 81:6, 81:15, 81:16
**harmful** [1] - 53:20
**hear** [14] - 10:10, 22:9, 23:3, 29:2, 44:15, 49:15, 56:20, 58:5, 61:6, 68:5, 69:11, 70:1, 70:12
**heard** [7] - 3:1, 3:23, 44:25, 70:8, 72:9, 83:18, 94:5
**hearing** [12] - 2:9, 2:10, 2:19, 2:25, 61:11, 71:12, 82:13, 82:17, 90:23, 90:25, 94:6, 94:7
**HEARING** [1] - 1:10
**hearings** [2] - 3:23, 72:10
**heart** [1] - 69:19
**heavily** [1] - 77:20
**held** [9] - 7:21, 61:1, 74:10, 75:19, 78:3, 86:1, 89:16, 93:18, 93:23
**help** [1] - 27:18
**helpful** [1] - 12:13
**helps** [2] - 34:4, 48:18
**hereby** [4] - 5:2, 9:18, 25:10, 28:8
**herself** [6] - 5:7, 13:8, 15:7, 22:16, 79:19, 80:2
**Hersh** [2] - 85:15, 85:22
**hide** [1] - 82:8
**high** [1] - 53:12
**highlight** [1] - 25:16
**highlights** [1] - 62:25
**HILLIE** [1] - 1:6
**Hillie** [41] - 2:4, 2:11, 20:22, 21:22, 23:22,

23:25, 31:25, 39:19, 39:25, 40:5, 40:8, 40:10, 40:12, 40:15, 41:18, 41:25, 48:5, 51:1, 51:4, 53:9, 53:11, 53:13, 60:6, 60:15, 61:4, 72:21, 76:18, 79:1, 80:15, 80:18, 82:10, 83:22, 84:7, 86:14, 86:20, 87:19, 88:1, 88:8, 89:3, 89:9, 92:19
**Hillie's** [12] - 2:20, 8:9, 39:23, 55:13, 78:19, 81:3, 83:16, 85:20, 88:13, 88:25, 89:23, 93:25
**himself** [2] - 60:24
**hit** [3] - 24:4, 24:5, 53:1
**hoarded** [1] - 77:24
**hold** [3] - 12:17, 13:17, 63:3
**home** [9] - 32:19, 33:4, 33:6, 33:19, 33:24, 34:24, 37:25, 38:10, 78:5
**homes** [1] - 77:25
**honestly** [1] - 39:8
**Honor** [44] - 2:3, 3:14, 10:14, 13:21, 26:9, 27:6, 27:14, 28:2, 28:10, 28:14, 28:15, 28:21, 29:4, 29:11, 30:16, 30:18, 31:10, 32:20, 33:10, 34:8, 34:20, 35:1, 35:10, 61:2, 61:14, 62:15, 62:21, 63:1, 63:11, 64:1, 64:5, 64:11, 64:16, 64:20, 65:3, 65:8, 65:12, 66:3, 66:13, 66:16, 66:18, 67:5, 70:3, 96:1
**Honor's** [1] - 31:2
**HONORABLE** [1] - 1:10
**hope** [1] - 3:21
**Hope** [3] - 5:16, 74:22, 82:23
**hopeful** [1] - 2:14
**hoping** [1] - 22:8
**house** [13] - 15:2, 15:4, 18:13, 18:15, 23:21, 39:24, 41:18, 42:2, 42:4, 47:5
**Hudson** [1] - 83:8
**humiliate** [1] - 46:4
**hundred** [1] - 66:24

**hunting** [1] - 81:19
**husband** [1] - 92:25
**hypothetical** [1] - 44:20

## I

**ID** [7] - 90:22, 90:24, 91:5, 91:8, 91:10, 91:16, 91:17
**ideas** [1] - 34:25
**identical** [2] - 66:15, 66:16
**identification** [13] - 90:1, 90:8, 90:16, 91:13, 91:21, 91:22, 92:10, 92:14, 92:17, 93:9, 93:18, 93:22, 94:1
**identifications** [3] - 92:6, 92:9, 93:23
**identified** [8] - 11:22, 12:18, 73:15, 73:25, 81:13, 81:22, 82:6, 93:16
**identifies** [5] - 4:25, 72:23, 73:4, 73:6
**identify** [3] - 9:14, 92:24, 93:2
**identifying** [1] - 72:24
**identity** [1] - 86:8
**ignore** [2] - 70:15, 70:17
**illegal** [1] - 46:20
**image** [1] - 45:14
**Images** [1] - 77:23
**images** [23] - 15:5, 15:6, 18:3, 20:10, 33:22, 33:25, 34:5, 39:16, 39:17, 39:18, 44:10, 47:17, 50:4, 50:9, 75:4, 78:14, 78:17, 80:3, 80:7, 81:11, 81:14, 81:20, 82:8
**imagine** [2] - 51:16, 66:12
**immaterial** [1] - 81:17
**immediately** [1] - 82:6
**impact** [1] - 58:19
**impermissibly** [3] - 91:10, 91:18, 92:6
**implicated** [1] - 95:2
**implicates** [1] - 86:21
**importance** [1] - 36:18

**important** [7] - 4:9, 9:3, 25:17, 31:13, 35:3, 89:13, 92:12
**importantly** [2] - 86:21, 86:24
**impose** [1] - 82:3
**impossible** [2] - 56:16, 56:19
**impractical** [1] - 82:3
**improper** [4] - 46:18, 48:10, 48:11, 81:22
**improperly** [5] - 43:9, 81:4, 82:11, 87:15, 91:11
**in-court** [1] - 91:21
**inappropriate** [2] - 21:23, 46:11
**inappropriately** [3] - 22:23, 45:7, 46:20
**incident** [2] - 39:5, 39:10
**incidents** [1] - 67:25
**include** [4] - 25:8, 81:9, 91:24, 93:11
**included** [4] - 41:25, 66:23, 72:10, 74:6
**including** [6] - 23:21, 78:10, 81:6, 81:10, 93:13, 93:22
**inconsequential** [1] - 16:23
**inconsistency** [2] - 35:19, 71:8
**inconsistent** [9] - 51:6, 51:8, 51:10, 55:21, 55:25, 56:8, 56:18, 56:25, 57:3
**incorporated** [1] - 25:10
**incorporates** [1] - 8:2
**incorrect** [2] - 12:15, 46:22
**increasing** [1] - 51:9
**indeed** [3] - 76:11, 77:8, 81:21
**Indiana** [1] - 1:17
**indicate** [8] - 5:4, 20:8, 38:11, 39:17, 40:13, 42:3, 73:8, 73:21
**indicated** [5] - 9:5, 15:15, 32:14, 47:17, 78:21
**indicates** [7] - 6:9, 14:8, 18:7, 19:25, 20:4, 45:4, 46:17
**indicating** [4] - 5:10, 7:2, 18:21, 36:13
**indication** [1] - 8:22

8

**indicia** [2] - 79:7, 79:18
**indictment** [6] - 3:4, 49:4, 85:8, 86:9, 87:20
**indiscriminate** [1] - 75:18
**individual** [2] - 32:15, 93:5
**individuals** [1] - 33:15
**indulgence** [1] - 32:5
**infer** [1] - 87:15
**inference** [2] - 78:23, 87:16
**infinite** [1] - 78:17
**infinitely** [1] - 84:24
**inflammatory** [3] - 88:3, 88:7, 88:10
**information** [18] - 2:15, 4:25, 13:1, 13:18, 14:5, 14:10, 15:10, 17:21, 19:24, 22:19, 23:1, 29:20, 31:24, 36:23, 76:9, 76:16, 78:20
**infuriated** [2] - 58:21, 59:1
**infuriating** [1] - 58:18
**inherent** [1] - 31:18
**initial** [3] - 67:14, 67:17, 67:21
**injustice** [1] - 42:15
**innocence** [1] - 87:5
**inquires** [1] - 77:6
**inquiries** [1] - 13:14
**inquiry** [3] - 78:7, 91:15, 91:23
**insignificant** [1] - 21:21
**insofar** [5] - 75:10, 83:23, 85:19, 86:15, 89:15
**Inspiron** [1] - 73:17
**instance** [2] - 29:2, 64:16
**instant** [1] - 76:5
**instead** [2] - 68:23, 81:19
**instruct** [1] - 89:14
**instruction** [2] - 11:2, 50:12
**instructions** [3] - 50:5, 89:17, 95:15
**insufficient** [5] - 23:10, 23:12, 23:15, 23:23, 24:5
**intend** [1] - 94:3
**intended** [5] - 3:12,

38:14, 38:15, 75:2, 75:17
**intent** [7] - 34:10, 34:11, 45:2, 45:24, 49:9, 63:21, 63:24
**interest** [7] - 34:14, 34:15, 45:5, 45:12, 46:2, 46:3, 46:4
**interested** [2] - 66:4, 77:24
**interesting** [2] - 34:21, 84:2
**interests** [2] - 83:10
**internal** [1] - 35:19
**internet** [1] - 13:10
**interpretation** [3] - 9:22, 30:5, 74:21
**interviewed** [1] - 18:9
**intolerable** [2] - 75:18, 75:22
**introduce** [2] - 68:1, 68:10
**intrusive** [1] - 81:5
**invalid** [8] - 7:22, 8:8, 10:4, 10:13, 12:15, 72:22, 75:19
**inventory** [1] - 10:20
**investigating** [2] - 23:16, 80:1
**investigation** [2] - 15:18, 76:13
**invoke** [1] - 30:6
**involve** [3] - 52:19, 57:24, 85:21
**involved** [6] - 40:15, 44:2, 44:10, 48:5, 68:1, 86:5
**involving** [1] - 51:13, 52:3, 52:17, 58:15, 85:17, 85:18, 87:24
**irreconcilable** [1] - 56:25
**irreparable** [2] - 91:14, 93:10
**Irving** [1] - 77:23
**issuance** [1] - 9:19
**issue** [27] - 4:15, 4:16, 5:8, 12:25, 13:8, 15:12, 19:22, 20:3, 20:17, 20:21, 24:7, 24:9, 25:17, 31:22, 35:18, 39:11, 42:13, 43:15, 45:6, 50:25, 52:9, 52:10, 53:2, 54:13, 72:4, 75:23, 77:6
**issued** [1] - 29:19
**issues** [7] - 4:14, 18:11, 23:19, 42:11,

