BEFORE THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          .
                                   .  Case Number 16-CR-030
          Plaintiff,               .
                                   .
     vs.                           .
                                   .  Washington, D.C.
CHARLES HILLIE,                    .  July 17, 2018
                                   .  10:26 a.m.
          Defendant.               .
- - - - - - - - - - - - - - - - -

                TRANSCRIPT OF STATUS CONFERENCE
        BEFORE THE HONORABLE KETANJI BROWN JACKSON
               UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:          ANDREA HERTZFELD, AUSA
                            KENECHUKWU OKOCHA, AUSA
                            United States Attorney's Office
                            555 Fourth Street Northwest
                            Washington, D.C. 20530
                            202-252-7808

For the Defendant:          JOANNE D. SLAIGHT, ESQ.
                            Law Offices of Joanne D. Slaight
                            400 Seventh Street Northwest
                            Suite 206
                            Washington, D.C. 20004
                            202-408-2041


Official Court Reporter:     SARA A. WICK, RPR, CRR
                            333 Constitution Avenue Northwest
                            U.S. Courthouse, Room 4704-B
                            Washington, D.C. 20001
                            202-354-3284


Proceedings recorded by stenotype shorthand.
Transcript produced by computer-aided transcription.

```
1                        P R O C E E D I N G S

2            (Call to order of the court.)

3                 THE COURTROOM DEPUTY:  Your Honor, this is Criminal

4    Case 16-030, United States of America versus Charles Hillie.

5            I'm going to ask counsel to please identify themselves for

6    the record.  We also have Probation Officer Kelli Willett.

7                 MS. SLAIGHT:  Joanne Slaight for Mr. Hillie.

8                 MS. HERTZFELD:  Good morning, your Honor.  Andrea

9    Hertzfeld for the United States.

10                MR. OKOCHA:  Good morning, your Honor.  Kenechukwu

11   Okocha for the United States.

12                MS. SLAIGHT:  Your Honor, before we start, I'm going

13   to ask for a short five-minute break, because I tried to see

14   Mr. Hillie this morning downstairs, and the probation -- the

15   marshals said that they were late bringing people in and I had

16   to see him up in the courtroom, and I haven't been able to do

17   that.

18                THE COURT:  You haven't talked to him this morning

19   before --

20                MS. SLAIGHT:  Right.  So five minutes?

21                THE COURT:  Let's break.

22                MS. SLAIGHT:  Thank you.

23           (Recess taken from 10:27 a.m. to 10:35 a.m.)

24           (Call to order of the court.)

25                THE COURT:  All right.  We are here for the scheduled
```

sentencing of the defendant, Mr. Charles Hillie, who was found
guilty on April 5th, 2018, after a jury trial of six counts of
sexual exploitation and attempted sexual exploitation of a minor
related to his completed and attempted production of child
pornography, one count of possession of child pornography, and
nine counts of first- and second-degree child sexual abuse with
aggravating circumstances.

The Court has received and reviewed the presentence report
and the sentencing recommendation from the probation office.
And I've also received several documents submitted by counsel in
advance of this hearing.  There is sentencing memoranda from
both the government and the defendant and also documents filed
by the defendant under seal pertaining to additional objections
to the facts as related in the presentence report.

Let me say that the materials that the Court has received
have raised a number of issues that I have only begun to focus
on recently.  And I have come to the conclusion that I also need
more information about Mr. Hillie's sexual history in order to
be able to evaluate his recidivism risk and any special
conditions that may need to be imposed upon his release.

The nature of these cases are such that a lot of
information needs to be taken into account by the Court, and I'm
telling you this now because I'm going to need to continue this
sentencing.  I'm going to use today's appearance as an
opportunity to go over some of the issues that the defendant has

1    raised, and of course, if there are any witnesses or people who

2    are here who wish to present something orally that you all have

3    brought in, I'm happy to accept their statements if they're

4    present and available as well.

5         So let me start with Ms. Slaight.  I will have you come

6    forward.  You might bring your documentation, because I have

7    some questions about some of the materials that you have

8    submitted.

9         I would like to get a sense, because I am looking through

10   all of your documentation, and there are several different

11   memos, as I said, some of which have been filed under seal, that

12   appear to raise objections about the facts as stated in the

13   presentence report.

14        From the Court's perspective, and I hope that you will

15   correct me if I'm wrong, it appears as though your primary

16   overarching concern is that the PSR is based on the state of

17   affairs that the government says existed prior to trial.

18             MS. SLAIGHT:  Yes.

19             THE COURT:  And that you think that the Court should

20   be basing its sentencing determination on the evidence at trial;

21   do I have that right?

