# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 20, 2021       Decided September 17, 2021

No. 19-3027

UNITED STATES OF AMERICA,
APPELLEE

v.

CHARLES HILLIE,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cr-00030-1)

———

*Richard Seligman*, appointed by the court, argued the cause and filed the briefs for appellant.

*David Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman* and *John P. Mannarino*, Assistant U.S. Attorneys.

Before: HENDERSON, ROGERS and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

Opinion dissenting in part filed by *Circuit Judge* HENDERSON.

2

WILKINS, *Circuit Judge*: A jury found Appellant Charles Hillie guilty of two counts of sexual exploitation of a minor, under 18 U.S.C. § 2251(a); four counts of attempted sexual exploitation of a minor, under 18 U.S.C. § 2251(e); one count of possession of images of a minor engaging in sexually explicit conduct, under 18 U.S.C. § 2252(a)(4)(B); and various counts relating to sexual abuse of children and minors, under D.C. law. The District Court sentenced Hillie to a total of 354 consecutive months of imprisonment—180 months on the counts of sexual exploitation of a minor, attempted sexual exploitation of a minor, and possession of images of a minor engaging in sexually explicit conduct; and 174 months on the remaining counts.

Hillie appeals, raising several claims. He argues that there was insufficient evidence to support his convictions of sexual exploitation of a minor, attempted sexual exploitation of a minor, and possession of images of a minor engaging in sexually explicit conduct. He argues that the District Court erroneously instructed the jury. He also argues that the District Court erroneously admitted certain testimony. And he argues that the District Court erroneously denied his motion to sever the counts of sexual exploitation of a minor, attempted sexual exploitation of a minor, and possession of images of a minor engaging in sexually explicit conduct from the remaining counts.

For the reasons given below, we agree with Hillie that there was insufficient evidence to support his convictions of sexual exploitation of a minor, attempted sexual exploitation of a minor, and possession of images of a minor engaging in sexually explicit conduct. Accordingly, we vacate Hillie's convictions on those counts. We reject Hillie's other claims.

3

# I.

We begin with the procedural background and a summary of the evidence presented at trial. "Because we are reviewing a jury verdict of guilt, we recount the evidence in the light most favorable to the Government." *United States v. Bostick*, 791 F.3d 127, 135 (D.C. Cir. 2015).

Between 2005 and 2015, Hillie lived on and off with his girlfriend, Jo. A, and her two minor daughters, JAA and JA. Between 2007 and 2014, Hillie sexually abused JAA and JA by penetrating JAA's vulva with his finger on one occasion, touching JAA's buttocks with his hand on two occasions, touching JAA's breast with his hand on one occasion, touching JA's breast with his hand on two occasions, touching JA's vulva with his hand on one occasion, and touching JA's buttocks with his hand on one occasion.

On July 29, 2015, the Government filed a criminal complaint in the Superior Court of the District of Columbia accusing Hillie of first- and second-degree child sexual abuse. Law enforcement officers then secured a search warrant to locate and seize a laptop computer and camera belonging to Hillie. The officers executed the search warrant, arrested Hillie, and recovered his laptop and camera. The officers then secured a separate warrant to search the contents of the laptop and camera. The search revealed six videos. The contents of all six videos are relevant to the issues raised on appeal, but two are particularly so.

The first video is 29 minutes and 49 seconds long. It depicts Hillie positioning a camera underneath a bed in JAA's bedroom. Hillie walks back and forth from the camera several times, looking at it from different angles and adjusting its position. Eventually, Hillie exits the bedroom, leaving the camera behind, still recording. Later, JAA enters the bedroom.

4

For several minutes she walks around the room, clothed, dancing and singing to herself. She proceeds to undress, standing almost directly in front of the camera. While undressing, she bends over in front of the camera, exposing her genitals to the camera for approximately nine seconds. After she has undressed, she sits slightly to the left of the camera and appears to clean her genitals and legs with a towel. While she does this, her breasts and pubic hair are visible but her genitals are not. She proceeds to apply lotion to her body for approximately 11 minutes. While she does this, her breasts are visible and her pubic hair is occasionally visible but her genitals are not. She proceeds to stand up and walk naked around the room. While she walks, her pubic area is intermittently visible for periods of approximately one or two seconds. She then dresses and exits the room. After JAA exits the room, Hillie returns and retrieves the camera.

The second video is 12 minutes and 25 seconds long. It depicts Hillie positioning a camera in a bathroom ceiling vent, directly above a toilet. Hillie then leaves the bathroom. Shortly after, Jo. A enters, sits on the toilet, stands up, and leaves. JAA and another minor, whom the Government refers to as KA, *see* ECF No. 55, at 4, proceed to enter the bathroom. JAA proceeds to sit on the toilet. The upper part of JAA's buttocks is visible for approximately 20 seconds while she sits on the toilet. Because the camera is directly above the toilet, JAA's genitals are not visible. JAA stands up and KA proceeds to sit on the toilet. The upper part of KA's buttocks is visible for approximately 20 seconds, but her genitals are not visible. JAA proceeds to wipe KA's pubic area with a washcloth. KA's pubic area is not visible while she does this, although occasionally the upper part of KA's buttocks is visible. KA proceeds to leave the bathroom. After she has left, JAA removes her pants and underwear and proceeds to wipe her pubic area with a washcloth. JAA's pubic area is visible for

5

approximately 16 seconds while she does this.  JAA proceeds to dress and exit the bathroom.  Jo. A then enters and sits on the toilet again.  Jo. A then stands up, looks up at the ceiling vent, sees the camera, and removes it.

The remaining four videos depict Hillie hiding a video camera in a bathroom ceiling vent and a bedroom dresser, but do not depict JAA's or JA's genitals or pubic area.  *See* ECF No. 55, at 6–7.

On January 18, 2017, the Government filed a 17-count superseding indictment.  (The Government had filed an earlier superseding indictment, on March 22, 2016, which Hillie successfully moved to dismiss.)  Counts 1 and 2 charged Hillie with sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), in relation to Hillie's production of the two videos in which JAA's genitals and pubic area are visible as described above.  Count 3 charged Hillie with possession of images of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B), in relation to Hillie's possession of those same two videos in which JAA's genitals and pubic area are visible.  Counts 4–7 charged Hillie with attempted sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e), in relation to Hillie's production of each of the four remaining videos.  Count 8 charged Hillie with first-degree child sexual abuse, under D.C. Code §§ 22-3008, 3020(a)(2), (5), in relation to Hillie's touching of JAA's vulva, but not his production of any of the videos.  Counts 9–11 and 13–17 charged Hillie with second-degree child sexual abuse, under D.C. Code §§ 22-3009, 3020(a)(2), (5), in relation to his touching of JAA and JA's buttocks, breasts, and vulvas, but not his production of any of the videos.  Count 12 charged Hillie with second-degree sexual abuse of a minor, under D.C. Code §§ 22-3009.02, 3020(a)(5), in relation to his touching of JAA's buttocks, but not his production of any of the videos.

6

A jury trial began on March 29, 2018. On April 3, 2018, after the close of the evidence, Hillie moved for a judgment of acquittal on all counts. The District Court denied his motion with respect to all counts except one of the D.C. criminal charges (count 11), which the Court dismissed as multiplicitous. On April 4, 2018, the jury returned a verdict of guilty on all remaining counts. On April 2, 2019, the District Court sentenced Hillie to 180 months of imprisonment on each of counts 1–2 and 4–7, and 120 months of imprisonment on count 3, to run concurrently to each other but consecutive to remaining counts; to 102 months of imprisonment on count 8, and 24 months of imprisonment on each of counts 9, 10, and 12, to run concurrently with each other and the term of imprisonment on count 8 but consecutive to remaining counts; and to 72 months of imprisonment on each of counts 13–17, to run concurrently to each other but consecutive to remaining counts.

Hillie timely appealed his convictions on all counts.

**II.**

Hillie challenges the sufficiency of the evidence as to counts 1–7.

Hillie challenged the sufficiency of the evidence below on two grounds. First, he argued that there was insufficient evidence to support his convictions on counts 1–3 because the videos related to those counts did not depict a minor engaging in sexually explicit conduct. *See* Def.'s Second Mot. to Dismiss Counts 1–7 of the Indictment, ECF No. 50, at 1, 4. Second, he argued that there was insufficient evidence to support his convictions on counts 1–7 because the evidence did not establish that he intended to produce depictions of a minor engaging in sexually explicit conduct. *Id.* at 1, *see also* Mem.

7

Op. Denying Def.'s Second Mot. to Dismiss Counts 1–7 of the Indictment, ECF No. 81, at 2.

Hillie raises the same arguments on appeal.  This Court must review them "viewing the evidence in the light most favorable to the government, and affirming a guilty verdict where any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Littlejohn*, 489 F.3d 1335, 1338 (D.C. Cir. 2007) (internal quotation marks and brackets omitted) (quoting *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002)). "By thus asking only whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, our deferential review impinges upon jury discretion only to the extent necessary to guarantee the fundamental protection of due process of law."  *United States v. Torres*, 894 F.3d 305, 369 (D.C. Cir. 2018) (internal quotation marks omitted).