42:24, 53:23, 58:3
**issuing** [9] - 73:7, 73:11, 73:19, 76:24, 77:7, 77:11, 77:14, 79:10, 80:20
**item** [7] - 13:22, 14:1, 18:23, 26:17, 31:16, 34:24, 37:10
**items** [13] - 7:9, 12:7, 28:13, 30:25, 32:21, 32:23, 32:24, 36:24, 37:9, 73:9, 73:22, 75:9, 80:23
**itself** [3] - 14:20, 16:15, 25:2

## J

**J.A** [4] - 63:13, 66:8, 68:2, 79:18
**J.A.A** [5] - 63:13, 66:8, 78:14, 79:24, 80:4
**J.A.A.'s** [3] - 79:11, 79:16, 79:19
**JACKSON** [1] - 1:10
**Jass** [1] - 85:25
**JILL** [1] - 1:13
**Johnson** [2] - 27:16, 28:12
**join** [3] - 46:18, 48:12, 49:10
**joinder** [17] - 42:12, 42:17, 42:19, 48:12, 49:3, 49:6, 84:13, 84:21, 84:22, 84:24, 85:4, 85:7, 85:9, 86:6, 86:20, 88:14, 89:18
**joined** [6] - 43:9, 46:16, 61:19, 84:11, 86:2, 86:24
**joining** [1] - 48:20
**joint** [3] - 87:3, 95:1, 95:23
**judge** [2] - 5:6, 12:16, 15:11, 16:1, 16:16, 17:9, 18:4, 18:5, 29:19, 29:21, 31:21, 37:11, 38:9, 38:14, 41:14, 41:15, 73:7, 73:11, 73:19, 73:20, 77:7
**JUDGE** [1] - 1:11
**judge's** [4] - 30:5, 76:24, 77:11, 79:10
**judges** [3] - 35:5, 80:20
**judgment** [1] - 87:4
**judicial** [2] - 77:1, 84:20

**jump** [1] - 43:19
**jumping** [1] - 46:15
**jurisprudence** [1] - 29:6
**jurors** [5] - 50:17, 51:10, 53:6, 53:7, 53:13
**jury** [18] - 50:5, 50:12, 50:13, 53:2, 58:4, 58:18, 58:19, 59:24, 69:25, 70:21, 70:22, 87:4, 87:13, 87:14, 88:5, 89:10, 89:14, 95:15
**justice** [1] - 85:7
**justification** [1] - 75:15
**justifies** [1] - 19:1
**justify** [1] - 87:13

## K

**KANESHIRO** [1] - 1:21, 96:16
**Kaneshiro** [2] - 96:10, 96:15
**KANESHIRO-MILLER** [1] - 1:21, 96:16
**Kaneshiro-Miller** [2] - 96:10, 96:15
**keep** [2] - 24:2, 67:2
**Kenechukwu** [1] - 2:6
**KENECHUKWU** [1] - 1:13
**KETANJI** [1] - 1:10
**kids** [3] - 47:14, 48:5, 48:13
**kind** [12] - 15:14, 17:6, 18:23, 22:21, 23:6, 23:8, 49:13, 53:12, 53:21, 58:4, 75:16, 78:22
**kinds** [7] - 13:15, 45:3, 56:21, 57:1, 58:3, 58:12, 88:24
**knock** [6] - 24:13, 82:11, 82:15, 83:3, 83:5, 83:9
**knock-and-announce** [4] - 24:13, 83:3, 83:5, 83:9
**knocking** [1] - 82:21
**knowing** [2] - 21:19, 40:25
**known** [4] - 12:20, 31:2, 31:3, 92:19
**knows** [2] - 5:13, 36:7

## L

**labeled** [1] - 81:20
**lack** [1] - 76:15
**lacking** [5] - 11:21, 11:23, 12:5, 12:9, 80:24
**language** [14] - 27:4, 30:23, 30:25, 31:1, 31:4, 31:12, 36:12, 44:3, 49:23, 49:24, 51:2, 53:16, 57:8
**laptop** [80] - 5:18, 14:18, 14:19, 14:20, 14:24, 15:2, 15:17, 17:1, 18:2, 18:3, 18:6, 18:8, 18:13, 18:14, 18:15, 18:17, 18:21, 19:25, 20:5, 20:6, 20:14, 22:17, 22:20, 22:25, 23:2, 23:4, 23:14, 23:20, 31:24, 33:8, 33:11, 33:13, 33:14, 33:15, 33:16, 33:17, 33:21, 33:23, 34:1, 34:22, 37:9, 38:2, 39:20, 39:21, 39:22, 39:23, 40:5, 40:7, 40:14, 41:5, 41:9, 41:15, 41:18, 41:20, 73:6, 73:17, 75:3, 75:4, 75:11, 75:20, 76:20, 78:14, 78:18, 78:20, 78:22, 78:24, 78:25, 79:9, 79:20, 79:23, 80:2, 80:12, 80:15, 80:17, 81:10
**laptop's** [1] - 81:6
**laptops** [1] - 15:1
**large** [2] - 44:19, 63:8
**largely** [1] - 37:15
**lascivious** [3] - 22:21, 44:14, 45:18
**last** [11] - 2:20, 2:23, 3:8, 3:23, 5:20, 6:17, 18:14, 37:4, 67:24, 88:21
**lastly** [2] - 35:1, 66:18
**law** [16] - 4:16, 5:1, 6:18, 7:2, 12:16, 29:6, 37:6, 51:25, 52:2, 76:7, 76:10, 79:13, 82:11, 82:14, 82:22, 91:7
**lays** [1] - 94:7
**lead** [1] - 16:3
**learn** [1] - 5:3

9

**learning** [1] - 66:4
**least** [6] - 21:3, 24:9, 47:10, 52:23, 67:9, 89:7
**leave** [1] - 10:20
**led** [2] - 76:4, 79:8
**ledgers** [1] - 81:19
**left** [1] - 61:15
**legal** [3] - 49:3, 75:5, 84:6
**lends** [1] - 79:18
**length** [1] - 77:13
**Leon** [4] - 12:2, 12:7, 29:22, 30:13
**less** [3] - 5:8, 33:9, 88:10
**level** [1] - 92:2
**liberally** [1] - 84:21
**lied** [1] - 20:8
**life** [3] - 15:1, 18:22, 78:17
**light** [4] - 80:19, 83:15, 89:22, 91:15
**likelihood** [2] - 91:14, 93:10
**likely** [20] - 13:23, 13:24, 18:23, 33:3, 33:5, 33:8, 33:9, 33:12, 33:17, 44:20, 46:7, 46:8, 46:13, 50:20, 55:14, 59:14, 59:16, 77:23, 79:1, 88:5
**likeness** [1] - 85:13
**limitations** [2] - 78:6, 82:4
**limited** [2] - 76:9, 85:10
**limiting** [1] - 89:16
**LINDSAY** [1] - 1:13
**Lindsay** [1] - 2:5
**line** [5] - 10:4, 13:1, 23:12, 31:20, 41:21
**lines** [1] - 61:24
**lineup** [1] - 93:3
**link** [1] - 41:6
**listed** [4] - 33:5, 74:1, 74:22, 74:24
**litigated** [1] - 58:23
**live** [1] - 47:5
**lived** [7] - 33:12, 33:16, 80:15, 86:12, 88:12, 92:19, 93:12
**living** [1] - 80:6
**local** [2] - 66:22, 67:2
**located** [3] - 37:8, 73:9, 82:9
**location** [6] - 26:18, 26:20, 28:13, 28:19, 86:8, 86:11

**logic** [2] - 78:9
**logical** [2] - 26:22, 28:18
**look** [22] - 8:2, 12:24, 14:21, 18:4, 23:2, 23:14, 24:5, 26:16, 26:18, 26:21, 27:17, 28:18, 31:13, 35:16, 36:6, 37:25, 38:3, 42:19, 43:12, 50:18, 63:18, 67:8
**looked** [3] - 20:14, 28:15, 29:24
**looking** [15] - 19:9, 22:12, 22:13, 24:18, 26:16, 27:18, 33:22, 33:24, 33:25, 34:2, 34:5, 41:5, 58:20, 81:14, 90:7
**looks** [2] - 29:18, 60:9
**lower** [1] - 54:8

# M

**magistrate** [8] - 15:11, 16:16, 17:9, 18:4, 29:19, 29:21, 30:5, 31:21
**magnetically** [1] - 81:12
**maintain** [2] - 4:10, 75:6
**maintained** [1] - 80:1
**malleable** [1] - 84:24
**manipulated** [1] - 82:8
**manner** [1] - 72:19
**map** [1] - 37:3
**March** [1] - 96:15
**mark** [4] - 27:7, 30:4, 73:11, 73:24
**Maryland** [2] - 78:11
**materials** [1] - 77:24
**matter** [6] - 2:12, 49:3, 74:23, 76:24, 86:19, 96:12
**matters** [4] - 13:16, 17:5, 17:16, 95:3
**Maxwell** [3] - 27:16, 28:12, 30:22
**mean** [12] - 8:16, 13:2, 27:12, 31:19, 50:8, 52:17, 56:20, 58:8, 59:24, 60:3, 60:4, 88:19
**meaningful** [2] - 74:14, 92:14
**means** [3] - 48:19, 59:24, 85:12

**meant** [3] - 28:1, 41:3, 60:2
**meet** [2] - 92:5, 95:16
**meeting** [1] - 2:23
**meets** [2] - 86:9, 91:18
**memory** [1] - 24:12
**mention** [4] - 54:17, 54:19, 54:20, 54:21
**mentioned** [7] - 35:2, 35:15, 54:25, 61:19, 79:22, 87:11, 87:22
**mere** [3] - 34:18, 87:20, 88:15
**merely** [1] - 75:10
**merit** [1] - 81:8
**met** [1] - 93:7
**mete** [1] - 52:11
**Michigan** [1] - 83:8
**middle** [1] - 71:17
**might** [8] - 16:4, 16:16, 16:24, 19:13, 36:6, 56:23, 66:24, 81:21
**miles** [17] - 2:23, 4:1, 28:6, 28:11, 29:12, 30:2, 30:9, 31:19, 33:7, 34:5, 35:9, 44:15, 61:15, 61:20, 65:22, 67:7, 90:4
**MILES** [150] - 1:16, 4:3, 4:7, 4:13, 4:19, 4:24, 5:22, 6:7, 6:14, 6:17, 6:25, 7:2, 7:18, 8:11, 8:17, 8:25, 9:25, 10:10, 10:14, 11:4, 11:8, 11:14, 11:17, 11:20, 12:1, 12:4, 12:11, 12:13, 12:24, 15:22, 16:7, 16:19, 17:7, 17:24, 18:21, 19:6, 19:12, 19:19, 20:25, 21:7, 21:11, 21:15, 21:21, 23:8, 23:18, 24:4, 24:12, 24:15, 24:20, 25:3, 25:5, 25:20, 25:25, 26:2, 26:5, 35:10, 35:13, 35:15, 36:11, 36:16, 36:20, 37:1, 37:14, 37:24, 38:7, 38:13, 38:18, 39:2, 39:8, 39:14, 40:6, 40:23, 41:7, 41:13, 41:20, 41:24, 42:8, 42:10, 42:17, 43:1, 43:6, 43:10, 43:21, 43:23, 44:1, 45:11, 45:25, 46:22, 47:6,