22             MS. SLAIGHT:  Yes.

23             THE COURT:  And so -- yes?

24             MS. SLAIGHT:  I would note, in particular, the counts

25   of the -- the production counts are not listed accurately in the

1    presentence report, because that's based on a pretrial detention

2    memo.  So it doesn't segregate attempt versus pornography in

3    those particular counts.

4          THE COURT:  In the PSR?

5          MS. SLAIGHT:  Right.

6          THE COURT:  As I was going through all of these things

7    in the last couple of days, I realized that you have made sort

8    of specific objections with regard to, you know, various

9    paragraphs.  But then also in these separate memos, you appear

10    to be providing additional objections.  So I'm trying to figure

11    out how to synthesize and coordinate all of the various things.

12     Is it your thought that the Court will go through the PSR

13    line by line and decide whether or not your objected-to

14    statements can remain or should be altered in some way?

15          MS. SLAIGHT:  Well, the objections to the presentence

16    report were definitely to specific paragraphs in the presentence

17    report.

18          THE COURT:  Right.  And then I have sentencing

19    memoranda that also talk about the presentence report, the ones

20    that have been filed under seal.  You also have -- I'm looking

21    at document 104 where you have paragraph 13, paragraph 17,

22    paragraph 19, also specific objections.

23     So there's a lot to synthesize, I guess, because I'm trying

24    to figure out whether I'm to go to paragraph 13, look both at

25    the end of the PSR, to the extent you've preserved any

1    objections, and then go to your memoranda and figure out what

2    the defendant's position is with regard to each of these

3    statements of fact.

4            MS. SLAIGHT:  The objections that I had in appendix A

5    were to the corrections to the statement of facts.  That was

6    what was in appendix A.

7        The other objections to the presentence report were

8    regarding the guidelines.  So that's why I --

9            THE COURT:  The statement of facts in the PSR is what

10   you mean?

11           MS. SLAIGHT:  Yes.  That was appendix A, just the

12   statement of facts.

13           THE COURT:  Right.  But they're pretty specific, and

14   my question is, do I need to go through the PSR, take a look at

15   your particular objections, and make decisions about whether the

16   PSR needs to be revised in light of the statements that you have

17   or the objections that you've made?

18           MS. SLAIGHT:  Yes, we are requesting that those

19   specific objections in paragraph -- in appendix A be corrected.

20           THE COURT:  And what about the ones that are still

21   outstanding from the end of the presentence report itself?

22       The probation office has, as it is required to do, listed a

23   bunch of paragraphs --

24           MS. SLAIGHT:  Right.

25           THE COURT:   -- that it considers to still be in

1    dispute based on their negotiations and discussions with you

2    prior to writing the presentence report.

3              MS. SLAIGHT:  Right.

4              THE COURT:  Are those still outstanding?

5              MS. SLAIGHT:  In the sentencing memorandum, either --

6    the sentencing memorandum and the reply, we included all -- the

7    defense included all the objections which remain outstanding.

8              THE COURT:  Okay.  And so you mentioned appendix B.

9    Is that disputes that go to the guideline calculation?  That's

10   just the guideline calculation prongs.  Does it relate to facts

11   that go to the guideline calculation?

12             MS. SLAIGHT:  Well, they are -- we do dispute facts in

13   appendix B, but those were facts that were in the -- those were

14   from the government's sentencing memorandum.  So that's why --

15   that's a separate one.  They really go to the government -- the

16   Court's decision on sentencing as a whole, what are the

17   considerations that the Court makes in sentencing.  And that's

18   why that was in the separate appendix B.

19             THE COURT:  All right.  So are there any facts in the

20   presentence report -- I know that you've objected to a number of

21   them in appendix A -- that go to the guideline calculation, in

22   your view?

23             MS. SLAIGHT:  In appendix A?

24             THE COURT:  Yes.

25             MS. SLAIGHT:  Well, only to the extent that paragraphs

1    24 through 29 don't distinguish between production and attempted

2    production.  So paragraphs 24 through 29 in the presentence

3    report are regarding the production and attempted production

4    counts, and they don't distinguish between production and

5    attempted production.

6        So to that extent, I guess, it would go to the guidelines.

7    But the guidelines itself, the guidelines -- the government --

8    the presentence report does, in its calculation of the

9    guidelines in the later paragraphs, address production versus

10   attempted production and puts them at the same guideline level.

11           THE COURT:  Because it sets out the different counts?

12   Is that what you mean?

13           MS. SLAIGHT:  Yes.

14           THE COURT:  And it goes through --

15           MS. SLAIGHT:  Yes.

16           THE COURT:  All right.  Yes?

17           MS. SLAIGHT:  The reason that I consider -- the

18   defense considers that these corrections in appendix A are

19   important is because the Bureau of Prisons will make

20   determinations based on the statement of facts, and they may not

21   just look at the guidelines later and see that some counts are

22   production and some are attempted production.