As both parties agreed at oral argument, our "limited determination on sufficiency review . . . does not rest on how the jury was instructed," *Musacchio v. United States*, 577 U.S. 237, 243 (2016), but rather on how a properly instructed jury would assess the evidence, Oral Arg. Rec. 12:10–13:15, 56:46–59:15. *See, e.g.*, *United States v. Staggers*, 961 F.3d 745, 756 (5th Cir.) ("Sufficiency is measured against the actual elements of the offense, not the elements stated in the jury instructions," citing *Musacchio*)), *cert. denied*, 141 S. Ct. 388 (2020); *United States v. Wheat*, 988 F.3d 299, 312 (6th Cir. 2021) (same); *United States v. Ramos*, 814 F.3d 910, 916 (8th Cir. 2016), as corrected (Feb. 23, 2016) (same); *United States v. Wyatt*, 964 F.3d 947, 951 (10th Cir. 2020) (same).  *Cf. Boyle v. United Tech. Corp.*, 487 U.S. 500, 513–14 (1988) (holding that where evidence in a civil trial does not suffice to support a jury verdict for plaintiff under a properly formulated defense, judgment

8

may be entered for defendant on appeal despite the fact that defendant did not object to jury instructions "that expressed the defense differently, and in a fashion that would support a verdict") (collecting cases). To allow a conviction to stand where the defendant's conduct "fails to come within the statutory definition of the crime," *Griffin v. United States*, 502 U.S. 46, 59 (1991), or despite insufficient evidence to support it, would violate the Due Process Clause. *See Musacchio*, 577 U.S. at 243. And to allow a defendant to be retried for a charge that the Government previously failed to prove at trial would violate the Double Jeopardy Clause. *See Burks v. United States*, 437 U.S. 1, 15–17 (1978). A defendant does not "waive" his rights under either of those clauses by failing to present the correct interpretation of the offense to the district court. *Cf. id.* at 17–18 ("It cannot be meaningfully said that a person 'waives' his right to a judgment of acquittal by moving for a new trial. Moreover, . . . an appellate court is authorized by [28 U.S.C.] § 2106 to 'go beyond the particular relief sought' in order to provide that relief which would be 'just under the circumstances.'" (internal citations omitted)). Accordingly, we assess Hillie's challenges to the sufficiency of the evidence as we would had the jury been instructed correctly.

## A.

We begin with Hillie's argument that there was insufficient evidence to support his convictions on counts 1–3 because the videos related to those counts do not depict JAA engaging in sexually explicit conduct.

Counts 1 and 2 charged Hillie with sexual exploitation of a minor, under 18 U.S.C. § 2251(a), in relation Hillie's production of the two videos in which JAA's genitals and pubic

9

area are visible.  Section 2251(a) provides, in relevant part, that:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e)[.]

18 U.S.C. § 2251(a).

Count 3 charged Hillie with possession of images of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B), in relation to Hillie's possession of those same two videos.  As relevant for our purposes, § 2252(a)(4)(B) prohibits the knowing possession of videos and any other matter containing a visual depiction produced using materials mailed or transported in interstate commerce if "(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct."

Thus, Congress defined the sexual exploitation and possession of child pornography offenses as applying to videos that depict "a minor engaging in sexually explicit conduct."

Congress also provided a definition of "sexually explicit conduct," which, as relevant for our purposes, states as follows:

> "sexually explicit conduct" means actual or simulated—
>
> (i)     sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal,

10

|      | whether between persons of the same or opposite sex; |
|------|-----|
| (ii) | bestiality; |
| (iii) | masturbation; |
| (iv) | sadistic or masochistic abuse; or |
| (v)  | lascivious exhibition of the anus, genitals, or pubic area of any person |

18 U.S.C. § 2256(2)(A).

The Government acknowledges that only part (v) of the definition is at issue here, because neither of the two videos depicted sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. *See, e.g.*, Govt's Br. at 42-48. Thus, the only contested issue is whether a reasonable jury could find that the two videos underlying counts 1–3 each depict conduct that could be described as a "lascivious exhibition of the anus, genitals, or pubic area of any person."

We are not writing on a blank slate, because the Supreme Court has provided guidance as to how to construe the same or similar phrasing in a line of cases going back nearly fifty years. The first such case is *Miller v. California*, in which the Court considered a First Amendment challenge to a state statute prohibiting the mailing of unsolicited "obscene matter." 413 U.S. 15, 17 (1973). In upholding the California statute, the Court held that it must be construed as limited to works depicting patently offensive "sexual conduct specifically defined by . . . state law," *id*. at 24, and gave as examples "ultimate sexual acts, normal or perverted, actual or simulated," as well as "representation[s] or descriptions of masturbation, excretory functions, and *lewd exhibition of the genitals*," *id*. at 25 (emphasis added). The Court described its holding as applying only to patently offensive "'hard core'

11

sexual conduct." *Id*. at 27.  In *United States v. 12 200-Foot Reels of Super 8mm. Film*, decided the same day as *Miller*, the Court clarified that the "standards for testing the constitutionality of state legislation regulating obscenity" announced in *Miller* "are applicable to federal legislation." 413 U.S. 123, 129–30 (1973).  The Court noted its "duty to authoritatively construe federal statutes where 'a serious doubt of constitutionality is raised' and 'a construction of the statute is fairly possible by which the question may be avoided.'" *Id*. at 130 n.7 (quoting *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369 (1971) (opinion of White, J.)).  Explaining that "[i]f and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material" in federal statutes, "we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific '*hard core*' *sexual conduct* given as examples in *Miller v. California*." *Id*. (emphasis added).

In *New York v. Ferber*, the Court rejected a constitutional overbreadth challenge to a New York statute prohibiting "the use of a child in a sexual performance," defined as a performance "includ[ing] sexual conduct by a child." 458 U.S. 747, 750–51 (1982).  The statute further defined "sexual conduct" as meaning "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or *lewd exhibition of the genitals*." *Id*. at 751 (emphasis added).  The Court held that child pornography may be regulated without infringing on the First Amendment, regardless of whether it is obscene, because of the harm it causes to the children who appear in it.  *Id*. at 756–58.  "[T]he question under the *Miller* test of whether a work, taken as a whole, appeals to the prurient interest of the average person," the Court explained, "bears no connection to the issue

12

of whether a child has been physically or psychologically harmed in the production of the work." *Id.* at 761. The Court emphasized, however, that "[t]here are, of course, limits on the category of child pornography which, like obscenity, is unprotected by the First Amendment." *Id.* at 764. For instance, the Court explained, "[t]he category of 'sexual conduct' proscribed must . . . be suitably limited and described." *Id.* The Court held that the New York law at issue was suitably limited. "The forbidden acts to be depicted," the Court explained, "are listed with sufficient precision and represent the kind of conduct that, if it were the theme of a work, could render it legally obscene: 'actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or *lewd exhibition of the genitals*.'" *Id.* at 765 (emphasis added). The Court noted that "[t]he term 'lewd exhibition of the genitals,'" in particular, "is not unknown in this area and, indeed, was given in *Miller* as an example of a permissible regulation." *Id.* The Court reiterated that "the reach of the statute is directed at the *hard core* of child pornography," *id.* at 773 (emphasis added), repeating the characterization of prohibited "sexual conduct" that was articulated in *Miller*.

In *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the Court rejected a constitutional-overbreadth challenge to the possession-of-child-pornography statute, 18 U.S.C. § 2252(a), the basis for Count 3 in this case. The Court noted that Congress had amended the statute in 1984 to broaden "its application to those sexually explicit materials that, while not obscene as defined by *Miller v. California*, could be restricted without violating the First Amendment as explained by *New York v. Ferber*." *X-Citement Video*, 513 U.S. at 74 (internal citations omitted). The Court rejected vagueness and overbreadth challenges to the statutory term "lascivious exhibition of the . . . genitals," as used in § 2256(2)(A)(v),

13

because, as the Court of Appeals had explained, "'[l]ascivious' is no different in its meaning than 'lewd,' a commonsensical term whose constitutionality was specifically upheld in *Miller v. California* and in *Ferber*," *United States v. X-Citement Video, Inc.*, 982 F.2d 1285, 1288 (9th Cir. 1992) (internal quotation marks and citations omitted) (alteration in original); *see also X-Citement Video*, 513 U.S. at 78–79 (adopting the reasoning of the Court of Appeals).  In so doing, the Court expressly engrafted the "hard core" characterization of the prohibited "lascivious exhibition of the genitals" from *Miller* onto the construction of the federal child pornography statute. In dissent, Justice Scalia indicated his agreement with that aspect of the Court's holding.  *Id.* at 84 (Scalia, J., dissenting) ("'[S]exually explicit conduct,' as defined in the statute, does not include mere nudity, but only *conduct* that consists of 'sexual intercourse . . . between persons of the same or opposite sex,' 'bestiality,' 'masturbation,' 'sadistic or masochistic abuse,' and 'lascivious exhibition of the genitals or pubic area.' What is involved, in other words, is not the clinical, the artistic, nor even the risqué, but *hard-core pornography*." (second emphasis added)).

In *United States v. Williams*, 553 U.S. 285 (2008), the Court considered a constitutional overbreadth challenge to the promotion of child pornography statute, 18 U.S.C. § 2252A(a)(3)(B), which uses the same definition of "sexually explicit conduct" as the offenses for which Hillie was convicted in counts 1–7.  The Court rejected the overbreadth challenge based, in part, on its finding that "sexually explicit conduct" includes only conduct akin to that defined by the New York statute upheld in *Ferber*.  "[T]he [statutory] definition of 'sexually explicit conduct,'" the Court observed, "is very similar to the definition of 'sexual conduct' in the New York statute we upheld against an overbreadth challenge in *Ferber*." *Williams*, 553 U.S. at 296.  "Congress," the Court continued,

14

"used essentially the same constitutionally approved definition in the present Act. If anything, the fact that the defined term here is 'sexually *explicit* conduct,' rather than (as in *Ferber*) merely 'sexual conduct,' renders the definition more immune from facial constitutional attack." *Id.* Just as in *X-Citement Video*, the Court in *Williams* made clear that "sexually explicit conduct" as used in the federal child pornography statutes must be construed consistently with the "sexual conduct" prohibited in *Ferber*.