47:12, 47:17, 48:2, 48:11, 48:17, 49:16, 49:18, 49:20, 50:2, 50:9, 50:11, 52:7, 52:22, 52:25, 54:2, 54:5, 54:13, 54:19, 55:1, 55:4, 55:8, 55:10, 55:24, 56:14, 56:18, 57:3, 57:10, 58:10, 58:14, 58:25, 59:7, 59:13, 60:2, 60:6, 60:15, 60:19, 60:22, 61:2, 67:12, 67:14, 67:21, 68:13, 68:16, 68:20, 69:8, 69:21, 70:3, 70:11, 70:19, 71:15, 71:22, 72:4, 90:11, 90:13, 90:15, 90:19, 95:8, 95:12, 95:15, 95:20, 95:25
**Miles** [3] - 2:6, 23:5, 68:12
**Miles'** [1] - 61:13
**miles'** [1] - 28:25
**Miller** [2] - 96:10, 96:15
**MILLER** [2] - 1:21, 96:16
**mind** [4] - 53:22, 85:16, 92:4, 93:5
**mindful** [1] - 90:20
**minimal** [1] - 77:12
**minor** [5] - 51:21, 51:25, 74:12, 80:4, 86:2
**minors** [1] - 85:21
**minutes** [1] - 61:8
**misidentification** [2] - 91:14, 93:11
**miss** [1] - 24:6
**missing** [5] - 36:4, 36:8, 41:6, 73:11, 73:23
**mistake** [3] - 26:19, 28:20, 38:15
**mistaken** [2] - 34:14, 67:15
**mistakes** [1] - 26:14
**mistreatment** [1] - 85:22
**mitigate** [1] - 89:17
**mobile** [1] - 14:21, 33:8
**mobility** [1] - 18:22
**model** [1] - 76:16
**modicum** [1] - 27:5
**molestation** [11] - 63:10, 63:11, 63:13, 63:15, 64:3, 64:4,

64:7, 65:7, 65:13, 65:17, 65:19
**molested** [1] - 88:11
**molesting** [1] - 44:18
**moment** [3] - 56:7, 69:14, 95:10
**Monday** [2] - 95:17, 95:24
**month** [1] - 2:18
**months** [2] - 14:4, 17:4
**moreover** [1] - 62:11
**most** [6] - 26:25, 29:15, 43:20, 43:23, 92:12, 94:6
**mother** [8] - 20:13, 20:14, 33:11, 33:16, 39:20, 48:9
**mother's** [4] - 23:20, 39:21, 41:20, 41:22
**motion** [54] - 2:20, 2:21, 3:3, 3:10, 3:18, 4:2, 4:4, 4:7, 4:15, 24:21, 26:3, 35:9, 35:12, 42:10, 54:14, 62:24, 67:15, 67:19, 67:24, 68:3, 68:10, 69:5, 72:7, 72:8, 72:9, 72:15, 82:13, 83:16, 83:18, 83:20, 84:4, 86:23, 89:21, 89:23, 90:1, 90:2, 90:3, 90:5, 90:9, 90:15, 90:16, 90:22, 91:3, 91:9, 91:15, 93:25, 94:4, 94:6, 94:11, 94:17, 95:22
**MOTION** [1] - 1:10
**motions** [11] - 2:11, 2:14, 2:24, 3:2, 3:8, 3:21, 3:22, 3:25, 54:14, 90:7, 95:3
**motive** [2] - 45:2, 48:4
**movable** [1] - 14:24
**move** [6] - 11:14, 13:23, 26:3, 35:12, 48:25, 49:15
**moving** [3] - 12:11, 20:2, 94:13
**MR** [182] - 4:3, 4:7, 4:13, 4:19, 4:24, 5:22, 6:7, 6:14, 6:17, 6:25, 7:2, 7:18, 8:11, 8:17, 8:25, 9:25, 10:10, 10:14, 11:4, 11:8, 11:14, 11:17, 11:20, 12:1, 12:4, 12:11, 12:13, 12:24, 15:22, 16:7, 16:19, 17:7,

10

17:24, 18:21, 19:6,
19:12, 19:19, 20:25,
21:7, 21:11, 21:15,
21:21, 23:8, 23:18,
24:4, 24:12, 24:15,
24:20, 25:3, 25:5,
25:20, 25:25, 26:2,
26:5, 26:7, 26:9,
26:25, 27:4, 28:2,
28:10, 29:4, 29:11,
30:16, 30:18, 31:10,
32:2, 32:7, 33:10,
34:8, 35:10, 35:13,
35:15, 36:11, 36:16,
36:20, 37:1, 37:14,
37:24, 38:7, 38:13,
38:18, 39:2, 39:8,
39:14, 40:6, 40:23,
41:7, 41:13, 41:20,
41:24, 42:8, 42:10,
42:17, 43:1, 43:6,
43:10, 43:21, 43:23,
44:1, 45:11, 45:25,
46:22, 47:6, 47:12,
47:17, 48:2, 48:11,
48:17, 49:16, 49:18,
49:20, 50:2, 50:9,
50:11, 52:7, 52:22,
52:25, 54:2, 54:5,
54:13, 54:19, 55:1,
55:4, 55:8, 55:10,
55:24, 56:14, 56:18,
57:3, 57:10, 58:10,
58:14, 58:25, 59:7,
59:13, 60:2, 60:6,
60:15, 60:19, 60:22,
61:2, 61:14, 62:8,
62:21, 63:1, 63:7,
64:1, 64:5, 64:11,
64:20, 64:24, 65:2,
65:8, 65:12, 65:18,
66:3, 66:12, 66:16,
67:5, 67:12, 67:14,
67:21, 68:13, 68:16,
68:20, 69:8, 69:21,
70:3, 70:11, 70:19,
71:15, 71:22, 72:4,
90:11, 90:13, 90:15,
90:19, 95:8, 95:12,
95:15, 95:20, 95:25
  **MS** [7] - 3:14, 3:17,
3:19, 67:23, 68:8,
95:9, 96:1
  **multiple** [3] - 84:10,
84:15, 87:13
  **must** [3] - 77:2,
77:10, 86:25
  **mutually** [2] - 63:16,
65:20

## N

  **naked** [15] - 13:7,
16:25, 21:9, 21:18,
22:5, 22:16, 22:24,
23:15, 23:23, 34:13,
44:22, 45:4, 46:10,
80:1, 80:17
  **name** [1] - 93:16
  **narrow** [1] - 44:7
  **nature** [10] - 31:13,
31:14, 44:8, 45:22,
56:21, 59:19, 77:19,
77:21, 89:4, 92:8
  **nearly** [1] - 85:12
  **necessarily** [9] -
10:11, 15:3, 27:8,
28:2, 48:19, 49:8,
69:8, 70:24, 71:1
  **necessary** [2] - 49:6,
88:20
  **need** [12] - 2:16,
6:22, 16:5, 23:5, 49:5,
56:11, 63:4, 74:7,
92:23, 94:9, 95:7,
95:10
  **needed** [1] - 17:3
  **needs** [4] - 6:8, 42:5,
57:6, 61:21
  **never** [5] - 8:21,
15:16, 68:3, 68:25
  **nevertheless** [2] -
77:10, 79:2
  **new** [2] - 3:4, 3:10
  **next** [7] - 11:14,
13:25, 27:7, 49:15,
49:16, 81:3, 95:24
  **nexus** [25] - 20:21,
20:25, 21:14, 21:16,
21:21, 21:24, 23:9,
23:23, 24:5, 34:4,
34:7, 34:20, 34:22,
39:15, 40:1, 40:6,
40:24, 41:1, 41:3,
41:6, 42:6, 79:21,
80:13, 80:16
  **night** [2] - 5:8, 9:20
  **none** [2] - 8:6, 55:2
  **notably** [1] - 86:21
  **note** [8] - 2:25,
26:13, 27:14, 28:11,
61:16, 66:18, 80:23,
82:2
  **noted** [4] - 27:17,
65:3, 76:12, 87:22
  **notes** [1] - 24:6,
82:17
  **nothing** [5] - 11:5,
11:7, 11:8, 11:10,
92:7

  **noticed** [1] - 49:20
  **notion** [2] - 27:23,
48:17
  **November** [3] - 2:13,
82:13, 90:25
  **nuanced** [1] - 29:12
  **nude** [4] - 34:18,
75:4, 79:19, 80:3
  **number** [10] - 50:4,
50:7, 50:8, 50:9,
50:10, 50:11, 50:13,
50:16, 68:21, 69:15
  **numbers** [1] - 94:23
  **numerous** [1] -
93:22
  **NW** [3] - 1:14, 1:17,
1:22

## O

  **object** [11] - 5:11,
6:1, 6:22, 8:23, 10:7,
36:5, 68:6, 72:25,
73:14, 74:24, 82:6
  **objecting** [1] - 62:20
  **objectively** [1] - 19:4
  **objects** [11] - 5:1,
6:12, 6:13, 39:1,
73:16, 74:1, 74:9,
74:25, 76:7, 86:20
  **observation** [1] -
80:9
  **observe** [1] - 93:21
  **observed** [3] - 78:14,
79:19, 82:5
  **obvious** [1] - 80:3
  **obviously** [4] -
38:19, 43:20, 54:5,
94:4
  **occupants** [1] -
82:24
  **occurred** [2] - 86:14,
93:14
  **occurring** [1] - 29:14
  **OF** [4] - 1:2, 1:4,
1:10, 96:8
  **offense** [5] - 20:23,
60:8, 65:6, 65:14,
65:17
  **offenses** [23] - 21:5,
42:19, 48:4, 48:20,
49:11, 51:2, 51:21,
52:7, 52:9, 66:22,
66:23, 66:25, 70:4,
71:24, 72:1, 84:15,
84:23, 84:25, 85:5,
85:7, 86:15, 87:13
  **offer** [1] - 57:17
  **offered** [5] - 3:16,
49:5, 76:18, 88:8,