23           THE COURT:  Yeah, no, I understand, but I would also

24   add that it is this Court's practice to adopt the statement of

25   facts that's in the presentence report as the Court's findings

1    of fact at sentencing, absent any objections.  So there's also

2    that.  I mean, regardless of what BOP does, to the extent that

3    you're suggesting that the Court's statement of facts needs to

4    be based on the trial testimony rather than the probation

5    office's ordinary practice.  Which in most cases, they don't go

6    to trial.  So the facts really only come from the documentary

7    evidence that is -- or documents that are presented to the

8    probation office.

9         And so I think you raise a question that I'm going to need

10   to explore with government counsel as well.  But let me ask you

11   about how I'm to do this in terms of any conflicts or

12   differences between the trial record and the presentence report.

13           MS. SLAIGHT:  Well --

14           THE COURT:  Is your thought -- you say at places at

15   the trial this happened or thus and such.  Right now, let me

16   tell you what I am considering, and you all will have to decide

17   whether or not this is what you intend to have happen.

18        I'm considering having the parties essentially produce a

19   chart for me that goes through each of these objected-to facts,

20   to the extent the defendant wishes to press them, and points out

21   in the trial record what you say supports a conclusion that is

22   different from the one that is in the PSR pertaining to that

23   fact, because I'm going to need to be directed to the record

24   with respect to any objections that you make when you're saying

25   this is what happened at trial or that's what happened at trial

and it's different from what the probation office has put

forward.

    And then I will have to make a decision, I think, because

as we know, the facts at sentencing, the proof at sentencing is

at a different standard.  It's a preponderance of the evidence

standard rather than a beyond a reasonable doubt.  So I have to

think about how that factors in in terms of determining what

actually the facts are related to this case.

    MS. SLAIGHT:  I think that we will probably agree on

most of the testimony or what the testimony showed.  The issue

is going to be whether that should be reflected in the

presentence report.

    And the paragraphs 24 through 29, which are, I think, the

most important ones, that is reflected in the indictment that

these are attempt counts, they are not production counts.  So

it's not just the trial testimony; it's the indictment reflected

that.

    THE COURT:  Understood.  But I think the government's

point has always been that they are only attempts because they

were grainy and dark, not because Mr. Hillie stopped short of

doing what it is that he was being accused of doing, or, you

know, he thought he had completed it.  And from the government's

perspective and, I think, from the probation office's

perspective, that's sufficient to have him sentenced the way

that he is or the way that they suggest under the guidelines

1    rather than treating this as an attempt in some meaningful way.

2         MS. SLAIGHT:  Well, I think that the difference

3    between those -- it wasn't because they were grainy but

4    because -- I mean, in some instances they were.  It was because

5    there was no child pornography.  There's not arguably child

6    pornography on those -- in those videos.  So that's why they

7    were not -- they were charged as attempt.

8         THE COURT:  All right.  Let me ask Ms. Hertzfeld to

9    come forward.  I will say, as you come, I think part of my

10   reaction -- I'm going to need other information, and I will talk

11   about that in a minute.  But part of my reaction was that we

12   have a lot of specific objections being made by defense counsel

13   related to the facts, and there are very few trials.

14        And so the question is, to what extent is it appropriate

15   for the Court to accept the PSR based on the documentary -- the

16   documents that the probation office relies upon, which are

17   pretrial recitations of fact, and do I have to go back to the

18   trial record and figure out what was actually presented?

19        MS. HERTZFELD:  Well, Your Honor, I think one of the

20   things that makes this a little bit hard to sort out is that

21   some of these objections with respect to the facts in the PSR,

22   the idea behind the objections to the PSR are meant to be

23   material factual discrepancies.  And I think a number of what's

24   set forth in these objections are objections to

25   characterizations of how the paragraphs are written about the

1    evidence there, but they're not objecting to the facts as set

2    forth in the PSR.

3        I will just say, for example, the objection to paragraph 20

4    that deals with KA not making a disclosure, the defense

5    objection to paragraph 20 states, "The report should note that

6    there have been no allegations of abuse against KA."  And what

7    paragraph 20 in the PSR states is that this child made a

8    disclosure --  or I'm sorry.  "She was forensically interviewed

9    at the Child Advocacy Center.  KA did not make any disclosure of

10   abuse."

11       To me, that's not a factual discrepancy with the PSR.  It's

12   just a recharacterization of exactly what the PSR says.  And I

13   don't think there's going to be anything in the trial record,

14   certainly this wasn't an issue at trial, that's going to

15   enlighten this objection because it's not to the actual facts

16   set forth at trial or in the PSR.