In sum, *Ferber* explained that the Court had previously construed the phrase "lewd exhibition of the genitals" in *Miller*, and that the phrase referred to "the hard core of child pornography." *Ferber*, 458 U.S. at 764–65, 773. In *X-Citement Video*, the Court found that the term "lascivious exhibition of the genitals" as currently used in § 2256(2)(A)(v), has the same meaning as "lewd exhibition of the genitals," as that phrase was construed in *Miller* and *Ferber*. *X-Citement Video*, 513 U.S. at 78–79. And in *Williams*, the Court reaffirmed that § 2256(2)(A)'s definition of "sexually explicit conduct" means essentially the same thing as the definition of "sexual conduct" at issue in *Ferber*, except that the conduct defined by § 2256(2)(A) must be, if anything, more "hard-core" than the conduct defined by the New York law at issue in *Ferber*, given that the federal statute prohibits "sexually explicit conduct" rather than merely "sexual conduct," as in the state law. *Williams*, 553 U.S. at 296.

These constructions were necessary antecedents to determining whether the statutes at issue in *Ferber*, *X-Citement Video*, and *Williams* were overbroad, *see Williams*, 553 U.S. at 293 ("[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers"), and are therefore binding holdings, *see In re Grand*

15

*Jury Investigation*, 916 F.3d 1047, 1053 (D.C. Cir. 2019).  We are of course bound by this directly applicable Supreme Court precedent, U.S. CONST. ART. III, § 1; *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989), and, as the Court has explained, we must faithfully apply those precedents where the same statutory language is at issue, as it is here:

> It is this Court's responsibility to say what a [federal] statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. *A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.*

*Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312–13 (1994) (emphasis added).  Additionally, the Court's authoritative construction of statutory language must be followed in subsequent prosecutions because it is that construction which provides fair notice to citizens of what conduct is proscribed. *Cf. Bouie v. City of Columbia*, 378 U.S. 347, 353 (1964) (unexpected or unforeseen authoritative judicial construction that broadens clear and more precise statutory language violates due process).

Moreover, although Hillie did not argue in the District Court that "lascivious exhibition of the genitals" must be construed consistent with *Miller* and its progeny, he argued persistently that to obtain convictions under § 2251, the Government was required to prove that he captured video footage of JAA engaging in overt sexual activity.  *See, e.g.*, Def.'s Second Mot. to Dismiss Counts 1–7 of the Indictment, ECF No. 50, at 1, 4 ("None of the videos show any actual sexual activity or . . . any conduct that could remotely be

16

considered lascivious."); Aug. 3, 2017 Tr., ECF No. 148, at 64–
65 (arguing that a lascivious exhibition "has to be . . . sexual in
nature," not "just somebody dressing or undressing or going to
the bathroom"); Apr. 3, 2018 Afternoon Tr. at 52–53 (moving
for a judgment of acquittal, arguing that "there's no evidence
beyond a reasonable doubt that Mr. Hillie intended to make a
video with sexually explicit conduct"); Apr. 4, 2018 Morning
Tr. at 21–22 (objecting to a jury instruction that "the image
need not depict overt sexual activity or behavior").

He makes the same core argument on appeal. *See, e.g.*,
Appellant's Br. at 24 ("[The terms] 'sexual intercourse,'
'bestiality,' 'masturbation,' and 'sadistic or masochistic
abuse[,]' . . . are graphic, sexual terms referring to sexually
explicit conduct or behavior and a 'lascivious exhibition' must
be equally graphic with regard to the conduct or child's
behavior depicted."); *id.* at 25 ("[A]n image, even one with
nudity, must depict conduct that is objectively sexual [in order
for its creator to be convicted under 18 U.S.C. § 2251(a)].");
*id.* at 27 ("The trial court's interpretation of the statute as not
requiring the image to 'depict overt sexual activity or behavior'
is in direct contradiction to the clear language of the statute and
the intent of [C]ongress . . . [that] the Act not apply to nude
asexual activities."); *id.* at 28 ("The videos of [JAA]
showering, toileting and self-grooming did not depict sexually
explicit conduct. [JAA] . . . does not perform any sexual acts,
pose sexually, or say or do anything sexual. Instead, she uses
the toilet, washes her pubic area with a washcloth, and grooms
herself in the bathroom."). "And once an argument is before
us, it is our job to get the relevant case law right. Indeed, a
party cannot forfeit or waive recourse to a relevant case just by
failing to cite it." *Flyers Rights Educ. Fund, Inc. v. FAA*, 864
F.3d 738, 748 n.6 (D.C. Cir. 2017) (internal citations omitted);
*see also Elder v. Holloway*, 510 U.S. 510, 516 (1994) (when
deciding a "question of law," a court "should * * * use its full

17

knowledge of its own [and other relevant] precedents") (second alteration in original; internal quotation marks and citation omitted); *United States v. Rapone*, 131 F.3d 188, 196–97 (D.C. Cir. 1997). Therefore, although Hillie did not cite *Ferber*, *X-Citement Video*, and *Williams* in his briefs, we are bound to follow them in evaluating his argument that to sustain his convictions under § 2251, the Government was required to prove that he captured video footage of JAA engaging in overt sexual activity.

Based on the foregoing, we construe "lascivious exhibition of the anus, genitals, or pubic area of any person" in 18 U.S.C. § 2256(2)(A)(v) to cover visual depictions in which a minor, or someone interacting with a minor, engages in conduct displaying their anus, genitalia, or pubic area in a lustful manner that connotes the commission of sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. This construction is consistent with the phrase "sexually explicit conduct," of which the "lascivious exhibition of the genitals" is one form. As *Williams* explained:

> "Sexually *explicit* conduct" connotes actual depiction of the sex act rather than merely the suggestion that it is occurring. And "simulated" sexual intercourse is not sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not actually have occurred. The portrayal must cause a reasonable viewer to believe that the actors actually engaged in that conduct on camera.

553 U.S. at 297. Further, just as *Williams* relied upon the *noscitur a sociis* canon to interpret the promotion of child

18

pornography statute, 18 U.S.C. § 2252A(a)(3)(B), *id*. at 294–95, we believe it has relevance here. Because "lascivious exhibition of the anus, genitals, or pubic area" appears in a list with "sexual intercourse," "bestiality," "masturbation," and "sadistic or masochistic abuse," its "meaning[] [is] narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated." *Id*. at 294. Thus, the "lascivious exhibition of the anus, genitals, or pubic area" must be performed in a manner that connotes the commission of one of the four sexual acts in the list, which is consistent with how the prosecutors construed "lewd exhibition of the genitals" when asking the Supreme Court to uphold the New York statute in *Ferber*. *See* Brief for Petitioner, *Ferber*, 458 U.S. 747 (1982) (No. 81-55), 1982 WL 608534, at *24 ("Notably, the statute, in defining sexual conduct, does not include simple nudity, although it does prohibit lewd exhibition of the genitals. Nudity is prohibited only when it is accompanied by simulated sexual conduct, that is, the explicit depiction of the prohibited acts. N.Y. Penal Law § 263.00 (3) & (6). In not prohibiting simple nudity, the statute allows producers ample room to express an idea, convey a message or tell a story about the sexual conduct of children."). Further, this construction is consistent with the Court's repeated description of the conduct prohibited by the terms "sexual conduct" and "sexually explicit conduct" in child pornography statutes as "hard core" sexual conduct, as described above.

To be clear, this construction of the statute—although it is informed by First Amendment caselaw—is not a holding that Congress has run up against a constitutional limit on its authority to criminalize conduct like Hillie's. In fact, both federal law and the law of the District of Columbia contain prohibitions on voyeurism. *See* 18 U.S.C. § 1801; D.C. Code § 22-3531. And we see no barrier to imposition of enhanced

19

penalties when the victim is a minor.  *Cf. Ferber*, 458 U.S. at 756–57.  The First Amendment cases are instructive simply in that they shed light on the meaning that Congress ascribed to the statutory term "lascivious exhibition of the anus, genitals, or pubic area of any person."

Applying this construction to the evidence introduced at trial, we conclude that no rational trier of fact could find JAA's conduct depicted in the videos related to counts 1–3 to be a "lascivious exhibition of the anus, genitals, or pubic area of any person," as defined by § 2256(2)(A).  To fall within the definition of "lascivious exhibition of the . . . genitals," JAA's conduct depicted in the videos must consist of her displaying her anus, genitalia or pubic area in a lustful manner that connotes the commission of sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse.  As the dissent agrees (pp. 10–11), none of the conduct in which JAA engages in the two videos at issue comes close.  The videos depict JAA engaged in ordinary grooming activities, some dancing, and nothing more.  While JAA disrobes and her nude body is shown, along with fleeting views of her pubic area, JAA never engages in any sexual conduct whatsoever, or any activity connoting a sex act.  There is certainly nothing that could be reasonably described as "hard core," sexually explicit conduct. The depiction of JAA's conduct does not even suggest "sexual coyness or a willingness to engage in sexual activity."  Dissent at 10.  We agree and highlight that we view the evidence in the same way as our dissenting colleague: the evidence against Hillie showed no sexual conduct or coyness by JAA nor anyone else.  Accordingly, we hold that no rational trier of fact could find JAA's conduct depicted in the videos to be a "lascivious exhibition of the . . . genitals" as defined by § 2256(2)(A).  We therefore vacate Hillie's convictions on counts 1–3 and direct the District Court to enter a judgment of acquittal on those counts.