92:7
  **Office** [1] - 1:14
  **Officer** [1] - 29:23
  **officer** [28] - 4:17,
6:18, 7:3, 7:16, 7:20,
10:24, 11:1, 12:6,
12:20, 18:11, 19:3,
19:16, 19:23, 20:2,
20:3, 20:17, 21:8,
28:19, 28:20, 29:8,
30:7, 37:6, 38:22,
73:25, 74:19, 77:1,
82:18
  **officer's** [3] - 82:16,
83:2, 91:7
  **officers** [14] - 12:14,
12:16, 20:7, 26:17,
27:11, 73:13, 75:2,
79:25, 80:24, 81:13,
83:13, 92:19, 92:21,
93:3
  **OFFICIAL** [1] - 96:8
  **often** [2] - 7:5, 42:3
  **Okocha** [6] - 2:6,
44:25, 61:11, 67:7,
69:18, 87:21
  **OKOCHA** [34] - 1:13,
26:7, 26:9, 26:25,
27:4, 28:2, 28:10,
29:4, 29:11, 30:16,
30:18, 31:10, 32:2,
32:7, 33:10, 34:8,
61:14, 62:8, 62:21,
63:1, 63:7, 64:1, 64:5,
64:11, 64:20, 64:24,
65:2, 65:8, 65:12,
65:18, 66:3, 66:12,
66:16, 67:5
  **old** [4] - 14:4, 14:11,
14:12, 14:13
  **omission** [3] - 38:15,
38:20, 74:4
  **once** [1] - 5:12
  **one** [78] - 3:8, 4:15,
5:3, 5:9, 5:12, 5:13,
7:4, 8:4, 10:15, 11:23,
13:3, 14:3, 15:13,
16:8, 16:9, 16:14,
16:15, 18:9, 20:4,
20:6, 22:22, 25:1,
33:15, 34:22, 36:5,
36:15, 36:16, 36:19,
42:5, 43:4, 43:18,
43:19, 45:6, 46:14,
47:10, 47:17, 48:3,
48:18, 50:4, 51:5,
51:6, 51:19, 51:23,
52:7, 52:17, 53:3,
55:15, 55:18, 55:20,
56:2, 56:8, 56:15,

57:14, 57:23, 57:25,
60:17, 62:16, 63:3,
64:14, 65:3, 65:25,
68:1, 68:7, 68:21,
70:11, 72:22, 73:20,
74:3, 74:24, 76:4,
82:3, 84:2, 84:21,
84:23, 88:2, 90:9,
93:23, 94:4
  **one's** [2] - 82:1,
83:10
  **ones** [1] - 92:10
  **open** [1] - 82:24
  **opinion** [6] - 38:9,
75:24, 94:7, 94:16,
94:22
  **opportunity** [4] -
2:24, 26:19, 91:24,
93:21
  **oppose** [1] - 69:13
  **opposed** [3] - 34:13,
40:15, 62:2
  **opposing** [1] - 34:25
  **opposition** [4] - 4:8,
14:6, 68:16, 68:18
  **options** [1] - 51:6
  **oral** [1] - 95:22
  **orally** [2] - 3:22,
94:18
  **order** [12] - 2:16,
17:4, 19:15, 34:8,
37:3, 41:14, 42:18,
45:23, 52:12, 60:7,
85:6, 92:24
  **others'** [1] - 46:3
  **otherwise** [8] -
56:11, 62:1, 62:6,
71:4, 74:17, 81:12,
85:5, 86:24
  **out-and-out** [1] -
27:9
  **outstanding** [3] -
90:5, 94:21, 95:2
  **outweighs** [1] -
49:22
  **overbroad** [1] -
30:23
  **overlap** [3] - 45:3,
47:8, 86:12
  **overlaps** [1] - 86:15
  **overly** [4] - 36:12,
75:19, 75:22, 76:1
  **overwhelmingly** [1] -
93:23
  **own** [2] - 46:2, 82:17
  **owned** [2] - 33:16,
76:3

11

# P

**p.m** [4] - 2:2, 61:9, 96:3
**paper** [1] - 30:8
**papers** [4] - 16:11, 24:15, 24:16, 24:19
**par** [1] - 52:1
**paragraph** [3] - 22:15, 28:7, 30:3
**parsing** [2] - 30:12, 31:2
**part** [18] - 3:3, 3:9, 6:17, 9:3, 35:3, 36:2, 41:7, 42:21, 43:1, 43:11, 43:12, 45:13, 49:9, 63:9, 67:21, 84:17, 91:23
**parte** [1] - 62:9
**participation** [1] - 85:20
**particular** [9] - 6:10, 22:15, 23:17, 45:5, 45:7, 46:10, 76:14, 77:5, 77:10
**particularity** [9] - 8:16, 8:18, 9:12, 11:17, 22:11, 26:16, 27:16, 75:10, 81:25
**particularly** [7] - 8:13, 9:6, 9:7, 9:10, 14:17, 15:8, 75:13
**parties** [2] - 2:16, 94:9
**parties'** [2] - 72:14, 84:3
**parts** [1] - 85:1
**passed** [1] - 31:23
**past** [2] - 2:10, 19:10
**patent** [1] - 74:19
**patience** [1] - 94:24
**PATRICIA** [2] - 1:21, 96:16
**Patricia** [2] - 96:10, 96:15
**Paull** [1] - 78:8
**Pause** [1] - 32:6
**paying** [1] - 93:14
**pending** [1] - 95:4
**people** [12] - 7:5, 14:25, 16:23, 27:22, 37:21, 39:1, 39:24, 45:14, 45:25, 51:22, 92:21, 92:24
**per** [1] - 82:25
**perceive** [1] - 52:15
**percent** [1] - 66:24
**perhaps** [6] - 37:20, 39:4, 40:16, 46:2, 92:12

**period** [5] - 27:13, 31:15, 78:5, 86:18, 93:13
**periods** [1] - 13:17
**permanence** [1] - 78:22
**permanent** [1] - 14:22
**permanently** [1] - 13:23
**permissible** [2] - 63:22, 84:15
**permit** [3] - 25:19, 25:22, 91:21
**permits** [4] - 25:21, 25:22, 79:5, 84:22
**permitted** [4] - 24:24, 25:18, 37:22, 54:22
**perpetrated** [1] - 92:25
**perpetrator** [1] - 93:4
**person** [27] - 5:6, 5:11, 5:14, 6:1, 6:21, 8:23, 9:10, 10:7, 17:19, 18:13, 21:10, 21:11, 21:23, 28:1, 37:16, 37:18, 37:24, 38:22, 38:23, 39:3, 40:17, 45:24, 50:18, 53:10, 53:14, 56:16, 72:24
**personal** [1] - 33:14
**persons** [2] - 74:9, 77:24
**persuaded** [1] - 88:13
**persuasive** [1] - 78:10
**pertain** [1] - 13:15
**pertinent** [1] - 64:15
**perverted** [1] - 53:9
**phone** [1] - 76:15
**phone's** [1] - 76:16
**photograph** [6] - 21:22, 92:15, 92:16, 92:17, 93:17, 93:19
**photographs** [5] - 25:9, 75:21, 81:10, 81:11, 92:24
**photos** [3] - 32:16, 79:19, 81:20
**physical** [2] - 82:6, 86:8
**picture** [5] - 21:18, 22:24, 23:4, 92:20, 93:4
**pictures** [27] - 13:7, 15:15, 15:17, 15:21, 15:23, 17:1, 22:4,

22:5, 22:16, 23:15, 23:24, 34:12, 34:17, 41:11, 41:23, 44:16, 44:22, 45:4, 45:24, 46:1, 46:10, 46:19, 47:13, 80:2, 80:17
**piece** [4] - 29:13, 30:8, 37:2, 70:24
**Pindell** [2] - 66:20, 87:22
**pink** [9] - 37:9, 38:2, 41:18, 73:6, 73:16, 75:3, 75:11, 75:20, 76:20
**place** [23] - 5:13, 5:24, 7:25, 8:13, 8:18, 8:22, 8:24, 9:6, 9:8, 9:9, 18:23, 33:18, 36:4, 36:15, 36:16, 36:19, 37:3, 37:16, 72:24, 77:5, 77:17, 90:25, 91:16
**placed** [2] - 5:12, 9:1
**places** [3] - 5:23, 36:24, 80:22
**plain** [2] - 8:5, 74:7
**plainly** [2] - 8:3, 8:8
**plaintiff** [1] - 62:18
**plan** [5] - 42:22, 43:1, 43:13, 84:18, 85:2
**plausible** [1] - 44:18
**pleadings** [5] - 11:18, 42:24, 43:16, 44:4, 44:5
**pleasure** [1] - 45:20
**point** [26] - 5:3, 14:11, 14:12, 24:13, 24:19, 28:25, 29:12, 31:19, 35:24, 39:15, 50:16, 52:14, 55:24, 56:11, 57:12, 57:22, 57:23, 58:12, 58:21, 61:11, 68:20, 68:21, 69:10, 71:23, 82:25, 84:1
**pointed** [1] - 14:6
**points** [3] - 24:6, 67:7, 78:18
**police** [17] - 5:3, 5:16, 7:6, 7:16, 7:20, 12:14, 16:5, 22:19, 23:1, 29:8, 29:23, 37:22, 38:11, 38:21, 38:25, 76:14, 92:22
**pornographer** [1] - 44:19
**pornographers** [2] - 13:17, 17:20
**pornography** [55] -