17            THE COURT:  All right.  But that was a straightforward

18   one.  What about paragraph 13?

19            MS. HERTZFELD:  So I will say, I think there are some,

20   for example -- that there is a place, I think, in paragraph 13.

21   It doesn't say this specifically, but I think what Ms. Slaight

22   is objecting to is that "when the defendant came inside the

23   bathroom, he gestures 'shhh,' and he indicated toward his

24   genitals."  I don't think the latter part of that sentence came

25   in at trial, the indication toward his genitals.  I think that's

1    what Ms. Slaight is objecting to with respect to that specific

2    portion of that.  I think there we can agree to that.

3        If we went through these one by one, I think most of these

4    are going to fall in the former category.  For example, the

5    description of those videos as set forth in the factual

6    statement that Ms. Slaight was talking about, in the factual

7    statement, that is set forth as just a description of what each

8    video contains.  That portion of the PSR isn't meant to set

9    forth what the charges are with respect to each video.

10       And I think the PSR makes entirely clear that two of the

11   six videos are production videos and that there's four counts

12   that are attempted production because they don't contain child

13   pornography.

14       So I don't think that the way that these are framed -- most

15   of them are not going to be resolved by a citation to the trial

16   record.  I think it may be useful to figure out which ones might

17   be, to the extent that we actually have a disagreement about a

18   material fact.  But by and large, I think most of these are --

19           THE COURT:  All right.  So it sounds like maybe -- the

20   Court was overwhelmed by the enormity of, you know, getting

21   extra documents that pointed out factual issues and suggestions

22   that the trial record established something different and the

23   thought of my having to go through and resolve these objections.

24       It sounds as though you're saying that you all might be

25   able to sit down and work out at least some of these.

1          MS. HERTZFELD:  I think the ones that are true

2    objections to a material fact that's set forth here -- and the

3    one your Honor pointed out would be one example.  I think that's

4    probably likely, that we would be able to sit down and say the

5    facts at trial established this or they didn't.

6        I think the ones that are objections to characterizations

7    in the PSR of evidence, I don't know that we'll be able to work

8    those out, because they're not material objections to the facts,

9    and I don't think that they are pertinent, given that they're

10    not material objections to the facts to your Honor's

11    determinations at sentencing.

12          THE COURT:  What I worry about, though, is that we

13    have a very, very big discrepancy between what the government

14    believes is the appropriate sentence in this case and what the

15    defendant does.  And so at the end of the day, it's going to end

16    up coming down to, I think, the 3553 factors, which tends to be

17    the case in most of the sentencings these days.

18        And in that case the facts matter, because I have to know

19    with certainty what it is that this defendant, you know, has

20    done.  In a case in which there is a guilty plea, that's easier,

21    obviously, than in the case in which there's a trial, because

22    the defendant will have agreed to certain facts, and there won't

23    be any dispute about -- even the characterizations will be

24    something that have generally been acceded to by the defendant.

25        And so I have to get my arms around whether and to what

1    extent what came out at trial differs from what is being

2    represented in the facts in the PSR.

3          MS. HERTZFELD:  Understood.  I agree with your Honor.

4    I think the thing that I'm sort of at a loss as to what to

5    suggest to the Court, some of these objections, as your Honor

6    goes through them -- look at, for example, paragraph 28.  It's

7    on page A-4.  The objection is that "the video is charged as

8    attempted production.  There's no pornographic images in the

9    video.  The shower was not in full view."  Those things are

10   true, but there's also no statement in the PSR that's contrary

11   to that.  There's never been a claim either in the PSR or based

12   on the facts at trial contrary to this description.  It's just a

13   dispute with the way the paragraph is written.  But certainly,

14   it doesn't say those facts are true.

15        So I think we're sort of having an argument about how the

16   semantics of the PSR should be stated as opposed to any factual

17   issue about what the defendant did.  Nobody is asking the Court

18   to sentence the defendant as if there was production images --

19   or child pornography images included in Count 5.

20          THE COURT:  But let me just push back a little bit,

21   because this is the kind of thing that I'm worried about.

22        With respect to paragraph 28, one of the things that the

23   defendant says is that in this document on A-4 "there has never

24   been any indication that JA was a subject of this video, and her

25   depiction in this paragraph should be removed."

1      When you go to paragraph 28 in the PSR, there is a

2   depiction of JA entering and, you know, what can be seen

3   relative to her.

4      So now that suggests to me that I have to go back and look

5   at the trial record and figure out whether or not there was any

6   indication -- or look at the video to determine if that was

7   actually presented at trial, because it seems as though an

8   objection is being made that any depiction or reference to JA

9   has to be removed from paragraph 28.