20

In reaching this conclusion, we reject the Government's argument (adopted by the dissent) that "lascivious exhibition of the genitals," as defined in § 2256(2)(A), should be construed in accordance with the so-called *Dost* factors. *See United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986). In *Dost*, the court held that "lascivious exhibition of the genitals" should be determined by "look[ing] to the following factors, among any others that may be relevant in the particular case:"

(1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

(2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

(3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

(6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id*. at 832.

There are several reasons why *Dost* is unpersuasive. First, the *Dost* court misinterpreted a single floor statement of a single Senator, *id.* at 831 (erroneously referring to Senator Specter as "Rep. Specter"), to conclude that when Congress amended the definition of "sexually explicit conduct" in 1984,

21

substituting "lascivious" for "lewd," Congress's intent "was to broaden the scope of the existing 'kiddie porn' laws." *Id*. Even while acknowledging that "'lewd' and 'lascivious' have frequently been used interchangeably," the *Dost* court nonetheless concluded that "Congress believed that the term 'lewd' . . . was too restrictive since it had been closely associated with the more stringent standard of obscenity." *Id*. at 831 & n.4. As stated above, this reasoning has been rejected by the Supreme Court, because "'[l]ascivious' is no different in its meaning than 'lewd,'" *X-Citement Video*, 982 F.2d at 1288 (internal quotation marks and citations omitted); *X-Citement Video*, 513 U.S. at 78–79 (adopting the reasoning of the Court of Appeals), so this 1984 wording change did not affect the scope of the statute. *See also Roth v. United States*, 354 U.S. 476, 487 n.20 (1957) (equating "lascivious" with "lewd"). Consequently, the fundamental premise of *Dost*, that the 1984 amendment of the definition of "sexually explicit conduct" broadened the reach of the federal statute, is fatally flawed.

Second, because of its erroneous premise that "lascivious" had a broader meaning than "lewd," the *Dost* court completely ignored the holdings of *Miller*, 413 U.S. at 27, and *12 200-Foot Reels of Super 8mm. Film*, 413 U.S. at 130 n.7, that "lewd exhibition of the genitals" refers to "hard core" sexual conduct. Indeed, rather than relying upon the authoritative construction of "lewd exhibition" in these Supreme Court cases, the *Dost* court approvingly cited a district court opinion that concluded that "there are no cases interpreting the word 'lewd' as used in this [the federal child pornography] statute," 636 F. Supp. at 831–32 (citing *United States v. Nemuras*, 567 F. Supp. 87, 89 (D. Md. 1983), *aff'd* 740 F.2d 286 (4th Cir. 1984)), and crafted its own definition.

22

When upholding *Dost*, the Ninth Circuit rejected a vagueness challenge to the statutory language "lascivious exhibition of the genitals," because "'lascivious' is no different in its meaning than 'lewd,' a commonsensical term whose constitutionality was specifically upheld in *Miller v. California*. . . ." *United States v. Wiegand*, 812 F.2d 1239, 1243 (9th Cir. 1987). But without any explanation, *Wiegand* did not abide by *Miller's* construction of "lewd exhibition of the genitals," even though the Supreme Court had previously explained that "[i]f and when . . . a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material" in federal statutes, "we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific '*hard core*' *sexual conduct* given as examples in *Miller v. California*." *12 200-Foot Reels of Super 8mm. Film*, 413 U.S. at 130 n.7 (emphasis added). Instead, *Wiegand* adopted a modification of the six-factor test created by the district court in *Dost*. 812 F.2d at 1243–45. Even if the relevancy of using *Miller*, *12 200-Foot Reels of Super 8mm. Film*, and *Ferber* to construe the federal statute was unclear at the time of *Dost* and *Wiegand*, *but see Hamling v. United States*, 418 U.S. 87, 105–07, 113–14 (1974) (explaining that *12 200-Foot Reels of Super 8mm. Film* held that the statutory constructions from *Miller* authoritatively applied to federal statutes with same language), their pertinence is now clear given *X-Citement Video,* 513 U.S. at 78–79, and *Williams*, 553 U.S. at 296, for the reasons explained above. (Even though "[t]he first step in overbreadth analysis is to construe the challenged statute," *United States v. Stevens*, 559 U.S. 460, 474 (2010) (quoting *Williams*, 553 U.S. at 293), the dissent (pp. 13-14 n.19) suggests that none of these Supreme Court precedents, all of which involved overbreadth challenges, actually construed the statutory language.)

23

Third, the *Dost* court erroneously concluded that whether a photo or video depicts "a minor engaged in sexually explicit activity" depends in part on whether the photo or video "is designed to elicit a sexual response in the viewer, albeit perhaps not the 'average viewer,' but perhaps in the pedophile viewer." 636 F. Supp. at 832.  The Ninth Circuit agreed, stating that "[t]he picture of a child 'engaged in sexually explicit conduct' within the meaning of 18 U.S.C. §§ 2251 and 2252 . . . is a picture of a child's sex organs displayed lasciviously— that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur." *Wiegand*, 812 F.2d at 1244.

The Supreme Court expressly rejected this line of reasoning in *Williams*.  When construing the federal promotion of child pornography offense, the Court explained that the statute cannot "apply to someone who subjectively believes that an innocuous picture of a child is 'lascivious.'" *Williams*, 553 U.S. at 301.  Instead, "[t]he defendant must believe that the picture contains certain material, and that material in fact (and not merely in his estimation) must meet the statutory definition. Where the material at issue is a harmless picture of a child in a bathtub and the defendant, knowing that material, erroneously believes that it constitutes a 'lascivious exhibition of the genitals,' the statute has no application." *Id.*  This is because the statutory terms "visual depiction"—in § 2251(a) and § 2252(a)(4)(B)—and "lascivious exhibition"—in § 2256(2)(A)(v)—refer to different things.  Sections 2251(a) and 2252(a)(4)(B) require the defendant to have produced or possessed a visual depiction of "a minor [or any minor] engaging in sexually explicit conduct," with sexually explicit conduct defined as, among other things, a "lascivious exhibition of the . . . genitals," 18 U.S.C. § 2256(2)(A)(v).  The statutory term "lascivious exhibition" therefore refers to the minor's conduct that the visual depiction depicts, and not the visual depiction itself.   That is why the Supreme Court

24

repeatedly describes "lascivious exhibition of the genitals" to mean depictions showing a minor engaged in "hard core" sexual conduct, not visual depictions that "elicit a sexual response in the viewer," as the *Dost* court concluded. Writing for the Court in *Williams*, and placing emphasis on the word "explicit," Justice Scalia explained that "'[s]exually *explicit* conduct' connotes actual depiction of the sex act rather than merely the suggestion that it is occurring," 553 U.S. at 297, but the *Dost* factors stray too far from this basic teaching, allowing a depiction that portrays sexually *implicit* conduct in the mind of the viewer to be caught in the snare of a statute that prohibits creating a depiction of sexually *explicit* conduct performed by a minor or by an adult with a minor.

The dissent argues (pp. 11–14) that this construction of the statute is contrary to the legislative purpose of protecting children from exploitation and psychological harm. Not so. Our construction is consistent with this purpose because it protects children from persons who, with the purpose of creating a visual depiction, solicit minors to engage in sexually explicit conduct or engage in sexually explicit conduct with minors.  Besides, a broadly stated legislative purpose cannot trump more narrowly worded statutory text. *See West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991) ("The best evidence of . . . [legislative] purpose is the statutory text adopted by both Houses of Congress and submitted to the President."); *Nichols v. United States*, 136 S. Ct. 1113, 1119 (2016) ("Yet 'even the most formidable argument concerning the statute's purposes could not overcome the clarity we find in the statute's text.'" (quoting *Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012))).  Furthermore, the Supreme Court was well aware of any relevant legislative purpose when it construed "lewd exhibition of the genitals" in *Ferber*, *see* 458 U.S. at

25

756–59, 764–65, and "lascivious exhibition of the genitals" in *Williams*, *see* 553 U.S. at 296–97, 300–02.

For all these reasons, we decline to adopt the *Dost* factors, and thus we find unpersuasive those decisions of our sister circuits that follow the *Dost* factors, or that use *Dost* as the foundation for construing "lascivious exhibition of the anus, genitals, or pubic area," rather than *Miller* and its progeny, including *Ferber*, *X-Citement Video*, and *Williams*. *See United States v. Rivera*, 546 F.3d 245, 252–53 (2d Cir. 2008); *Salmoran v. Att'y Gen.*, 909 F.3d 73, 80 n.11 (3d Cir. 2018); *United States v. McCall*, 833 F.3d 560, 563 (5th Cir. 2016); *United States v. Hodge*, 805 F.3d 675, 680 (6th Cir. 2015); *United States v. Petroske*, 928 F.3d 767, 773 (8th Cir. 2019); *United States v. Perkins*, 850 F.3d 1109, 1121 (9th Cir. 2017); *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019).