13:15, 14:3, 14:8, 14:14, 15:24, 17:16, 20:23, 22:1, 22:3, 31:15, 31:19, 32:2, 32:11, 32:13, 32:15, 32:18, 32:23, 33:2, 41:5, 43:5, 44:10, 44:12, 44:16, 45:18, 54:7, 54:16, 55:17, 56:2, 58:24, 59:5, 59:10, 63:7, 63:14, 63:21, 64:7, 64:9, 64:15, 64:17, 64:25, 65:10, 65:14, 65:17, 65:19, 77:23, 78:1, 78:4, 78:7, 78:17, 85:17, 86:1, 86:3, 86:16, 88:6, 88:9, 89:10
**portion** [2] - 4:24, 32:3
**poses** [1] - 18:25
**position** [5] - 55:1, 55:4, 55:6, 89:3, 90:21
**possess** [1] - 46:1
**possessing** [1] - 78:1
**possession** [5] - 41:22, 47:10, 78:19, 80:4, 86:1
**possible** [3] - 71:19, 76:11, 92:21
**potential** [1] - 60:18
**potentially** [2] - 56:21, 58:17
**preceded** [1] - 10:8
**precedent** [1] - 83:7
**precise** [1] - 82:4
**precisely** [4] - 55:19, 76:17, 89:3, 93:6
**preclude** [1] - 91:13
**predicate** [1] - 65:6
**prejudice** [19] - 49:21, 52:18, 53:17, 53:18, 54:8, 58:14, 59:7, 60:16, 61:3, 61:16, 61:17, 66:19, 67:1, 85:8, 86:20, 86:22, 86:25, 87:12, 89:17
**prejudiced** [5] - 49:23, 61:4, 69:25, 70:2, 83:23
**prejudices** [1] - 60:15
**prejudicial** [10] - 42:14, 44:16, 49:25, 50:17, 53:18, 53:21, 54:6, 55:13, 57:18,

88:10
**prejudicing** [1] - 89:6
**premise** [9] - 4:25, 5:14, 5:16, 6:11, 7:9, 7:12, 9:24, 37:8
**premises** [24] - 5:11, 5:23, 6:1, 6:5, 6:21, 6:23, 8:20, 10:7, 18:6, 27:8, 27:25, 36:3, 36:5, 37:10, 38:23, 38:25, 73:4, 73:5, 73:10, 73:13, 74:9, 74:23
**prepare** [1] - 94:9
**prepared** [1] - 68:17
**preparing** [1] - 5:6
**preposterous** [1] - 93:1
**presence** [1] - 82:21
**present** [8] - 2:7, 12:21, 51:6, 51:7, 57:13, 57:14, 70:20, 88:14
**presentation** [2] - 72:10, 91:2
**presented** [9] - 58:3, 72:13, 76:17, 88:2, 88:3, 91:1, 92:10, 92:16, 94:11
**presenting** [2] - 50:23, 87:17
**presumptively** [1] - 79:12
**pretrial** [6] - 2:11, 2:17, 49:4, 94:19, 95:1, 95:23
**pretty** [5] - 15:19, 18:1, 51:19, 52:1, 53:7
**prevent** [2] - 81:25, 87:3
**preventing** [1] - 83:11
**previous** [1] - 10:9
**previously** [10] - 3:16, 6:6, 9:17, 9:23, 9:25, 10:3, 10:17, 24:10, 72:13, 94:5
**principles** [1] - 85:16
**privacy** [3] - 33:4, 34:24, 77:25
**probability** [2] - 77:4, 80:22
**probable** [38] - 5:24, 6:10, 6:14, 7:9, 7:25, 11:20, 11:21, 11:25, 12:5, 12:9, 12:19, 15:19, 16:14, 16:17, 17:10, 18:5, 19:1,

12

19:7, 19:14, 20:19,
29:16, 30:24, 31:7,
31:25, 35:5, 35:7,
37:9, 38:1, 38:10,
73:9, 73:21, 76:15,
76:20, 76:25, 77:8,
77:9, 79:10, 80:24
**probative** [1] - 49:22
**problem** [15] - 4:20,
14:8, 18:11, 18:25,
19:1, 19:24, 45:13,
50:15, 51:3, 51:17,
52:25, 53:6, 56:5,
56:6
**problematic** [1] -
52:5
**problems** [1] - 58:12
**procedure** [3] - 91:8,
91:10, 91:17
**Procedure** [1] -
84:13
**proceeding** [1] - 2:9
**proceedings** [1] -
96:12
**Proceedings** [2] -
1:24, 96:3
**process** [2] - 91:6
**produce** [2] - 45:15,
76:13
**produced** [3] - 1:25,
45:14, 45:19
**producing** [1] -
45:14
**production** [4] -
47:9, 63:14, 64:16
**profit** [2] - 45:15,
46:3
**prohibit** [1] - 75:17
**promote** [1] - 84:20
**prong** [3] - 44:13,
45:16, 86:10
**proper** [10] - 9:22,
34:10, 42:12, 42:13,
42:18, 42:19, 48:20,
85:5, 85:9
**properly** [5] - 46:16,
49:10, 61:18, 86:2,
86:24
**property** [6] - 6:16,
7:24, 10:2, 10:6,
10:20, 11:4
**proposed** [1] - 69:4
**propriety** [2] - 49:3,
77:6
**protects** [1] - 83:10
**prove** [8] - 34:8,
34:9, 34:11, 45:12,
45:13, 49:6, 49:8,
52:12
**provide** [3] - 3:7,

62:8, 85:6
**provided** [2] - 6:2,
16:3
**provides** [1] - 10:1,
84:14
**providing** [1] - 19:24
**proximity** [1] - 86:7
**public** [1] - 30:19
**Public** [1] - 1:16
**purportedly** [2] -
73:12, 73:24
**purpose** [10] - 20:5,
30:10, 36:21, 45:2,
45:12, 45:14, 45:18,
47:18, 47:19, 47:21
**purposeful** [1] -
34:19
**purposes** [2] - 11:18,
57:5
**pursuant** [3] - 39:1,
39:6, 69:5
**pursue** [1] - 55:16,
55:17, 55:21
**push** [1] - 17:1
**put** [10] - 7:21, 18:12,
41:23, 45:1, 47:22,
66:2, 66:5, 66:6, 69:3,
71:22
**puzzling** [1] - 79:24

## Q

**questions** [2] - 18:4,
26:2
**quickly** [2] - 72:7,
90:21
**quote** [2] - 85:14,
85:22
**quotes** [1] - 85:2

## R

**raise** [1] - 68:18
**raised** [3] - 3:5, 24:9,
72:18
**random** [1] - 15:16
**ranging** [2] - 75:16,
76:8
**rather** [1] - 95:24
**reaches** [1] - 78:12
**react** [1] - 58:5
**reaction** [1] - 29:14
**reading** [7] - 7:4,
8:12, 10:14, 26:22,
28:18, 28:22, 60:12
**reads** [1] - 67:9
**ready** [2] - 2:18, 26:3

**realize** [1] - 3:1
**really** [11] - 6:23,
13:9, 13:14, 13:19,
30:4, 51:4, 51:21,
53:17, 68:11, 68:24,
88:21
**realm** [1] - 11:24
**reason** [18] - 12:24,
17:18, 21:15, 43:8,
44:8, 45:17, 61:18,
61:19, 61:22, 61:23,
61:24, 62:2, 62:3,
62:5, 62:10, 63:22,
72:17
**reasonable** [12] -
15:3, 19:16, 19:21,
26:18, 28:19, 33:4,
34:23, 74:19, 74:21,
76:13, 88:5
**reasonably** [4] -
12:20, 20:18, 59:14,
59:16
**reasoning** [2] - 84:5,
94:8
**reasons** [1] - 50:4
**receipt** [2] - 32:14,
32:16
**receive** [1] - 7:4
**recent** [3] - 75:23,
78:11, 94:7
**Recess** [1] - 61:9
**recognized** [2] -
77:22, 87:12
**record** [2] - 3:9,
96:11
**recording** [2] - 45:4,
46:9
**recordings** [1] -
44:12
**records** [2] - 25:8,
81:9
**recovery** [1] - 32:11
**refer** [3] - 6:7, 6:8,
11:4
**reference** [7] - 10:5,
18:14, 25:11, 39:22,
74:4, 74:10
**referenced** [1] -
64:18
**referencing** [1] -
9:22
**referring** [1] - 79:13
**reflect** [1] - 85:19
**refresh** [1] - 24:12
**refused** [1] - 82:24
**regard** [23] - 3:18,
9:10, 11:17, 18:16,
24:16, 24:21, 35:2,
42:10, 45:3, 47:8,
59:9, 59:22, 60:1,

60:3, 60:13, 67:10,
68:3, 69:1, 71:23,
75:7, 76:3, 85:9,
95:15
**regarding** [3] -
44:10, 61:16, 72:18
**regards** [2] - 31:11,
63:7
**reiterate** [1] - 35:1
**relate** [4] - 14:2,
21:19, 40:11
**related** [14] - 3:21,
15:18, 22:11, 22:14,
29:1, 45:2, 47:11,
54:10, 54:18, 56:7,
59:5, 63:10, 75:8,
89:14
**relates** [4] - 44:22,
74:16, 81:23, 89:15
**relating** [1] - 46:14
**relative** [1] - 79:6
**relevance** [1] - 13:22
**relevant** [10] - 14:13,
17:7, 21:19, 25:15,
32:23, 32:24, 45:6,
54:3, 66:9, 80:5
**reliability** [1] - 15:9,
16:8, 17:8, 20:3,
20:17, 24:5, 79:4,
79:7, 79:18
**reliable** [7] - 17:11,
79:9, 79:12, 87:4,
91:13, 91:21, 93:10
**relied** [2] - 12:17,
19:4
**relief** [1] - 85:7
**relies** [2] - 12:6, 29:8
**rely** [8] - 3:15, 7:16,
11:18, 12:7, 19:17,
20:18, 52:8, 80:25
**relying** [6] - 19:20,
20:4, 29:17, 30:4,
44:13, 52:10
**remain** [2] - 3:25,
12:8
**remember** [5] -
17:12, 17:13, 20:13,
33:3, 44:2
**repeat** [1] - 89:18
**repeated** [1] - 85:20
**repeatedly** [1] -
88:11
**repeating** [1] - 57:22
**replaced** [1] - 14:25
**reported** [4] - 1:24,
13:3, 13:4, 15:23
**reportedly** [1] - 15:6
**REPORTER** [1] -
96:8
**Reporter** [1] - 1:21

**representations** [1] -
83:1
**represented** [1] -
82:20
**request** [1] - 2:25
**requested** [2] - 2:23,
36:23
**require** [2] - 47:19,
87:21
**required** [1] - 91:6
**requirement** [4] -
75:12, 81:24, 83:3,
83:5
**requires** [1] - 85:7
**resembling** [1] -
85:12
**reserving** [1] - 94:16
**residence** [7] -
14:23, 14:24, 33:12,
33:17, 38:2, 38:5,
76:2
**respect** [23] - 2:10,
3:8, 6:4, 14:14, 17:15,
18:1, 30:13, 30:15,
39:15, 44:25, 45:10,
47:2, 48:13, 49:13,
53:23, 59:8, 60:14,
64:9, 74:8, 81:22,
83:20, 85:4
**respects** [1] - 85:12
**respond** [3] - 35:13,
60:13, 84:8
**responding** [1] -
70:9
**response** [5] - 26:4,
35:11, 42:8, 50:14,
61:12
**responsible** [1] -
19:23
**responsive** [1] - 82:7
**rest** [3] - 24:15,
24:16, 74:4
**resulting** [1] - 81:1
**retrieved** [1] - 79:2
**return** [1] - 10:21
**reveal** [1] - 81:21
**reviewed** [1] - 82:16
**reviewing** [4] -
74:10, 77:1, 77:5,
77:9
**revisited** [1] - 3:6
**Riccardi** [1] - 32:8
**Richardson** [1] -
85:3
**rid** [2] - 17:19, 17:21
**rights** [3] - 7:5, 8:9,
37:17
**risk** [5] - 51:8, 53:12,
55:12, 58:17, 87:3
**RMR** [1] - 1:21