10      MS. HERTZFELD:  Well, I think the question -- I don't

11   think Ms. Slaight -- maybe I'm misreading her objection here.

12   But it seems to me that Ms. Slaight is not objecting to the fact

13   that this is an accurate description of that video.  The video

14   itself was introduced at trial as a part of the record.  So I

15   don't think there's an objection to the fact that JA entered the

16   bathroom and she's seen using the toilet, et cetera.  All of

17   that was shown to the jury at trial.

18      It seems to me what the objection is really saying is that

19   Ms. Slaight doesn't want a reference to the fact that that

20   happens in the video to be set forth in the PSR.  That's not a

21   material factual dispute.  It's a dispute with what facts were

22   established at trial that the PSR -- should be permitted to be

23   included in the PSR.

24      THE COURT:  Well, how do I go about making that

25   decision?  Nevertheless, it's still an objection, and she is

1    suggesting that maybe the PSR says too much and it doesn't need

2    to say all of these things and that the extra facts are somehow

3    harmful to her client.

4            MS. HERTZFELD:  Well, I don't think -- I mean, I have

5    never seen any legal basis to exclude facts that were

6    established at trial from being set forth in the PSR for

7    purposes of the Court's determinations at sentencing or, you

8    know, for it to be forwarded to BOP for them to know the

9    totality of the facts that were established.

10       I think to the extent --

11           THE COURT:  But let me just cut you off.  I understand

12   that, and I appreciate that.

13       My problem is Ms. Slaight's well-taken point that to the

14   extent the facts are listed here, they're not actually or

15   necessarily the facts that were established at trial, because

16   the PSR does not even purport to be a description of what was

17   established at trial.

18       And so I have to go back, to the extent she's objecting

19   this video doesn't show JA or whatever -- whatever the basis of

20   it is, don't I have to decide what was established at trial for

21   purposes of determining whether the PSR can say what it says?

22           MS. HERTZFELD:  I think that's correct with respect to

23   objections to the facts established at trial.  I think my only

24   point to the Court is, it might be helpful to take this appendix

25   and have it narrowed to objections that are actually to the

```
1    facts listed as opposed to what facts we think, assuming they
2    are established at trial, should be included.
3            THE COURT:  I think that is a terrific suggestion,
4    because I don't think that conceptually I have a problem with a
5    PSR that relates the facts that were established at trial.
6        My question is, I don't know that without sitting down with
7    the trial record and remembering and going back over it and
8    determining, to the extent there are objections being made --
9    and I hear you that some of these objections are sort of in the
10   guise of being about the facts but they're really about the
11   characterization.
12       And so maybe you can get with Ms. Slaight and figure out
13   exactly where she is objecting to facts, saying this was never
14   established at trial, and then I can go and look and see if it
15   was.  I think we're at least in agreement that maybe this -- or
16   that the PSR should relate what was shown to the jury and
17   established at trial.
18           MS. HERTZFELD:  I think that makes sense, your Honor.
19           THE COURT:  All right.  So we will -- I will put
20   together an order that has you all getting back to me so that I
21   can understand exactly what the objections are to any facts
22   related at trial.  And maybe it's just that one that you pointed
23   out that you can work out.  I don't know.
24       The other thing that concerned me as I started looking
25   through all of this is, in some of my other cases involving
```

similar defendants, the Court has required a psychosexual

evaluation of the defendant.  The D.C. Circuit cares a lot, and

I do, too, about the conditions of release and sort of, you

know, making sure that they're tailored appropriately to the

defendant and his needs and society's needs in light of who he

is.

And I found that there was a dearth of information in this

record related to any history on Mr. Hillie's part, which is

particularly important in sex abuse cases in terms of prior

incidents or whatever else and his potential for recidivism and

that sort of thing.

I do recognize that the government is asking for an

extraordinarily long period of time as a result of the charges

and the guilty verdicts in this case.  And so obviously, who

Mr. Hillie is today won't be the same person as however many

years hence if the Court should agree with the government's

sentencing recommendation.

Nevertheless, I have to order things as a result of

sentencing that relate to his potential needs regarding

recidivism and the like.  And so I am inclined to order a

psychosexual evaluation.

What are your thoughts, Ms. Hertzfeld?

MS. HERTZFELD:  We had some very preliminary

discussions about whether this would be necessary after trial.

I certainly never object to the Court ordering such an

1    evaluation.  I think it can be really helpful.  To the extent

2    the Court doesn't feel that what's in the PSR now helps make

3    this decision, I think that it's appropriate, and we would have

4    no objection to the Court ordering that.