Other decisions of our sister circuits, as well as a state Supreme Court, have appropriately cautioned against treating the *Dost* factors as a definition for "lascivious exhibition." *See United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999) (concluding that "the *Dost* factors are generally relevant and provide some guidance in evaluating whether the display in question is lascivious," emphasizing that "these factors are neither comprehensive nor necessarily applicable in every situation," and that "there may be other factors that are equally if not more important in determining whether a photograph contains a lascivious exhibition"); *United States v. Spoor*, 904 F.3d 141, 151 (2d Cir. 2018) (limiting "the role of the sixth *Dost* factor," insofar as "the defendant's subjective intent alone is not sufficient to find the content lascivious"); *United States v. Price*, 775 F.3d 828, 839–40 (7th Cir. 2014) (holding that district court did not plainly err by instructing jury on *Dost* factors, but declining to endorse the factors and "discourag[ing] their routine use"); *State v. Whited*, 506

26

S.W.3d 416, 437 (Tenn. 2016) (rejecting "the use of the *Dost* factors as a 'test' or an analytical framework for determining whether certain materials constitute child pornography," also defined as a lascivious exhibition of the genitals); *United States v. Steen*, 634 F.3d 822, 829 (5th Cir. 2011) (Higginbotham, J., concurring) ("The sixth factor, which asks whether the visual depiction was intended to elicit a sexual response in the viewer, is especially troubling.  Congress did not make production of child pornography turn on whether the maker or viewer of an image was sexually aroused, and this *Dost* factor encourages both judges and juries to improperly consider a non-statutory element." (footnote omitted)).

In rejecting the *Dost* factors as a definition of "lascivious exhibition," we do not mean to suggest that evidence concerning all matters described in the factors is irrelevant or inadmissible at trial.  For example, evidence pertaining to the fifth *Dost* factor, that "the visual depiction suggests sexual coyness or a willingness to engage in sexual activity," 636 F. Supp. at 832, may substantially overlap with the construction that we have adopted here.  If the factor is properly framed to focus on whether the conduct depicted in the visual depiction suggests coyness or a willingness to engage in sexual activity, it may indeed shed light on whether an exhibition of the genitals is conducted "in a lustful manner that connotes the commission of sexual intercourse," *see supra* at 17–19, and is therefore a "lascivious exhibition."  Today this court simply rejects the practice of instructing the jury on the *Dost* factors as a matter of course, or in a manner that suggests those factors are sufficient to determine whether given conduct, depicted visually, constitutes a "lascivious exhibition of the anus, genitals, or pubic area of any person."

27

**B.**

We turn to the sufficiency of the evidence for counts 4–7, which charged Hillie with attempted sexual exploitation of a minor, under 18 U.S.C. § 2251(e).  These counts were based on Hillie's actions creating the four videos made by hiding a video camera in a bathroom ceiling vent and in a bedroom dresser.

"The crime of attempt consists of (1) an intent to do an act or to bring about certain consequences which would in law amount to [the] crime [which the defendant is charged with attempting]; and (2) an act in furtherance of that intent which . . . goes beyond mere preparation."  *United States v. Washington*, 106 F.3d 983, 1005 (D.C. Cir. 1997) (quoting 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW 18 (1986) (internal alterations omitted)); *see also Braxton v. United States*, 500 U.S. 344, 349 (1991).

In assessing the sufficiency of the evidence for counts 4–7, we must therefore determine, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could find that Hillie intended to "employ[], use[], persuade[], induce[], entice[], or coerce[] any minor to engage in . . . any sexually explicit conduct," that he intended to do so "for the purpose of producing any visual depiction of such conduct," 18 U.S.C. § 2251(a), and that he took an act in furtherance of that intent that went beyond mere preparation.  When construing the *scienter* requirement for the possession of child pornography offense under 18 U.S.C. § 2252, the Supreme Court noted that the "concern with harsh penalties loom[ed] . . . large," since the offense carried a potential prison sentence of 10 years.  *X-Citement Video*, 513 U.S. at 72 (citing *Staples v. United States*, 511 U.S. 600, 616 (1994)).  The concern looms equally large here, if not even more so, given that a conviction of attempted sexual

28

exploitation of a minor under 18 U.S.C. § 2251(e) carries a mandatory minimum sentence of 15 years and a maximum sentence of 30 years. Consequently, we must take particular care not to require any lower showing of intent than mandated by the statute or the Constitution.

The Government does not argue that Hillie intended to persuade, induce, entice, or coerce JAA to engage in sexually explicit conduct; rather the Government's theory is that Hillie somehow intended to "employ" or "use" JAA to engage in sexually explicit conduct. *See* Joint Statement re Proposed Jury Instructions and Verdict Form, ECF No. 85, at 63, 68 (Government's proposed instructions); Final Jury Instructions, ECF No. 95, at 13. Nor does the Government argue that Hillie intended for himself to engage in sexually explicit conduct with JAA, as the phrase "employ[] [or] use[] . . . a[] minor to engage in . . . sexually explicit conduct" might seem to require. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY (1976) (defining "employ" to mean, among others, "to make use of" and "to use or engage the services of"); BLACK'S LAW DICTIONARY (4th ed. 1951) (defining "employ" to mean, among others, "to engage one's service").

Instead, the Government argues that by hiding his video camera in the bedroom and bathroom, Hillie attempted to "use" or "employ" JAA to engage in sexually explicit conduct so that he could videotape such conduct. This construction of "employ" and "use" is not disputed by Hillie, and has been accepted by several of our sister circuits. *See United States v. Sirois*, 87 F.3d 34, 41 (2d Cir. 1996); *United States v. Fadl*, 498 F.3d 862, 866 (8th Cir. 2007); *United States v. Wright*, 774 F.3d 1085, 1091 (6th Cir. 2014); *United States v. Theis*, 853 F.3d 1178, 1181–82 (10th Cir. 2017); *United States v. Laursen*, 847 F.3d 1026, 1032–33 (9th Cir. 2017); *cf. United States v. Howard*, 968 F.3d 717, 721–22 (7th Cir. 2020) ("use" in

29

section 2251(a) requires proof that the defendant "cause[d] the *minor* to engage in sexually explicit conduct for the purpose of creating a visual image of that conduct") (emphasis in original). It seems correct, because if a defendant pays a minor to allow him to film her masturbating, then he induces a minor to engage in sexually explicit conduct with the intent that she engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. *See* 18 U.S.C. 2251(a). Likewise, if a defendant, knowing that a minor masturbates in her bedroom, surreptitiously hides a video camera in the bedroom and films her doing so, then he uses or employs, i.e., avails himself of, a minor to engage in sexually explicit conduct (with herself) with the intent that she engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. *See id*. Accordingly, the only issue before us is whether the evidence was sufficient to prove that Hillie attempted to "employ[] [or] use[] . . . [JAA] to engage in . . . [lascivious exhibition of her genitals]" for the purpose of videotaping JAA's lascivious exhibition. *See* 18 U.S.C. § 2251(a).

As we have previously noted, "'when causing a particular result is an element of the crime,' the defendant [is] guilty of attempt when he intended to cause such a result and 'd[id] or omit[ted] to do anything with the purpose of causing or with the belief that it [would] cause such result without further conduct on his part.'" *United States v. Hite*, 769 F.3d 1154, 1162 (D.C. Cir. 2014) (second, third, and fourth alterations in original) (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)). Here, that means the Government was required to prove that Hillie intended to use JAA to engage in the lascivious exhibition of her genitals by displaying her anus, genitalia, or pubic area in a lustful manner that connotes the commission of sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse.

30

Requiring the Government to prove that Hillie intended for JAA to engage in such sexually explicit conduct is important not just because that is the proper construction of the statute, but also to distinguish Hillie's conduct from the offense of voyeurism, *see* D.C. Code § 22-3531, which prohibits the nonconsensual recording of the private parts of a person by placing a hidden camera in a bathroom or a bedroom. As we have explained,

> The sufficiency of the evidence warrants particular scrutiny when the evidence strongly indicates that a defendant is guilty of a crime other than that for which he was convicted, but for which he was not charged. Under such circumstances, a trier of fact, particularly a jury, may convict a defendant of a crime for which there is insufficient evidence to vindicate its judgment that the defendant is blameworthy. Compelling evidence that a defendant is guilty of some crime is not, however, a cognizable reason for finding a defendant guilty of another crime.

*United States v. Salamanca*, 990 F.2d 629, 638 (D.C. Cir. 1993). For reasons not explained in the briefing, the Government did not bring D.C. Code attempted voyeurism charges. (Hillie conceded in his brief that "there was overwhelming evidence that he had engaged in voyeurism" as defined by the D.C. statute. Appellant's Br. at 40.)[1] Thus, the jury was faced with a choice between holding Hillie completely blameless, even though he engaged in heinous, apparently criminal conduct, or convicting him of attempted sexual

---

[1] The federal voyeurism statute applies only in the special maritime and territorial jurisdiction of the United States, *see* 18 U.S.C. § 1801, so it is inapplicable here.

31

exploitation of a minor, even if the evidence did not support that charge. This was the precise danger we expressed in *Salamanca*.

We conclude that the evidence in this case, viewed in the light most favorable to the Government, is such that no rational trier of fact could find that Hillie intended to use JAA to display her anus, genitalia, or pubic area in a lustful manner that connotes the commission of sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse, and that Hillie took a substantial step towards doing so. Where the jury can find an essential element of the offense only through speculation, the evidence is insufficient. *See United States v. Slatten*, 865 F.3d 767, 795 (D.C. Cir. 2017); *United States v. Harrison*, 103 F.3d 986, 991–92 (D.C. Cir. 1997); *United States v. Carter*, 522 F.2d 666, 682 (D.C. Cir. 1975). Here, the Government introduced no evidence from which the jury, without speculation, could reasonably infer that Hillie intended to capture video footage of JAA not just in the nude, but of her engaging in sexually explicit conduct as we have construed the term. Indeed, the Government produced no evidence that JAA engaged in "sexually explicit conduct," as defined by the plain text of the statute, let alone evidence that Hillie knew if and when she tended to engage in such conduct. Nor does the dissent provide any explanation as to why the evidence in this case was sufficient with respect to these counts. Absent such evidence, the jury could not conclude that Hillie intended to use JAA to engage in sexually explicit conduct—as opposed to mere ordinary grooming—without venturing "beyond the bounds of legitimate inference and into the realm of speculation and conjecture," *Carter*, 522 F.2d at 682. We therefore vacate Hillie's convictions on counts 4–7 and direct the District Court to enter a judgment of acquittal on those counts.