Road [1] - 82:23
road [1] - 37:3
roadmap [1] - 37:2
robbery [1] - 66:23
Room [1] - 1:21
roughly [1] - 86:18
routinely [1] - 89:16
rule [12] - 3:22, 55:5, 63:9, 64:2, 65:10, 66:14, 82:2, 83:9, 83:10, 84:19, 94:18
Rule [26] - 42:12, 46:18, 49:16, 49:18, 49:22, 54:14, 55:8, 63:9, 63:15, 63:18, 63:20, 63:23, 64:12, 67:7, 67:9, 67:23, 84:13, 84:14, 84:24, 85:5, 85:10, 86:10, 86:21, 86:23
Rules [1] - 84:12
ruling [1] - 91:9
rummaging [1] - 82:1
run [3] - 51:8, 53:12, 58:17

## S

satisfied [1] - 83:3
satisfy [1] - 23:9
save [2] - 8:4, 8:8
saw [13] - 7:7, 13:7, 15:17, 15:23, 16:9, 16:25, 17:2, 18:14, 18:15, 22:4, 22:22, 23:4, 31:23
scenario [2] - 12:3, 53:21
scheme [5] - 42:22, 43:1, 43:13, 84:18, 85:2
scope [3] - 24:24, 25:18, 75:2
search [74] - 4:17, 5:7, 5:14, 5:16, 5:18, 7:12, 7:23, 7:25, 9:19, 11:21, 12:21, 13:2, 13:3, 13:6, 16:5, 18:10, 18:18, 20:19, 20:21, 21:3, 22:19, 23:6, 24:11, 24:22, 25:7, 26:13, 26:15, 26:20, 26:21, 26:23, 26:25, 27:2, 27:7, 27:10, 27:19, 28:5, 28:13, 28:16, 31:22, 35:17, 35:22, 38:5, 38:12, 39:1, 39:3, 39:4, 39:6, 39:9,

39:10, 41:15, 72:19, 72:20, 72:21, 73:13, 73:25, 74:13, 74:17, 74:20, 74:22, 75:6, 75:8, 75:14, 75:16, 76:8, 76:19, 77:2, 79:23, 80:3, 80:21, 81:3, 81:8, 81:18
searched [25] - 5:10, 8:13, 8:18, 9:8, 9:9, 28:4, 31:1, 33:18, 33:21, 36:13, 37:16, 37:25, 38:23, 38:25, 39:11, 72:23, 73:4, 73:16, 74:16, 75:2, 77:19, 78:24, 80:23, 81:17
searches [1] - 82:4
searching [5] - 25:1, 28:17, 28:21, 28:24, 75:4
Second [3] - 77:22, 80:8, 85:25
second [13] - 5:17, 29:13, 35:9, 63:3, 73:8, 73:15, 73:20, 74:24, 75:8, 76:24, 81:4, 91:23, 92:12
secondly [2] - 5:10, 8:14
secrecy [1] - 78:5
section [5] - 4:21, 7:21, 9:4, 12:11, 36:20
secure [1] - 23:1
see [13] - 20:15, 20:16, 26:18, 27:18, 28:18, 42:22, 50:2, 51:23, 56:20, 59:21, 65:16, 74:14, 88:25
seeing [1] - 83:11
seek [1] - 54:1
seeks [1] - 84:19
seem [4] - 34:24, 51:18, 52:1, 71:11
segue [1] - 34:4
seize [12] - 5:1, 10:19, 10:25, 11:4, 11:9, 20:5, 26:23, 33:24, 34:2, 76:15, 76:20, 79:9
seized [19] - 5:11, 7:21, 7:25, 9:11, 9:12, 9:15, 10:20, 12:8, 29:9, 31:16, 34:24, 36:14, 73:18, 75:3, 75:9, 75:13, 76:7, 81:24
seizing [3] - 28:18, 28:21, 28:24

seizure [3] - 35:22, 76:2, 76:4
selected [1] - 6:2
selling [1] - 48:9
sense [3] - 48:1, 74:14, 92:15
separate [19] - 35:4, 50:23, 51:1, 51:23, 52:15, 57:7, 57:13, 57:21, 60:7, 60:9, 66:21, 66:22, 69:23, 72:9, 85:6, 87:14, 87:21, 87:23, 87:24
separated [2] - 55:16, 60:21
separately [8] - 56:4, 56:10, 57:15, 60:11, 66:1, 69:1, 84:12, 89:3
separation [2] - 30:19, 32:10
September [2] - 1:8, 24:22
series [1] - 9:21
serious [6] - 12:19, 18:24, 20:17, 50:18, 51:20, 87:3
seriously [1] - 11:21
set [21] - 2:9, 2:12, 5:25, 43:14, 48:3, 48:18, 51:25, 52:7, 52:9, 52:19, 53:3, 53:10, 57:15, 57:23, 70:14, 73:12, 73:24, 77:3, 88:2, 88:4, 89:14
sets [4] - 43:3, 52:15, 60:4, 73:1
setting [2] - 53:23, 90:6
settle [1] - 3:24
settled [1] - 71:17
Seventh [1] - 82:5
sever [16] - 2:21, 4:2, 26:3, 35:12, 42:10, 42:15, 43:4, 67:11, 69:3, 69:9, 69:24, 82:20, 84:5, 86:23, 88:22, 89:23
several [5] - 3:22, 4:8, 72:22, 74:3, 93:12
severance [23] - 42:11, 53:15, 54:1, 59:6, 59:20, 60:14, 61:1, 61:7, 61:13, 61:17, 61:18, 69:17, 70:7, 71:20, 85:4, 87:2, 87:6, 87:8, 87:9, 87:21, 87:25, 88:18,

88:20
severed [13] - 51:7, 54:12, 54:16, 58:6, 58:7, 59:10, 61:5, 64:23, 68:6, 68:9, 71:5, 84:11, 94:14
severing [1] - 87:13
severs [1] - 70:13
sex [12] - 21:5, 21:13, 22:23, 23:4, 34:6, 39:18, 44:12, 44:13, 47:21, 54:18, 54:24, 58:22
sexual [59] - 15:7, 15:18, 21:1, 21:17, 21:20, 22:14, 22:25, 23:13, 23:16, 24:1, 25:8, 34:9, 34:11, 34:12, 34:14, 34:15, 40:15, 41:4, 41:8, 44:7, 45:5, 45:12, 45:19, 45:22, 46:2, 46:3, 46:4, 46:20, 47:11, 47:18, 47:19, 47:21, 54:8, 58:15, 62:17, 62:23, 63:8, 63:11, 63:12, 63:20, 64:10, 64:22, 65:18, 66:25, 68:2, 73:22, 79:17, 79:23, 79:25, 81:9, 85:18, 85:20, 86:2, 86:3, 86:5, 86:18, 88:6, 89:11
sexually [5] - 21:23, 44:23, 46:11, 80:5, 93:15
share [2] - 46:3, 50:24
Sherr [1] - 78:12
short [1] - 18:22
shorthand [1] - 1:24
show [15] - 7:6, 34:14, 34:17, 34:18, 48:3, 48:4, 48:6, 49:12, 52:12, 63:20, 89:9, 92:5, 92:20, 92:23, 93:3
shower [3] - 21:9, 22:6, 22:17
showing [4] - 34:12, 51:13, 62:3, 93:8
shows [5] - 14:13, 14:14, 28:23, 48:6, 48:7
sighting [1] - 15:20
signature [8] - 6:19, 6:24, 6:25, 10:22, 11:1, 28:22, 38:6, 38:8
signed [12] - 7:13,

12:16, 18:19, 37:12, 38:16, 38:17, 38:19, 73:10, 73:23, 80:21
significance [1] - 36:18
significant [6] - 14:7, 20:23, 47:7, 52:3, 80:11, 94:5
silver [1] - 73:17
similar [24] - 35:5, 35:6, 42:20, 43:21, 43:22, 44:3, 44:9, 45:9, 46:23, 46:25, 47:15, 48:21, 48:22, 49:12, 51:19, 58:20, 64:2, 73:15, 80:9, 84:16, 85:11, 85:18, 86:4, 86:10
simply [2] - 12:16, 25:7
simulated [1] - 44:13
simultaneously [1] - 88:15
single [4] - 84:14, 86:17, 93:4, 93:19
sister [1] - 47:4
sisters [1] - 86:12
sit [1] - 56:16
situation [13] - 7:20, 29:23, 30:7, 30:20, 30:22, 30:23, 30:24, 31:3, 31:6, 32:1, 32:8, 47:24, 51:5
situations [4] - 27:15, 36:9, 57:2, 62:11
six [2] - 17:4, 76:4
Sixth [4] - 32:20, 32:25, 78:3, 78:9
sole [1] - 90:23
solely [1] - 78:19
someone [6] - 3:7, 20:9, 21:8, 37:13, 40:5, 52:12
sometimes [3] - 35:16, 45:15, 45:25
somewhat [1] - 85:13
somewhere [1] - 13:11
sooner [1] - 20:1
sorry [7] - 8:15, 32:7, 38:18, 41:1, 58:10, 58:11, 63:25
sort [6] - 13:19, 15:13, 27:22, 29:6, 29:14, 71:12
sought [3] - 32:18, 76:23, 77:18
sounds [1] - 69:22