5              THE COURT:  All right.  Let me ask Ms. Slaight.

6              MS. SLAIGHT:  Your Honor, Mr. Hillie objects to an

7    evaluation.  Mr. Hillie asserted his right to trial.  He asserts

8    his innocence.  And under the mandatory sentencing guidelines --

9    or I'm sorry, mandatory sentencing scheme, which he, of course,

10   will appeal, and he expects to appeal his case, but he faces a

11   mandatory 15-year sentence.  And the Bureau of Prisons can do an

12   evaluation at that time.  But he objects to -- during that

13   period, if the Bureau of Prisons finds it necessary, they can do

14   any kind of --

15             THE COURT:  No, I'm talking about a psychosexual

16   evaluation to assist the Court in deciding whether to give

17   Mr. Hillie the minimum 15-year mandatory sentence or the 45

18   years the government is asking for or something in between, in

19   light of the factors that Congress has set forth, including

20   whether or not Mr. Hillie is likely to re-offend.

21        I don't have that information, and I don't know how I'm

22   supposed to determine that without it.

23             MS. SLAIGHT:  And it's our position -- it's the

24   defense position, we object to that.  We feel that on the basis

25   of all the factors that the Court is aware of, the Court can

1    make an assessment.  Certainly, a 15-year sentence is a very

2    long sentence for anyone, much less Mr. Hillie, and that absent

3    any evaluation, the Court has sufficient factors to make a

4    sentence in this case.

5            THE COURT:  Well, absent the evaluation and absent

6    anything else, the Court has to impose a 15-year sentence.  So

7    to the extent that Congress is asking me to consider other

8    things besides the mandatory minimum -- I mean, do you disagree

9    that I have to consider factors in 3553(a)?

10           MS. SLAIGHT:  No.  The Court absolutely has to

11   consider factors, and we have listed in the defense sentencing

12   memorandum and reply factors that are important in the case and

13   that we feel cover all of the considerations that Congress

14   wanted to consider.

15           THE COURT:  All right.  I understand, I think, the

16   defendant's objection.  It's overruled.  The Court is going to

17   order Mr. Hillie to undergo a psychosexual evaluation.  The

18   Court is doing so pursuant to its obligation to ensure that the

19   sentence imposed is sufficient but not greater than necessary to

20   comply with the purposes of punishment, as Congress has

21   indicated in 3553(a), which includes a number of pertinent

22   factors with respect to which the Court currently has no

23   information.  It's consistent with what the Court has done in

24   other cases.

25           The Court will require, and I will issue an order to this

effect, that the defendant undergo a complete psychological and
psychosexual examination.  This is authorized under 18 U.S.C.
3552(b) and 4244(b).  It will be conducted by a trained
psychologist in the Bureau of Prisons.  The psychologist
performing the assessment will submit to both the Court and the
probation office the written report of the conclusions, which I
will also share with the parties, and will be asked to pay
particular attention to certain questions, such as what is the
defendant's risk of sexual re-offense, are there any potential
public safety concerns, what was the defendant's -- was the
defendant's involvement in this case aggravated by a chronic
mental health or sexual disorder, and what special conditions of
supervised release should the Court consider ordering in this
case in light of the psychological and psychosexual examination.

        I think such information is helpful to the Court in
evaluating what, as I said, is a huge discrepancy between the
parties' recommendations pertaining to the appropriate sentence,
and I think more information is much better than less when the
Court attempts to evaluate what the appropriate sentence is
going to be in a case such as this.

        It takes a while for this sort of thing to happen.  As we
have been discussing, we also have the factual objections that I
would like to get hammered out and which we can be doing in the
interim.  I will issue an order separately that talks to you all
about the process of conferring and getting to me any objections

1   to the statements, keeping in mind -- I was going to say to the

2   statements in the PSR, keeping in mind that the Court's practice

3   is to adopt those statements as the findings of fact.  And so to

4   the extent that there are future proceedings or whatever, it

5   will be as though the Court has found that those facts are true

6   for the purpose of sentencing.

7           MS. SLAIGHT:  Your Honor, if I could just speak to

8   that order, and I don't object to the order about conferring

9   with the government, because I think that will be very helpful.

10          In case there was any misunderstanding, the -- the issue is

11  not only what were the facts determined but whether those --

12  whether information should be included as relevant for the

13  presentence report or pertinent for the presentence report.  For

14  example, the issue about -- and I just wanted to clarify to the

15  Court what I was trying to get out.

16          THE COURT:  Yes.

17          MS. SLAIGHT:  For example, as to other persons who

18  were in the videos, there's no question that other persons were

19  in the videos, but the issue is that they were not listed in the

20  indictment.  They were not the target or subject of this case,

21  the counts of the indictment.  So they're not relevant.  They

22  should not be in the statement of facts, because they're really

23  not relevant to the pertinent charges, and it would be

24  misleading.