32

## IV.

Hillie also raises two arguments challenging his convictions on counts 8–17.  We reject both.

First, Hillie argues that the District Court impermissibly admitted various testimony in violation of the Confrontation Clause and Federal Rules of Evidence 403 and 802. Specifically, Hillie argues that the District Court erred by admitting (1) evidence that JA and her father had reported to a detective in 2012 and 2013 that Hillie had abused JA, which the Government sought to introduce so as to provide context for the origins and timeline of the Government's investigation of Hillie; (2) testimony by JAA that JA had told her (JAA) that Hillie had abused her (JA) and that she (JA) wanted to press charges, which the Government sought to introduce so as to provide context for JAA's decision to recount details to the grand jury that she had not disclosed in an earlier report; and (3) testimony by JAA and JA's mother, Jo. A, that *her* mother—JAA's and JA's grandmother—had told her (Jo. A) that she thought that Hillie had touched JAA and JA inappropriately, which the Government sought to introduce so as to provide context for Jo. A's cooperation with its investigation of Hillie.

We review the District Court's evidentiary rulings for abuse of discretion, *United States v. Alexander*, 331 F.3d 116, 121 (D.C. Cir. 2003), which Hillie cannot show.  All of the evidence that Hillie challenges was relevant for the reasons given by the Government.  And none of it was admitted for its truth, so it was not hearsay and did not violate the Confrontation Clause.  *See Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("The [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.").  Moreover, the

33

District Court provided limiting instructions, and JAA and JA testified directly about their abuse by Hillie, *see, e.g.*, J.A. 430, and so even if the District Court erred by admitting the challenged evidence, its error was not prejudicial. *See United States v. DeLoach*, 654 F.2d 763, 771 (D.C. Cir. 1980) (admission of hearsay evidence not prejudicial where the jury heard other, non-hearsay testimony conveying the same information); *cf. United States v. Moore*, 651 F.3d 30, 62 (D.C. Cir. 2011) (*per curiam*) (limiting instructions cured prejudice from minor instances of prosecutorial misconduct).

Second, Hillie argues that the District Court erred by denying his motion to sever counts 1–7 from counts 8–17. Whether relief should be granted from prejudicial joinder under Rule 14 is a decision that lies within the discretion of the trial court, and which this Court reviews for abuse of discretion. *United States v. Brown*, 16 F.3d 423, 426–27 (D.C. Cir. 1994). Hillie claims that the District Court abused its discretion because joinder prevented him from "negotiat[ing] a plea [with regard to the D.C. child abuse charges] or go[ing] to trial and vigorously cross examin[ing] the child witnesses on their bias or inconsistent statements." Appellant's Br. at 48; *see also* Reply Br. at 19. We do not agree. True, had the charges been severed, Hillie could have cross examined the child witnesses in the trial concerning the D.C. Code offenses while declining to cross examine the child witnesses in the trial concerning the federal offenses, thereby limiting the risks associated with such cross examination to one trial only. But were that enough to show abuse of discretion, any defendant facing multiple charges could demand to have them severed simply by asserting that he wished to limit his exposure to the risks associated with vigorous cross examination. *Cf. Baker v. United States*, 401 F.2d 958, 976 (D.C. Cir. 1968) ("Appellant [asserts] that 'a timely and bona fide election by the accused to testify as to some counts and not as to others requires a Rule 14

34

severance.' . . . Such a rule, in fact, would divest the court of all control over the matter of severance and entrust it to the defendant."). Moreover, Hillie does not dispute that even in separate trials, the evidence of the other offenses would be admissible under Federal Rules of Evidence 404(b) or 414. *See* Fed. R. Evid. 414(a) ("In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation."); Fed. R. Evid. 414(d)(2) ("'child molestation' means a crime under federal law or under state law . . . involving . . . any conduct prohibited by 18 U.S.C. chapter 110 . . . [or] contact between any part of the defendant's body . . . and a child's genitals or anus"). We therefore conclude that the District Court did not abuse its discretion in finding that any prejudice from joinder was outweighed by the conservation of resources achieved by a single trial.[2]

## V.

For the foregoing reasons, we vacate Hillie's convictions as to counts 1–7 and leave his remaining convictions intact.

*So ordered.*

---

[2] Hillie also argues that the District Court abused its discretion because joinder (1) prevented him from "limiting the inflammatory, emotional evidence about the D.C. child abuse charges in the federal case," and (2) prevented him from "potentially put[ting] on testimony, perhaps through the defendant, that the video evidence was not for the purpose of producing child pornography, but rather a voyeuristic pursuit." Appellant's Br. at 48. Because we vacate Hillie's convictions on counts 1–7 while leaving Hillie's convictions on the D.C. counts intact, however, those arguments are moot.

KAREN LECRAFT HENDERSON, *Circuit Judge*, dissenting:
Although I agree with my colleagues that Charles Hillie's
challenges to the district court's evidentiary rulings and to his
motion to sever are meritless, Maj. Op. 29–32, I vigorously part
company with their reversal of several of Hillie's convictions.
The majority concludes that Hillie's convictions cannot stand
because the videos in evidence do not show that *the innocent
minor victim* exhibited sexual desire or behavior—a conclusion
contrary to both the statutory text and our sister circuits'
decisions.  I believe the jury was correctly charged and that
sufficient evidence supports Hillie's convictions.  Accordingly,
I would affirm the district court judgment in its entirety and
respectfully dissent.

## I

First, a brief recitation of the relevant facts.[1]  In 2005 Hillie
began a relationship with the mother of the two minor victims
in this case—J.A.A. (born in 1997) and J.A. (born in 2002)—
and lived with them sporadically over a ten-year period.
*United States v. Hillie* (*Hillie II*), 289 F. Supp. 3d 188, 191–92
(D.D.C. 2018); *Hillie I*, 227 F. Supp. 3d at 66.  After years of
sexual abuse, J.A.A. disclosed to the District of Columbia
Metropolitan Police Department that she had previously
"discovered nude photographs of herself on the family's pink
laptop computer, and that the photos had been taken without
her knowledge." *Hillie I*, 227 F. Supp. 3d at 67. In August 2015
Hillie was arrested and the pink laptop was seized.  *Id.*
Authorities recovered multiple videos that Hillie created by
surreptitiously filming or attempting to film J.A.A. in her
bedroom and bathroom.  *Id.*  These videos capture J.A.A.—
when she was 15 years old or younger—entirely nude or nude
from the waist down, cleaning her private parts and other parts

---

[1]  A fuller factual background is set out in the district court's
first order, *United States v. Hillie* (*Hillie I*), 227 F. Supp. 3d 57, 66–
67 (D.D.C. 2017).

2

of her body and urinating.  *Id.*; *Hillie II*, 289 F. Supp. 3d at 199.
J.A.A. and J.A. testified that Hillie rubbed their breasts,
buttocks and vaginas on multiple occasions and J.A.A. further
testified that Hillie digitally penetrated her vulva once.   A
federal grand jury returned a 17-count indictment against
Hillie, charging him with seven violations of federal law and
ten child sex abuse offenses in violation of D.C. law.  *Hillie I*,
227 F. Supp. 3d at 62–63.  Relevant to my dissent are Counts
One and Two, charging Production of Child Pornography in
violation of 18 U.S.C. § 2251(a), Count Three, charging
Possession of Child Pornography in violation of 18 U.S.C.
§ 2252(a)(4), and Counts Four through Seven, charging
Attempted Sexual Exploitation of a Minor in violation of 18
U.S.C. § 2251(e).

## II

### A.   JURY CHARGE

   Relying on the United States Supreme Court's decision in
*Musacchio v. United States*, 577 U.S. 237 (2016)—and the
parties' representations during oral argument—the majority
opinion ostensibly declines to review the jury instructions and
instead analyzes only the sufficiency of the evidence.  Maj. Op.
7–8.   The parties' representations during oral argument,
however, do not bind us; more importantly, I believe the
majority misreads *Musacchio*, which makes clear that a
predicate necessary to its holding is the erroneous jury
instruction:

> We first address how a court should assess a
> sufficiency challenge *when a jury instruction
> adds an element* to the charged crime and the
> Government fails to object.  We hold that, when
> a jury instruction sets forth all the elements of
> the charged crime but *incorrectly adds one*

3

> *more element*, a sufficiency challenge should be
> assessed against the elements of the charged
> crime, not against the *erroneously* heightened
> command in the jury instruction.

*Id.* at 243 (emphases added).  Accordingly, before reaching Hillie's sufficiency of the evidence challenge, I believe we must first address the jury charge.