14

**space** [1] - 25:15
**span** [4] - 15:1, 18:22, 43:18, 78:17
**spanned** [1] - 86:18
**sparingly** [2] - 87:6, 87:8
**speaking** [1] - 38:20
**specific** [11] - 14:10, 18:16, 28:16, 61:17, 61:19, 61:22, 62:10, 66:5, 76:10, 76:15, 86:25
**specifically** [8] - 8:1, 37:6, 39:22, 64:19, 68:17, 73:6, 76:12, 78:19
**specified** [4] - 10:2, 10:3, 10:6, 28:14
**specify** [1] - 66:7
**speculative** [3] - 59:11, 59:13, 59:14
**speedy** [2] - 95:4, 95:7
**spouse** [2] - 92:23, 93:2
**stale** [3] - 14:4, 14:15, 76:21
**staleness** [22] - 11:23, 12:25, 13:11, 13:14, 13:19, 14:3, 14:8, 15:13, 16:15, 17:9, 18:25, 19:22, 31:11, 31:20, 40:3, 77:13, 77:21, 78:1, 78:7, 78:15
**stand** [2] - 66:11, 68:14
**standard** [3] - 12:18, 77:12, 84:6
**standards** [1] - 92:4
**start** [3] - 26:11, 69:8, 84:6
**starting** [1] - 65:9
**state** [3] - 51:21, 51:25, 52:2
**statement** [5] - 2:17, 16:9, 39:24, 95:1, 95:23
**statements** [9] - 78:15, 79:8, 79:16, 89:8, 90:3, 90:10, 90:16, 92:8, 94:18
**STATES** [3] - 1:2, 1:4, 1:11
**States** [13] - 2:4, 49:2, 75:24, 77:23, 78:8, 78:12, 79:14, 80:9, 85:3, 85:15, 85:25, 87:1, 87:7
**states** [1] - 43:15

**statute** [7] - 45:17, 45:23, 63:12, 63:19, 65:7, 65:10, 65:21
**statutes** [2] - 64:15, 82:22
**statutory** [1] - 64:13
**stenotype** [1] - 1:24
**step** [1] - 91:15
**still** [26] - 4:10, 14:7, 15:3, 17:10, 17:25, 18:6, 18:13, 26:15, 27:22, 32:25, 40:3, 57:25, 59:5, 61:21, 69:5, 71:5, 76:15, 78:24, 78:25, 83:6, 90:1, 90:5, 90:7, 93:9, 95:3, 95:4
**store** [2] - 13:18, 17:20
**stored** [8] - 13:11, 14:18, 14:19, 18:3, 25:9, 81:10, 81:11, 81:15
**storing** [1] - 75:21
**Straker** [1] - 87:7
**strangers** [2] - 44:16, 47:13
**strategically** [2] - 60:6, 60:8
**strategy** [2] - 60:13, 71:11
**Street** [1] - 1:14
**stretched** [1] - 84:25
**strong** [8] - 9:2, 14:17, 15:8, 15:19, 18:1, 32:3, 34:16
**stronger** [1] - 15:19
**struck** [1] - 76:1
**struggling** [3] - 27:22, 47:14, 53:21
**stuff** [1] - 14:18
**subject** [4] - 21:12, 25:9, 67:15, 80:2
**submit** [1] - 50:15
**subset** [2] - 64:12, 64:17
**subsets** [2] - 64:14, 65:4
**substance** [1] - 66:17
**substantial** [6] - 52:1, 77:7, 77:12, 77:13, 80:20, 91:14
**substantially** [1] - 49:22
**suddenly** [1] - 27:25
**sufficiency** [1] - 72:19
**sufficient** [18] - 16:2, 17:4, 23:11, 29:21,

31:4, 32:17, 34:7, 35:25, 36:10, 38:11, 42:6, 49:12, 62:2, 75:10, 78:23, 80:11, 81:25, 87:25
**sufficiently** [6] - 50:16, 79:9, 88:17, 91:13, 91:21, 93:10
**suggest** [4] - 13:13, 23:11, 53:11, 69:9
**suggested** [2] - 79:21, 88:4
**suggestibility** [1] - 90:24
**suggesting** [7] - 22:8, 22:10, 22:18, 48:16, 48:17, 67:9, 68:5
**suggestive** [6] - 91:8, 91:10, 91:11, 91:18, 92:6, 92:8
**suggestiveness** [2] - 90:24, 93:8
**suggests** [1] - 27:23
**Suite** [1] - 1:17
**Superior** [3] - 18:5, 37:11, 38:9
**Supp** [1] - 78:13
**support** [9] - 7:23, 62:14, 62:16, 76:19, 78:23, 79:10, 86:23, 88:2, 88:8
**supported** [2] - 50:3, 77:14
**suppose** [1] - 29:6
**supposed** [9] - 28:16, 28:17, 28:23, 29:23, 30:3, 30:25, 31:21, 56:6, 71:20
**supposedly** [3] - 18:3, 20:9, 21:8
**suppress** [12] - 2:21, 4:4, 19:16, 72:8, 72:15, 83:16, 90:1, 90:9, 90:22, 91:16, 94:1, 94:17
**suppressed** [5] - 12:8, 12:10, 29:10, 81:2, 92:11
**suppression** [3] - 7:15, 19:1, 19:9
**Supreme** [3] - 19:15, 83:7, 83:8
**surprising** [2] - 22:7, 22:9
**surreptitious** [3] - 44:22, 54:25, 62:22
**surreptitiously** [3] - 40:21, 45:4, 46:9
**suspect** [2] - 50:6,

77:18
**suspect's** [1] - 32:19
**suspected** [2] - 32:15, 78:1
**suspicion** [1] - 93:19
**sustain** [1] - 49:6
**SUTTENBERG** [8] - 1:13, 3:14, 3:17, 3:19, 67:23, 68:8, 95:9, 96:1
**Suttenberg** [2] - 2:5, 3:12
**Suttenberg's** [1] - 69:5
**sweep** [2] - 75:18, 76:12
**switch** [1] - 62:12

---

## T

**table** [1] - 51:20
**tablet** [1] - 76:5
**tailor** [1] - 57:16
**tailored** [2] - 55:14, 75:14
**taint** [1] - 59:17
**talks** [9] - 5:24, 12:14, 22:16, 32:25, 37:19, 45:17, 50:6, 50:12, 65:3
**tangible** [5] - 2:21, 4:4, 72:8, 72:15, 83:16
**team** [1] - 59:2
**technology** [1] - 78:16
**temporal** [1] - 86:7
**ten** [1] - 14:13
**tend** [1] - 17:20
**tending** [1] - 46:7
**tends** [2] - 46:12, 48:3
**Tenth** [2] - 32:7, 32:17
**terms** [10] - 15:9, 15:19, 27:25, 30:12, 41:22, 53:24, 56:22, 56:23, 87:23, 90:4
**test** [1] - 48:2
**testified** [1] - 82:14
**testimony** [7] - 3:6, 3:8, 79:12, 82:16, 82:18, 83:2, 91:1
**THE** [194] - 1:2, 1:10, 2:3, 2:8, 3:15, 3:18, 3:20, 4:6, 4:12, 4:18, 4:23, 5:19, 5:23, 6:12, 6:16, 6:19, 7:1, 7:14, 8:10, 8:15, 8:20, 9:16, 10:2, 10:11, 10:18,

11:7, 11:12, 11:16, 11:19, 11:24, 12:2, 12:5, 12:12, 12:23, 13:13, 13:21, 15:5, 16:1, 16:8, 16:20, 17:15, 18:20, 19:3, 19:10, 19:13, 20:24, 21:6, 21:10, 21:12, 21:18, 22:7, 23:14, 24:2, 24:9, 24:13, 24:16, 25:1, 25:4, 25:19, 25:23, 26:1, 26:4, 26:6, 26:8, 26:24, 27:2, 27:21, 28:6, 28:25, 29:5, 29:12, 30:17, 31:9, 31:18, 33:7, 34:4, 35:8, 35:11, 35:14, 35:24, 36:15, 36:17, 36:22, 37:11, 37:23, 38:6, 38:8, 38:17, 38:24, 39:6, 39:13, 40:1, 40:20, 41:1, 41:9, 41:17, 41:21, 42:7, 42:9, 42:16, 42:25, 43:5, 43:8, 43:19, 43:22, 43:25, 44:15, 45:16, 46:5, 47:4, 47:8, 47:13, 47:20, 48:10, 48:14, 48:25, 49:17, 49:19, 49:25, 50:8, 50:10, 51:12, 52:21, 52:24, 53:15, 54:4, 54:10, 54:15, 54:23, 55:2, 55:7, 55:9, 55:19, 56:5, 56:15, 56:20, 57:9, 58:8, 58:11, 58:19, 59:4, 59:11, 59:17, 60:5, 60:12, 60:17, 60:20, 60:25, 61:6, 61:10, 61:23, 62:19, 62:22, 63:3, 63:5, 63:6, 63:24, 64:2, 64:6, 64:18, 64:21, 64:25, 65:6, 65:9, 65:16, 65:22, 66:10, 66:14, 67:4, 67:6, 67:13, 67:20, 68:5, 68:11, 68:15, 68:19, 68:22, 69:16, 69:22, 70:7, 70:17, 71:3, 71:20, 72:3, 72:6, 90:12, 90:14, 90:18, 90:20, 95:10, 95:14, 95:19, 95:21, 96:2
**theory** [1] - 48:19
**therefore** [9] - 12:10, 59:4, 60:22, 63:15, 65:20, 77:25, 81:1,

15

83:12, 93:25
**thinking** [2] - 28:1, 53:22
**thinks** [1] - 80:3
**third** [3] - 2:10, 73:12, 73:24
**thorough** [1] - 25:13
**thoughts** [1] - 67:13
**three** [10] - 13:5, 14:12, 36:24, 42:19, 48:23, 67:25, 73:1, 73:3, 87:12, 94:2
**three-year-old** [1] - 14:12
**Thursday** [1] - 1:8
**timing** [3] - 18:16, 31:11, 43:15
**today** [11] - 2:9, 2:14, 3:13, 3:21, 24:11, 72:7, 83:19, 83:22, 84:9, 89:8, 94:25
**together** [19] - 47:22, 48:20, 51:22, 53:5, 55:23, 56:12, 60:4, 65:24, 66:1, 67:3, 68:24, 70:18, 71:7, 71:10, 71:13, 84:11, 89:2, 89:5, 89:6
**toilet** [1] - 17:17
**tolled** [1] - 95:5
**tomorrow** [1] - 95:12
**Tony** [1] - 2:6
**TONY** [1] - 1:16
**took** [3] - 23:20, 34:17, 90:25
**top** [2] - 4:24, 9:7
**total** [1] - 13:5
**totality** [5] - 6:9, 79:5, 91:12, 91:20, 93:8
**totality-of-the-circumstances** [1] - 79:5
**totally** [1] - 69:23
**touch** [4] - 34:13, 34:19, 46:10
**touched** [4] - 22:23, 34:9, 44:21, 45:7
**touching** [1] - 65:4
**toward** [1] - 5:1
**towards** [3] - 26:17, 27:17, 53:1
**track** [1] - 24:3
**trade** [1] - 46:1
**trained** [1] - 12:20
**transaction** [4] - 42:21, 42:23, 43:11, 84:17
**TRANSCRIPT** [1] - 1:10