25          So that's an example of where -- there were millions of

1   facts that came out at the trial, but not all of them are

2   relevant or pertinent to the case.

3        THE COURT:  All right.  You're certainly welcome to

4   make any such objection, to try to work it out with the

5   government.  To the extent that you can't and you still feel

6   strongly about it, I'm going to have to decide.

7        And I will probably need a document of some sort with

8   respect to the remaining disputes that explains what particular

9   statement you find problematic in the PSR, what the basis of

10  your objection is in the way that you've just described, give

11  the government an opportunity to reply related to its view that

12  that's either pertinent or should remain for whatever reason.

13       I mean, I heard Ms. Hertzfeld suggest that anything that

14  came out at the trial, she thought, was fair game for the PSR

15  and that the Court should not be sort of cherry-picking or going

16  through and eliminating anything that is not directly relevant

17  to sentencing.  So we may have to have some focused discussion

18  on that concept, because you're saying the opposite.  Right?

19       MS. SLAIGHT:  Right.

20       THE COURT:  Anything that really doesn't really go to

21  sentencing should be out.

22       MS. SLAIGHT:  Right.

23       THE COURT:  So we might have to have some case

24  research or something on that general dispute in terms of how to

25  even conceive of this.

1    But in addition to that, we will also be thinking -- or I

2    would like for you all to confer on the particular ones that you

3    say are irrelevant and see how much agreement you can reach

4    related to that before you bring it to me.  All right?

5    So I think we need to pick another date, and I also want to

6    ask the parties whether they had anyone here that they would

7    like the Court to hear from today.

8              MS. HERTZFELD:  No, your Honor.

9              MS. SLAIGHT:  No, your Honor.

10             THE COURT:  All right.  So we don't have to worry

11   about that.

12   The evaluation that I have ordered is going to take a few

13   months.  I'm thinking about having this done again in sort of

14   mid- to late October.  That seems like a long time, but in the

15   interim, we're going to have this evaluation done, get it back,

16   have everybody be able to assess it and potentially file updated

17   sentencing memoranda.  We're also going to resolve some of these

18   factual disputes which, you know, again may or may not even

19   impact the PSR's calculation.  I don't know.  It probably won't,

20   but we don't know.

21             THE DEFENDANT:  Man, I can talk to anybody I want to

22   talk to, man.

23   Yeah, tell LaJoyce (phonetic) to visit me.  I don't give a

24   fuck about that nigger.

25             THE COURT:  I am thinking that we can do this on --

1    are you available on Tuesday, October 23rd?

2           MS. SLAIGHT:  I will point out to the Court, I will be

3    out of the jurisdiction from the 27th to the 14th,

4    September 27th for two weeks to September -- to October 14th.

5    So I'm asking that we not have any deadlines set during that

6    period.

7           THE COURT:  All right.  I will try to keep a note of

8    it.  September 27th through the 14th, you say?

9           MS. SLAIGHT:  Right.  Thank you.

10          THE COURT:  But the 23rd, you are available?

11          MS. SLAIGHT:  Yes.  And if it doesn't -- if that

12   doesn't fit with the Court's deadlines, I would ask for the

13   following week.  I don't know what the government's schedule is.

14          MS. HERTZFELD:  Your Honor, it looks like Mr. Okocha

15   might be out on maternity -- or paternity leave.

16          THE COURT:  Congratulations.

17          THE DEFENDANT:  It's human.  That ain't got nothing to

18   do with this case.  I never got my point across that the --

19          THE COURT:  Hold on one second, Mr. Hillie.

20          THE DEFENDANT:  The whole point of the case is why I

21   was videotaping.

22          THE COURT:  You are going to need to talk to your

23   counsel and have her -- Mr. Hillie --

24          THE DEFENDANT:  The whole reason for the case is

25   because I was videotaping.  I don't care about his pregnancy at

1   all.

2          THE COURT:  Sir, you are going to have to let your

3   counsel make that point.

4          THE DEFENDANT:  About the reason why I was

5   videotaping?

6          THE COURT:  Yes.  You can talk to her --

7          THE DEFENDANT:  That's the whole reason we are all

8   here is I was videotaping; right?

9          THE COURT:  You can talk to her, and she can make that

10  point.

11         THE DEFENDANT:  This is why we are here; right?

12         THE COURT:  We are here for sentencing.  I've now put

13  your sentencing date off.

14         THE DEFENDANT:  I didn't get my point across.

15         THE COURT:  Tell your counsel, and she can make your

16  point.  Just give me a second.  Let me set a new date.

17         THE DEFENDANT:  His pregnancy ain't got nothing to do

18  with this.