Hillie challenges several parts of the jury charge, including the district court's instruction on what constitutes a "lascivious exhibition."[2] 18 U.S.C. § 2251(a) provides that no person shall "use[] . . . any minor to engage in . . . any *sexually explicit* conduct for the purpose of producing any visual depiction of such conduct," *id.* (emphasis added); and § 2252(a)(4)(B) provides that no person shall "knowingly possess[] . . . films, video tapes, or other matter which contain any visual depiction . . . if . . . the producing of such visual depiction involves the use of a minor engaging in *sexually explicit* conduct [and] such visual depiction is of such conduct," *id.* (emphasis added). "Sexually explicit conduct" includes the "lascivious exhibition of the anus, genitals, or pubic area of any person."  *Id.* § 2256(2)(A).  "Lascivious exhibition" is not further defined. It is up to the factfinder to determine whether a visual depiction constitutes a "lascivious exhibition" under the statute.  *See Hillie II*, 289 F. Supp. 3d. at 194–95 (collecting cases).

To guide the jury in determining whether a visual depiction includes a lascivious exhibition, numerous circuits

---

[2]  Hillie's challenges to the jury instructions on other grounds—including the interstate commerce and "used or employed" elements of his offenses and Hillie's "single-mindedness" vel non—I find to be without merit.

4

use the six factors set out in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986):  the so-called *Dost* factors.  They are:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* at 832.[3]  The district court's "lascivious exhibition" charge included the *Dost* factors, as well as, *inter alia*, the following introductory paragraph:

> "Lascivious" means exciting sexual desires or salacious.  And "lascivious exhibition" means indecent exposure of the genitals or pubic area, usually to excite lust.  Not every exposure of the genitals or pubic area is a lascivious exhibition, and the fact that a minor is depicted nude, on its own, is not enough for that visual depiction to qualify as a lascivious exhibition.  But, for an

---

[3]  *Dost* adds that "[o]f course, a visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.'  The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor."  *Id.*

5

image to constitute a lascivious exhibition, *the minor is not required to exhibit lust*, wantonness, or sexual coyness, and the image *need not depict overt sexual activity* or behavior.

Appellant's Appendix 518 (emphases added).[4]  On appeal, Hillie focuses primarily on the validity of the sixth *Dost* factor ("whether the visual depiction is intended or designed to elicit a sexual response in the viewer") as well as the third and fourth sentences of the introductory paragraph quoted *supra*.

Hillie objected to the "overt sexual activity" portion of the instruction in district court and, accordingly, our review of that instruction is de novo.  *United States v. Wilson*, 605 F.3d 985, 1018 (D.C. Cir. 2010) (per curiam).  We ask "whether, taken as a whole, [the instructions] accurately state the governing law and provide the jury with sufficient understanding of the issues and applicable standards."  *Wilson*, 605 F.3d at 1018 (alteration in original) (quoting *United States v. Washington*, 106 F.3d 983, 1002) (D.C. Cir. 1997) (per curiam)).  Whether Hillie objected to the *Dost* factors—and more specifically the sixth *Dost* factor—is far from clear.  I assume *arguendo* that Hillie objected and therefore review the *Dost* factors portion of the jury charge de novo.  Reviewing the entire "lascivious exhibition" instruction de novo, I believe the district court

---

[4]  The district court added that the list of *Dost* factors "is not exhaustive, and a visual depiction need not satisfy all of these factors or any particular factor to be deemed a lascivious exhibition.  Instead, these factors are meant to guide you in determining whether the depiction is a lascivious exhibition of the genitalia or pubic area as you consider the overall content of the material.  It is for you to decide the weight or lack of weight to be given to any of these factors."  *Id.* at 519.

6

accurately stated the law and properly instructed the jury on the challenged elements.

First, I agree with most circuits—including the Second,[5] Third,[6] Fifth,[7] Sixth,[8] Eighth,[9] Ninth[10] and Tenth[11] Circuits[12]— that the *Dost* factors are an appropriate, non-exclusive set of factors and would approve their use by our Circuit.[13]  As noted

---

[5]  *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008). Noting that the sixth *Dost* factor has been subject to criticism, *Rivera* explained "[s]ome of this criticism is mitigated once one distinguishes between the production of child pornography and possession," as *Dost* involved production and the 6th *Dost* factor has more limited relevance in a case of possession only.  *Id.* at 252.  Hillie was convicted of possession and production of child pornography so that any concern about the *Dost* factors in a case involving possession of child pornography only is absent.

[6]  *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989).

[7]  *United States v. McCall*, 833 F.3d 560, 563 (5th Cir. 2016); *United States v. Rubio*, 834 F.2d 442, 448 (5th Cir. 1987); *5th Cir. Pattern Jury Instrs.* (*Crim. Cases*) 2.84 (2019).

[8]  *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009); *6th Cir. Pattern Crim. Jury Instrs.* 16.01 (2021).

[9]  *United States v. Ward*, 686 F.3d 879, 882 (8th Cir. 2012); *8th Cir. Manual of Model Crim. Jury Instrs.* 6.18.2252A (2020).

[10]  *United States v. Perkins*, 850 F.3d 1109, 1121 (9th Cir. 2017); *United States v. Overton*, 573 F.3d 679, 686–87 (9th Cir. 2009).

[11]  *United States v. Wells*, 843 F.3d 1251, 1253–54 (10th Cir. 2016).

[12]  The Eleventh Circuit applied the factors in an unpublished opinion, *United States v. Hunter*, 720 F. App'x 991, 996 (11th Cir. 2017), but also noted that the *Dost* factors serve as the basis for that Circuit's pattern jury instructions, *United States v. Grzybowicz*, 747 F.3d 1296, 1306 n.8 (11th Cir. 2014); *see also 11th Cir. Pattern Jury Instrs. (Crim. Cases)* 83.4A (2020).

[13]  Our Circuit has "not yet had occasion to consider the *Dost* factors, or any other potential means of defining 'lascivious.'" *United States v. Torres*, 894 F.3d 305, 310 n.3 (D.C. Cir. 2018).

7

by the Second Circuit, the *Dost* factors "are not mandatory, formulaic or exclusive.  As factors, they mitigate the risk that jurors will react to raw images in a visceral way, rely on impulse or revulsion, or lack any framework for reasoned dialogue in the jury room.  In short, the *Dost* factors impose useful discipline on the jury's deliberations."  *Rivera*, 546 F.3d at 253.  Even the First and Seventh Circuits, which discourage the use of the *Dost* factors, do not do so categorically.  The First Circuit does not prohibit use of the *Dost* factors but recognizes they are problematic if treated as "exhaustive" and therefore "accorded . . . the same status as the statutory definition itself." *United States v. Frabizio*, 459 F.3d 80, 86–90 (1st Cir. 2006). The Seventh Circuit also "discourage[d] . . . routine use" of the *Dost* factors because they "may not helpfully elucidate the statutory standard," instead "seem[ing] like a command to take a detailed and mechanical walk through a checklist."  *United States v. Price*, 775 F.3d 828, 839–40 (7th Cir. 2014).  Those cautions are diminished here by the district court's full instruction, emphasizing the *Dost* factors as only a guide, non-exhaustive and discretionary.[14]

I also believe that the district court properly instructed the jury that the visual depiction "need not depict overt sexual activity or behavior."  The Eighth Circuit has explained that even if the child in the visual depiction is "not acting in an obviously sexual manner, suggesting coyness or a willingness to engage in sexual activity, [that] does not necessarily indicate

---

[14]  In *Price*, the Seventh Circuit emphasized that "the intent and motive of the photographer can be a relevant consideration in evaluating whether an image depicts a lascivious display" with the "relevance of a defendant's motive and intent [turning] on the facts of the case."  *Id.* at 839 (internal quotations omitted).  That Circuit later held that "lascivious exhibition" includes an analysis of the creator's intent.  *United States v. Miller*, 829 F.3d 519, 525–26 (7th Cir. 2016).

8

that the videos themselves were not or were not intended to be lascivious."  *United States v. Johnson*, 639 F.3d 433, 440 (8th Cir. 2011).  As discussed *infra*, because "lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles," *Wells*, 843 F.3d at 1255 (alteration accepted) (emphasis omitted) (internal quotations omitted), "even images of children acting innocently can be considered lascivious if they are intended to be sexual," *Johnson*, 639 F.3d at 440; *see also United States v. Holmes*, 814 F.3d 1246, 1251–52 (11th Cir. 2016) ("depictions of otherwise innocent conduct may in fact constitute a 'lascivious exhibition of the genitals or pubic area' of a minor based on the actions of the individual creating the depiction").[15] Accordingly, I would affirm the district court's instruction that the statute does not require the depiction of a minor's "overt sexual activity or behavior."

### B.  SUFFICIENCY OF EVIDENCE

Having concluded that the jury was properly instructed, I turn to Hillie's sufficiency of the evidence challenges.  "When reviewing sufficiency claims, we generally accept the jury's guilty verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  In so doing, we view the evidence in the light most favorable to the Government."  *United States v. Williams*, 784 F.3d 798, 801

---

[15]  Hillie argues that the *noscitur a sociis* canon requires that "lascivious exhibition" be read together with the other "graphic, sexual terms" in § 2256 to require that "lascivious exhibition" be "equally graphic," Appellant's Br. 24, and relies on the Third Circuit's *United States v. Knox* opinion, 32 F.3d 733, 745 (3d Cir. 1994).  *Knox*, however, concluded that a "lascivious exhibition" did not require nudity or that the children be engaged in overt, graphic sexual behavior.  *See id.* at 747.