**Transcript** [1] - 1:25
**transcript** [1] - 96:11
**transcription** [1] - 1:25
**traumatic** [1] - 17:12
**treat** [1] - 87:15
**trial** [24] - 2:12, 2:13, 2:18, 3:25, 43:4, 46:14, 52:17, 53:23, 55:15, 56:2, 57:19, 63:16, 64:23, 68:10, 71:9, 71:18, 84:11, 84:15, 87:3, 94:9, 94:13, 95:4, 95:7
**trials** [5] - 56:22, 57:15, 66:15, 85:6, 88:24
**tried** [13] - 54:17, 55:23, 56:4, 56:10, 56:17, 57:15, 60:4, 65:25, 66:1, 68:24, 71:7, 84:11, 89:6
**trouble** [1] - 48:9
**true** [8] - 8:5, 14:1, 41:21, 43:2, 43:24, 76:9, 77:13, 82:8
**try** [8] - 44:17, 51:21, 59:19, 67:19, 71:13, 84:8, 89:2
**trying** [21] - 15:11, 16:1, 16:14, 17:1, 19:18, 24:2, 36:17, 36:18, 37:1, 40:9, 46:16, 52:25, 54:24, 56:12, 57:10, 58:11, 59:6, 65:24, 67:17, 69:19, 94:24
**turns** [2] - 29:18, 69:22
**twice** [3] - 9:23, 27:25, 70:2
**two** [39] - 5:21, 6:5, 6:23, 8:20, 8:23, 14:2, 14:11, 34:25, 35:3, 35:4, 36:3, 42:5, 42:11, 42:24, 43:12, 45:3, 48:1, 51:1, 51:5, 51:10, 56:12, 56:21, 57:1, 57:2, 57:24, 63:12, 66:15, 69:15, 71:8, 72:9, 72:19, 73:2, 73:3, 80:21, 84:12, 91:15, 92:6, 92:18, 92:20
**two-step** [1] - 91:15
**two-year-old** [1] - 14:11
**type** [5] - 30:20, 51:6, 52:16, 71:17, 77:17

**types** [6] - 48:20, 51:1, 54:6, 54:11, 71:8, 87:12
**typically** [1] - 13:17

**U**

**U.S** [2] - 1:14, 1:21
**U.S.C** [1] - 83:1
**ultimate** [1] - 16:13
**ultimately** [2] - 55:5, 75:1
**umbrella** [2] - 65:15, 65:19
**unclear** [1] - 14:19
**unconstitutional** [1] - 12:15
**under** [17] - 12:21, 19:5, 42:12, 45:16, 46:18, 51:25, 64:9, 64:21, 65:19, 70:14, 74:2, 74:20, 79:12, 83:6, 84:24, 91:12, 91:20
**underestimate** [1] - 57:23
**underlying** [2] - 74:5, 74:7
**underscore** [2] - 39:14, 83:2
**underscored** [1] - 88:21
**Understood** [1] - 68:13
**understood** [3] - 47:6, 69:21, 84:7
**undue** [2] - 53:17, 60:16
**unduly** [1] - 76:6
**unfair** [1] - 53:18
**unique** [1] - 78:2
**UNITED** [3] - 1:2, 1:4, 1:11
**United** [13] - 2:4, 49:2, 75:24, 77:22, 78:8, 78:12, 79:14, 80:9, 85:3, 85:14, 85:25, 87:1, 87:7
**universes** [1] - 69:24
**unknown** [1] - 23:24
**unlawful** [2] - 12:22, 74:21
**unless** [3] - 8:1, 9:9, 26:2
**unlike** [2] - 75:23, 76:5
**Unlike** [1] - 82:5
**unlikely** [1] - 13:25
**unnecessary** [1] - 91:8

**unpleasant** [2] - 53:7, 53:24
**unrebutted** [1] - 83:2
**unrelated** [1] - 84:23
**unreliable** [1] - 76:21
**unsevered** [1] - 94:14
**unsupported** [1] - 92:8
**up** [8] - 3:24, 9:7, 22:9, 30:12, 39:19, 50:3, 62:12, 69:16
**uphold** [1] - 77:10
**urged** [1] - 87:5
**uses** [5] - 39:21, 39:25, 41:10, 41:13, 42:3

**V**

**valid** [6] - 24:23, 53:25, 60:13, 62:10, 79:12
**value** [1] - 49:22
**varies** [1] - 13:25
**variety** [1] - 61:3
**various** [4] - 2:11, 11:22, 79:6, 84:3
**vehicle** [5] - 5:11, 5:14, 6:1, 6:21, 7:12, 10:7, 39:11, 72:25, 73:14
**vehicles** [2] - 39:1, 74:9
**versa** [2] - 54:23, 89:11
**versus** [6] - 2:4, 8:22, 8:23, 55:15, 55:20
**vice** [2] - 54:23, 89:11
**vicinity** [1] - 32:13
**victim** [14] - 15:7, 22:15, 44:15, 46:4, 46:19, 46:20, 47:9, 52:4, 68:2, 79:11, 79:25, 86:11, 93:1, 93:12
**victims** [14] - 47:2, 47:10, 66:22, 67:3, 81:11, 81:14, 85:23, 86:9, 86:12, 87:24, 92:18, 93:14, 93:15
**video** [4] - 21:22, 22:1, 22:5, 52:10
**videos** [3] - 52:11, 62:18, 81:20
**videotape** [1] - 54:25
**videotaped** [1] - 62:22

**view** [7] - 19:13, 35:21, 38:11, 76:17, 91:24, 92:13, 95:6
**viewed** [2] - 50:19, 93:19
**viewing** [1] - 93:17
**vigorous** [4] - 59:22, 60:1, 60:2, 60:3
**vigorously** [4] - 55:16, 57:20, 60:23, 60:24
**vile** [1] - 53:9
**violated** [3] - 21:4, 42:17, 83:5
**violation** [1] - 8:9
**violence** [1] - 92:23
**virtually** [1] - 66:16
**vision** [1] - 54:20
**voir** [1] - 95:16

**W**

**walk** [1] - 63:25
**wants** [3] - 57:20, 82:2
**warrant** [123] - 4:16, 4:20, 4:21, 4:22, 4:24, 5:17, 6:4, 6:8, 7:4, 7:6, 7:8, 7:10, 7:17, 7:22, 7:23, 8:1, 8:3, 8:4, 8:8, 8:12, 9:3, 9:4, 9:6, 9:8, 9:11, 9:19, 10:4, 10:21, 11:3, 11:21, 12:5, 15:12, 18:19, 19:4, 19:14, 19:15, 19:20, 20:19, 20:22, 21:2, 21:4, 23:1, 23:6, 24:11, 24:22, 24:24, 24:25, 25:5, 26:13, 26:15, 26:21, 26:23, 27:3, 27:7, 27:10, 28:5, 28:9, 28:13, 28:16, 28:23, 29:3, 29:7, 29:17, 29:24, 29:25, 31:3, 31:7, 31:23, 33:5, 35:7, 35:17, 37:12, 37:15, 37:18, 37:20, 37:21, 39:1, 39:7, 41:7, 72:23, 73:4, 73:10, 73:15, 73:19, 73:23, 74:5, 74:7, 74:11, 74:13, 74:18, 74:20, 74:22, 75:8, 75:9, 75:17, 75:20, 75:23, 76:1, 76:5, 76:6, 76:19, 76:24, 77:2, 77:6, 77:10, 77:15, 79:8, 80:25, 81:3,

81:4, 81:8, 81:13, 81:16, 81:23, 81:24, 82:7, 82:10, 83:12, 88:18, 88:20

**warrants** [16] - 5:4, 19:8, 26:25, 35:4, 35:25, 72:19, 72:20, 72:22, 73:2, 73:3, 74:6, 74:14, 75:1, 75:6, 75:13, 80:21

**wash** [1] - 33:9

**Washington** [4] - 1:7, 1:15, 1:18, 1:22

**water** [1] - 63:4

**ways** [2] - 11:22, 61:3

**week** [3] - 13:24, 13:25, 17:14

**weekend** [1] - 95:17

**weigh** [1] - 86:6

**weighs** [2] - 77:20, 78:15

**weights** [1] - 79:6

**weird** [1] - 36:2

**welcome** [1] - 95:21

**well-trained** [1] - 12:20

**wherein** [1] - 22:20

**whole** [4] - 28:9, 59:2, 62:24, 66:2

**wholeheartedly** [1] - 92:18

**wide** [2] - 75:16, 76:8

**wide-ranging** [2] - 75:16, 76:8

**wife** [1] - 92:25

**win** [1] - 29:5

**WITNESS** [1] - 13:21

**witness** [24] - 3:13, 3:15, 13:3, 13:4, 13:7, 15:9, 16:3, 16:8, 20:4, 20:6, 20:9, 20:11, 20:14, 52:8, 72:11, 79:8, 79:18, 82:13, 91:1, 91:24, 92:15, 93:20

**witness's** [1] - 91:25

**witnesses** [7] - 18:9, 52:18, 52:20, 57:25, 58:4, 58:13, 58:15

**word** [4] - 9:16, 10:8, 57:3, 81:16

**words** [6] - 9:17, 15:13, 16:1, 55:16, 69:2, 89:1

**world** [5] - 7:15, 51:19, 54:15, 68:24, 71:4

**worried** [1] - 55:22

**worry** [1] - 71:13

**worse** [1] - 51:4

**worst** [1] - 74:2

**writ** [1] - 44:19

**write** [2] - 10:19, 94:3

**written** [4] - 72:14, 94:7, 94:12, 94:16

**Y**

**year** [9] - 2:10, 13:3, 14:11, 14:12, 15:20, 17:22, 18:9, 32:10, 75:25

**years** [21] - 13:2, 13:5, 14:13, 15:2, 15:14, 16:10, 16:18, 17:3, 17:13, 18:18, 18:24, 19:22, 20:1, 31:23, 32:9, 32:16, 92:19, 93:12

**young** [2] - 57:24, 88:11

**younger** [1] - 68:2

**yourselves** [1] - 2:18