19         THE COURT:  Ms. Hertzfeld, are you available

20  November 1st?

21         THE DEFENDANT:  You here because of me, nigger.  What

22  the fuck are you talking about?  I'm already in the orange.

23         THE COURT:  Mr. Hillie, Mr. Hillie --

24         THE DEFENDANT:  Nigger, I'm already in the orange.

25  What the fuck you talking about?

1          THE COURT:  Mr. Hillie.

2          THE DEFENDANT:  You're out of your fucking mind.

3          THE COURT:  Mr. Hillie.

4          THE DEFENDANT:  What's up?

5          THE COURT:  I'm going to ask you to stop yelling out

6   for the moment.

7          THE DEFENDANT:  I'm just trying to get my point

8   across.

9          THE COURT:  I understand.  And I will give you an

10   opportunity to do that, sir, but you have to let me --

11          THE DEFENDANT:  Okay.  That's what I wanted to hear,

12   that you're going to give me an opportunity to get my point

13   across.

14          THE COURT:  I will, but you're going to have to --

15          THE DEFENDANT:  I'm going to hold you to that now.

16          THE COURT:  You are going to have to do it through

17   counsel, because that's the way it works in this process.

18          THE DEFENDANT:  That's okay, but I'm going to hold you

19   to that.

20          THE COURT:  That's fine.

21          THE DEFENDANT:  That's it.  That's all I wanted to

22   hear.

23          THE COURT:  What's the date, Ms. Hertzfeld?

24          MS. HERTZFELD:  Your Honor, we can stick with the

25   23rd.  We don't want to go later.  So let's stick with the 23rd.

1    THE COURT:  Tuesday, October 23rd.  We will do it at
2    2:00 in the afternoon.
3            MS. HERTZFELD:  Yes, your Honor.
4            THE COURT:  All right.  So should we break for two
5    minutes and let Ms. Slaight talk to her client so we can know
6    what he would like to have represented?
7            MS. SLAIGHT:  Yes, your Honor.
8            THE COURT:  Let's make it five, five-minute break.
9        (Recess taken from 11:16 a.m. to 11:28 a.m.)
10       (Call to order of the court.)
11           THE COURT:  All right.  You may be seated.
12       We are just finishing up this sentencing hearing -- or the
13   portion of the sentencing hearing that we are planning to do
14   today.
15       Prior to our breaking, Mr. Hillie indicated that he wanted
16   to make sure that certain facts were brought to the Court's
17   attention.
18       Ms. Slaight?
19           MS. SLAIGHT:  Your Honor, Mr. Hillie wanted the Court
20   to be sure that he went to trial because he was innocent and he
21   remains innocent and he was videotaping because he suspected
22   that the -- JAA was using drugs.
23           THE COURT:  All right.  Mr. Hillie, you've seen that
24   your counsel represented to me what it is that you would like to
25   have said.  I understand your position.  Unfortunately, you have

1    already gone to trial in this matter.  You have not pled guilty.

2    You have gone to trial.  Your case was presented to a jury, and

3    the jury made the determination that with respect to the law in

4    this case, what you have done amounted to a violation of the

5    law.

6        There is nothing at this point that the Court can do about

7    changing or addressing the jury's finding, because you have had

8    a trial on the charges in this case, and the jury found what it

9    found.

10            THE DEFENDANT:  I just wanted to let you know that

11   that's why I was videotaping, period.

12            THE COURT:  Thank you, sir.  And I appreciate having

13   heard from your counsel your view of what was happening under

14   the circumstances.  I will take that into account as I take into

15   account all of the facts, because now it's the Court's

16   responsibility to determine what sentence to impose on you in

17   this case.

18            THE DEFENDANT:  I just wanted to let you know that's

19   why I was videotaping, drugs.  I wasn't trying to catch anyone

20   naked or anything.  It was drugs.  That's why I was videotaping.

21            THE COURT:  I do understand.  Your point has been made

22   and now reiterated by you.

23       Is there anything else that we need to address at this

24   moment?

25            MS. SLAIGHT:  No, your Honor.

1           MS. HERTZFELD:  No, your Honor.

2           THE COURT:  All right.  We will return for sentencing

3   in this case.  Thank you.  You may be excused.

4       (Proceedings adjourned at 11:30 a.m.)

5

6   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

7

8              CERTIFICATE OF OFFICIAL COURT REPORTER

9

10          I, Sara A. Wick, certify that the foregoing is a

11   correct transcript from the record of proceedings in the

12   above-entitled matter.

13

14

15

16   /s/ Sara A. Wick              July 25, 2019

17   SIGNATURE OF COURT REPORTER        DATE

18

19

20

21

22

23

24

25