9

(D.C. Cir. 2015) (internal citations and quotations omitted).  In other words, we ask if "*any* rational juror could have found the elements of the crime beyond a reasonable doubt."  *United States v. Borda*, 848 F.3d 1044, 1053 (D.C. Cir. 2017).  Viewing the evidence in the light most favorable to the government, I believe that a rational juror could have found the elements of Counts One through Seven proven beyond a reasonable doubt, including that the videos constituted visual depictions of a "lascivious exhibition."[16]

Again using the *Dost* factors, I believe that the first *Dost* factor—the focal point of the video—is met.  Hillie spent almost one minute in some of the videos adjusting the recording device:  he angled the device upward in J.A.A.'s bedroom from a low vantage point and manipulated it inside the bathroom vent to capture the toilet and entrance to the shower.  He also surreptitiously placed and turned on the recording device immediately before J.A.A. entered the bathroom and bedroom, before she was likely to enter and undress.  It would not be irrational for a juror to conclude that Hillie meant for J.A.A.'s genitals to be the focal point of the visual depictions.  *See Wells*, 843 F.3d at 1256 ("Though Wells did not edit the videos, freeze-frame particular images from them, or zoom in on [the child], he did not have to do so to make his stepdaughter's genitals the focal point of the videos."); *Miller*, 829 F.3d at 525 ("There is no requirement in the statute that the creator zoom in on the pubic area.  Nor is

---

[16] Hillie asserts that we should review whether the videos constituted visual depictions of a "lascivious exhibition" under a mixed question of law and fact standard.  Appellant's Br. 14–15.  The Fifth Circuit has found that "our sister courts of appeal are split" as to the correct "standard of review for lasciviousness determinations." *United States v. Steen*, 634 F.3d 822, 825–26 (5th Cir. 2011) (per curiam) (collecting cases).  Under any standard of review, I would find sufficient evidence supported the jury verdict.

10

there a requirement that the pubic area be the sole focus of the depiction.  Determining the focus of a depiction or whether it is 'otherwise sexually suggestive' is properly left to the fact finder.") (citation omitted).

On the second *Dost* factor, a rational juror could conclude that J.A.A.'s bedroom and the bathroom are sexually suggestive settings.  Other circuits have found bedrooms and bathrooms to be potentially sexually suggestive locations. *United States v. Larkin*, 629 F.3d 177, 183 (3d Cir. 2010) ("showers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in film.  It is potentially as much of a setting for fantasy sexual activity as is an adult's bedroom"); *Wells*, 843 F.3d at 1256; *Miller*, 829 F.3d at 525.

A rational juror would also unquestionably conclude that the fourth *Dost* factor applies, as J.A.A. appears nude or partially nude in the videos.  And on the sixth *Dost* factor, a rational juror could easily conclude that the videos were intended or designed to elicit a sexual response from the viewer, given the surreptitious nature of the videos and J.A.A.'s testimony regarding Hillie's long-term sexual interest in and sexual abuse of her.  *See Wells*, 843 F.3d at 1256–57. Although the third and fifth *Dost* factors do not apply—given that J.A.A. was not depicted in an unnatural pose or inappropriate attire and the depiction does not suggest sexual coyness or a willingness to engage in sexual activity—"a visual depiction need not involve *all* of [the *Dost*] factors to be a 'lascivious exhibition of the genitals or pubic area.'" *Dost*, 636 F. Supp at 832 (first emphasis added). Altogether, then, I would hold that a rational juror could have concluded that the government proved each element of the federal child pornography possession charge, the production charges and the

11

attempted sexual exploitation of a minor charges beyond a reasonable doubt.[17]

My colleagues, however, reach the opposite conclusion based on their conclusion that the statute requires that the "lascivious exhibition" be on the minor's part.  Maj. Op. 21–22.  That is a perversion of the statute's language and its purpose and I emphatically disagree.  As noted *supra*, 18 U.S.C. § 2251(a) provides that no person shall "use[] . . . any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct."[18]  To be guilty of producing child pornography, then, a person must use a minor to engage in a lascivious exhibition of the child's anus, genitals or pubic area, for the purpose of producing a visual depiction thereof.  Accepting the majority's definition of "lascivious" as "a lustful manner that connotes the commission of" sexual activity, Maj. Op. 18, I believe it is

_____

[17]  My colleagues are concerned about defining "lascivious exhibition" too broadly, potentially capturing any exhibition exciting sexual desire in the viewer and criminalizing constitutionally-protected images.  Maj. Op. 10, 17–18.  The sixth *Dost* factor, however, asks "whether the visual depiction is intended or designed to elicit a sexual response in the viewer," which looks at the intent or design of the creator of the visual depiction, not a particular viewer's response.  *See Villard*, 885 F.2d at 125 ("Although it is tempting to judge the *actual* effect of the photographs on the viewer, we must focus instead on the *intended* effect on the viewer." (emphases in original)).  Here, the location, placement and adjustment of the recording device by Hillie, as well as his sexual abuse of J.A.A., make clear that a reasonable juror, viewing the evidence in the light most favorable to the government, could conclude that Hillie both produced and possessed child pornography when he surreptitiously recorded J.A.A.

[18]  I focus here on the language of the "production" statute, 18 U.S.C. § 2251(a), although, as noted *supra*, the relevant language of the "possession" statute, *id*. § 2252(a)(4), is substantively similar.

12

absurd to suggest that the statute *requires* the minor victim to exhibit a "lustful manner."  Reading the statute that way is contrary to the purpose for which the Congress enacted the federal child pornography statute:  "Congress aimed the federal child pornography statute at combatting 'the use of children as subjects of pornographic materials[, which] is harmful to the physiological, emotional, and mental health of the child.'" *Knox*, 32 F.3d at 745 (alteration in original) (quoting *New York v. Ferber*, 458 U.S. 747, 758 (1982)).  As the Ninth Circuit phrased it:

> The crime punished by the statutes against the sexual exploitation of children . . . is the offense against the child—the harm "to the physiological, emotional, and mental health" of the child, *Ferber*, 458 U.S. at 758, the "psychological harm," *id.* at 775 (O'Conner, J., concurring), the invasion of the child's "vulnerability."  *Id.* at 776 (Brennan, J., concurring).  These harms collectively are the consequential damages that flow from the trespass against the dignity of the child. . . . When a child is made the target of the pornographer-photographer, the statute will not suffer the insult to the human spirit, that the child should be treated as a thing.

*United States v. Wiegand*, 812 F.2d 1239, 1245 (9th Cir. 1987).

I am hardly alone in reading the statute not to require that lasciviousness be exhibited by the minor.  Other circuits that have considered the question—including the Eighth, Ninth, Tenth and Eleventh Circuits—have concluded that lasciviousness is "not the work of the child, whose innocence is not in question, but of the producer or editor of the video."

13

*Holmes*, 814 F.3d at 1252 (quoting *United States v. Horn*, 187 F.3d 781, 790 (8th Cir. 1999)); *see Wells*, 843 F.3d at 1254 (§ 2251(a) does not "'place[] the onus of lust on the child being photographed.'   Rather, a visual depiction of a minor is 'a lascivious exhibition because the photographer arrays it to suit his peculiar lust.'"   (alterations accepted) (emphases omitted) (quoting *United States v. Wolf*, 890 F.2d 241, 245 (10th Cir. 1989)); *Wiegand* 812 F.2d at 1244 ("The picture of a child 'engaged in sexually explicit conduct' . . . is a picture of a child's sex organs displayed lasciviously—that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur."); *see also McCall*, 833 F.3d at 563 n.4 (explaining Fifth Circuit precedent holds "it is the *depiction*—not the minor—that must bring forth the genitals or pubic area to excite or stimulate").[19]   Put another way, "[l]asciviousness is not a

---

[19] Like every other circuit that has addressed this question, I do not think that the Supreme Court has ever defined the "lascivious exhibition" of private parts. My colleagues disagree. Maj. Op. 11–15, 23. They first cite two cases that treat statutes regulating "lewd" or "lascivious" materials as constitutional. *See Miller v. California*, 413 U.S. 15, 25 (1972); *New York v. Ferber*, 458 U.S. 747, 751 (1982). They also rely on the Supreme Court's affirmance of a Ninth Circuit decision interpreting the terms "lascivious" and "lewd" to have the same meaning. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78–79 (1994).   And finally, the majority cites a case concluding that the federal child pornography statute and analogous statutes in earlier pornography cases define "sexually explicit conduct" similarly.   *United States v. Williams*, 553 U.S. 285, 296 (2008).   But none of this precedent purports to explain what constitutes "lascivious exhibition" of private parts.   In fact they explain that the Government *can* regulate "lascivious exhibitions" of private parts.   *See X-Citement Video*, 513 U.S. at 78; *Williams*, 553 U.S. at 300–01.   To me, the Supreme Court caselaw manifests that 18 U.S.C. § 2252(a) lacks any constitutional infirmity (like vagueness or overbreadth) that requires a limiting construction. My colleagues observe parenthetically that I "suggest[] that none of these

14

characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles." *Holmes*, 814 F.3d at 1252 (quoting *Wiegand*, 812 F.2d at 1244). Lasciviousness could not be required of J.A.A., a minor whom Hillie surreptitiously videotaped during presumably private moments in her bathroom and bedroom, during which she unknowingly exhibited her private parts. On the other hand, lasciviousness *was* a characteristic of the exhibition choreographed by Hillie, captured through his surreptitious set up of the recording device in locations where he thought J.A.A. was likely to be nude and at angles which were likely to capture her private parts. I would conclude that there was abundant evidence, weighing all of the evidence in the light most favorable to the government, to lead a rational juror to conclude that the Government proved all of the elements of Counts One through Seven beyond a reasonable doubt.

 Accordingly, I respectfully dissent.

---

precedents . . . actually construed the statutory language." Maj. Op. 22–23. I think they may have missed my point, which is that the Supreme Court has never construed "lascivious exhibition," the statutory language *sub judice*.